JOHN W. HUBER, United States Attorney (#7226)
STEWART C. WALZ, Assistant United States Attorney (#3374)
AARON CLARK, Assistant United States Attorney (#15404)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15049)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682 • Facsimile: (801) 325-3387

FILED
U.S. DISTRICT COURT

2017 JAN 18  P 4: 39

DISTRICT OF UTAH

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLAUD R. KOERBER aka RICK KOERBER,<br><br>Defendant. | **INDICTMENT**<br><br>VIO.<br>15 U.S.C. §§ 77q(a) and 77x (Fraud in the Offer and Sale of Securities);<br>18 U.S.C. § 1343 (Wire Fraud);<br>18 U.S.C. § 1957 (Money Laundering);<br>26 U.S.C. § 7201 (Tax Evasion) |

The Grand Jury alleges:

**The Defendant and His Businesses**

Case: 2:17-cr-00037
Assigned To : Benson, Dee
Assign. Date : 1/18/2017
Description: USA v.

At all times relevant to this indictment:

1.      Defendant CLAUD R. KOERBER, a/k/a RICK KOERBER was an individual with decision making authority over several businesses located in Utah.

2.      Founders Capital, LLC (Founders Capital) was a Utah Limited Liability Company formed in or around April 2005 and associated with Defendant KOERBER, and over which the Defendant KOERBER exercised almost complete financial control. Founders Capital received investment monies, sometimes termed as loans, from victims of the scheme and artifice to defraud alleged below.

3.     Franklin Squires Investments, LLC, and Franklin Squires Companies, LLC,
were Utah Limited Liability Companies associated with Defendant KOERBER and Founders
Capital, over which the Defendant Koerber exercised almost complete control.

## The Scheme and Artifice to Defraud

4.     From on or about an unknown date in 2004 to on or about December 31, 2008,
in the Central Division of the District of Utah and elsewhere, Defendant KOERBER devised and
intended to devise a scheme and artifice to defraud and for obtaining money by means of false
and fraudulent pretenses, representations, and promises.  In execution of the scheme to defraud,
Defendant KOERBER used the United States mails, interstate wire transmissions, and the
facilities and means of interstate commerce.

5.     Beginning around 2004, Defendant KOERBER created and presented a series of
seminars designed to encourage individuals to make money through a real estate program that
Defendant KOERBER named the "Equity Mill."  It was a part of the scheme and artifice to
defraud that Defendant KOERBER accepted money from individuals and companies through
Founders Capital and with the representation that Founders Capital would use the money to
make "hard money" or bridge loans to other entities associated with Founders Capital, namely
Hill Erickson LLC (Hill Erickson), and New Castle Holdings LLC (New Castle), for the purpose
of acquiring real property for use in the "Equity Mill."  The Defendant KOERBER exercised
control of these entities as well.

6.     It was a part of the scheme and artifice to defraud that the Defendant KOERBER
communicated his misrepresentations and omissions regarding his schemes, both directly and
indirectly, to the investors and potential investors through various means, including his seminars,
phone calls, mailings, and advertisements.  Defendant KOERBER made such misrepresentations
and omissions to colleagues and intermediaries with the knowledge that such information would
be disseminated to other investors and potential investors.

2

7.     It was further a part of the scheme and artifice to defraud that Defendant
KOERBER represented to investors and potential investors that through the "Equity Mill,"
substantial amounts of money could be made.  Defendant KOERBER , until the scheme
collapsed, paid varying amounts of interest on the money provided to Founders Capital, but most
generally 5% per month to its first line investors.

8.     It was further a part of the scheme and artifice to defraud that the Defendant
KOERBER caused advertisements to be placed in Creative Real Estate Lifestyles magazines
during 2006 and 2007.  The advertisements for Franklin Squires, an entity related to Founders
Capital, stated, "Let us show you How to Safely Earn 1-5% Per Month on Your Cash.  How to
make GREAT MONEY fast in real estate without EVER buying property."  The Defendant
KOERBER knew these ads were false and misleading because Franklin Squires never made a
profit in 2005, 2006 and 2007 and in fact lost money in those years, that the 1-5% paid on
investors' money came from other investors' money as described below, and that the money
invested was not safe.  The investments placed in Founders Capital were not safe because when
Founders Capital stopped making payments to investors in 2007, investors lost approximately
$47 million.

