CLAUD R. KOERBER
*DEFENDANT*

███████████
████

FILED
U.S. DISTRICT COURT

2017 APR 14 A 10: 44

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| UNITED STATES OF AMERICA, | Case No. 2:17-CR-00037 |
|---|---|
| *Plaintiff,* | MOTION TO RECUSE THE HONORABLE CHIEF MAGISTRATE JUDGE PAUL WARNER OR, IN THE ALTERNATIVE, FOR AN EVIDENTIARY HEARING |
| v. | |
| CLAUD R. KOERBER | |
| *Defendant.* | |
| | Judge Robert J. Shelby |
| | Chief Magistrate Judge Paul Warner |

Pursuant to 28 U.S.C. §§ 144 and 455, and the applicable rules and other authority set forth in the enclosed memorandum, Defendant Claud R. Koerber moves to recuse the Honorable Chief Magistrate Judge Paul Warner from this case, or alternatively, for an evidentiary hearing.

GROUNDS FOR REQUESTED RELIEF

It is a bedrock principle of American jurisprudence that every litigant, especially a criminal defendant, is entitled to an "impartial and disinterested tribunal." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). Indeed, "the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system," *United States v. Columbia Broadcasting Sys.*, 497 F.2d 107, 109 (5th Cir. 1974), especially in instances involving information conveyed to or obtained by a judge "from extra-judicial sources." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (citing *Liteky v. United States*, 510 U.S. 540, 554 (1994)). In applying the broadest purposes of recusal law, the Supreme Court has held that "what

1

matters is not the reality of bias or prejudice but its appearance." *Liteky*, 510 U.S. at 554. This is because there is an overarching, constitutional interest to "preserve[] **both** the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done." *Marshall*, 446 U.S. at 242. (Emphasis added.) Further, the gravity of these legal principles is so significant that Tenth Circuit precedent provides that "mandamus is an appropriate vehicle by which to challenge a district court's denial of a recusal motion." *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995). *See also United States v. Cooley*, 1 F.3d 985, 996 n. 9 (10th Cir.1993) (collecting and comparing cases).

In this legal context, I therefore respectfully move to recuse Chief Magistrate Judge Warner in this matter, due to both actual and apparent bias, as expressly defined by 28 U.S.C. §§ 144 "Bias or prejudice of judge" and 28 U.S.C. § 455 "Disqualification of justice, judge or magistrate."

ARGUMENT

I. **Chief Magistrate Judge Paul Warner's Prior Knowledge and Experience with Mr. Koerber and the Tibbs v. Vaughn Civil Case, Justify Recusal.**

Judge Warner previously presided over *Tibbs et al v. Vaughn et al*, 2:08-cv-00787-TC-PMW, including supplemental proceedings where I testified. This civil case centers on the same general series of events and alleged conduct as that alleged in the criminal indictment now at issue. Further, the plaintiff's Tom and Peggy Tibbs are expected to be critical government witnesses in this case, and the same or substantially similar allegations as those made in *Tibbs* will be central to the remain pretrial and trial proceedings here.

Judge Warner raised this issue as a potential basis for recusal at the April 11, 2017 status conference (where he presided in this case for the first time). After rehearsing the basic details

2

of the situation the Court asked the parties if they wanted him to recuse. Judge Warner further represented that protections were made during my prior testimony in *Tibbs*, so as to avoid questions where I would invoke my Fifth Amendment right against self-incrimination. Judge Warner also noted how far in the past the Tibbs proceedings were and implied that he didn't have any substantial memory of relevant facts or occurrences as it related to the present case. This approach, however, does not alleviate the mandatory recusal required under 28 U.S.C. 455(a).

First, under § 455, a judge must be recused "in any proceeding in which his impartiality might reasonably be questioned" or "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." With respect to §455(a), the Supreme Court has held: "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky*, 510 U.S. at 548. "'If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.'" *Nichols*, 71 F.3d at 351 (granting writ of mandamus to require the recusal of a judge whose "impartiality might reasonably be questioned") (*quoting Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988)). "'[T]he judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue.'" *Id.* (*quoting United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). In applying this objective standard, the inquiry is whether a reasonable factual basis exists for questioning the judge's impartiality. *Id.* The Tenth Circuit has noted that where the question is even "a close one, the balance tips in

