| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br>v.<br><br>CLAUD R. KOERBER,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cr-37-RJS-PMW<br><br>District Judge Robert J. Shelby<br>Chief Magistrate Judge Paul M. Warner |

District Judge Robert Shelby referred this matter to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Defendant Claud R. Koerber's ("Mr. Koerber") Motion to Inspect, Reproduce, and Copy Grand Jury Rolls, Master Wheel, and All Records of the Grand Jury Selection Process.[2] Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.[3]

## BACKGROUND

This case involves a long and complex procedural history. Relevant to the present motion, on May 26, 2009, Mr. Koerber was indicted in Case No. 2:09-cr-302 ("Koerber I") before District Judge Clark Waddoups. Following the original indictment, the government obtained two superseding indictments on November 10, 2009, and September 29, 2011. These indictments were litigated over the course of five years and ultimately resulted in Judge Waddoups dismissing the case with prejudice for Speedy Trial Act ("STA") violations. *See United States v. Koerber*, No. 2:09-cr-302, 2014 WL 4060618, at *1 (D. Utah. Aug. 14, 2014). The government appealed, and the Tenth Circuit reversed and remanded. *See United States v.*

---

[1] Dkt. No. 39.
[2] Dkt. No. 85.
[3] Pursuant to DUCrimR 12-1(d), the court elects to determine the present motion on the basis of the written memorandum and finds that oral argument would not be helpful or necessary.

*Koerber*, 813 F.3d 1262, 1286–87 (10th Cir. 2016).  The Tenth Circuit held that Judge Waddoups failed to properly weigh the STA factors in dismissing the case with prejudice.  *Id.*

On remand, Judge Waddoups recused and the case was reassigned to District Judge Jill N. Parrish.  On a motion to dismiss filed by Mr. Koerber, Judge Parrish dismissed the case without prejudice for STA violations.  *United States v. Koerber*, No. 2:09-cr-302, 2016 WL 4487742, at *1 (D. Utah. Aug. 25, 2016).  As a result, on January 18, 2017, the government obtained the instant eighteen count indictment charging Mr. Koerber with securities fraud, wire fraud, money laundering, and tax evasion ("Koerber II").[4]

## DISCUSSION

The Jury Selection and Service Act ("JSSA") provides, "all litigants in [f]ederal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."  28 U.S.C. § 1861.  The JSSA allows a criminal defendant to "move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury."  *Id.* § 1867(a).  In turn, § 1867(f) of the JSSA permits a defendant to "inspect, reproduce, and copy" the "records or papers used by the jury commission or clerk in connection with the jury selection process."  *Id.* § 1867(f).  The Supreme Court has held that a defendant's right to inspect under § 1867(f) is essentially "unqualified." *Test v. United States*, 420 U.S. 28, 30 (1975).  Indeed, in order to prepare a § 1867 motion, a defendant must be afforded the opportunity to determine whether he has a "potentially meritorious jury challenge."  *Id.*

While a defendant's right to inspect pursuant to § 1867(f) is unqualified, it is not unlimited.  The Supreme Court has consistently "recognized that the proper functioning of our

---

[4] Dkt. No. 1.

grand jury system depends upon the secrecy of grand jury proceedings" and in "the absence of a clear indication in a statute or [r]ule, [the court] must always be reluctant to conclude that a breach of this secrecy has been authorized." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (citations omitted). Indeed, Rule 6(e)(2)(B) of the Federal Rules of Criminal Procedure codifies the secrecy of grand jury proceedings by prohibiting the disclosure of "a matter occurring before the grand jury."

Moreover, the statutory text of § 1867(f) limits the grand jury records available to defendant. To mount a meritorious jury challenge, the JSSA allows the defendant to "inspect, reproduce, and copy" the "records or papers used by the jury commission or clerk *in connection with the jury selection process*." 28 U.S.C. § 1867(f) (emphasis added). Furthermore, the purpose of § 1867(f) is to aid a defendant in filing a motion pursuant to § 1867(a) or (b). *Id.* Therefore, access to grand jury selection records is prohibited unless a defendant can demonstrate that the records requested: (1) are ministerial and do not involve matters occurring before the grand jury; (2) are records or papers used by the court's jury administrator "in connection with the jury selection process;" and (3) will aid him in filing a meritorious jury challenge pursuant to § 1867(a) or (b) of the JSSA.

