UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>CLAUD R. KOERBER,<br><br>　　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cr-37-RJS-PMW<br><br>District Judge Robert J. Shelby<br>Chief Magistrate Judge Paul M. Warner |

District Judge Robert Shelby referred this matter to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Defendant Claud R. Koerber's ("Mr. Koerber") Motion for Order to Show Cause and to Disqualify Federal Prosecutors and Federal Agents.[2] Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.[3]

## BACKGROUND

This case involves a long and complex procedural history. Relevant to the present motion, on May 26, 2009, Mr. Koerber was indicted in Case No. 2:09-cr-302 ("Koerber I") before District Judge Clark Waddoups. Following the original indictment, the government obtained two superseding indictments on November 10, 2009, and September 29, 2011. These indictments were litigated over the course of five years and ultimately resulted in Judge Waddoups dismissing the case with prejudice for Speedy Trial Act ("STA") violations. *See United States v. Koerber*, No. 2:09-cr-302, 2014 WL 4060618, at *1 (D. Utah. Aug. 14, 2014). The government appealed, and the Tenth Circuit reversed and remanded. *See United States v.*

---

[1] Dkt. No. 39.
[2] Dkt. No. 87.
[3] Pursuant to DUCrimR 12-1(d), the court elects to determine the present motion on the basis of the written memorandum and finds that oral argument would not be helpful or necessary.

1

*Koerber*, 813 F.3d 1262, 1286–87 (10th Cir. 2016). The Tenth Circuit held that Judge Waddoups failed to properly weigh the STA factors in dismissing the case with prejudice. *Id.*

On remand, Judge Waddoups recused and the case was reassigned to District Judge Jill N. Parrish. On a motion to dismiss filed by Mr. Koerber, Judge Parrish dismissed the case without prejudice for STA violations. *See United States v. Koerber*, No. 2:09-cr-302, 2016 WL 4487742, at *1 (D. Utah. Aug. 25, 2016). As a result, on January 18, 2017, the government obtained the instant eighteen count indictment charging Mr. Koerber with securities fraud, wire fraud, money laundering, and tax evasion ("Koerber II").[4]

Mr. Koerber has filed several pretrial motions that rely, in part, on relief Mr. Koerber was granted in Koerber I.[5] For example, in February of 2009, government agents conducted two interviews with Mr. Koerber without Mr. Koerber's counsel present. *United States v. Koerber*, 966 F. Supp. 2d 1207, 1213 (D. Utah 2013). Judge Waddoups held that the interviews violated Rule 4.2 of the Utah Rules of Professional Conduct because at the time of the interviews, the government's posture towards Mr. Koerber "had shifted from investigatory to prosecutorial . . . ." *Id.* Therefore, Judge Waddoups suppressed the 2009 interviews and "all fruits" derived therefrom ("Suppression Order"). *Id.* at 1245.

In response to an IRS subpoena, Mr. Koerber inadvertently produced what he claimed was privileged material to the government, including a July 20, 2005 "To Our Lenders" letter ("2005 Letter").[6] *United States v. Koerber*, No. 2:09-cr-302-CW, 2011 WL 2174355, at *1 (D. Utah June 2, 2011). After extensive litigation, Judge Waddoups determined that the 2005 Letter

---

[4] Dkt. No. 1.
[5] *See* Dkt. Nos. 75, 87, 88, and 89.
[6] The government also received a copy of the 2005 Letter from Mr. Koerber's former employee, Rachelle Taylor.

was privileged and the court ordered the government to destroy the government's copies of the letter ("Privilege Order"). *Id.* at *10.

