# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **ORDER** |
| Plaintiff, | |
| v. | Case No. 2:17-cr-37-RJS-PMW |
| CLAUDE R. KOERBER, | District Judge Robert J. Shelby |
| Defendant. | Chief Magistrate Judge Paul M. Warner |

Before the court are two Motions for Disqualification filed by Defendant Claude R. Koerber.  Koerber first contends the undersigned should be disqualified under either of the two federal disqualification statutes, 28 U.S.C. §§ 144 and 455.  Koerber also argues that under the same authority, every federal judge in the District of Utah should be disqualified from hearing his case.  The court addresses both motions in turn.

### I.      Motion to Disqualify Judge Shelby

Koerber's first Motion to Disqualify alleges that the undersigned's past affiliation with the law firm Snow, Christensen & Martineau disqualifies him from these proceedings.  Koerber contends advice given to him by the firm (while the undersigned was *not* affiliated with the firm) may become relevant at trial, and one or more attorneys from the firm may testify at trial, which, according to Koerber, requires the undersigned's disqualification.  He also contends that the undersigned should be disqualified because several years ago the undersigned presided over the prosecution of Jason Vaughn, one of Koerber's former business associates, which resulted in an acquittal following a jury trial.

Koerber contends these allegations warrant disqualification under § 144 and § 455. Section 144 applies only to district court judges, and deals with a judge's actual bias against the movant or in favor or an opposing party.[1]  Section 455 is broader in that it applies to all federal judges, and addresses, in addition to a judge's actual bias, the *appearance* of bias, and its implications for disqualification.[2]  Though there is some overlap between these statutes, they involve important procedural and substantive distinctions, and the court will therefore address each separately.

### a.  Section 144

Section 144 provides for disqualification when a judge harbors personal bias or prejudice against a litigant or in favor of the opposing party.  The procedural requirements for bringing a § 144 challenge are "quite specific," and mandate that the aggrieved party file with the court an affidavit stating the facts and reasons supporting his belief the presiding judge is biased.[3]  The filing of an affidavit, however, does not in itself bring about disqualification, but instead triggers the court's duty to scrutinize the affidavit for timeliness and facial sufficiency.[4]  In conducting this analysis, the court must accept all factual representations as true, but the timeliness and sufficiency requirements are "strictly construed."[5]  If the affidavit is untimely, or appears insufficient, the court must deny it on that basis.  Otherwise, if the affidavit is timely and facially

---

[1] 28 U.S.C. § 144.

[2] § 455.

[3] § 144; *United States v. Hines*, 696 F.2d 722, 728 (10th Cir. 1982).

[4] *United States v. Ritter*, 540 F.2d 459, 461–62 (10th Cir. 1976).

[5] *Hines*, 696 F.3d at 728.

sufficient, the court "shall proceed no further [in the action], but another judge shall be assigned to hear such proceeding."[6]

With this in mind, the court first addresses whether Koerber's affidavit is timely. Section 144 has two timeliness provisions: a requirement that the affidavit be filed "not less than ten days before the beginning of the term at which the proceeding is to be heard," and a more general requirement that the affidavit be "timely."[7]  The former is a relic of the time when the court held formal terms, and as such the Tenth Circuit focuses primarily on the latter, more generalized "timeliness" requirement, which it has interpreted to require that a litigant file an affidavit "when he first learned of facts that allegedly showed bias and prejudice."[8]

The facts Koerber relies on to show bias and prejudice are these:

- The undersigned previously worked at the law firm Snow, Christensen, & Martineau from January 2000 through September 2004, and again from May 2011 through September 2012;[9]

---

[6] § 144.  At the final pretrial conference, the court, having had less than an hour to review the recently-filed Motions for Disqualification, stated that the Motions would need to be handled in another District.  But after later reviewing the Motions and related case law more thoroughly, it became apparent that this court has an affirmative obligation to assess timeliness and sufficiency in the first instance, and that Koerber's § 144 affidavits, as discussed below, are both untimely and facially insufficient, so another judge need not be assigned to hear them.

[7] *Id.*

[8] *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992); *Andrews, Mosburg, Davis, Elam, Legg & Bixler, Inc. v. Gen. Ins. Co. of Am.*, 418 F. Supp. 304, 307 (W.D. Okla. 1976) (citing 28 U.S.C. § 138, which in 1963 abolished formal court terms).

