IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>CLAUD R. KOERBER,<br><br>　　Defendant. | **ORDER**<br><br>Case No. 2:17-cr-37-RJS-PMW<br><br>District Judge Robert J. Shelby<br>Chief Magistrate Judge Paul M. Warner |

Before the court are two motions filed by defendant Claud Koerber seeking various forms of relief, including that the court reconsider its denial of attorney Marcus Mumford's request for CJA appointment; that it reconsider its grant of a 14-day (rather than 90-day) continuance, or, alternatively, grant a second continuance of 60 days; and that it acknowledge that Koerber's recent interlocutory appeal divested it of jurisdiction, or, alternatively, enter an order staying proceedings pending resolution of his appeal. The court first addresses the CJA issue, followed by Koerber's arguments related to jurisdiction, and then turns to whether a stay or continuance is warranted.

### I.　CJA APPOINTMENT

On July 28, six months after the Indictment was returned in this case, and just over three weeks before trial, attorney Marcus Mumford filed a Notice of Appearance in this case, requesting the court appoint him as Koerber's CJA counsel.[1] At that point Koerber already had CJA counsel (Rebecca Skordas), who had been representing Koerber for over three months. Mumford nevertheless argued that because he had participated in Koerber I as pro hac vice CJA counsel, and because, according to Mumford, this case was the same case as Koerber I, his

---

[1] Mumford's Notice might more properly be characterized as *announcing* himself CJA counsel, but for the reasons described below, the court construed the Notice as a *request* for appointment.

appointment was still valid and continuing. The court denied the motion, concluding that Mumford may appear, but he "may not appear as CJA counsel," primarily because CJA appointment continues only until "the matter, including appeals or review by certiorari, is closed," and Koerber I is closed.[2] The court explained that even crediting Mumford's argument that this is the same "matter" as Koerber I, his CJA appointment necessarily lapsed because Judge Furse, after a *Faretta* hearing, entered an order allowing Koerber to proceed pro so, and Judge Warner subsequently entered an order appointing Koerber other CJA counsel—both of which automatically terminated any previously pending CJA appointment.[3]

Koerber moves for reconsideration of that ruling. He does not, however, identify an intervening change in controlling law, new, previously unavailable evidence, or a need to correct clear error.[4] The thrust of his argument is that a court must make ends of justice findings to remove a CJA appointed attorney, and no judge in these proceedings made those findings. This argument fails for the reason previously stated by the court: CJA appointments end when the matter ends, and the matter (Koerber I) ended. But to be abundantly clear, even if Mumford's special pro hac admission to the CJA panel and CJA appointment in Koerber I somehow carried over to this case, the court would find (and does now find) that the ends of justice warrant release from his temporary CJA appointment, because he is not on the CJA panel, because he is not eligible to serve as court-appointed CJA counsel, and because Koerber already had competent CJA representation.

---

[2] Dkt. 160.

[3] *Id.* (citing Amended Local Criminal Justice Act Plan § VIII(D), January 2015, *available at* http://www.utd.uscourts.gov/sites/utd/files/cja_standing_order.pdf).

[4] *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

And lest Koerber (or Mumford) argue that this finding is impermissibly retroactive in any way, the court observes that this is the first time Koerber (or Mumford) has argued Mumford's temporary CJA appointment continued from Koerber I. Mumford made no attempt to appear during the seven-month pendency of this case until a week before the final pretrial conference. Though he strenuously argues now that he has been CJA appointed counsel the whole time, he failed to raise these arguments in February when Judge Furse explained to Koerber at his arraignment that she "c[ould not] justify appointing Mr. Mumford again in this case."[5] Mumford did not attend Koerber's arraignment, or any hearing for the following seven months, which is curious, considering he apparently believed himself to still be Koerber's appointed CJA counsel. Mumford did not raise the issue (or even appear) at the March status hearing with Judge Benson. He did not argue he was still CJA counsel (or appear) when Judge Warner appointed Rebecca Skordas as Koerber's CJA counsel, nor while Skordas prepared the case for trial and billed CJA hours for three months thereafter. To be fair, Koerber asked, at the hearings in front of Judges Furse, Benson, and Warner, that the court appoint Mumford, but at no time did Koerber or Mumford argue that Mumford was already appointed—an argument that might have prompted an ends of justice finding. Instead, he raised the issue for the first time now, seven months into the proceedings. For that reason, the court now, for the first time, finds that even if Mumford's CJA appointment had continued from Koerber I through these proceedings, the ends of justice would warrant ending that appointment. As the court previously held, Mumford will not appear as CJA counsel in this case. Koerber's Motion for Reconsideration is denied.