9.     It was further a part of the scheme and artifice to defraud that Defendant
KOERBER told investors that the investment was risk free or that there was little risk because
the investments were backed by real estate.  Early in the scheme, promissory notes given by
Founders Capital listed the address of property that was to serve as collateral for the money
placed in Founders.

10.     It was further a part of the scheme and artifice to defraud that Defendant
KOERBER knew the above representations were false, or, made these representations false by
taking substantial amounts of the money invested with Founders Capital and using it for
purposes other than real estate bridge loans and to fund the purchase of real property.
Furthermore, most of the money placed with Founders Capital was not secured or collateralized
by real estate.

11.     It was further a part of the scheme and artifice to defraud that Defendant KOERBER knew that most of the money placed with Founders Capital was not used for the "Equity Mill" or to fund real estate purchases and knew that a substantial amount of the money was diverted for other purposes because Defendant KOERBER almost exclusively controlled the use of the funds placed into Founders Capital.

12.     It was further a part of the scheme and artifice to defraud that Defendant KOERBER used investors' money for purposes not disclosed to many investors and potential investors with Founders Capital, such as for Defendant KOERBER's personal housing, other personal expenses, expensive automobiles, investments into restaurants, and unsecured loans to other businesses and entities.  For example, Defendant KOERBER caused the following:

     a.    Over $850,000 to be spent on restaurants;

     b.     $800,000 to be loaned to an associate for a restaurant;

     c.    Over $1,000,000 to be spent on expensive automobiles;

     d.    Over $5 million to be spent making a movie;

     e.    Over $975,000 to be loaned to an unprofitable academy; and

     f.    Over $425,000 to be spent on the minting of coins.

13.     It was further a part of the scheme and artifice to defraud that despite spending some of the investors' money on the items in the immediately preceding paragraph, and others, ostensibly in order to make money, the Defendant KOERBER did not inform investors that the nature of their "investment" had changed until after the money was spent.

14.     It was further a part of the scheme and artifice to defraud that the Defendant KOERBER also spent some of the investors' money under his control on personal expenses including the adoption of his children and having his teeth fixed.

15.     It was further a part of the scheme and artifice to defraud that in order to convince earlier investors that their funds were earning money and to convince potential investors that the program was working and earning money, Defendant KOERBER operated the businesses of Founders Capital and related entities as a "ponzi scheme."  That is, Defendant KOERBER used

4

money placed with Founders Capital to make interest payments to earlier investors. In this way, Defendant KOERBER created the false impression that the businesses were profitable, that the investments were safe, secure, and that interest was being paid.

16.     At no time during the operation of the scheme did the Founders Capital or Franklin Squires entities operated by Defendant KOERBER make a yearly profit. Defendant KOERBER, by means of his misrepresentations and omissions, obtained approximately $100 million in investor funds. Over $50 million of those investor funds were used to make ponzi payments.

17.     It was further a part of the scheme and artifice to defraud that despite the fact that neither Founders Capital nor Franklin Squires made a profit in 2005, 2006 and 2007, the Defendant KOERBER falsely and fraudulently stated in an article distributed to investors and potential investors that in 2005, the Franklin Squires Companies did $111 million in revenue and in 2006 the company [Franklin Squires] and the businesses in which Franklin Squires had a substantial interest generated revenues in excess of $500 million.

18.     It was further part of the scheme and artifice to defraud that the Defendant KOERBER created a false aura of success by buying expensive cars, showing photographs of his mansion, claiming that a large "cabin" near Heber, Utah was his second home, despite the fact that he did not own it, and minting his own gold coins. This aura was used to gain credibility with investors and potential investors and induce investments.