3

favor of recusal." *Id.* Here, as demonstrated above, it is reasonable to conclude that Judge Warner has an extrajudicial source of the facts in dispute in this matter. *Nichols*, 71 F.3d at 351 (granting writ of mandamus to require the recusal of a judge whose "impartiality might reasonably be questioned" because he "ha[d] knowledge of facts that would give him an interest in the litigation"); *see also Edgar v. K.L.*, 93 F.3d 256, 258-59 (7th Cir. 1996) (holding that ex parte communications with witnesses mandated recusal regardless whether such communications were deemed "extrajudicial"). Extrajudical source simply means outside of the instant proceedings. *See e.g. United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (Extrajudicial source means information that indicates the "an opinion on the merits" would be influenced by "some basis other than what the judge learned from his participation in the [present] case."); *Berger v. United States*, 255 U.S. 22, 34 (1921) (Extrajudicial means "based upon facts antedating the trial." Here, based upon Judge Warner's prior involvement in the *Tibbs* case, the objective test is met because a rational and disinterested observer would reasonably question Judge Warner's impartiality, calling into question the "the appearance and reality of fairness," *Marshall*, 446 U.S. at 242. Therefore, Judge Warner should be recused.

Second, Judge Warner clearly raised this issue on his own because of the objective test referenced above. However, his request that the parties tell him whether or not they were willing to allow him to continue does not obviate the need for his recusal as explained in *United States v. Kelly*, 888 F.2d 732, 745–46 (11th Cir. 1989) *holding modified by United States v. Toler*, 144 F.3d 1423 (11th Cir. 1998) ("[A] s a general rule, " 'a federal judge should reach his own determination [on recusal], without calling upon [the parties] to express their views.... The too frequent practice of advising [the parties] of a possible conflict, and asking counsel to indicate

4

their approval of a judge's remaining in a particular case is fraught with potential coercive elements which make this practice undesirable.' " *Matter of National Union Fire Ins. Co.*, 839 F.2d 1226, 1231 (7th Cir.1988) (*quoting* Resolution L, Judicial Conference of the United States, October 1971) (emphasis added by Seventh Circuit)".)  Significantly, when Judge Warner asked me whether I thought his Tibbs involvement was basis for his recusal, I responded that I thought he was the best person to judge whether or not he was biased against me.  It appears Judge Warner may have innocently misunderstand that I was saying I thought he was "the best judge" and therefore I was okay with him proceeding.  But, what I said was that I thought he was in the best position to judge the issue.  In fact, this is the law.  A judge, not the parties, must recuse under § 455(a), and shifting the evaluation to the parties is not legally sufficient and courts have routinely observed the general rule that: "a federal judge may not state for the record possible disqualifying circumstances and ask the parties to decide whether they want him to continue." *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 699 (2d Cir.1978). Further, the Eleventh Circuits warning against attempts to secure a vague waiver by this approach as being "fraught with potential coercive elements which make this practice undesirable" is particularly relevant given that I am (and was at the time) proceeding pro se and had been entirely unprepared for the question – given that no advance notice was given of the question and therefore no advance opportunity to consider the implications or research the relevant law and authority on the topic."

      For all these reasons, Judge Warner's prior involvement in the *Tibbs* matter directly invokes the protection of § 455(a) and he should be recused.

//

II.   **Chief Magistrate Judge Paul Warner Was the United States Attorney in Utah During the Criminal Investigation Which Led to the Present Indictment.**

Chief Magistrate Judge Warner was the United States Attorney in Utah during the investigation which led to the present indictment. As the country's then longest serving United States Attorney, Judge Warner served as the United States Attorney in Utah from serving from 1998 to January 2006. It was during this same time that the criminal investigation against me began, which culminated in the present indictment. In fact, this factual finding has already been determined by the Court and is the "law of the case." This doctrine is "based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided." *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (Internal citation omitted.) Specifically, the Court has long ago determined that "[t]he allegations against Defendant were the focus of a joint investigation and prosecution among the DOJ, the Utah Division of Securities, the FBI, and the IRS that had been in motion in one form or another since 2005." *United States v. Koerber*, 966 F. Supp. 2d 1207, 1214 (D. Utah 2013). (The Court also determined that this same investigation clearly "played a role in the ultimate indictment.") The present indictment, for these purposes, is substantively identical to the prior indictments in 2009 and 2011.

Under 28 U.S.C. § 455(b)(3), the law requires that a judge "shall also disqualify himself" in any proceeding where "he has served in governmental employment and in such capacity participated as counsel, adviser or material witness or expressed an opinion concerning the merits of the particular case in controversy." This applies specifically to a United States Attorney who was in office at the time a criminal investigation commences, and later serves as a judge over the case which resulted from that investigation. *See United States v. Arnpriester*, 37

F.3d 466, 467 (9th Cir. 1994) ("Responsibility for prosecution and the precedent investigation is that of the United States Attorney in his district…[and] [b]oth section 455(a) and section 455(b)(3) required [a Judge previously the U.S. Attorney during the investigation] to recuse himself.")