Mr. Koerber's motion argues that he is entitled to inspect, reproduce, and copy the grand jury rolls, master wheel, and all records of the grand jury selection process for the indictments obtained in Koerber I and Koerber II.[5] Specifically, Mr. Koerber argues that the JSSA entitles him to the following:

> Request 1—Orders reflecting the beginning term and extension of the terms of the relevant grand juries for the May 2009, November 2009, September 2011 and January 2017 grand juries.

---

[5] Dkt. No. 85 at 1. After Mr. Koerber filed his motion to inspect, the court ordered Mr. Koerber to identify the records he seeks to review and legal justification for each discrete request. *See* Dkt. No. 115.

Request 2—The number of names on the master venire for the above referenced grand juries as well as any demographic information associated with the same that reflects constitutionally significant distinctions among grand jurors (race, religion, gender, etc.).

Request 3—Records setting forth the method of empaneling the relevant grand juries . . . .

Request 4—A transcript of the court's instructions and charges to the above described grand juries.

Request 5—Disclosure of names of persons receiving information about matters occurring before the grand jury and other records related to such disclosures. Through this request Mr. Koerber seeks disclosure of documentation that the government is required to provide to the court upon disclosure of information under Federal Rule of Criminal Procedure 6(e)(3)(A)(ii).

Request 6—Disclosure of the names, addresses, and demographics of those jurors who returned the May 2009, November 2009, September 2011, and January 2017 indictments.

Request 7—Disclosure of any other material, documents or communications that the Court and the jury administrator know were used in connection with the selection of the specified grand juries and upcoming trial jury.[6]

The government does not oppose Mr. Koerber's Second and Third Requests.[7]  Therefore, Mr. Koerber's motion is granted with respect to these requests.

Before turning to Mr. Koerber's remaining requests, the court wishes to place Mr. Koerber's requests in context with the procedural history of this case.  The court notes that there is an open question regarding what records have been maintained since the indictments returned in Koerber I.  The JSSA provides:

After the master jury wheel is emptied and refilled pursuant to section 1863(b)(4) of this title, and after all persons selected to serve as jurors before the master wheel was emptied have completed such service, all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied shall be preserved in the custody of the clerk for *four years or for such longer period as may be ordered by a court*, and shall be available for public inspection for the purpose of determining the validity of the selection of any jury.

---

[6] Dkt. No. 122.
[7] Dkt. No. 123 at 3–4.

28 U.S.C. § 1868 (emphasis added). Mr. Koerber did not request the grand jury selection records in Koerber I and, therefore, the court's Jury Administrator would have had no reason to maintain records for the Koerber I indictments longer than prescribed by the JSSA. Accordingly, the court recognizes that much of the following discussion may be perfunctory in light of the passage of time. However, at this stage, the court finds no prejudice to Mr. Koerber if some records have been destroyed. If Mr. Koerber believed the grand juries were empaneled improperly in 2009 and 2011, Mr. Koerber should have filed a motion seeking to inspect the grand jury materials at that time.

Finally, as will be discussed below, the court will order the court's Jury Administrator to disclose to Mr. Koerber how the grand juries were selected for the indictments returned in Koerber I and Koerber II. This will include the source of the demographic data utilized by the Jury Administrator and how the Jury Administrator employs the demographic data to ensure that grand juries are selected from a fair cross section of the District of Utah. What the court will not do is allow Mr. Koerber to violate the privacy of jurors and engage in a fishing expedition. As delineated above, any records requested by Mr. Koerber must fall within the narrow category of ministerial records that speak to how the relevant grand juries were selected. With this backdrop in mind, the court will now address Mr. Koerber's remaining requests.

### A. Request 1: Orders Reflecting the Beginning Terms and Extension of Terms For the Relevant Grand Juries

Mr. Koerber argues he is entitled to review any orders reflecting when the particular grand juries began their terms and any term extensions given to the relevant grand juries.[8] Courts have recognized that the particular term of any grand jury is generally a matter of public record and does not invade the secrecy of the grand jury process. *See, e.g.*, *In re Grand Jury*

---

[8] Dkt. No. 122 at 3.

*Investigation*, 903 F.2d 180, 182 (3d Cir. 1990) (finding that "disclosure of the commencement and termination dates of the grand jury does not disclose the essence of what took place in the grand jury room"); *United States v. Diaz*, 236 F.R.D. 470, 478–79 (N.D. Cal. 2006); *United States v. Jack*, No. CR S-07-0266 FCD, 2009 WL 435124, at *3 (E.D. Cal. Feb. 20, 2009). Therefore, the court orders the Jury Administrator to provide Mr. Koerber the orders reflecting the terms of the grand juries that returned the indictments in Koerber I and any extensions given.