Whether the court is bound by the evidentiary rulings in Koerber I presented a threshold question for the court. Therefore, the court ordered the parties to submit supplemental briefing addressing the applicability of rulings made in Koerber I on Koerber II.[7] Relying primarily on the issue preclusion doctrine, Mr. Koerber argued that the parties should be prohibited from re-litigating Judge Waddoups' evidentiary rulings.[8] Judge Shelby held that the outcome of the Suppression Order had no bearing on the court's decision to dismiss Koerber I without prejudice for STA violations.[9] Therefore, Judge Shelby found that the Suppression Order does not have preclusive effect.[10] Furthermore, Judge Shelby held that he was not inclined to accept Judge Waddoups' legal conclusions that a Rule 4.2 violation occurred, that it constituted a due process violation, and that suppression was warranted.[11] Judge Shelby, however, did not address the preclusive effect or the merits of the Privilege Order.

## DISCUSSION

Mr. Koerber's motion seeks an order to show cause why the United States Attorney's Office for the District of Utah should not be sanctioned and held in contempt for its continued possession of the 2005 Letter.[12] Additionally, Mr. Koerber moves to disqualify Assistant United States Attorney Stewart Walz, FBI Agent Cameron Saxey, IRS Agent Ron Marker, and "other

---

[7] Dkt. No. 97.
[8] Dkt. No. 110 at 5.
[9] Dkt. No. 114.
[10] *Id.*
[11] *Id.*
[12] Dkt. No. 87 at 8.

3

prosecutors and agents previously assigned to the team" for their alleged pattern of misconduct, conflict of interest, and exposure to Mr. Koerber's privileged information.[13]

For the reasons that follow, Mr. Koerber's motion is denied. The court finds nothing improper or suspect about the government's unintentional retention of the 2005 Letter. Furthermore, Mr. Koerber fails to identify a single ethical violation attributable to the prosecution that would entitle Mr. Koerber to the extraordinary sanction of disqualification. It appears to the court that Mr. Koerber improperly labels the government's rigorous advocacy as a conflict of interest.

## I.      Mr. Koerber's Request for an Order to Show Cause

Mr. Koerber argues that the court should issue an order to show requiring the government to explain why it should not be sanctioned and held in contempt for continuing to possess a copy of the 2005 Letter.[14] After the Privilege Order was issued in Koerber I, the government appointed a filter team to find and destroy any copies of the 2005 Letter.[15] After extensive search of the government's records, the filter team notified the court that it had examined the Bates numbers identified by Mr. Koerber and the court to ensure the privileged information had been destroyed.[16] The filter team further stated: "To the extent some items may have been missed due to inadvertence, the filter team has instructed the trial team, and the relevant agents as to the prohibited evidence, and instructed them to immediately destroy any versions of the evidence they may encounter in the future."[17]

---

[13] *Id.* at 16, 28.
[14] *Id.* at 8.
[15] *United States v. Koerber*, 2:09-cr-302 at Dkt. No. 117.
[16] *Id.* at ¶ 3.
[17] *Id.* at ¶ 9.

4

In Koerber II, the government reproduced the government's discovery to Mr. Koerber.[18] On May 30, 2017, Mr. Koerber's counsel notified the government that a copy of the 2005 Letter still remained in the government's discovery.[19] In response, the government immediately deleted the copy of the letter and reviewed its discovery to ensure all versions of the 2005 Letter were destroyed.[20] The government maintains it inadvertently retained copies of the 2005 Letter and that the government's case does not rely on the letter.[21] Conversely, Mr. Koerber argues that the government's continued possession of the 2005 Letter was not inadvertent and that the government should be held in contempt and sanctioned for violating the Privilege Order.[22] Mr. Koerber's request is denied for three reasons.

First, in light of Judge Shelby's ruling on the applicability of the Suppression Order, it is likely the Privilege Order does not provide Mr. Koerber a basis for sanctions. Indeed, any privilege attributable to the 2005 Letter had no bearing on whether the STA was violated in Koerber I. Therefore, like the Suppression order, the Privilege Order likely does not have preclusive effect. *See Bobby v. Bies*, 556 U.S. 825, 835 (2009) (finding that issue preclusion bars successive litigation where the issue was "essential to" or "necessary to the ultimate outcome of a prior proceeding"); *Mabry v. State Bd. of Cmty. Colleges & Occupational Educ.*, 813 F.2d 311, 316 (10th Cir. 1987).[23]