[9] Koerber does not state in his motion the dates the undersigned was affiliated with the firm, and represents only that he "lacks specific information to determine the extent of the relationship Judge Shelby had with Snow Christensen & Martineau in 2007–2009."  Dkt. 164 at 6–7.

3

- Three Snow, Christensen, & Martineau attorneys—Max Wheeler, Sam Harkness, and Richard Van Wagoner—represented Koerber from about March 2007 through sometime in 2009, before Koerber was indicted in what became Koerber I;[10]

- Advice given to Koerber by these attorneys may become relevant in the current proceedings, and one or more of the attorneys may testify at trial; and,

- The undersigned presided over the prosecution of one of Koerber's former business associates, Jason Vaughn, from 2012 through 2014.

The existence of these predicate facts has been known or available to Koerber for at least four years, and the existence of the alleged conflict has been known to him since the day the undersigned was assigned to this case on March 27, 2017.[11]  Indeed, on June 19, in a supplemental brief related to whether the undersigned was bound by Judge Waddoups's rulings in Koerber I, Koerber stated the following:

> [S]hould this Court re-open Judge Waddoups' prior rulings, including those based on the testimony of Max Wheeler as his prior counsel, Mr. Koerber respectfully reserves the right to move for the Court's recusal under 28 U.S.C. § 455.[12]

---

[10] The court refers to Koerber's prior, related proceedings, case number 2:09-cr-302, as "Koerber I."  The Indictment in that case was dismissed without prejudice.  The court refers to current proceedings at "Koerber II."

[11] Koerber suggests in his Motion that he learned of the undersigned's involvement in *United States v. Vaughn* on July 17 of this year when the government produced to him trial transcripts from that case.  The case was a matter of public record for over two years.  It strains credulity to believe that Koerber was not aware, while he was facing indictment in Koerber I, that his business associate was tried and acquitted in a case involving charges that, by Koerber's own account, have substantial similarities with those Koerber is now facing, and that he was unaware who was presiding over that case.  Nonetheless, even crediting that allegation, the motion is still untimely.  Koerber does not allege that he recently learned about the other two bases for disqualification.  And even assuming Koerber had no basis to bring a disqualification motion until July 17, the fact that he subsequently waited while the court sent 1,000 jury summonses, while it ruled on nine of his pending motions, and while it prepared for a final pretrial conference and 8-week trial, ultimately filing the Motion ninety minutes before the final pretrial conference, renders it untimely.

[12] Dkt. 109 at 2 n.2.

However one interprets this language, it demonstrates that Koerber was aware during that time of facts he believed warranted disqualification. Yet for four months after the undersigned was assigned to this case, Koerber brought no motion to disqualify, and instead vigorously litigated his case, filing over fifteen motions. He brought no motion to disqualify when the court finalized the trial date in this case, nor when it moved the trial date back by two weeks on his request. He remained silent as to any potential conflict while the court ruled on over fifteen of his pretrial motions. And he failed to raise disqualification when the court alerted the parties that it planned to mail summonses to 1,000 potential jurors and to begin preparations for an 8-week trial. Instead, he waited until ninety minutes before the August 4 final pretrial conference—17 days before trial, and 130 days after the undersigned was assigned to the case—to claim bias.

Given these facts, Koerber's affidavit is untimely. Indeed, courts have held that a lapse of nine days between learning of allegedly disqualifying facts and filing an affidavit was too long (even though the attorney's brother had died in the interim), that a lapse of 27 days was too long (even though a transcript request had consumed 15 of those days), and that a lapse of two months was too long.[13] Further, courts have noted that a party's participation in proceedings before filing, and the fact that he received unfavorable rulings in the interim, cuts against timeliness.[14] Finally, courts have found affidavits untimely when brought after a trial date was set, or particularly close to trial, or any other time that indicates the affiant is concerned less with the

---

[13] *See Andrews, Mosburg, Davis, Elam, Legg & Bixler, Inc. v. General Ins. Co. of Am.*, 418 F. Supp. 304, 308 (W.D. Okla. 1976) (collecting cases).