---

[5] Dkt. 153 at 5.

3

## II. NOTICE OF DIVESTITURE

The court next addresses Koerber's request that the court acknowledge his interlocutory appeal divested the court of jurisdiction. Koerber previously moved to dismiss the Indictment as untimely under the applicable statutes of limitations.[6] He also requested the court enjoin further prosecution on that basis. The court denied both requests on July 21.[7] A week later, Koerber appealed the denial of injunctive relief (but not the underlying denial of the motion to dismiss) under 28 U.S.C § 1292, which allows for interlocutory appeals of orders denying injunctive relief. Two weeks later (and just one week before trial), Koerber notified the court of his belief that the court had been divested of jurisdiction. Notably, in the intervening two weeks Koerber stood silent, offering no jurisdictional objection, as the court actively managed the case. To the contrary, Koerber continued filing motions seeking relief that required the court to remain fully engaged in the case. He now argues the court has no jurisdiction to proceed with the upcoming trial (and in fact had been divested of jurisdiction during the previous two weeks) based on his notice of appeal.[8]

Whether Koerber's July 28 Notice of Appeal divested the court of jurisdiction to proceed with this case—including presiding over the 8-week jury trial scheduled to begin in five days—turns largely on the basis for Koerber's appeal. Indeed, "there is no constitutional right to an appeal"; rather, that right is statutory, and derives primarily from either 28 U.S.C. § 1291 (governing appeal of final orders) or 28 U.S.C. § 1292 (governing appeal of interlocutory orders). In his Notice of Appeal, Koerber invoked § 1292, and only § 1292, so the court first addresses whether his § 1292 appeal divested the court of jurisdiction. However, in his Notice of

---

[6] Dkt. 73.
[7] Dkt. 140.
[8] Dkt. 193.

Divestiture filed two weeks later, Koerber argued for the first time that he also appealed "under the collateral order exception for interlocutory appeals under § 1291." In the event the Tenth Circuit construes Koerber's appeal under § 1291, the court also addresses whether it is divested of jurisdiction on that basis.

### A. Appeal Under § 1292

As discussed, when Koerber moved to dismiss the Indictment as untimely under the applicable statute of limitations, he also included a request that the court enjoin further prosecution on the same basis. The court denied the Motion to Dismiss, and in a one-sentence footnote denied the request for injunctive relief—relief that was premised on Koerber prevailing on the Motion to Dismiss. A denial of a motion to dismiss an indictment is not immediately appealable under § 1291.[9] Denial of a request for an injunction, however, is immediately appealable under § 1292, and Koerber appealed the sentence from the court's ruling denying injunctive relief under § 1292. He now contends his appeal under § 1292 divested the court of jurisdiction.

Koerber is mistaken. Although he is entitled to appeal immediately under § 1292, he is not entitled to bring district court proceedings to a halt while he does so. When a party files "an appeal from an order granting or denying a preliminary injunction, [the] district court may nevertheless proceed to determine the action on the merits."[10] Out of concern for the "expeditious disposition" of matters (which is especially relevant where, as here, the notice of divestiture is filed days before a previously-scheduled 8-week jury trial), and due to the "uncertainty as to the extent to which the court of appeals will exercise its power," the trial court

---

[9] *United States v. Ritter*, 587 F.2d 41, 43 (10th Cir. 1978).

[10] *Free Speech v. Federal Election Comm'n*, 720 F.3d 788, 791 (10th Cir. 2013).

may "reach the merits even though the preliminary injunction [is] pending on appeal."[11]  Thus, Koerber's Notice of Appeal under § 1292 did not divest the court of jurisdiction.

### B. Appeal Under the Collateral Order Exception to § 1291

Unlike § 1292, an appeal under § 1291 generally *does* divest the district court of jurisdiction.  Koerber did not invoke § 1291 in his Notice of Appeal.[12]  Since that time, however, he has stated that in addition to § 1292, he appealed "under the collateral order exception for interlocutory appeals under § 1291."[13]  This appears in tension with his most recent statement to the Tenth Circuit that he "has not asserted in this case" appellate jurisdiction based on "the final order rule under 28 U.S.C. § 1291 and . . . the collateral order doctrine."[14]  To the extent Koerber believes he properly appealed under § 1291, the court disagrees.  But in the event the Tenth Circuit interprets Koerber's appeal as properly brought under § 1291, the court will also address whether that divests this court of jurisdiction.