19.     It was further part of the scheme and artifice to defraud that the article touting the profitability of the Defendant KOERBER's companies, the photographs of "his cabin" and his home, and the photographs of the Defendant in an expensive car and with his minted coins were published in the Creative Real Estate Lifestyles Magazine. The Defendant Koerber funded this magazine using some investors' funds, which the Defendant failed to disclose.

20.     It was further part of the scheme and artifice to defraud that in order to enhance his credibility with investors and potential investors, the Defendant KOERBER told investors and potential investors that he had gotten in trouble with the Wyoming Division of Securities and

had gone bankrupt, but had paid all of his investors in Wyoming back. However, the Defendant Koerber did this without disclosing that he had used some of the money investors placed with Founders Capital to make the repayments.

**Counts 1 through 4**
**15 U.S.C. § 77q(a) and § 77x**
**(Fraud in the Offer and Sale of Securities)**

21.    The allegations of the Scheme and Artifice to Defraud are incorporated by this reference as though fully set forth herein.

22.    On or about the dates listed below, in the Central Division of the District of Utah,

**CLAUD R. KOERBER,**

Defendant, willfully, in the offer and sale of securities, that is investments in Founders Capital, by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly: (1) Did employ a device, scheme, and artifice to defraud; (2) Did obtain money by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (3) Did engage in transactions, practices, and courses of business which operated as a fraud and deceit upon investors; all in violation of 15 U.S.C. § 77q(a) and § 77x (securities fraud) and 18 U.S.C. § 2(a) and (b) (aiding and abetting and causing):

| COUNT | DATE | USE OF INTERSTATE MEANS |
|---|---|---|
| 1 | March 16, 2006 | Internet Advertisement of Real Estate Seminar |
| 2 | November 4, 2005 | Wire Transfer of $850,000 from MI |
| 3 | July 6, 2006 | Wire Transfer of $500,000 from MI |
| 4 | May 22, 2007 | Wire Transfer of $1,000,000 from MI |

**Counts 5 through 13**
**18 U.S.C. § 1343**
**(Wire Fraud)**

23.     The allegations of the Scheme and Artifice to Defraud are incorporated by this reference as though fully set forth herein.

24.     On or about the dates listed below, in the Central Division of the District of Utah,

**CLAUD R. KOERBER,**

Defendant herein, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing said scheme and artifice to defraud, did cause to be transmitted in interstate commerce by means of wire communication certain writings, signs and signals, each such use of wire communication being a separate count of this Indictment; all in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2(b).

| COUNT | DATE | INTERSTATE USE OF WIRES | DESCRIPTION |
|:---:|:---:|:---:|:---:|
| 5 | November 8, 2005 | $147,500 Wire Transfer | Ponzi Payment to MIWE Holdings, LLC |
| 6 | January 13, 2006 | $428,350 Wire Transfer to California from Utah | Minting of Squires Coins |
| 7 | June 6, 2006 | $415,400 Wire Transfer | Ponzi Payment to MIWE Holdings, LLC |
| 8 | July 6, 2006 | $415,400 Wire Transfer | Ponzi Payment to MIWE Holdings, LLC |
| 9 | September 6, 2006 | $89,423.23 Wire Transfer | Ponzi Payment to Atlas Capital, LLC |
| 10 | September 13, 2006 | $296,793.25 Wire Transfer from Utah to Nevada | Purchase of Spyker Automobile |
| 11 | May 22, 2007 | $125,000 Wire Transfer | Ponzi Payment to MIWE Holdings, LLC |
| 12 | May 22, 2007 | $126,536.47 Wire Transfer | Ponzi Payment to MM |
| 13 | May 22, 2007 | $109,226.45 Wire Transfer | Ponzi Payment to Atlas Capital, LLC |

**Count 14**
**18 U.S.C. § 1343**
**(Wire Fraud)**

25.    The factual allegations of the Scheme and Artifice to Defraud are incorporated by this reference as though fully set forth herein.