### III. Chief Magistrate Judge Paul Warner Was the Highest Authority and Supervisor of the Lead Prosecutor in this Case, AUSA Walz, and the Lengthy Professional Relationship Established During that Time Is Cause for Recusal in This Case.

During Chief Magistrate Judge Warner's tenure as the United States Attorney for Utah from 1998 to 2006, he supervised and formed a significant professional relationship with the lead prosecutor in this case AUSA Walz. While this might not normally require recusal in the typical case, this case directly brings into question the appearance of partiality to the extent that courts have concluded a failure to recuse would be an abuse of discretion. In fact, in his first written order on this case, Judge Warner noted his acknowledgement that "the history of this case is unpleasant and that the parties have been engaged in heated litigation for almost a decade." Dkt. 52 at 6. But, left unacknowledged is the proverbial elephant in the room. The "heated litigation" centers significantly on the prior misconduct of Judge Warner's longtime former subordinate and colleague and it was precisely this history that I had cited in Dkt. 36 at 2 that first raised the issue before Judge Warner.[1] These findings have been made at both the district court and appellate

---

[1] When I raised the centrality of AUSA Walz's past conduct in this case, I cited several specific examples of Court orders on the subject, including: *United States v. Koerber*, No. 2:09-CR-302 CW, 2011 WL 2174355, at *1 and *5 and *6 (Regarding AUSA Walz' role in hiding from the defense and the Court the governments "second source" of a privileged document); *Id.* at *6 (regarding AUSA Walz involvement in unethically using privileged material after it has been sequestered); *Koerber*, 966 F. Supp. 2d at 1223 (Regarding AUSA Walz being "coy" and violating "local ethics rules, federal law, and the Due Process clause of the Fifth Amendment" in the process; *Koerber*, 966 F. Supp. 2d at 1227, n. 4. (Regarding AUSA Walz engaging in

7

court and remain central to several legal considerations still to be addressed. Further, AUSA Walz has as recently to me in a March 14, 2017 conversation, his severe animosity and personal hostility to me and my former attorney Marcus Mumford over these very issues. Thus, given the long professional relationship, the nature of that relationship and history between AUSA Walz and Chief Magistrate Judge Warner, and the deep hostility between AUSA Walz and myself – along with the extensive publicity of all these details in the press, "a reasonable person would question the impartiality of the district judge" and it would be an "abuse of discretion" not to recuse. *United States v. Jordan*, 49 F.3d 152, 158 (5th Cir. 1995) (The Fifth Circuit reversed a failure to recuse in a criminal case where there was a publicized history of "bad blood" between the defendant and a close personal friend of the judge noting that friendship between the judge and a person with an interest in the case need not be disqualifying, but here the judge's friend and the defendant "were embroiled in a series of vindictive legal actions resulting in a great deal of publicity.")

IV. **Chief Magistrate Judge Paul Warner Demonstrated Actual Bias in Favor of the United States and AUSA Walz, and Against Me.**

Respectfully, whether it has been intentional or subconscious, Chief Magistrate Judge Warner has shown impermissible bias against me and in favor of the United States and AUSA Walz by directly declining to address and rule on any of the specific and fully briefed and detailed allegations I recently raised showing AUSA Walz recent attempts at misleading the Court (see Dkt. 51). This is significant because, at the same time, Judge Warner entered an order, *sua sponte* (despite my direct denial of any purported basis) and without any supporting

---

deception of DOJ ethics counsel; and *Koerber*, 813 F.3d at 1281 (Regarding AUSA Walz's involvement in filing an "unauthorized appeal.")

8

factual record in this case, against me - based upon his extrajudicial presumption, described by him in open court, that he believed I and my former attorney Marcus R. Mumford had engaged in impermissible attorney ghostwriting for a pro se defendant, which ghostwriting amounted, in his estimation, to "fraud upon the court." After Judge Warner made his views known from the bench, he further had his clerk distribute to me and the government, previously printed and prepared copies of a Tenth Circuit decision supporting his legal conclusion.