However, with respect to the present indictment, the court is mindful that it must consider "the possible effects on the functioning of future grand juries, as well as the immediate effects on the particular grand jury" when evaluating a request under § 1867(f). *Diaz*, 236 F.R.D. at 479 (citing *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)). The grand jury that returned the Koerber II indictment may still be empaneled. Therefore, the court finds that disclosing the term and any extension given to the grand jury that returned the instant indictment may risk the proper functioning of the present grand jury and may place jurors at risk. *Id.* (noting that the policy behind protecting the proper functioning of the grand jury may be "violated if the grand jury dates of a *sitting* grand jury were to be disclosed" (emphasis in original)). Accordingly, Mr. Koerber's request for the terms and extensions of the grand jury that returned the Koerber II indictment is denied.

### B. Request 4:  Transcripts of Court's Instructions and Charges to the Grand Juries

Mr. Koerber argues that he is entitled to the "court's instructions and charges" to the grand juries that indicted him in Koerber I and Koerber II.[9] None of the cases cited by Mr. Koerber in support of this request applied § 1867(f). Additionally, how the court instructed the empaneled grand juries is not encompassed in the "records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f).

---

[9] *Id.* at 4.

Furthermore, disclosing the instructions provided to the grand juries would impermissibly invade matters occurring before the grand jury. *See* Fed. R. Crim. P. 6(e)(2)(B); *United States v. Fell*, No. 5:01-CR-12-01, 2016 WL 1621994, at *3 (D. Vt. Apr. 20, 2016) ("[L]egal instructions offered by the judge who provided an initial orientation or by prosecutors who offered instructions prior to any vote will remain secret."). Accordingly, Mr. Koerber's Fourth Request is denied.

### C. Request 5: Names of Persons Receiving Information About Matters Occurring Before the Grand Jury and Other Records Related to Such Disclosures

Mr. Koerber Fifth Requests asks for the "names of persons receiving information about matters occurring before the grand jury" and "any documentation the government is required to provide the court upon disclosure of information under Federal Rule of Criminal Procedure 6(e)(3)(A)(ii)."[10] This request is overly broad. On its face, Mr. Koerber asks for anyone with information relating to matters occurring before the grand juries in Koerber I and Koerber II. Without more specificity, the court cannot properly evaluate Mr. Koerber's request.

Overlooking the overbreadth of Mr. Koerber's request, the court finds that the names of individuals who received information about matters occurring before the relevant grand juries does not relate to the records or papers utilized by the Jury Administrator in the jury selection process. *See* 28 U.S.C. § 1867(f). Furthermore, Mr. Koerber's request, if granted, would impermissibly invade matters occurring before the grand jury. *See Diaz*, 236 F.R.D. at 478 ("Disclosure of the exhibits presented to grand jurors, persons who have seen the exhibits and a list of the materials disclosed is not solely procedural, and may reveal the essence of the grand jury proceedings."); *In re Grand Jury Proceedings, Special Grand Jury 89-2*, 813 F. Supp. 1451,

---

[10] *Id.* at 4–5.

1470 (D. Colo. 1992); *Fell*, 2016 WL 1621994 at *3–4.  Therefore, Mr. Koerber's Fifth Request is denied.

    **D.  Request 6: Disclosure of the Names, Addresses, and Demographics, of Those Jurors Who Returned the Indictments in Koerber I and Koerber II**

    Mr. Koerber requests access to "the names, addresses, and demographics of those jurors who returned the May 2009, November 2009, September 2011, and January 2017 indictments" to ensure that the juries "actually represented a wide spectrum of the community."[11]  The government agrees that Mr. Koerber is entitled to general demographic information of the relevant grand juries.[12]  However, the government opposes disclosing the names and addresses of grand jurors that returned the indictments against Mr. Koerber.[13]

    Many courts have held that a defendant is not entitled to the names or addresses of the grand jurors that returned an indictment against him.  *See In re Grand Jury Investigation*, 903 F.2d at 182 (citing cases); *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) (finding that disclosure of Master List and demographic data about general pool was sufficient to meet unqualified right to inspection); *United States v. Brown*, No. 06CR07101SM, 2006 WL 2990463, at *1 (D.N.H. Oct. 19, 2006); *see also United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir. 1987) (noting in the context of a defendant's request for jury questionnaires containing prospective jurors' addresses that "[t]o give the defendant an absolute right of routine access to all materials would be an amendment of the Act" and "could have serious consequences for individual jurors and the system").  Indeed, disclosing the names of addresses of potential jurors would impermissibly invade the jurors' privacy and could potentially lead to

---

[11] *Id.* at 5.