Second, the purpose of the Privilege Order was to prevent the government from using the 2005 Letter to seek a conviction. Mr. Koerber has not been denied this remedy. The

---

[18] Dkt. No. 28.
[19] Dkt. No. 83 at 3.
[20] *Id.*
[21] Dkt. No. 93 at 5–6.
[22] Dkt. No. 87 at 13–15.
[23] Furthermore, Judge Shelby could conclude, like Magistrate Judge Sam Alba in Koerber I, that any privilege associated with the 2005 Letter had been waived. *See United States v. Koerber*, 2:09-cr-302 at Dkt. Nos. 90 and 95.

government states: "The indictment contains no reference to the letter; it will not be used in opening statements; it will not be an exhibit; the trial team will not ask any witness about it; and it will not be used in closing argument."[24]  Therefore, at this point, Mr. Koerber's complaints are merely academic.

Finally, the court finds nothing nefarious about the government's possession of the 2005 Letter.  The government's discovery encompasses over 300,000 documents.  The recently discovered copies of the 2005 Letter were stamped with different Bates numbers than the Bates ranges identified by the Mr. Koerber and the court in Koerber I.[25]  Tellingly, Mr. Koerber has had access to the government's discovery for many years and Mr. Koerber did not find the copy of the 2005 Letter until May 30, 2017.  Moreover, once the government was notified of its error, the copy was immediately destroyed and the government worked in good faith to ensure that any remaining copies in its possession were destroyed.

Based on the foregoing, the court finds that Mr. Koerber has failed to demonstrate that the government has engaged in sanctionable conduct.  Therefore, Mr. Koerber's request for an order to show cause is denied**.**

## II.     Mr. Koerber's Motion to Disqualify

Mr. Koerber offers three grounds for disqualifying members of the prosecution team.  First, Mr. Koerber argues that the "AUSA Walz, the other AUSAs and federal agents who have participated under his direction" have demonstrated a pattern of misconduct that requires their

---

[24] Dkt. No. 93 at 6.
[25] *See United States v. Koerber*, 2:09-cr-302 at Dkt. No. 95 (listing Bates numbers 183462-66); Dkt. No. 165 (stating: "For the reasons above, Mr. Koerber's motion for a protective order is GRANTED with respect to all documents over which Mr. Koerber claims privilege.  Those documents are the ones individually listed in [Judge Alba's] Findings and Conclusions, as well as the version of the July 20 draft letter on the CD Ms. Taylor provided the government.").

disqualification.[26]  Second, Mr. Koerber argues that unspecified members of the prosecution team have a "personal conflict" of interest that prohibits them from participating in this case.[27]  Finally, Mr. Koerber claims that the government's exposure to his privileged information requires that the court neutralize the "taint" of the government's misconduct through disqualification.[28]

The disqualification of government counsel is a "drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden*, 353 F.3d 870, 878–79 (10th Cir. 2003) (citation omitted).  Indeed, courts have granted disqualification of government counsel in limited circumstances.  *Id.* (collecting cases).  For instance, disqualification is warranted when a prosecutor has an actual conflict of interest, *see Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987), or where a prosecutor has the potential to act as a witness at trial, *see United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985).  However, a violation of a rule of professional conduct does not automatically require disqualification.  *Beck v. Bd. of Regents of State of Kan.*, 568 F. Supp. 1107, 1110 (D. Kansas 1983) ("[T]he court should not act unless the offending attorney's conduct threatens to taint the underlying trial with a serious ethical violation." (quotations and citations omitted)).  Indeed, the Tenth Circuit has held that disqualification is only appropriate if the ethical violation results in "the erosion of public confidence in the integrity of the bar and of the legal system." *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990) (quotations and citations omitted) (addressing disqualification in the context of a defendant's Sixth Amendment right to counsel).

Moreover, the sanction of "disqualification of counsel . . . should be measured by the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial."

---

[26] Dkt. No. 87 at 16.
[27] *Id.* at 23.
[28] *Id.* at 24.

*Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476 (D. Utah 1994). To determine if disqualification is required, the court generally weighs "[t]he egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has been a diminution of effectiveness of counsel." *Id.* With these standards in mind, the court will address each of Mr. Koerber's grounds for disqualification.

### A. Government's Alleged Misconduct and Disqualification

Mr. Koerber claims that members of the prosecution should be disqualified for a pattern of repeatedly violating ethics rules, federal law, and the "clear limits" set by the United States constitution.[29] In support, Mr. Koerber relies on the Suppression Order, the litigation surrounding the Privilege Order, and the government's purported refusal to "admit its misconduct."[30] The court has carefully reviewed Mr. Koerber's allegations and finds that none of the evidence cited by Mr. Koerber warrants disqualification.

#### i. The Suppression Order

Mr. Koerber argues that the ethical violations outlined in the Suppression Order mandate that the court disqualify Mr. Walz and members of the prosecution team working at his direction. Judge Shelby held that the legal conclusions in the Suppression Order do not bind this court.[31] Furthermore, Judge Shelby declined to accept Judge Waddoups' findings that a Rule 4.2 violation occurred, that it constituted a due process violation, and that suppression was warranted.[32] Therefore, the Suppression Order does not provide this court a basis to disqualify Mr. Walz or any other member of the prosecution team.

---

[29] Dkt. No. 87 at 16.
[30] *Id.* at 20.
[31] Dkt. No. 114.
[32] *Id.*

### ii. The Litigation Surrounding the Privilege Order

Mr. Koerber argues that the government's conduct leading up to the Privilege Order demonstrates that the government should be disqualified. Specifically, Mr. Koerber argues that the government knew the 2005 Letter was privileged when it was first received.[33] Mr. Koerber further claims that government knowingly sought two indictments against Mr. Koerber that relied, in part, on Mr. Koerber's privileged information.[34] Additionally, Mr. Koerber cites the government's continued retention of the 2005 Letter as evidence supporting disqualification.[35]

The court finds nothing improper about the government's litigation strategy with respect to the 2005 Letter. Mr. Koerber inadvertently disclosed what he believed was privileged documentation to the government. The government disagreed and challenged Mr. Koerber's privilege designation. Judge Waddoups ruled in favor of Mr. Koerber and Mr. Koerber received his desired remedy. The government did not obtain the instant indictment using the 2005 Letter, nor does the government intend to rely on the 2005 Letter to seek a conviction. Therefore, the Privilege Order does not provide a basis for disqualifying the government's counsel.[36]

Similarly, even if the court were to perceive the government's continued possession of the 2005 Letter as an ethical violation—which it does not—Mr. Koerber cites no law for the radical proposition that the government's inadvertent retention of an irrelevant document requires disqualification of the government's counsel. Indeed, if an attorney was disqualified

---

[33] Dkt. No. 87 at 19–20.
[34] *Id.*
[35] *Id.* at 20.
[36] Dkt. No. 140 at 23–24 ("Nothing about conduct establishes the United States engaged in misconduct related to the letter. Indeed, Judge Waddoups, when he determined the letter to be privileged, concluded there was no 'evidence that the government was . . . intentionally try[ing] to interfere with [Koerber's] privilege in its interactions with his attorneys and related persons.' Because Koerber has not shown the United States engaged in misconduct related to the privileged letter, this is not a basis to dismiss the indictment.").

every time a document was inadvertently retained following a privilege battle, disqualification would become the norm not the exception. *See Bolden*, 353 F.3d at 878–79.