[14] *See, e.g.*, *Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984) (noting that plaintiff had "suffered some adverse rulings on interlocutory matters" before filing the affidavit); *Skirvin v. Mesta*, 141 F.2d 668, 672 (10th Cir. 1944) (finding relevant that the party had "participated in proceedings and . . . invoked or sought to invoke the affirmative action of the court on his behalf").

alleged bias of the judge and more with delaying the case, or assessing whether he might receive favorable rulings before moving to disqualify.[15]

Indeed, this is the very purpose for the timeliness requirement: to "prevent the[] use [of § 144 affidavits] to obtain last minute postponements of trial or to sample the temper of the court before deciding whether to file an affidavit."[16]  For this reason, the requirement is not a mere formality but is instead "a matter of substance" and "fundamental importance."[17]  In fact, "[n]othing is more important in an affidavit of bias or prejudice than timeliness, and its counterpart, waiver."[18]  Because Koerber waited to file his affidavit until well after he learned of facts allegedly showing bias, because he continued litigating his case and moved for disqualification only after receiving unfavorable rulings, and because he ultimately filed only hours before the final pretrial conference, forcing the court to postpone the final pretrial conference and jeopardizing the trial date, the affidavit is untimely, and it fails on this basis alone.

But even if the affidavit had been timely filed, it nevertheless fails because it is not sufficient, either procedurally or substantively.  Procedurally, the statute requires that "a *party* . . . file[] a timely and sufficient affidavit" that "state[s] the facts and the reasons for the belief that bias or prejudice exists," and that it "be accompanied by a certificate of counsel of record."[19]

---

[15] *See Knoll v. Socony Mobil Oil Co.*, 369 F.2d 425, 430 (10th Cir. 1966) (affirming that "a motion filed after the case was set for trial was not timely within the meaning of the statute"); *Andrews*, 418 F. Supp. at 307–08.

[16] *Andrews*, 418 F. Supp. at 307–08.

[17] *Eisenhour v. Cty.*, No. 1:10cv22, 2016 WL 5852452, at *3 (D. Utah Oct. 6, 2016) (quoting *Timeliness of Affidavit of Disqualification of Trial Judge Under 28 U.S.C. § 144*, 141 A.L.R. Fed 311, 329 (1997)).

[18] *Andrews*, 418 F. Supp. at 307–08.

[19] § 144 (emphasis added).

Here, Koerber's *attorney*, Marcus Mumford, filed a motion stating the facts and reasons he believes bias or prejudice exists, and Koerber signed a one-sentence affidavit at the end certifying the factual representations as true and correct.  The distinction may seem trivial, but courts have denied § 144 motions on less.[20]  Indeed, because of § 144's "draconian procedure— automatic transfer based solely on one side's affidavit"—courts have "strictly construed" the procedural requirements of the statute.[21]  And strictly construed, Koerber's affidavit does not meet the statutory requirements.

But the court need not rely on the affidavit's procedural deficiencies, for it is substantively insufficient as well.  Indeed, though it nominally cites § 144, the motion and affidavit in fact present no arguments related to § 144.  Section 144 is cited exactly three times throughout the entire filing: twice in the introduction to the motion, and once in Koerber's one-sentence "Affidavit/Certification" at the end of the motion.  Not only does Koerber fail to make any substantive § 144 arguments, he explicitly cabins the three substantive arguments he does make as stemming from § 455, the other federal disqualification statute, stating in the last sentence of each enumerated section which part of § 455 the argument relates to.  For this reason, the § 144 argument fails, and the court will turn to whether Koerber has made a valid § 455 argument.

---

[20] *See, e.g.*, *United States v. Hinman*, 696 F.2d 722, 728 (10th Cir. 1982) (citing a Sixth Circuit case where the court denied the § 144 motion because the party's counsel, rather than the party, signed the affidavit).

[21] *In re Matrinez-Catala*, 129 F.3d 213, 218 (1st Cir. 1997); *United States v. Hines*, 696 F.3d 722, 729 (10th Cir. 1982).

### b. Section 455

The other federal disqualification statute, § 455, is broader than § 144 in that it applies to all federal judges (not just district judges) and it contemplates disqualification for the *appearance* of bias, not just actual bias. Further, it lacks the express procedural hurdles present in § 144. It does not, however, require that the court take factual allegations as true, and in fact allows (and requires) that the receiving judge consider all circumstances, regardless of whether they were presented by the moving party.[22] The statute is comprised of two parts. Section 455(a) governs the appearance of bias, requiring disqualification when a judge's "impartiality might reasonably be questioned." Section 455(b) enumerates various fact scenarios that will result in actual bias per se, requiring disqualification.