Section 1291 provides for appeal of final orders, and the denial of a motion to dismiss an indictment[15] is not a final order.[16]  The Supreme Court has, however, carved out an exception—the "*Cohen* exception"—that provides for immediate appeal under § 1291 of nonfinal orders that (1) conclusively determine the disputed question, (2) resolve an issue separate from the merits of

---

[11] *Pueblo of Pohoaqu v. New Mexico*, 2017 WL 3028501, at *3 (10th Cir. 2017).

[12] *See* Dkt. 155.

[13] Dkt. 193 at 7.

[14] Koerber's Opposition to the United States' Motion to Dismiss the Appeal, Case No. 17-4121, at 4.

[15] As discussed, Koerber technically appealed the court's one-sentence denial of his request for injunctive relief, not the court's underlying Order denying his Motion to Dismiss.  For purposes of appeal under the collateral order doctrine, however, it is not apparent those denials should be treated differently, and in the interest of expediency, the court refers to both denials together.

[16] *Ritter*, 587 F.2d at 43.

the action, and (3) are effectively unreviewable on appeal from a final judgment.[17] The court's Order denying Koerber's Motion to Dismiss on statute of limitations grounds and his request for injunctive relief conclusively determined an issue separate from the merits. Thus, the only question here is whether the Order is effectively unreviewable on appeal from final judgment.

In criminal cases, courts have interpreted the third *Cohen* element to require a defendant to show he has a "constitutional 'right not to be tried'" that would be "lost . . . irreparably if review had to await final judgment."[18] Further, he must show that right stems from "an explicit statutory or constitutional guarantee that trial will not occur."[19] This requirement for explicit statutory or constitutional authority reflects a "crucial distinction between a right not to be tried and a right whose remedy requires the dismissal of charges."[20] While the former can be enjoyed only if vindicated before trial, the latter can wait until final judgment.

Koerber contends that inherent in statutes of limitations is a right not to be tried once the statutory period has ended. He believes the statute provides him relief from *trial* on stale charges, not merely relief from *judgment*. This right, he argues, would be lost were he forced to wait until after trial to seek review.

The court disagrees. The Supreme Court has not directly addressed the question, but has suggested in dicta that Koerber's interpretation is incorrect. Similarly, at least five circuit courts have directly addressed the question, and all five held that an order denying statute of limitations

---

[17] *United States v. Ambort*, 193 F.3d 1169, 1171 (10th Cir. 1999) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 54 –47 (1949)).

[18] *United States v. Tsosie*, 966 F.2d 1357, 1359 (10th Cir. 1992) (citing *Abney v. United States*, 431 U.S. 651, 657 (1977)).

[19] *Ambort*, 193 F.3d at 1171.

[20] *Id.*

arguments is not an appealable collateral order. And though Koerber believes the Tenth Circuit would decide the question differently, the authority he cites is not on point.

The Supreme Court has gone to pains to limit the collateral order exception, especially in the criminal context, explaining that the exception applies only to a "limited category of cases,"[21] that it should be applied "with the utmost strictness in criminal cases,"[22] and that courts should view a defendant's "claims of a 'right not to be tried' with skepticism, if not a jaundiced eye."[23] Indeed, though the Court has "had numerous opportunities in the 40 years since *Cohen* to consider the appealability of prejudgment orders in criminal cases," it has allowed immediate appeal of only three types of orders: denials of motions to dismiss on double jeopardy grounds, denials of motions to dismiss under the Speech or Debate Clause, and denials of motions to reduce bail.[24] By contrast, it has determined many types of orders are *not* appealable as collateral orders, primarily because they do not implicate a defendant's "right not to stand trial." And while the Court has not held whether a statute of limitations order is immediately appealable, it has included the statute of limitations in a list of issues that would not give rise to immediate appeal:

> Virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a "right not to stand trial." Allowing immediate appeals to vindicate every such right would move § 1291 aside for claims that the district court lacks personal jurisdiction, *that the statute of limitations has run*, that the movant has been denied his Sixth Amendment right to a speedy trial, that an action is barred on claim preclusion principles, that no material fact is in dispute and the moving party is entitled to judgment as a matter of law, or merely that the complaint fails to state claim. Such motions can be

---

[21] *United States v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263, 265 (1982).

[22] *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989).

[23] *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994).