26.    On or about September 21, 2007, in the Central Division of the District of Utah and elsewhere,

**CLAUD R. KOERBER,**

Defendant herein, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing said scheme and artifice to defraud, did cause to be transmitted by means of interstate wire communications, certain writings, signs and signals, that is an email to the investors of Hunter's Capital stating, among other things, "You have known all along where your money went and that Rick was using it to do real estate deals.";

all in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2(b).

**Count 15**
**18 U.S.C. § 1957**
**(Money Laundering)**

27.    The allegations of the Scheme and Artifice to Defraud are incorporated by this reference as though fully set forth herein.

28.    On or about June 7, 2006, in the Central Division of the District of Utah,

**CLAUD R. KOERBER,**

Defendant herein, did knowingly engage and attempt to engage in a monetary transaction by through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the purchase of a Ferrari in the amount of $218,896.27, such property having been derived from a specified unlawful activity, that is fraud in the sale of securities in violation of 15 U.S.C. §§ 77q and 77x; .

all in violation of 18 U.S.C. §§ 1957 and 2(b)

## Count 16
## 18 U.S.C. § 1957
## (Money Laundering)

29.     The allegations of the Scheme and Artifice to Defraud are incorporated by this reference as though fully set forth herein.

30.     On or about June 7, 2006, in the Central Division of the District of Utah,

### CLAUD R. KOERBER,

Defendant herein, did knowingly engage and attempt to engage in a monetary transaction by through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the purchase of a Ferrari in the amount of $213,459.67, such property having been derived from a specified unlawful activity, that is fraud in the sale of securities in violation of 15 U.S.C. §§ 77q and 77x; all in violation of 18 U.S.C. §§ 1957 and 2(b).

## Count 17
## 26 U.S.C. § 7201
## (Tax Evasion)

31.     The factual allegations of the Scheme and Artifice to Defraud are incorporated by this reference as though fully set forth herein.

32.     During the year 2005, in the Central Division of the District of Utah,

### CLAUD R. KOERBER,

Defendant herein, a resident of the State of Utah, had and received a taxable income of in excess of $600,000; that upon said taxable income he owed to the United States of America income tax of in excess of $150,000; that he was required by law on or before October 15, 2006, to make an income tax return to the Internal Revenue Service, and to pay such income tax; that well knowing the foregoing facts, defendant KOERBER on or about October 15, 2006, in the District of Utah, did willfully and knowingly attempt to evade and defeat said income tax due and owing to the United States of America for the year 2005 by failing to make an income tax return to the Internal Revenue Service, by failing to pay said income tax to the Internal Revenue Service, and

9

by causing various business entities under the control of defendant KOERBER to pay personal expenses on his behalf; all in violation of 26 U.S.C. § 7201.

**Count 18**
**26 U.S.C. § 7201**
**(Tax Evasion)**

33.    The factual allegations of the Scheme and Artifice to Defraud are incorporated by this reference as though fully set forth herein.

34.    During the year 2006, in the Central Division of the District of Utah,

**CLAUD R. KOERBER,**

Defendant herein, a resident of the State of Utah, had and received a taxable income of in excess of $300,000; that upon said taxable income he owed to the United States of America income tax of in excess of $100,000; that he was required by law on or before April 16, 2007, to make an income tax return to the Internal Revenue Service, and to pay such income tax; that well knowing the foregoing facts, Defendant KOERBER, on or about April 16, 2007, in the District of Utah, did willfully and knowingly attempt to evade and defeat said income tax due and owing to the United States of America for the year 2006 by failing to make an income tax return to the Internal Revenue Service, by failing to pay said income tax to the Internal Revenue Service, and

by causing various business entities under the control of Defendant KOERBER to pay personal

expenses on his behalf; all in violation of 26 U.S.C. § 7201.

A TRUE BILL:

/s/
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

STEWART C. WALZ
Assistant United States Attorney

11