When I denied that any such ghostwriting had taken place, Chief Magistrate Judge Warner responded that he had extrajudicial personal knowledge, based upon him recognizing Mr. Mumford's personal writing style in other cases, which supported Judge Warner's presumption and allegation. I responded that I had written repeatedly (as a hired paralegal) for multiple attorneys practicing in the Utah federal District Court, including Mr. Mumford previously, and any similarity in writing style that Judge Warner might believe he recognized (regardless of the fact that this was unestablished extrajudicial reference) could in fact be evidence of my actual writing. However, rather than allow a record to be established, and without any other reference to any factual record, and without any opportunity for legal argument on the issue, Chief Magistrate Judge Warner summarily entered an order that now requires I disclose, by full name, email address, mailing address, and bar number (if any), the identity of any person, attorney or non-attorney, who provides any assistance to me in making and preparing Court filings. Not only does Judge Warner's order not cite any factual record or factual basis for the order, it does not cite any legal authority giving the Court power to command this performance.

Finally, Chief Magistrate Judge Warner's statements parallel recent statements offered outside his presence, by AUSA Walz, raising the further appearance of bias. Specifically, during a March 14, 2017 conversation with me and multiple other attorneys from the United States Attorneys Office as well as representatives from the IRS and FBI, AUSA Walz recently expressed his extreme disagreement with the Court's prior orders regarding his misconduct, and also his admitted personal hostility against me and Mr. Mumford, and stated specifically that he "had a hard time telling the difference" between what was written by me and by Mr. Mumford. This significantly and reasonably raises further appearance of bias and strong inference of actual bias, whether conscious or subconscious by Judge Warner. AUSA Walz made his statement regarding the supposed similarity between Mr. Mumford and myself as a somewhat emotional outburst and complaint pertaining to allegations of prosecutorial misconduct that we have made repeatedly made, litigated and established with the Court – which misconduct AUSA Walz expressly stated in our recent conversation he did not commit while protesting that Judge Waddoups and the Tenth Circuit were simply "wrong." Importantly, these statements were made to me, in front of the other parties described above, on March 14, 2017, the same day of the status conference before Judge Benson (prior to his recusal), where I subsequently detailed how AUSA Walz later filed misleading briefs with the Court falsely characterizing what had transpired. Yet, Chief Magistrate Judge Warner purposefully omitted referencing or ruling on AUSA Walz's alleged misconduct, clearly omitted any acknowledgement of the previously detailed findings of misconduct engaged in by AUSA Walz even though this was directly raised by my briefing, and instead *sua sponte* sanctioned me for what he had supposed was impermissible ghostwriting, apparently attributing my invocation of AUSA Walz's misconduct

10

as the work of Mr. Mumford. But, this could only be based upon Judge Warner's extrajudicial experiences – and his stated recognition of the writing style of Mr. Mumford. As part of this demonstration of actual bias, Chief Magistrate Judge Warner stated in his April 12, 2017 order (Dkt. 52) "the court has been presented with accusations rather than arguments." But, as illustrated above, the accusations were factual references showing that AUSA Walz had plainly misrepresented what transpired before Judge Benson at the March 14, 2017 hearing, and the difference between what actually transpired, and what AUSA Walz falsely stated to have transpired formed the basis for the argument presented. Again, Judge Warner did not rule on the specifics, and simply stated in conclusory fashion that he had personally reviewed the "transcript" of the March 14 proceedings. But, to my knowledge, no such transcript exists. He may have meant the recording, but respectfully, Judge Warner did not address the details of what occurred before Judge Benson, and simply accepted that his former longtime subordinate and colleague was not engaged in intentional deception – without explanation and despite my detailed recitation as to why the Court is justified in being on guard against AUSA Walz's "pattern of misconduct" previously described by Judge Waddoups and upheld by the Tenth Circuit. Judge Warner further stated that, "[t]he court understands that the history of this case is unpleasant and that the parties have been engaged in heated litigation for almost a decade. However, inflammatory language and baseless allegations will not be tolerated going forward." Dkt. 52 at 6. Whether intentional or subconscious, this is bias. It cannot be "inflammatory language" to cite prior Court orders holding AUSA Walz accountable for misconduct and arguing the relevance of those rulings here. Further, the allegation I advanced regarding AUSA Walz making misleading statements to the Court, about what transpired before Judge Benson and

11

how the government was trying to take advantage of his recent recusal, was supported by a detailed and good faith recitation of what I heard first hand, and what I verified from other courtroom observers – including two non-participating attorneys that I specifically identified – who had sat in on that hearing. Nevertheless, ignoring all of this Judge Warner further chastised me for previously recording court proceedings in violation of court rules (apparent from the detailed recitation I provided of the March 14 events) – which I immediately promised to stop – without addressing what actually is revealed by even official recording. On this point I specifically asked for an opportunity to present witnesses and to present the recording and transcript – but Judge Warner acted on bias and simply ruled in favor of his colleague, entered conclusory rulings in favor of the United States and chastised me – without any record to support that decision, and without making any findings or any comment whatsoever on the actual facts of what transpired. The government hadn't countered my factual recitations, nor had either party yet presented a transcript or recording to the Court.