[12] Dkt. No. 123 at 4–5.

[13] *Id.* at 5.

the "intimidation of or retaliation against those grand jurors." *In re Grand Jury Investigation*, 903 F.2d at 182.

Furthermore, there is no merit to Mr. Koerber's claim that the names and addresses of the relevant grand jurors is essential to determine whether they "actually represented a wide spectrum of the community."[14] The JSSA "seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service." *United States v. Contreras*, 108 F.3d 1255, 1265 (10th Cir. 1997) (citation omitted); 28 U.S.C. § 1861 (stating that a defendant is entitled to "grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes"). In other words, nothing in the JSSA gives a defendant the right to a grand jury that is representative of a fair cross section of the community; rather, the JSSA is satisfied so long as the grand jury selection process ensures that grand jurors are selected "at random" from a representative cross section of the community. *See Test*, 420 U.S. at 30 (finding that the purpose of a defendant's "unqualified" right to inspect grand jury selection materials is to confirm that grand and petit juries are selected at random from a fair cross section of the community); *United States v. Hsia*, 125 F. Supp. 2d 6, 10 (D.D.C. 2000) (finding that the JSSA "does not entitle a defendant to have any particular group represented on her trial jury, her grand jury, or even on the venire from which the jurors from either are chosen"). Therefore, only general demographic data about the juror pools form which the relevant grand jurors were selected falls within the scope of § 1867(f). Accordingly, Mr. Koerber's Sixth Request is granted to the extent it seeks the demographic data that was utilized to select the relevant grand juries. The remainder of Mr. Koerber's Sixth Request is denied.

---

[14] Dkt. No. 122 at 5.

### E. Request 7: Disclosure of Court Communications Used in Connection With Selection of Specified Grand Juries

Finally, Mr. Koerber requests "any other material, documents or communications that the Court and the jury administrator know were used in connection with the selection of the specified grand juries and upcoming trial jury."[15] Mr. Koerber's request is vague and overly broad. Moreover, to the extent that Mr. Koerber seeks internal communications among court personnel, Mr. Koerber cites no legal authority for the "extraordinary proposition that a criminal defendant has a statutory right to obtain the [c]ourt's internal communications." *See United States v. Bundy*, No. 3:16-CR-0051-BR, 2016 WL 9049641, at *3 (D. Or. Aug. 10, 2016). Accordingly, Mr. Koerber's Seventh Request is denied.

## CONCLUSION

Based on the foregoing, Mr. Koerber's Motion to Inspect, Reproduce, and Copy Grand Jury Rolls, Master Wheel, and All Records of the Grand Jury Selection Process is **GRANTED IN PART AND DENIED IN PART**.[16] The Jury Administrator for the District of Utah is ordered to allow Mr. Koerber inspect, reproduce, and copy—to the extent they are still in possession of the court—the following:

- Orders reflecting the beginning term and extension of terms for the grand juries that returned indictments in Koerber I.

- The number of names on the master venire as well as any demographic information associated with the venire that reflects constitutionally significant distinction among grand jurors (race, religion, gender, etc.) for the indictments returned against Mr. Koerber in Koerber I and Koerber II.

- Records setting forth the method of empaneling the grand juries that returned indictments in Koerber I and Koerber II. This may require the Jury Administrator by way of affidavit to describe the court's source of demographic data and how the demographic data is utilized to empanel a grand jury. Additionally, to

---

[15] *Id.*
[16] Dkt. No. 85.

facilitate this request, the court orders the Jury Administrator to provide Mr. Koerber with a copy of the relevant Jury Plan(s) for the District of Utah.

Finally, any information disclosed pursuant to this order is for the parties' eyes only and any information used in future filings must be filed under seal. Failure to comply with these instructions may result in sanctions.

**IT IS SO ORDERED.**

DATED this 13th day of July, 2017.

**BY THE COURT:**

_____
PAUL M. WARNER
Chief United States Magistrate Judge