### iii. Government's Purported Refusal to Admit Its Misconduct

Finally, Mr. Koerber claims that government's unwillingness to admit its misconduct requires the disqualification of the government's counsel.[37] In support, Mr. Koerber cites the government's unsuccessful attempts to appeal the Suppression Order in Koerber I and the fact that the government has continued to challenge the Suppression Order before this court.[38] Mr. Koerber argues that this "sort of blind persistence in refusing to acknowledge its own misconduct, even after repeatedly [sic] court findings is indicative of a larger issue."[39]

Mr. Koerber's reliance on the Suppression Order litigation as a basis for disqualification is misplaced. The government obtained an adverse ruling in Koerber I that materially impacted its case. As would be expected from any litigant receiving an unfavorable ruling, the government continued to oppose the Suppression Order and seek its reversal. The government's arguments were not frivolous. Judge Shelby has held that the Suppression Order's legal conclusions demonstrate clear error. Therefore, the court finds nothing improper about the government's litigation of the Suppression Order that would require disqualification.[40]

---

[37] Dkt. No. 87 at 20.

[38] Mr. Koerber also relies on the government's pretrial publicity in Koerber I. *Id.* at 22. The court finds that any prejudice Mr. Koerber may have suffered as a result of the government's pretrial publicity in Koerber I has been ameliorated with the passage of time. At this stage, there are no new allegations of improper pre-trial publicity that would trigger the disqualification of the government's counsel.

[39] *Id.* at 21.

[40] Dkt. No. 140 at 25 ("The court, however, has declined to adopt Judge Waddoups's conclusion that the United States violated the Constitution, ethical standards, rules, or statutes. Thus, the United States' failure to own up to these alleged violations does not shock the universal sense of justice.").

### B. Conflict of Interest

Next, Mr. Koerber argues that disqualification is required because members of the prosecution team have a "personal conflict" of interest in the outcome of this case.[41] However, Mr. Koerber does not identify any member of the prosecution team, or their households, that have a financial interest in this case. *See* 18 U.S.C. § 208(a); 5 C.F.R. § 2635.402(a). Similarly, Mr. Koerber does not allege that any member of the prosecution team has a "personal or political relationship" with anyone who was "substantially involved in the conduct" subject to prosecution or with anyone who has a "specific and substantial interest" in the outcome of the prosecution. *See* 28 C.F.R. § 45.2(a)(1)-(2). Rather, Mr. Koerber merely cites adverse rulings obtained in Koerber I as evidence that the prosecution team has a personal stake in the outcome of this case. It goes without saying that an adverse ruling against the government does not create a personal conflict of interest. Therefore, the court finds that Mr. Koerber has failed to demonstrate that any member of the prosecution has a conflict of interest requiring disqualification.

### C. Access to Privileged Information

Finally, Mr. Koerber contends that disqualification is required because the prosecution team has been improperly exposed to Mr. Koerber's privileged information.[42] Mr. Koerber claims that:

> prosecutors deliberately intruded on [his] privileged information, beginning in at least February 2009, when they had committed to prosecution and instructed agents to inquire about [Mr. Koerber's] potential trial strategy, and continuing through the other pre- and post-indictment periods when they relied on [Mr. Koerber's] July 20, 2005 'To Our Lenders' letter, . . . to question witnesses and to obtain the first two indictments.[43]

---

[41] Dkt. No. 87 at 23.
[42] *Id.* at 24.
[43] *Id.*

11

Therefore, Mr. Koerber argues, the court must disqualify any member of the prosecution team that had access to Mr. Koerber's privileged information to neutralize the "taint" of the government's misconduct.[44]

In the context of Mr. Koerber's various motions to dismiss, Judge Shelby held that the government's exposure to the 2005 Letter and the content of the 2009 interviews does not provide the court a basis to disqualify the prosecutors on this case.[45] Therefore, for the same reasons, Mr. Koerber's final request for disqualification is denied.

## CONCLUSION

Based on the foregoing, Mr. Koerber's Motion for Order to Show Cause and to Disqualify Federal Prosecutors and Federal Agents[46] is **DENIED**.

**IT IS SO ORDERED.**

DATED this 25th Day of July, 2017.

**BY THE COURT:**

_____
PAUL M. WARNER
Chief United States Magistrate Judge

---

[44] *Id.* at 27.
[45] *See* Dkt. No. 140 at 23–24, 26.
[46] Dkt. No. 87.