Before assessing whether Koerber has met these substantive standards, however, the court must first determine whether his § 455 arguments are timely. Though § 455, unlike § 144, contains no explicit timeliness requirement, the Tenth Circuit has made clear that "[a] motion to recuse under section 455(a) must be timely filed."[23] The reasons motivating this requirement are largely the same as those underlying the requirement in § 144: "[g]ranting a motion to recuse many months after an action has been filed wastes judicial resources and encourages manipulation of the judicial process."[24] To discourage these practices, the Tenth Circuit requires that "the party seeking recusal must act in a timely fashion to request recusal."[25]

---

[22] *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

[23] *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1028 (10th Cir. 1988).

[24] *Id.* at 1029.

[25] *United States v. Stenzel*, 49 F.3d 658, 661 (10th Cir. 1995).

Koerber did not request recusal in a timely fashion.  As discussed above with regard to his § 144 affidavit, Koerber's decision to file a disqualification motion hours before the final pretrial conference, after litigating before the undersigned for months, wastes significant resources the court has expended to ensure he receives a speedy trial, and suggests that he is concerned less with the undersigned's bias or appearance thereof than with manipulating the legal process.  Koerber's § 455's arguments are untimely and fail on that basis alone.

But, as with his § 144 affidavit, even if Koerber's § 455 motion had been timely filed, it would fail on the merits.  Koerber argues that bias or the appearance thereof in this case requires disqualification for three reasons: (1) the undersigned may be required to pass judgment on legal advice given to Koerber by Snow, Christensen & Martineau attorneys, and may face financial exposure if the firm is held liable in any way based on that advice; (2) Max Wheeler, a Snow Christensen & Martineau attorney, may be a witness at trial; and (3) the undersigned has extrajudicial knowledge he gained presiding over the trial of Koerber's business partner.

Koerber's first argument—related to legal advice given by Snow, Christensen & Martineau attorneys—is brought under § 455(b)(4) (which deals with a Judge's financial interest in the outcome of a case) and § 455(a) (which, as discussed, deals with the appearance of bias). The undersigned has no financial interest in Snow, Christensen & Martineau, having divested from the firm in September 2012, so Koerber's § 455(b)(4) argument fails.  Koerber's other argument is that Snow, Christensen & Martineau attorneys gave Koerber legal advice while representing him in this case between 2007 and 2009, and the undersigned may be called on to "pass judgment and make discretionary decisions" related to "the credibility or integrity of the

firm and its reputation for legal competence," which, according to Koerber, would lead to the appearance of bias.[26]

This vague allegation falls far short of Koerber's burden under the statute and leaves the court unable to assess the alleged conflict.  It is not at all clear, for example, whether Koerber will assert an advice of counsel defense at trial, what that defense might be, whether the defense stems from advice given by Snow, Christensen & Martineau attorneys, and what charges it relates to.  Further, it is not at all clear why assertion of an advice of counsel defense would require the undersigned to assess the "credibility or integrity of the firm;" seemingly, any judgment as to reliability or credibility of advice given by Snow, Christensen, & Martineau attorneys would be an issue for the jury, not the undersigned.  In short, whether the undersigned will find himself in a position to pass judgment on the advice given to Koerber by Snow, Christensen & Martineau attorneys is merely unsupported speculation, and "a judge should not recuse himself on unsupported. . . speculation."[27]

But even if Koerber had met his burden of demonstrating with particularity how and why such a situation might arise in this case, a reasonable observer would not harbor doubts about the undersigned's ability to impartially pass judgment, five years after leaving a firm, on advice given by the firm during a period in which he was not affiliated with it.[28]  Section 455(b)(2) addresses a closely related context, discussing disqualification when a judge's former law partner serves as counsel or as a material witness in proceedings.  That section makes recusal mandatory

---

[26] Dkt. 164 at 7.

[27] *Rogers*, 831 F.2d at 939.