[24] *Id.*; *see also Sell v. United States*, 539 U.S. 166, 190 (2003). It so held with regard to the first two classes of orders because "the precise right asserted was the right not to be tried," whereas the bail orders were found appealable on the ground that they would otherwise be moot after conviction. *Id.*

made in virtually every case, and it would be no consolation that a party's meritless summary judgment motion or res judicata claim was rejected on immediate appeal; the damage to the efficient and congressionally mandated allocation of judicial responsibility would be done, and any improper purpose the appellant might have had in saddling its opponent with cost and delay would be accomplished.[25]

Thus, while the Supreme Court has not directly decided whether an order denying a statute of limitations argument is an appealable collateral order, it has strongly suggested it is not. Moreover, at least five Circuit courts *have* directly addressed the issue, and all five similarly concluded a statute of limitations order is not an appealable collateral order. The First Circuit, relying on the Supreme Court's determination that denials to motions to dismiss on speedy trial grounds are not immediately appealable, concluded that "the statute of limitations is an ordinary defense and it can fully and fairly be vindicated by appeal after a final judgment."[26] The Second Circuit reached the same conclusion.[27] It looked at the same statute of limitations language at issue in this case—"[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense . . . unless the indictment is found . . . within five years"—and determined that language did not explicitly guarantee a right not to be tried because of the "except as otherwise provided by law" provision.[28]

The Third Circuit, citing *Waters* (the Tenth Circuit case on which Koerber primarily relies), conceded that in the criminal context, statutes of limitations act as "an absolute bar to the sovereign's power to prosecute," but nevertheless determined statues of limitations are more similar to the Speedy Trial Clause (which the Supreme Court has deemed not to give rise to

---

[25] *Desktop Direct, Inc.*, 511 U.S. at 873 (emphasis added).

[26] *United States v. Garib-Bazain*, 222 F.3d 17, 18–19 (1st Cir. 2000).

[27] *United States v. Weiss*, 7 F.3d 1088, 1090 (2nd Cir. 1993).

[28] *Id.*

9

appealable collateral orders) than they are to the Double Jeopardy Clause (which the Court has determined does give rise to an appealable collateral order).[29] Indeed, the court noted that statutes of limitations and the Speedy Trial Clause work in tandem, with statutes of limitations governing pre-indictment delay and the Speedy Trial Clause governing post-indictment delay.[30] These restrictions are both unlike the Double Jeopardy clause in that they are merely restrictions (and often flexible restrictions) on the government's ability to prosecute a defendant, whereas the Double Jeopardy Clause provides an all-out bar. On this basis, the Third Circuit concluded motions based on statutes of limitations, like those based on the Speedy Trial Clause, are not immediately appealable. The Sixth Circuit agreed, concluding no "right arising from the Constitution or from a statute . . . will be irretrievably lost if [the court] wait[s] to decide the statute of limitations question until the conviction—if there is a conviction—is appealed."[31] And the Ninth Circuit held similarly, determining the limitations statute "does not entail a right to be free from trial."[32]

Unlike these circuits, the Tenth Circuit has not had occasion to rule on this issue. It has, however, recognized the same principles relied on by these circuits, including the requirement that a defendant assert "an explicit statutory or constitutional guarantee of a right not to be tried" before invoking the collateral order exception.[33] Koerber has pointed to no explicit constitutional or statutory right not to be tried on stale charges. Thus, he has not shown his right

---

[29] *United States v. Levine*, 658 F.2d 113, 119 (3rd Cir. 1981).

[30] *Id.*

[31] *United States v. Davis*, 873 F.2d 900, 909 (6th Cir. 1989).

[32] *United States v. Rossman*, 940 F.2d 535, 536 (9th Cir. 1991).

[33] *United States v. Ambort*, 193 F.3d 1169, 1171 (10th Cir. 1999).

to appeal this court's statute of limitations order must be invoked now, rather than after judgment, to be vindicated.

This conclusion is not in tension with *Waters v. United States*, a Tenth Circuit case Koerber contends supports his cause.[34] In *Waters*, the court ruled that a defendant may assert a statute of limitations defense for the first time on appeal because it acts as a jurisdictional bar against untimely prosecution and punishment.[35] Koerber contends this places statutes of limitations in league with the Double Jeopardy Clause, as rights that must be vindicated, if at all, pretrial.