      Under 28 U.S.C. § 144, a party who "files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." (Emphasis added.) "If properly pleaded, all of the factual allegations in the affidavit must be taken as true ..., and the court decides only whether the affidavit is timely and legally sufficient." *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976). To satisfy this affidavit requirement, I am verifying under penalty of perjury, that my factual recitation herein is true based upon my personal knowledge and recollection. Thus, under both § 144 and § 455(a) recusal is justified. *See* 13A Wright & Miller § 3541. This

motion is timely, in that the above cited events, and my awareness of these issues was triggered by the hearing on April 11, 2017 which is less than one week previous to this filing. *See Pomeroy v. Merritt Plaza Nursing Home, Inc.*, 760 F.2d 654, 658 (5th Cir. 1985) ("Since formal terms of court were long ago abolished, the literal ten-day requirement no longer applies. Instead, courts have simply required a party to exercise reasonable diligence in filing an affidavit after discovering facts that show bias."); *Frates v. Weinshienk*, 882 F.2d 1502, 1506 (10th Cir.1989) ("[A] recusal motion should be permitted at any time it becomes apparent that a judge is biased or suffers from the appearance of bias.").

V.  **Alternatively, the Court Should Conduct an Evidentiary Hearing.**

In the alternative to recusal, if for some reason the Court is unpersuaded by the above recitation of facts and the law, I move for an evidentiary hearing to introduce evidence of the extrajudicial sources being relied upon by Chief Magistrate Judge Warner, integral to the above-listed circumstances, including but not limited to testimony from AUSA Walz regarding his relationship with Chief Magistrate Judge Warner and regarding any recent *ex parte* communications affecting the same, the alleged writing style of attorney Marcus R. Mumford as experienced previously by Chief Magistrate Judge Warner compared to my personal writings, the alleged instances of supposed ghostwriting related to my prior filings in this case, and the factual circumstances surrounding and leading up to Chief Magistrate Judge Warner's stated belief that fraud has been committed upon the Court by me and/or Mr. Mumford, the factual record behind Magistrate Judge Warner's recent omission to address and rule on any of the specific and detailed allegations I raised of AUSA Walz recent attempts at misleading the Court (see Dkt. 51) and finally, the alleged factual basis for the Court's *sua sponte* order, Dkt. 52,

13


wherein Chief Magistrate Judge Warner has required, without any stated findings or conclusions, that I must disclose, by full name, email address, mailing address, and bar number (if any), the identity of any person, attorney or non-attorney, who provides any assistance to me in making and preparing Court filings. The Court's duty to preserve both the "appearance and reality of fairness" demands no less. *Marshall*, 446 U.S. at 242.

## CONCLUSION

As set forth above, this motion should be granted for an order (1) to recuse the Honorable Chief Magistrate Judge Paul Warner from consideration of this matter, and (2) consistent with the invocation of § 144 no further proceedings should be held in this matter until this motion for recusal is decided upon by a neutral judge. Or, in the alternative, the Court should (3) schedule an evidentiary hearing to hear testimony to determine the extent of extrajudicial influence on Judge Warner and these proceedings, as described above.

DATED: April 14, 2017

/s/ Claud R. Koerber
Claud R. Koerber
*Defendant, Pro Se*

### CERTIFICATION UNDER PENALTY OF PERJURY, CERTIFICATION OF GOOD FAITH & CERTIFICATION OF AUTHORSHIP

I certify under penalty of perjury, pursuant to 28 U.S.C. 1746 and 28 U.S.C. § 144 that the above detailed facts are true to the best of my personal knowledge and recollection. I further certify that I bring this motion in good faith, with to sole and earnest intention of obtaining legitimate relief under the statutes and other legal authority cited above. Finally, pursuant to the Court's recent order, I further certify that no one assisted me in the drafting and filing of this motion, which I undertook alone, after receiving an email from the Court's staff on April 13, 2017 at approximately 5:00 pm, and subsequently working through until 9:41 am this morning.

/s/ Claud R. Koerber
Claud R. Koerber
*Defendant, Pro Se*

14