[28] As discussed, the undersigned was affiliated with Snow, Christensen & Martineau from January 2000 through September 2004, and again from May 2011 through September 2012.  The advice in question was, according to Koerber, given between 2007 and 2009.

if the judge was affiliated with the firm at the time the firm was handling the matter now before

the court, and a Committee on Codes of Conduct (CCC) Advisory Opinion suggests

disqualifying on any other matters involving former partners for a period of two years after

leaving the firm.[29]  As noted, the undersigned was not with the firm when attorneys from the firm

represented Koerber, and did not return until two years after any representation apparently

terminated.  For this reason, § 455(b)(2) does not mandate disqualification.  Further, nearly five

years have lapsed since the undersigned left the firm.  No reasonable person, knowing all the

relevant facts, would harbor doubts about the undersigned's impartiality.

Relatedly, Koerber next argues that Max Wheeler may be a witness at trial, and the fact

that Max Wheeler and the undersigned were both at one point affiliated with Snow, Christensen

& Martineau warrants disqualification under § 455(b)(2) (dealing with a judge's former law

partner appearing as an attorney or material witness in a case) and § 455(a) (dealing broadly with

the appearance of bias).  The court already discussed why § 455(b)(2) is not applicable to

appearances by Snow, Christensen & Martineau attorneys generally, and this analysis applies to

specifically to Max Wheeler's potential appearance as a witness as well.  The court further

concludes that not only would Wheeler's appearance as a witness not result in actual bias under

§ 455(b)(2), neither would it present the appearance of bias under § 455(a).  As discussed, the

CCC Advisory Opinion on this issue suggests a judge should abstain from hearing cases

involving his former form for two  years.[30]  The undersigned left Snow, Christensen & Martineau

nearly five years ago.  Moreover, the undersigned has no recollection of working on any matter

---

[29] Advisory Opinion No. 24, Financial Settlement and Disqualification on Resigning from Law Firm, Committee on Codes of Conduct, *available at* http://www.uscourts.gov/sites/default/files/vol02b-ch02.pdf.

[30] *Id.*

with Wheeler since the undersigned's first stint with the firm, which concluded nearly thirteen years ago.  A reasonable person, privy to all the facts, would not question the undersigned's impartiality were Wheeler to testify in this case.[31]

Last, Koerber argues (under § 455(a), dealing with appearance of bias) that the undersigned presided over the trial of Koerber's former business associate, Jason Vaughn, where the undersigned was allegedly exposed to facts and argument related to Koerber that Koerber had no opportunity to rebut, and a reasonable person would therefore question the undersigned's impartiality in these proceedings.  In particular, Koerber contends that the undersigned was exposed to "impressions, opinions, judgments, influences or biases" that "taint[ed] [the undersigned's] views of Mr. Koerber and his companies."[32]

These allegations, however, go to facts related to Koerber's character and motives, the propriety of which will be for the jury to decide, not the court.  Moreover, the allegations stem from prior judicial proceedings, and "opinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . prior proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[33]  Far short of demonstrating that these allegations have led to deep-seated favoritism or antagonism, Koerber has provided no indication whatsoever that anything the undersigned learned in *United States v. Vaughn* has had any impact on the court's conduct or legal rulings in this case.

---

[31] This is especially true given that the jury, not the undersigned, would be called on to evaluate Wheeler's testimony.

[32] Dkt. 164 at 10.

[33] *Liteky v. United States*, 510 U.S. 540, 555 (1994).

In sum, Koerber has not met his burden of demonstrating either that the undersigned is biased under § 144 or § 455(b), or that a reasonable person would question the undersigned's impartiality under § 455(a).  Koerber's motion to disqualify the undersigned is therefore denied.

## II.    Motion to Disqualify All Federal Judges in the District of Utah

The court next addresses Koerber's Motion to Disqualify All Federal Judges in the District of Utah.  The court notes, initially, that several judges in this District have already recused.  Koerber's motion is necessarily moot as to those judges.  Further, motions to disqualify should be directed to the presiding judge(s)—in this case, the undersigned and Chief Magistrate Judge Warner—and the court declines to offer Koerber an advisory opinion on whether, if the case were reassigned, Koerber would have a basis to seek to disqualify whomever it was subsequently assigned to.  Last, this court has already denied Koerber's individual motion to disqualify the undersigned, and Judge Warner has already denied the individual motion for his disqualification.  So unless Koerber's arguments in this Motion related to the undersigned and Judge Warner prevail, the question whether any other judges in the district should be disqualified is not ripe for consideration.  For these reasons, the court addresses only Koerber's allegations as to the undersigned and Judge Warner.  The court first addresses Koerber's § 144 and § 455 arguments, and then turns to his argument that the Due Process Clause requires disqualification.