As an initial matter, Koerber's classification of statutes of limitations as "jurisdictional" paints with a broad brush. The Tenth Circuit has subsequently made clear that "[w]hile [it] used the word 'jurisdictional' in [its] assessment of the scope of the statute [in *Waters*], [it] focused upon its plain language and concluded that it operates as a bar to prosecution" and did "not equate the statute with the concept of subject matter jurisdiction."[36] But more importantly, the notion that a statute of limitations operates as a bar to prosecution, or even that it is jurisdictional, is different than "an explicit statutory or constitutional guarantee that trial will not occur."[37] Indeed, the Supreme Court, in delineating rights that would *not* qualify for immediate appeal under the *Cohen* exception, listed, in addition to arguments that "the statute of limitations has run," the argument "that the district court lacks personal jurisdiction."[38] Lack of personal jurisdiction would act as a "bar to prosecution" just as statute of limitations would, yet neither,

---

[34] See *Waters v. United States*, 328 F.2d 739, 743 (10th Cir. 1964).

[35] *Id.* at 742.

[36] *United States v. Cooper*, 956 F.2d 9 60, 962 (10th Cir. 1992).

[37] *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989).

[38] See *Digital Equipment Corp*, 511 U.S. at 872.

according to the Supreme Court, warrants an exception to the rule that § 1291 provides for review only of final orders.

Five circuit courts have addressed the language relied on by *Waters* to conclude statutes of limitations are jurisdictional—that "[n]o person shall be prosecuted tried, or punished"— and all five concluded that language did not constitute "an explicit statutory or constitutional guarantee that trial will not occur," and that statute of limitations orders, even if "jurisdictional," are not immediately appealable.[39] The Supreme Court, as discussed, is seemingly in accord, though it has not had occasion to directly rule on the issue.[40] Keeping in mind courts' admonition that the *Cohen* exception should be invoked only "sparingly" and "only in "exceptional cases,"[41] that it should be applied "with the utmost strictness in criminal cases,"[42] and that Koerber's arguments for expansion of the exception should be viewed "with skepticism, if not a jaundiced eye,"[43] the court declines Koerber's invitation to extend the exception to orders denying motions to dismiss (or injunctive relief) on statute of limitations grounds. Even if the Tenth Circuit were to construe Koerber's Notice of Appeal as invoking the collateral order exception to § 1291 (as opposed to proceeding solely under § 1292), the Order for which he seeks review is not immediately appealable, and therefore, absent notice from the Tenth Circuit, the court does not consider itself divested of jurisdiction.

---

[39] *Midland Asphalt Corp.*, 489 U.S. at 801.

[40] *See Digital Equipment Corp*, 511 U.S. at 872.

[41] *United States v. Martinez*, 667 F.2d 886, 890 (10th Cir. 1981).

[42] *United States v. Ambort*, 193 F.3d 1169, 1171 (10th Cir. 1999).

[43] *Id.*

### III. REQUEST FOR STAY

Koerber alternatively requests if the court retains jurisdiction that it stay proceedings pending resolution of his appeal. In reviewing Koerber's request, the court considers his likelihood of success on appeal, the threat of irreparable harm if the stay is not granted, any harm to the opposing party if the stay is granted, and any harm to the public interest.[44] The court does not believe Koerber is likely to succeed on appeal. As discussed, the court's one-sentence denial of Koerber's request to enjoin further prosecution is the only ruling, in this court's view, that was properly appealed. Koerber's request for injunction was necessarily denied given the court's conclusion that his motion to dismiss should be denied. In other words, ruling in favor of Koerber on appeal would require reversing the court's order denying the motion to dismiss, an order that is not immediately reviewable under § 1291 or § 1292. Further, even assuming the Tenth Circuit reaches the merits of the motion to dismiss, for the reasons stated in the court's July 21 Order, Koerber is unlikely to succeed on his § 3288 claim. Not only is he unlikely to succeed on the merits, waiting until the end of trial to review the Order would not cause him irreparable harm; if his interpretation is correct, the Tenth Circuit will dismiss the Indictment—the same relief he currently seeks. But were the stay granted, the government, the court, everyone involved in the forthcoming 8-week jury trial, and the public at large, who has an interest in speedy resolution of this case, would be prejudiced. This prejudice is only enhanced by Koerber's delay in seeking a stay. If Koerber believed his notice of appeal warranted a stay of this case, he should have requested one two weeks ago when that Notice was filed, rather than waiting until seven days before trial.

---

[44] Tenth Cir. R. 8.1.