### a.  Section 144

Koerber contends that disqualification under § 144 is warranted both as to the undersigned and as to Judge Warner.  Section 144, however, applies only to district judges, so Koerber's § 144 arguments related to Chief Magistrate Judge Warner are denied on that basis.[34]

_____

[34] *See id.* at 548 (noting that § 455 made § 144's restrictions "applicable to *all* justices, judges, and magistrates (and not just district judges)").

13

As to the undersigned, Koerber's § 144 argument is as follows: Prosecutors in Utah (including Assistant United States Attorneys and Utah state officials) have made public statements disparaging the judiciary in the District of Utah.  These public statements, according to Koerber, have intimidated federal judges in the District, and for that reason, "any federal judge in this case might be tempted to avoid the issue of [governmental] misconduct, and the litany of prior findings made by Judge Waddoups as they directly affect the trial of Mr. Koerber, and to avoid future unfavorable rulings against the United States Attorney's Office, in light of the prosecutor's pattern of retaliating against the court, questioning the court's integrity in public, and threatening to end state/federal cooperation."[35]  In other words, Koerber contends all federal judges are intimidated by and fear retaliation from prosecutors in the State, and are therefore biased against criminal defendants.  Koerber contends this atmosphere of intimidation and fear of retaliation is evidenced by unfavorable rulings he has received in this case.

At the outset, the Motion fails because it is untimely.  Below is a timeline of the facts on which Koerber relies:

- July 2013: AUSA Young allegedly criticizes Utah's federal judges while lecturing at the J. Reuben Clark Law School at Brigham Young University;

- August 2014: Members of the prosecution team in this case allegedly criticize Utah's federal judges in statements to the Salt Lake Tribune; and,

---

[35] Dkt. 165 at 28.

- November 2015: Francine Giani, Executive Director at the Utah Department of Commerce, allegedly criticizes Utah's federal judges in statements to the Desert News.[36]

If Koerber believes these facts warrant disqualification of all federal judges in Utah, he was required to file a motion in 2015. As discussed, Koerber had an obligation to bring the Motion "when he first learned of facts that allegedly showed bias and prejudice."[37] Instead, he brought the motion nearly two years after the latest of the events that allegedly show bias and prejudice. For the reasons previously stated, this is not timely, and the Motion is denied on this basis.

Further, even if it had been timely, the Motion would be denied on the merits. As a preliminary matter, much of the Motion relies on the argument that Koerber has received unfavorable rulings from the undersigned in these proceedings. Unfavorable rulings, however, can "almost never constitute a valid basis for a bias or partiality motion."[38] Indeed, judicial rulings become relevant to disqualification only if they "display a deep-seated favoritism or antagonism that would make fair judgment impossible."[39] The rulings Koerber takes issue with are these:

- The court's decision that the 2017 Indictment was timely filed under § 3288;

- The court's grant of a 14-day, rather than 90-day trial continuance; and,

---

[36] Koerber also reports that on March 14, 2017, "in a meeting with Mr. Koerber, AUSA Hackford-Peer, AUSA Murray, IRS Agent Marker, and others," AUSA Walz stated that he was upset that Koerber had insulted him, that that factored into the United States' decision to reindict, and that Walz believed some of Judge Waddoups's rulings in Koerber I were "wrong." Dkt. 165 at 11. Koerber does not explain how any federal judge in Utah would be aware of this private conversation, much less intimidated by it, so the court declines to consider it in its analysis.

[37] *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992).

[38] *Liteky*, 510 U.S. at 555.

[39] *Id.*

- The court's decision (characterized by Koerber as "sua sponte" and made based on the court's "own research") that non-final Koerber I orders that are not essential to the final disposition of that case have no preclusive effect in this case.