## IV.     REQUEST FOR CONTINUANCE

Having concluded trial will not be stayed pending appeal, the court addresses Koerber's request that the court reconsider its grant of a 14-day rather than 90-day continuance, or, alternatively, grant an additional 60-day continuance. The arguments and facts supporting these requests are the same, and the court will address them together. It will do so while considering the following factors relevant to addressing whether a continuance should be granted: Koerber's diligence in requesting the continuance; his reason for requesting a continuance; the likelihood that the continuance, if granted, would address that reason; the inconvenience to the United States, its witnesses, and the court; and the harm Koerber will suffer as a result of the court's denial of the continuance.[45]

Koerber provides five reasons why an additional continuance is warranted. First, he contends a certified public accountant (CPA) helping him with this case needs more time to review financial summary exhibits prepared by a CPA the United States intends to call, Special Agent Angela Mennitt. Koerber does not state when he first received these exhibits. Nor is it apparent when he first learned the United States intended to call Agent Mennitt. Koerber was aware the government intended to put on these exhibits at least as early as July 17, when he met with the government to review them (and presumably earlier), but he did not request a continuance for his CPA to review these exhibits until over two weeks later, notwithstanding that he knew throughout that time that the court was making extensive arrangements for an 8-week jury trial to begin August 21, including mailing 1,000 summonses to potential jurors. Koerber has not shown his need to review this information warrants continuing the trial, especially given the timing and the lack of detail of the request.

---

[45] *See United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990).

Koerber next argues he needs more time to prepare in light of the court's June 30 ruling that the court is not bound by the Koerber I order suppressing 2009 interviews Koerber gave to investigators. Koerber contends that in these interviews, he disclosed to investigators advice given to him by attorneys, and he now needs more time to prepare to defend those statements at trial. This was the reason the court continued the trial from August 7 to August 21—to provide Koerber and his counsel with extra time to assess the implications of the potential introduction of the previously suppressed interviews at trial. Koerber has not shown why he needs yet more time to review his statements to investigators before trial. He has not shown whether (or how) these statements will even come up at trial. Nor has he shown why the possible introduction of these statements at trial warrants a 60-day rather than 14-day continuance of the trial.

Koerber also argues he needs time to prosecute his interlocutory Tenth Circuit appeal. The court denies this request for the same reasons it denied his Motion to Stay pending appeal. Koerber has not shown why his decision to appeal the court's Order now, rather than waiting until after trial, warrants continuing the trial.

Koerber's next argument is that the government recently produced discovery, some of which was previously produced, and some of which apparently was not. Koerber does not say what was recently produced, what part of it was new, when it was produced, how long he has had to review it, or how much more time he needs to review it. Without more detail, this argument does not warrant a continuance.

Last, Koerber argues he recently suffered a concussion and several broken ribs in a horseback riding accident, which has hampered his ability to assist his attorneys in preparing. The court notes that Koerber appeared in court five days after his accident and again a week later, both times seemingly interacting and working well with his attorneys. While the court is

not unsympathetic to Koerber's injuries, it concludes these injuries likely do not sufficiently impair his attorneys' abilities to prepare for trial such that a further continuance is warranted. Koerber's Motion for Reconsideration and for a Continuance is denied.

In sum, the court declines to stay or continue the trial set to begin in five days. This case and that preceding it have been pending for quite some time. Koerber was originally indicted on May 26, 2009. On August 14, 2014, the Indictment was dismissed without prejudice. On January 18, 2017, the current Indictment was returned, which, according to Koerber, involved charges, witnesses, and evidence that were "overwhelming[ly] similar" to the Indictments in Koerber I.[46] Assuming Koerber was not charged with preparing for trial while his case was on appeal or while no Indictment was pending, Koerber has still enjoyed 2,112 days to prepare for trial—1,903 in Koerber I, and an additional 209 in this case. His attorney, Marcus Mumford, has been representing him for 1,768 of those days. During that time Koerber has filed hundreds of motions, including over thirty motions in the past seven months. In short, both Koerber and Mumford have had ample time to litigate pretrial issues and prepare for trial. No further delay is warranted. Absent notice from the Tenth Circuit, trial will commence on Monday.

Koerber's Motion for Reconsideration and to Continue the Trial Date is DENIED. The court declines to acknowledge his Notice of Divestiture, and his Motion to Stay is DENIED.[47]

SO ORDERED this 16th day of August, 2017.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[46] Dkt. 78 at 29.

[47] Dkts. 166, 193.