These rulings do not display a deep-seated favoritism or antagonism. They are legal or discretionary decisions that Koerber may challenge, if he wishes, on appeal after trial. And to the extent Koerber insinuates the undersigned acted improperly with regard to the Preclusion Order, the court notes that the order was not sua sponte, but rather was in response to nine pretrial motions filed by Koerber, the majority of which either implicitly or explicitly asked the court to adopt Koerber I findings and conclusions. In other words, in order to rule on Koerber's nine pretrial motions, the court had to first determine the preclusive effect of the Koerber I rulings Koerber was invoking—an issue on which the court requested and received supplemental briefing and oral argument from both sides. And as to the charge that the undersigned conducted "his own research" before deciding the issue, Koerber's case is not unique—the undersigned conducts his own research in every case, and, until the Tenth Circuit renounces that practice, will continue to do so. In short, if Koerber takes issue with the identified rulings, his remedy is appeal, not disqualification.[40]

That leaves Koerber's allegation that prosecutors in the United States Attorney's Office and elsewhere have, on various occasions, publicly criticized judges in the District of Utah. Given this predicate, one might think the resulting argument would be that the court is biased *against the United States*. But this is Koerber's Motion, and under § 144, the only cognizable claim of bias is one against the party asserting the motion.[41] Perhaps for this reason, Koerber's

---

[40] *See id.*

[41] *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

argument, as discussed, is instead that all federal judges in the District of Utah are intimidated by the criticism of one or more prosecutors, they fear retaliation if they rule against the United States, and they are therefore biased in favor of the United States.

Among other things, this argument ignores the many rulings regularly issued against the United States Attorneys' Office by federal judges in this District. And more fundamentally, it ignores the judicial independence guaranteed Article III judges by the United States Constitution. Life tenure of Article III judges was included in the Constitution to ensure they remain unaffected by criticism or pressure from outside sources, including career executive prosecutors. No reasonable person, with knowledge of the United States Constitution, would doubt judicial impartiality in the face of Koerber's allegations.

Moreover, the implication of Koerber's argument is that every criminal case currently pending in the District of Utah must be sent to another district. This alone demonstrates why Koerber's argument fails; he has a burden to demonstrate why "a reasonable man would conclude on the facts stated . . . that the district judge had a special bias against defendant."[42] There is nothing unique as to Koerber about the argument that federal judges in Utah are biased against all criminal defendants.

Further, Koerber's argument is entirely conclusory. Koerber has an obligation to state the who, what, where, when, and how of his bias allegations—that is, to explain not only the facts, but how those facts have caused the judge to become partial or biased.[43] He has not done so. The implication that the undersigned might rule in favor of the United States based on one or

---

[42] *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir. 1978).

[43] *Hinman*, 831 F.2d at 939 ("The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances.").

more prosecutors in that office publicly criticizing the federal bench is not a fact, nor is it a reasoned conclusion based on the facts; it is merely Koerber's "[c]onclusion[], rumor[], belief[], or opinion[]," which is not "sufficient to form a basis for disqualification."[44] The presumption is that the judges in this District are not swayed by this type of external criticism,[45] and Koerber has not met his burden of rebutting that presumption.[46]

### b.  Section 455(a)

Having determined Koerber's § 144 arguments fail, the court turns to his § 455(a) arguments.  Koerber does not separately argue why § 455(a) warrants disqualification, but instead argues that the previously discussed allegations warrant disqualification under both § 144 and § 455(a).  Thus, the only question under this section is whether Koerber has demonstrated the previously discussed allegations lead to the *appearance* of bias (which is cognizable under § 455, unlike § 144) by either the undersigned or Judge Warner (to whom this section applies, unlike § 144).

The test for appearance of bias under § 455(a) is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[47]  The relevant facts, as discussed, are that on three occasions, prosecutors or State officials publicly criticized federal judges in the District of Utah.  For the same reasons discussed above as to actual bias under § 114, these allegations would not cause a reasonable person to doubt the undersigned's

---

[44] *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976).

[45] *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004).

[46] As discussed, Koerber's § 144 Motion as directed to Judge Warner fails because § 144 is not applicable to magistrate judges.  But even if it were, Koerber's § 144 allegations—which are not judge specific but instead directed at the federal bench as a whole—fail as to Judge Warner for the same reasons they fail as to the undersigned.

[47] *Hinman*, 831 F.2d at 939.

impartiality in this case under § 455(a).  As discussed above, the notion that the undersigned is intimidated by public criticism from the United States Attorneys' Office, or that this criticism would cause him to fear retaliation from the Office and rule accordingly, is unsupported speculation, and "[a] judge should not recuse himself on unsupported . . . speculation."[48]

Nor would these allegations cause a reasonable observer to question the impartiality of Judge Warner.  Koerber contends the appearance of bias is more likely as to Judge Warner because Judge Warner was previously the United States Attorney for the District of Utah.  The court disagrees.  Judge Warner's former affiliation with the United States Attorney's office has not prevented him from impartially serving on this court for more than a decade.  The notion that criticism by his former Office would now cause a reasonable person to doubt his impartiality is mere speculation. The court therefore concludes no reasonable person would question the impartiality of the undersigned or Judge Warner, and declines to disqualify either on this basis.

### c.  The Due Process Clause

Koerber's final argument is that the Due Process Clause mandates disqualification of the undersigned and Judge Warner.  This is a high bar.  Indeed, "most matters relating to judicial disqualification do not rise to a constitutional level."[49]  The Constitution requires disqualification only when, "as an objective matter, the average judge in his position is [not] likely to be neutral," or when "there is an unconstitutional potential for bias."[50]

The court concludes an average judge in the position of the undersigned or Judge Warner is likely to be neutral notwithstanding public criticism by prosecutors, and there is no

---

[48] *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992).

[49] *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009).

[50] *Id.* at 881.

unconstitutional potential for bias.  The cases in which courts have found unconstitutional bias

demonstrate that the facts of this case do not warrant constitutional disqualification.  In *Williams*

*v. Pennsylvania*, the Supreme Court found disqualification necessary under the Due Process

Clause when a prosecutor gave approval to seek the death penalty against a defendant, and later

sat as a justice on a state supreme court panel that denied the defendant's habeas petition.[51]  In

*Capterton v. A.T. Massey Coal Co.*, the Court found disqualification necessary under the Due

Process Clause when an appellate judge sat on a panel that reversed a $50 million trial court

judgment against a corporation that donated an "extraordinary amount" to the judge's

campaign.[52]  In another case, the Court determined disqualification was constitutionally

mandated where the mayor of a village sat as a judge (with no jury) in proceedings for

individuals accused of unlawful possession of alcohol, and was paid for his services if the

accused was convicted, but not if acquitted.[53]  Similarly, the Due Process Clause mandated

disqualification where a judge, while examining witnesses to determine whether criminal charges

should be brought, charged a witness he believed to be lying with perjury, charged another who

refused to testify with contempt, and subsequently tried and convicted both witnesses himself.[54]

Thus, the bar for constitutional disqualification is quite high.  And Koerber's speculative

allegations that the undersigned or Judge Warner might rule against him out of fear of retaliation

by the United States does not meet it.  The court rejects Koerber's argument that the Due Process

Clause mandates disqualification in this case.

_____

[51] 136 S. Ct. 1899, 1910 (2016).

[52] 556 U.S. 868, 889–90 (2009).

[53] *Tumey v. Ohio*, 273 U.S. 510, 523 (1927).

[54] *In re Murchison*, 249 U.S. 133, 136 (1955).

**CONCLUSION**

Koerber's Motion to Disqualify the undersigned is denied.[55]  As to his § 144 arguments, Koerber's affidavit fails because it is untimely, and it independently fails because on the merits, Koerber has not provided facts or arguments sufficient to rebut the presumption that the undersigned is impartial.  His § 455 arguments also fail as untimely, and similarly fail on the alternative ground that no reasonable person, given all the relevant facts, would harbor doubts as to impartiality.

Koerber's Motion to Disqualify All Federal Judges in the District of Utah is denied as to the undersigned and Judge Warner, and denied as moot as to all other judges.[56]  Koerber's § 114 and §455 arguments are untimely, and the Motion is denied on that basis.  Additionally, the Motion fails on the merits.  Section 144 does not apply to magistrate judges, and even if it did, Koerber has not rebutted the presumption that the undersigned and Judge Warner are impartial.  And as to § 455, Koerber has not demonstrated that a reasonable person would harbor doubts about the impartiality of the undersigned or Judge Warner.

For these reasons, Koerber's Motions to Disqualify are DENIED.[57]

SO ORDERED this 10th day of August, 2017.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[55] Dkt. 164.

[56] Dkt. 165.

[57] Dkts. 164, 165.