Marcus R. Mumford (#12737)
Amanda B. Mendenhall (#15677)
**MUMFORD PC**
405 S. Main Street, Suite 975
Salt Lake City, Utah 84111
Telephone: (801) 428-2000
*Attorney for Defendant*
mrm@mumfordpc.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MOTION FOR MISTRIAL, OR ALTERNATIVELY FOR AN ORDER RESOLVING DISCOVERY AND EXHIBIT DISPUTES** |
| Plaintiff, | |
| v. | Case No. 2:17-CR-37 RS |
| CLAUD R. KOERBER, | District Judge Robert J. Shelby |
| *Defendant.* | Magistrate Judge Paul M. Warner |

Since the weeks leading up to trial there have been ongoing disputes, colloquy, rulings, reconsiderations, and regular argument with the parties and the Court regarding reciprocal discovery obligations, the admissibility of exhibits, the admission of impermissible hearsay by government witnesses and the government's repeated "leading" of government witnesses during direct examination. The Court recently remarked how "the rules matter" and that the parties and the public should be able to rely upon the rules, and should expect them to be applied "fairly" and "equally to both sides." But, the rules regarding discovery, evidence, direct examinations and the admissibility of trial exhibits have not been followed, nor have they been applied fairly and equally. As detailed below, this unfairness and shifting application of the rules has created unfair prejudice to the defense, to Mr. Koerber's due process rights, and to the degree that the fundamental fairness of the current trial proceedings has been compromised. This motion details

issues arising from (1) erroneous findings and rulings regarding reciprocal discovery (beginning on p. 2), (2) the inconsistent standards that the court has applied to defense exhibits (beginning on p. 25), and (3) impermissible examination of witnesses in the government's direct examination, which has prejudiced Mr. Koerber (beginning on p. 38). To this end, Mr. Koerber respectfully moves for a mistrial based upon the facts and legal grounds outlined below. Alternatively, if the Court finds that the prejudice to Mr. Koerber and the trial's fairness can be remedied, Mr. Koerber moves for an order making a final and fair ruling on these disputed issues, and for the specific relief detailed in each section below.

## I.        The Reciprocal Discovery Dispute

The government as repeatedly raised the issue of Mr. Koerber's reciprocal discovery obligations. In this context, the government has complained that it has not received "a single piece of paper" or a "single document" in compliance with Mr. Koerber's Rule 16 reciprocal discovery obligations and in response to the government's repeated request for reciprocal discovery in several of its Notice of Compliance filings. Also in this context, it is the government that has asked the Court to consider the reciprocal discovery issue, reaching back through Koerber I, where the government asserts that it also made repeated reciprocal discovery requests and received nothing. The government is mistaken on both accounts, and the Court's stated inclination in favor of the government's position is also mistaken, as illustrated below. Mr. Koerber has met his legally required duty under Rule 16.

### A.  Relevance of Koerber I Discovery Issues.

Koerber I established the government's tactical abuse of Rule 16, and a pattern of manipulating the discovery rules.  It also showed that Mr. Koerber complied, throughout Koerber I, with Rule 16 and his discovery obligations.  As an initial matter, Mr. Koerber has recently

established for the Court how the foundation for discovery in this entire matter began with Mr. Koerber's compliance with IRS summonses back in 2007. It is undisputed that Mr. Koerber produced, based upon agreement with the government, over **two hundred thousand pages** of "discovery" to the government via approximately 57 banker's boxes full of documents in satisfaction of the summonses.  *See e.g.* Koerber I, Doc. 95 (Sept. 15, 2010 Findings of Fact and Conclusions of Law at p. 1)[1].  This document production was reproduced as discovery in this case, by the government to Mr. Koerber's legal counsel, at his initial arraignment in Koerber I, in June 2009.  In fact, these documents (denominated from that point, by Bates # beginning with the letters FS) constituted the bulk of what the government initially characterized as 95% of the relevant discovery in this case.[2]  However, as relevant here, later in 2009 the government retracted its "95%" statement and produced another 20 boxes of "discovery" it had received from the Utah Department of Commerce.  This production was not only repeatedly delayed[3], but it also included significant material that took years for the government to address, including a significant reference to a "Rachelle Taylor" disc that both the State of Utah and FBI Agent Saxey had received in March 2008.  The government unexplainably withheld the Taylor Disc from the defense until after it had lost the privilege dispute over Mr. Koerber's 2005 "To Our Lenders" letter. This same 20 boxes, also contained approximately 27 discs which, among other things, included audio recordings and financial data – including then known recording of the Rayhar Investor Meeting Update that the government has now successful introduced in the current trial.

---

[1] It is established, that the "government" as used in Rule 16(a)(1)(C) includes both the prosecutor and the involved investigative agencies.  *See United States v. Fort*, 478 F.3d 1099, 1100 (9th Cir. 2007) (prosecutors are "deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."); *United States v. Bryan*, 868 F.2d 1032, 1035 (9th Cir. 1989) (same).

[2] *See United States v. Koerber*, 813 F.3d 1262, 1267 (10th Cir. 2016) ("by August 2009 [the government] believed that it had provided "approximately 95%" of its discovery to Koerber).

[3] *Koerber*, 813 F.3d at 1267.

Significantly, the government claimed – all the way through 2016 – that it had lost[4] that audio recording, and until the weeks leading up to the present trial, never informed Mr. Koerber otherwise. Mr. Koerber complained in Koerber I, that the government appeared to have been intentionally hiding needles in the figurative haystack of voluminous discovery – and intentionally creating impermissible delay.  The district court agreed.[5]  This is significant to the present dispute because Rule 16 reciprocal discovery obligations for a defendant are not triggered **until the government first completes all of its Rule 16 obligations**. *See e.g. United States v. Chapman*, No. CR 14-1065 JB, 2015 WL 10401776, at *22 (D.N.M. Aug. 28, 2015) ("A defendant's duty to disclose under rule 16(b) does not arise until the United States first complies with the defendant's request under rule 16(a)."); *United States v. McVeigh*, 954 F.Supp. 1141, 1149 (D.Colo. 1997)( "Compliance with such a request [under rule 16(a) ] triggers the defense obligation to provide reciprocal discovery under Rule 16(b)."); *see also United States v. Eason*, 829 F.3d 633, 638 (8th Cir. 2016) (A defendant's reciprocal discovery obligation is triggered only once the "government complies" with its obligations first); *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007) (same).

This is all significant for several reasons now requiring the Court's attention.  First, the government failed to acknowledge to this Court, during the discussion at the final pre-trial conference in Koerber II, that its prior requests for reciprocal discovery in Koerber I had been

---

[4] *Id.* at 1286.

[5] *United States v. Koerber*, No. 2:09-CR-00302, 2014 WL 4060618, at *5 (D. Utah Aug. 14, 2014), rev'd and remanded, 813 F.3d 1262 (10th Cir. 2016) ("Without this, the government might bypass speedy trial rights by dumping hundreds of thousands of irrelevant pages of so-called discovery in a defendant's lap and prolong its investigation, virtually indefinitely. This is precisely what happened here. The 20 boxes of evidence proved largely irrelevant, gave the government a headline referring to a "mountain" of evidence (Dkt. 222), and resulted in at least a year of delays before it certified that its document production was complete.")

expressly denied by Judge Waddoups[6] and that the only time Mr. Koerber was ordered to provide reciprocal discovery in Koerber I, was in May 2014[7].  Further, weeks before that deadline, Judge Waddoups held a hearing on Mr. Koerber's Speedy Trial Act motion and the government conceded that the 70-day clock had been violated. All of the prior deadlines were suspended and the Court indicated it would take the matter under consideration primarily to determine whether dismissal would be with or without prejudice.[8]  Following this hearing, on July 7, 2014[9] the government, by separate disclosure, admitted implicitly that it had not provided all of its Rule 16 discovery, and produced for the first time, an additional 1,400 pages of material it had been withholding, including *Brady* and *Giglio* material, most of which had been in its possession for years.  The district court later agreed with Mr. Koerber that this late production of Rule 16 material "was curious" and raised a strong inference of tactical delay.[10] On appeal, the Tenth Circuit affirmed the district court's findings that government's discovery practice raised "a strong inference of tactical delay on the part of the Government in its prosecution of the case."[11]

Thus, the government's argument in Koerber II, on the eve of trial, hearkening back to Koerber I, was inaccurate and failed to candidly disclose the true context of this issue.  First, Mr. Koerber had previously produced to the government a substantial volume of discovery material –

---

[6] *See Koerber I*, Doc. 256 and 257.

[7] See *Koerber I,* Doc. 450 ("The reciprocal discovery already in the Defendant's possession must be produced on or before 5:00 p.m. on June 30, 2014.").

[8] *See Koerber I*, Doc. 468.

[9] *See Koerber I, Doc.* 469.

[10] *See Koerber I*, Doc. 472 ("Most of the evidence was between one and four years old, and clearly has been in the government's possession for a long time. There was no explanation for the late production, no description of the content, no table of contents, and no index." (Def.'s Suppl. Mem. Supp. 2 [Dkt. No. 470].)")

[11] *Koerber*, 813 F.3d at 1283. ("The district court did not abuse its discretion in considering these facts…[that] the government's discovery practice raised "a strong inference of tactical delay on the part of the Government in its prosecution of the case").

which the government initially admitted was the bulk of "95%" of its discovery. <u>Second</u>, it was misleading to argue that Mr. Koerber had failed to respond to requests for reciprocal discovery under Rule 16 when: a) the district court had rejected the government's prior requests to compel reciprocal discovery until late in 2014, and b) following the only order for reciprocal discovery in May 2014, the court vacated that deadline. Third, it is a distortion of the history of this issue to omit the government's failed Rule 16 compliance through the entire Koerber I proceedings. The government, buy its own implied admissions there, and the district court's subsequent factual findings on the issue – made clear that prosecutors had never satisfactorily complied – from June 2009 through July 2014 – with its discovery obligations under Rule 16.

Under these facts, two issues are relevant.  First, Mr. Koerber did not fail, let alone establish a pattern of failure, as the government has repeatedly argued, to comply with Rule 16 obligations in Koerber I. Second, the government has an indisputable history in this prosecution of failing to disclose, of hiding critical materials in the voluminous haystack of other irrelevant discovery, and of losing or otherwise failing to provide material as required by Rule 16. These conclusions should, in all fairness, inform the court here, as appropriate context for considering any Rule 16 or other discovery disputes.

### B.  Koerber II Reciprocal Discovery History.

Because Rule 16 only creates a reciprocal obligation for Mr. Koerber once the government has complied with its obligations – it is unfair and legally inaccurate for the Court, as it has previously remarked, to imply Mr. Koerber had any reciprocal discovery obligation from the most recent indictment on January 18, 2017 through March 9, 2016 (the government's court ordered deadline for Rule 16 in Koerber II).[12] It is also unfair and inaccurate for the Court

---

[12] *See* Doc. 16, setting the government's deadline, and Doc. 20 (gov't certificate of compliance).

to imply, as it has, that Mr. Koerber had any reciprocal discovery obligation as of March 9, 2017, when – as a pro se defendant – he immediately filed (within five days of having received approximately 100 un-indexed discs, full of unorganized material, and generally un-searchable, PDF files regularly consisting of hundreds and thousands of unsearchable pages) a Motion to Compel discovery, and specific objections to the government's certificates of Rule 16 compliance.

In his motion, Mr. Koerber raised again, a new needle in the haystack approach by the government in 2017, and he cited relevant legal authority for his argument. Mr. Koerber also included in his factual recitation, the government's admission that: "There will not be a specific table of contents, however, the Bates ranges on each of the disks are labeled on the disks [sic] themselves and also on the Notice of Compliance."[13] Mr. Koerber also rehearsed how he had asked the government to identify in its unorganized and unsearchable production of discs, where his personal statements where, and where specifically mentioned *Brady* material was located. The government refused to provide those designations, and Mr. Koerber was left to manually review, one by one, each disc, and each voluminous but unsearchable .PDF file – without any direction or guidance to find the material the government clearly was aware of – and clearly intended to use at trial.  Further, the government informed Mr. Koerber that it would file a motion for a status conference, "so that the parties may better schedule their efforts" and this related directly to the discovery dispute.[14]

At the subsequent status conference on March 14, 2017, Mr. Koerber raised the issue with Judge Benson, and the Court acknowledged receipt of Mr. Koerber's discovery motion and objections to the government's certificates of compliance.  The Court also expressly informed

---

[13] *See* Doc. 24 at p. 5.
[14] *See id.* at p. 8.

Mr. Koerber that it would rule on his motion and objections, once the issue was fully briefed. Thus, again, it is unfair and inaccurate for the government or the Court to now suggest, as has been done in the last two weeks, that even as late as March 14, 2017, Mr. Koerber had any clear reciprocal discovery obligations at all.

On April 11, 2017, the issue of "reciprocal discovery" came up with Magistrate Warner for the first time in Koerber II.  The government made no motion – and raised no complaint about reciprocal discovery obligations at the time. In fact, when Mr. Koerber raised his concern about the time necessary to deal with discovery, the transcript of the hearing shows – Magistrate Judge Warner asked, "Let me ask Mr. Koerber, are you aware of reciprocal discovery responsibilities under Rule 16, the Rules of Criminal Procedure?"  To this Mr. Koerber responded, "I am generally aware, Your Honor, yes."  Then a conversation ensured where Mr. Koerber explained he had not provided any reciprocal discovery, though he intended to do so, because he was having trouble reviewing the governments Rule 16 productions. Magistrate Judge Warner responded, "Okay. Well, about how much time do you think you will need in terms of preparing your reciprocal discovery? Recognizing that I'm asking while you are still pro se."  Mr. Koerber responded, "I don't know, Your Honor" and detailed the needle in the haystack problem he was facing and that he had raised in the still pending March 14 motion and objections.  Determinative of the issue at that point, Magistrate Warner did not set a reciprocal discovery deadline, nor did he or the government suggest that Mr. Koerber was out of time – in any regard.  Instead, when Mr. Koerber candidly explained his dilemma with regard to the current condition of the government's discovery production, Magistrate Warner acknowledged the challenge and stated, "I'm assuming -- well, that's not going to be acceptable…, but I'll get back to that in a minute."  After further questioning on the issue Mr. Koerber explained, "Your

Honor, the deck was completely shuffled. I mean these disks are numbered differently, the files are organized differently, and you go from 2009 material to 2017 material…it is quite time consuming." After some additional conversation, Magistrate Warner left the issue open, and simply stated, "Okay, thank you. All right. Well, I will address the discovery issue" at a later time. More significantly, Mr. Koerber explained to the Court that it was not his preference to be proceeding *pro se*, and the topic changed to the appointment of Mr. Killpack as potential CJA counsel. Regarding an appointed attorney coming in and getting up to speed – particularly on the discovery issue, the Court stated: "I have no doubt that Mr. Killpack, and he'll seek assistance because of the amount of discovery that's in place in this case that I'm aware of, and he'll be seeking assistance and I'm more than happy to provide assistance to him. The government seems to be well stocked so to speak. They have three attorneys at the counsel table. But we'll get -- if Mr. Killpack is your desire, we'll make sure that he gets the help that he needs, research or investigation or whatever. He's entitled to that assistance or you are -- excuse me -- you are entitled to it. We'll make sure that happens." The issue of reciprocal discovery was not re-raised at the April 11, 2017 hearing. Thus it is plainly inaccurate and unfair to suggest or conclude that Mr. Koerber had failed to meet any reciprocal discovery obligation as of April 11.

On April 14, 2017, Magistrate Judge Warner held another hearing. It was at this hearing that the Court appointed Ms. Skordas to be Mr. Koerber's CJA attorney. The issue of reciprocal discovery was not raised by the Court or by the government. In fact, it was at this time that Magistrate Warner informed Mr. Koerber that his pending and fully briefed discovery motion and objection to the government's prior certifications would likely be dismissed without prejudice, to give Ms. Skordas time to review issues and advise Mr. Koerber. On this topic, the transcript of the hearing reveals that the Court further informed Ms. Skordas to "determine what

you think is a reasonable time and money approach to the case based on your experience, which is substantial" and that the Court would support "the necessary resources to do this case in a professional way. And that includes if you need investigative help, if you need legal assistance, if you need research attorneys and so forth." So, once again, it is unfair and inaccurate to suggest, as has been done, that Mr. Koerber had missed some reciprocal discovery obligation – or failed to respond under Rule 16, as of April 14, 2017. As of this time, Mr. Koerber's motion and objections were still pending, the Court acknowledged the discovery review problem occasioned by the government's needle and haystack approach at Rule 16 production, and the Court further acknowledged the time that Mr. Koerber's newly appointed counsel would need to review the case and make a schedule.

Just under one month later, on May 12, 2017, the parties filed a stipulated motion to "govern the production and potential use of documents" and implicitly acknowledged that Ms. Skordas needed the government to reproduce materials in a form and format that made searching possible in a Concordance database.[15] This is significant for several reasons. First, it's the first time the issue of the manner and method of the government's prior production of discovery had been addressed since a) Mr. Koerber's discovery motion had been dismissed without prejudice; b) that the parties addressed the discovery issue; c) since Magistrate Judge Warner had acknowledged the problems Mr. Koerber had faced in utilizing the government's production of unindexed, unsearchable discs back in March 2017. Second, the Court has recently ruled that producing discovery in a form that is not digestible – does not comply with a parties discovery obligation (this argument is addressed in detail below). Thus, given that neither Mr. Koerber nor his newly appointed counsel had meaningful access to the government's Rule 16 production, it is

---

[15] Doc. 70.

unfair to suggest Mr. Koerber had failed to provide timely reciprocal discovery as of May 12.

On June 5, 2017, by and through counsel, Mr. Koerber again challenged the

government's compliance with Rule 16.  The issue was presented squarely:

> Pursuant to Federal Rules of Criminal Procedure 16(a)(1)(B), the government
> must disclose all of Mr. Koerber's written or recorded statements. The
> government needs to provide a copy of any recorded statements as well as any
> written statements.3 The discovery that has been provided to the defendant
> consists of load files of approximately 300,000 documents that have been
> uploaded into Concordance. The search term "Koerber" cannot be expected to
> meaningfully cull the documents to those that contain Mr. Koerber's written
> statements. The discovery also consists of a shoe box full of CD's that contain
> audio recordings. There are literally hundreds if recordings. There is no index.
> Mr. Koerber cannot discern from the file names if any of them contain his
> recorded statements.[16]

The government's response is significant to the now pending issues.  In its opposition

memorandum, the government stated,

> The United States has already provided this material to Defendant. It is not the
> United States' obligation to categorize evidence to assist the defense. It is not the
> United States' fault that Defendant "cannot discern from the file names if any of
> them contain [Defendant's] recorded statements." Def. Motion, ECF No. 88, at 4.
> The Defendant has had years of delayed litigation to review these statements.
> While it is true that discovery is expansive, the CDs that contain audio recordings
> are labeled where applicable as the particular seminar where Defendant spoke.[17]

The legal consequence of this statement is significant.  As the Court now knows, one issue that

has now arisen at trial, is that this statement was clearly false – regarding at least the Rayhar

Investor Update audio recording, that was not described on the label of the disc or on the

certificates of compliance. On this important issue, the government clearly obfuscated.  This is

no small issue. That recording includes central statements of Mr. Koerber that the government

has known for years – where it was located in the discovery, and the significance to the

government's case, and for the preparation of Mr. Koerber's case-in-cheif.  Further, the

---

[16] Doc. 88 at 4.
[17] Doc. 98 at 4.

government knows that **it previously represented to the court and to Mr. Koerber** that the audio of that specific recording was lost – and that there was no transcript of that material in the government's possession, so there is no reason Mr. Koerber would have been looking for that material specifically. As the Ninth Circuit has poignantly observed regarding these very kinds of issues: "One of the objectives of Rule 16 is to eliminate the idea that a criminal trial is a sporting contest in which the game of cat and mouse is acceptable. When a prosecutor discovers material mistakes in police reports already turned over to the defense, the prosecutor must take appropriate steps promptly to notify the defense of the mistakes. This responsibility is part and parcel of Rule 16(c), which imposes upon the government a continuing duty to disclose." *United States v. Howell*, 231 F.3d 615, 626 (9th Cir. 2000).

Regarding the Rayhar Legacy Investor Update recording, the government clearly had an obligation to notify Mr. Koerber of its prior mistaken representation that the recording was lost, but now is found – and that the transcript of the recording exists and was in the haystack of discovery previously provided.  But, as the Court now decides the disputed issues here, midtrial, it is important to re-examine the relevant law on the whole approach taken by the government, which clearly contravenes the purpose and intention of Rule 16.  As the Court has recently counseled, "rules matter." And here they must be applied first to the government – because that is what Rule 16 requires.  While it is true, as the government stated above, that its obligation does not consist of helping Mr. Koerber identify documents – its obligation clearly requires that it not *intentionally hinder, obfuscate or delay* his search. Such an approach, as taken here, is indefensible, because unlike cases such as *United States v. Richards*, 659 F.3d 527, 545 (6th Cir. 2011), there is ample "evidence that the government acted in bad faith" previously, and even the Tenth Circuit has disagreed with the government's claim that it previously acted in good faith.

*See Koerber*, 813 F.3d at 1285 ("We disagree."). Here, the government has been found in Koerber I, and based upon its response above, in Koerber II, "attempting to obfuscate the relevant documents by burying them without direction under an avalanche of irrelevant materials." *Richards*, 659 F.3d at 545. And, lest the Court be inclined to attribute inadvertence or unintentional error to the government, the record of government behavior has already established that prosecutors have strategically employed the tactic of "dumping hundreds of thousands of irrelevant pages of so-called discovery in [] defendant's lap and prolong[ed] its investigation, virtually indefinitely." *Koerber*, 2014 WL 4060618, at *5 ("This is precisely what happened here."). Judge Waddoups conducted several evidentiary hearings and concluded that "the discovery issue [in Koerber I] was much larger than just that material." *Id*.

Thus, when looking at the present circumstances, mid-trial in Koerber II, unlike cases such as *United States v. Warshak*, 631 F.3d 266, 296–97 (6th Cir. 2010), Mr. Koerber has not been provided with an index, a table of contents, or even descriptions or categories along with Bates #s, even – as the record has now been established – up until the first week of trial.  Ms. Skordas previously certified to the Court that even into July the defense was having trouble even accessing the government's purported Rule 16 production of discovery, and it was still producing trial material.[18]  Other appellate courts have warned of discovery tactics like what the government has employed here, and Mr. Koerber challenged the completeness of the government's Rule 16 obligations beginning in March and continuing through to the trial. This is legally significant. In *United States v. Skilling*, the Fifth Circuit rejected the defendant's claim of discovery abuse after the government had allowed more than a year's access to the discovery prior to trial, the defendant had more lawyers than the government working on the discovery, and

---

[18] Doc. 117.

the government provided "indices" and "hot documents" and all of the discovery was "electronic and searchable." 554 F.3d 529, 577 (5th Cir. 2009), *aff'd in part, vacated in part*, 561 U.S. 358 (2010). But, in *Skilling*, the court warned that "evidence that the government 'padded' an open file with pointless or superfluous information to frustrate a defendant's review … might raise serious *Brady* issues" and "[c]reating a voluminous file that is unduly onerous to access might raise similar concerns." *Id*. That is exactly what has happened here – in both Koerber I and II.

In fairness, the Court must also consider that after the February 2017 arraignment, as pointed out in Mr. Koerber's March 14, 2017 motion, the government provided a letter stating that it was "disclosing" to Mr. Koerber for the first time that at a "pre-trial interview prior to the trial of the case *United States v. Jason Vaughn*"[19] and a statement made in that interview by an individual named "Val Pendleton" appeared to be exculpatory regarding "the returns Founder's Capital was paying" as being "possible" and "realistic." However, the government has refused, even up to the present day, to provide Bates # or date material for this *Brady* disclosure. In actuality, what the government did initially was produce 100 discs with no organization, no directions, saying to Mr. Koerber, essentially: go fish. Because of this, the parties have stipulated, that it was not until mid- to late-June that Mr. Koerber's attorney's had access to the Court approved Concordance database prepared by Mr. Eric Wheeler and his company Trial-Tech. Thus, the government's Rule 16 disclosures were hardly full disclosures– and in reality

---

[19] Significantly, this disclosure constituted another admission of prosecutors having previously mislead both Mr. Koerber and the Court regarding the government's *Brady* production.  The trial of Jason Vaughn ended with his acquittal on March 31, 2014.  Thus, this information from an interview with Val Pendleton clearly took place before then.  However, the same prosecutors in the Vaughn case, certified to the court in Koerber I, on April 30, 2014; and again on May 9, 2014 and finally on May 30, 2014 that it had provided all discovery to Mr. Koerber – including *Brady* and *Giglio* material.  See 02:09-cr-00302, Dkt. 470 ("[T]he government has "double check[ed] its files to ensure that all discovery had been provided" (Dkt. 431 at 11), that Defendant "has access to all discovery in this document-intensive case" (Dkt. 437 at 9) and that "the United States has provided and continues to provide full discovery to the Defendant" (Dkt. 459 at 4, 6).)

were more like an invitation to dive into a haystack looking for a needle – that the government already knows exists, but refuses to point out. "It should go without saying that the government may not hide *Brady* material of which it is actually aware in a huge open file in the hope that the defendant will never find it. These scenarios would indicate that the government was acting in bad faith in performing its obligations under Brady." *Skilling*, 554 F.3d at 577.

Finally, on this point, Magistrate Judge Warner denied Mr. Koerber's motion to compel discovery raising these issues, by saying "Nothing in the text of the rule requires the government to organize Mr. Koerber's statements in a digestible format. Moreover, Mr. Koerber fails to cite any law, let alone Tenth Circuit case law, extending the government's obligations under Rule 16 beyond making Mr. Koerber's statements available to the defense."[20] Judge Warner's conclusion is inaccurate because Mr. Koerber had raised the above authority already. But most significantly, the Court has now, on its own, revisited the issue – and applied an unfair double standard.

During this past week, the Court repeatedly stated that Mr. Koerber had not complied with his obligation to produce Court ordered discovery to the government – when, in fact, he produced it via Google Drive – which he had previously been doing without objection or protest from the government.  Mr. Koerber, by the end of last Saturday, produced all of the material in his possession that he intends to use in his case-in-chief, and all the material he reasonably anticipated using to impeach government witnesses on cross-examination – as the Court had ordered. But, last Friday, after the government explained it had an internal "policy" that prohibited the use of Google Drive – the Court ordered the parties to work out the issue.  The parties did, and on the following Monday morning, after exercising diligence, the defense also produced to the government physical discs with all the data previously provided on the Google

---

[20] Doc. 124 at 5.

Drive by the Court's Saturday night deadline. But, the Court noted – in contrast to Judge Warner's prior ruling regarding the government's production – that the defense production was ineffective, since it was not in the format requested by the government, and chastised Mr. Koerber's attorneys for having failed to meet the Court imposed deadline. This is a troubling and prejudicial double standard. Mr. Koerber has repeatedly brought to the Court's attention his struggle to identify the government's material in the haystack of voluminous unorganized discovery – and the Court has said "[n]othing in the text of the rule requires the government to organize Mr. Koerber's statements in a digestible format" and has refused his request to address the issue because he failed to "cite any law, let alone Tenth Circuit case law, extending the government's obligations under Rule 16 beyond making Mr. Koerber's statements available to the defense."[21] Yet, in the middle of trial, the Court has now adopted a different and opposite standard when applied to Mr. Koerber Rule 16 obligations – by stating essentially that when Mr. Koerber failed to provided material in "digestible format" the production was not sufficient for Rule 16. Thus, the Court inconsistently implemented a new requirement, mid-trial, clearly requiring that Mr. Koerber go "beyond making [material] available to the [government]" but excusing the government's repeated failures to do the same. As the Court has said, the "rules matter" and they should apply equally – and fairly. Under this standard, if the rules as applied to Mr. Koerber, are applied to the government, there is still no complete Rule 16 disclosure by the government and thus no trigger for Mr. Koerber's reciprocal discovery obligation. Even if the Court were to look past its inconsistent application of how material is to be produced, it is beyond dispute that Mr. Koerber did not have full access to the government's production until mid-June, which was more than three months past the discovery deadline – and yet the Court

---

[21] Doc. 124 at 5.

also repeatedly denied Mr. Koerber's request for more time to review discovery and to prepare

his own discovery and exhibits.

### C.  Mr. Koerber Has Satisfied His Reciprocal Discovery Obligations.

The first issue that must be determined is *when*, if ever, did Mr. Koerber have reciprocal

discovery obligations under Rule 16.  Clearly, until at least Magistrate Judge Warner's order on

July 10, 2017, Mr. Koerber was challenging the sufficiency of the government's purported

compliance with Rule 16. Even then, any reciprocal discovery obligation was no triggered until

the week before trial, or even at trial, based upon a fair application of the Court's recent ruling as

applied to the defense, that producing discovery in a format that is not "digestible" by the

opposing party, amounts to non-compliance, the government's failure through the last week

before trial, and including some disclosures after the start of trial, to provide any index, or named

identification of Mr. Koerber's statements (i.e. the Rayhar Legacy Recording) and the

designation of the portions of statements the government planned to use in its case-in-chief (as

per Rule 16(a)(1)(B)(i) and (ii) which specifically includes "the portion of any written record

containing the substance of any relevant oral statement…if the defendant made the statement in

response to interrogation by a person the defendant knew was a government agent" (i.e. the final

selections or clips from Mr. Koerber's February 2009 interviews).

The second issue the court must determine is *what material* is included in any reciprocal

discovery obligation imposed on Mr. Koerber.  If Mr. Koerber had a reciprocal discovery

obligation as of mid to late August, his obligation was to timely produce material a) in his

possession, b) that he intends to produce at trial, c) for use in his case-in-chief. See *United States

v. Medearis*, 380 F.3d 1049, 1057 (8th Cir. 2004) ("[T]he requirement of reciprocal pre-trial

disclosure under Rule 16(b)(1)(A) includes only documents which the defendant intends to

introduce during his own case-in-chief"); *United States v. Moore*, 208 F.3d 577, 579 (7th Cir. 2000) (Same).  The Court recently commented that Mr. Koerber's prior reference to *Medearis* and the "Advisory Committee Notes to the 1974 Amendments" to Rule 16 may be inapposite because of the realities of things like email databases that were clearly not at issue in 1974.  But, the reference to the Advisory Committee Notes relates to the fact that disclosure is limited to evidence a defendant intends to use in his "case-in-chief" not the type of evidence involved. *Id*. at 1057 ("Rule 16(b)(1)(A) includes only documents which the defendant intends to introduce during his own case-in-chief.")  This is the plain language of the statute, and Mr. Koerber has diligently searched and found no countervailing authority on this point.

The third issue the court must determine is the relevant deadline for Mr. Koerber's reciprocal discovery production.  Neither the statute nor any federal appellate precedent sets a specific deadline for timeliness on a Rule 16 disclosure requirement, particularly for reciprocal discovery.  Here, both the government and the Court have repeatedly referenced a mention by AUSA Walz during the August 11, 2017 hearing before Magistrate Judge Warner, that the government intended to make a motion to exclude all defense exhibits at trial due, inter alia, to a failure to produce reciprocal discovery.  But, omitted from that reference is the fact that Judge Warner refused to hear the issue, instead advising the parties that any such motion needed to be filed with Judge Shelby.  Also omitted is any acknowledgement that after this time, the government filed no such motion and therefore Mr. Koerber was never given advance notice and opportunity, as per the relevant rules, to address any such request for relief.  It is true that the government made requests for reciprocal discovery – but no motion to compel a deadline or to impose sanctions was ever made before trial.  Mr. Koerber argues separately below, his subsequent mid-trial motion on the issue, and the authority he relies on there, but here the point

is that "the rules matter" and they should be applied equally.  When the government made no

such motion before Judge Warner, and in fact Judge Warner refused to address the issue – and

when the government made no such motion to Judge Shelby – there was simply no pending,

pretrial deadline for reciprocal discovery.  None is discussed in any of the trial orders, or any of

the pre-trial minute entries.  Mr. Koerber will deal separately with the issue of designating

defense exhibits below, but on this point, there is simply nothing in the law or in the record of

this case that ever established a hard and fast pretrial deadline for Mr. Koerber's Rule 16

reciprocal discovery obligation – if it was in fact, ever triggered.

It was not until August 18, 2017 (three days before the scheduled trial) that the

government raised the issue by oral motion. *See* Doc. 204. In response to the government's

complaint that it had not received reciprocal discovery, the Court noted "there are court ordered

deadlines for the exchange of information in place, and if the parties wish to seek relief from

court ordered deadlines, they should file a motion to do so." *Id*. ("The court further states that the

rules will be enforced equally with both sides and the matters will be taken up on a case by case

basis."). Not insignificant, is the fact that at this August 18, 2017 hearing the government

provided the final "selections" of Mr. Koerber's statements it intended to use at trial – which is

expressly part of its Rule 16 discovery obligations, see Rule 16(a)(1)(B).  Thus, it is troubling

that the government and the Court would construe, as of that date, that Mr. Koerber had

unfulfilled reciprocal discovery obligations under Rule 16, when the government's performance

and the Court record make clear that the trigger for Mr. Koerber's obligation was not yet in

place. *See e.g. Chapman*, 2015 WL 10401776, at *22; *McVeigh*, 954 F. Supp. at 1149; *Eason*,

829 F.3d at 638; *Fort*, 478 F.3d at 1102.  Finally, the Court later ruled Mr. Koerber's objections

to introduction of selected recordings of Mr. Koerber's statements as "untimely," see Doc. 223,

without acknowledging that these statements, clearly required by Rule 16, and clearly the subject of the prior Court ordered deadline of March 9, 2017, were not produced until well after March 9, 2017 – and therefore well after the "rule" and "court orders" that the Court has said would be enforced fairly and equally for both sides. And, as argued below, the Court's error is one of its own making, given that Mr. Koerber had repeatedly requested a continuance prior to trial for dealing with these very issues, Mr. Koerber's prior counsel had certified to the Court that she was not prepared for trial and could not be reasonably prepared due in large part to these discovery issues – including exhibits – and Mr. Koerber himself submitted an ex parte, sealed declaration to the Court explaining that he had provided potential reciprocal discovery material to his attorney for review and advice back in April, and that despite diligent effort of he and his, they still had not had time or opportunity to completely review discovery in the Concordance database, or to review government exhibits, or to prepare defense exhibits. The authority cited below makes clear that prior to considering suppression or exclusion of evidence, and prior to deciding upon a remedy, e.g. allowing the government to produce late and untimely provided clips or selections of Mr. Koerber's statements, it was required to consider a continuance of the trial, in advance.

Nevertheless, in light of all the above, on Friday, August 25, 2017 the Court ruled that it was allowing Mr. Koerber to produce his reciprocal discovery and his trial exhibits no later than the end of the day on Saturday, August 26, 2017, and concluded that there would be no significant prejudice to the government – due to the amount of time still remaining in its case, and prior to Mr. Koerber putting on his case-in-chief. Mr. Koerber has since certified directly, and via counsel, without contrary argument by the government, that he uploaded all this material in accessible form (including all material in his possession that he then intended to introduce in

his case-in-chief) to the previously designated Google Drive (as had been done in the week leading up to trial, and the first few days of trial, without objection by the government)[22] and in coordination with the government also produced to it physical discs with the same material before the start of the trial day on Monday, August 28, 2017.  The Court however, has concluded that Mr. Koerber did not meet the Court imposed deadline because production to the Google Drive was not sufficient – because it was unusable by the government. Why is it unusable? Because the government has an internal privacy policy that it neglected to inform the Court or Defendant about – until after the commencement of trial.[23]

Thus, the Court is currently in an inconsistent position, and an unfairly prejudicial position for Mr. Koerber. Either Magistrate Judge Warner was correct in ruling that "[n]othing in the text of the rule [Rule 16] requires" production in "a digestible format" and nothing in the Rule requires anything more than making the material "available" in whatever form, format, structure and order – or, the Court is correct in concluding that production that does not result in meaningful access is no production at all. If Magistrate Judge Warner is correct – Mr. Koerber's Saturday, August 26 production is plainly sufficient if the same "rule" is going to apply fairly. If the Court's subsequent rule is correct – Mr. Koerber was entitled to a continuance on his multiple motions – including his motions to compel, and in any event, his Rule 16 reciprocal

---

[22] In fact, there is no dispute that Mr. Koerber had already produced, as of August 22 and August 23, a comprehensive defense exhibit list, and almost all of the material later produced by the Saturday August 26, 2017 court imposed deadline.

[23] The Court, in fairness, must also mitigate the government's claim of any prejudice for two additional reasons. First, upon direct questioning, AUSA Walz admitted in colloquy with the Court that he had not yet been able to identify substantial prejudice.  Second, the government's protest is hollow – for example – during the recent examination of government witness Dean Hamilton, the government introduced a purchase contract – from the Franklin Squires material produced back in 2007 – only to protest when Mr. Koerber's attorney sought to introduce impeachment material and additional contextual documentation from the exact same file that has been in the government's possession for at least 10 years, and from which the government had to pull its own exhibits.

discovery obligations were not triggered by the government production of discovery that – to this day, have not completely identified the material the government intends to produce at trial.[24] But the Court denied Mr. Koerber's motion to compel on grounds that he "fail[ed] to cite any law, let alone Tenth Circuit case law, extending the government's obligations under Rule 16 beyond making Mr. Koerber's statements available to the defense."[25] In either scenario, and based upon the full description presented above, there is no basis to conclude that Mr. Koerber is not in compliance with all of his Rule 16 reciprocal discovery obligations.

### D.  Mr. Koerber Has No Obligation to Produce Impeachment Materials or Materials Used to Refresh a Witnesses Recollection.

In several instances at trial over the last two weeks, and during several exchanges with the Court during trial, the alleged timeliness of defense disclosures of email documents used by defense counsel either to refresh a government witness's recollection or for purposes of impeachment, has been raised or called into question by the government and the Court. But, this is a mistake and is the application of the wrong legal standard[26] which has also impermissibly infringed on Mr. Koerber's Sixth Amendment right to confront the government's witnesses. Even when documents are in a defendant's possession, he is not required to produce them if they are only used for cross-examination of government witnesses. *See United States v. Eason*, 829 F.3d 633, 638 (8th Cir. 2016) ("Thus, the fact that defense counsel did not turn over the video to the government prior to trial is not grounds to prohibit the defense from using the video for impeachment purposes."). Several courts have recognized this same principle. *See United States*

---

[24] Even today, the government has produced, yet again, additional designation of Mr. Koerber's alleged written statements as Exhibits 89, 89a and 89b) which are portions of Mr. Koerber's written statements that have been in the government's possession for at least ten years.
[25] Doc. 124 at 5.
[26] "Applying the wrong legal standard is an abuse of discretion." *United States v. Hasan,* 609 F.3d 1121, 1127 (10th Cir.2010)

*v. Gray-Burriss*, 791 F.3d 50, 57 (D.C. Cir. 2015) (questioning district court's discretion to

exclude cross-examination evidence under reciprocal discovery doctrine "at all" given the limits

of the case-in-chief distinction. "Rule 16 requires the defendant, having secured disclosure from

the government, to disclose in turn certain items that "the defendant intends to use ... in the

defendant's case-in-chief at trial." Fed.R.Crim.P. 16(b)(1)(A)(ii). Here, however, the court barred

the defense from using the excluded contract "for any purpose," including impeachment and

refreshing a witness' recollection during the *government's* case-in-chief. 11/20/2012 Tr. at 117.

Thus, the sanction reached uses of the evidence that may not have triggered a reciprocal

discovery obligation under Rule 16 in the first place. *See also United States v. Hardy*, 586 F.3d

1040, 1044 (6th Cir. 2009) (only excluding evidence intended to be presented in case-in-chief).

Other district courts in this circuit have explained:

> A defendant's obligations under Rule 16(b)(1)(A) apply only to evidence that he
> or she "intends to use ... in the defendant's case-in-chief at trial." Fed.R.Crim.P.
> 16(b)(1)(A). In *United States v. Harry,* No. CR 10–1915, 2014 WL 6065705
> (D.N.M. Oct. 14, 2014)(Browning, J.), the Court defined the term "case-in-chief"
> to mean the part of a trial during which a party presents evidence to support a
> claim or defense, and after which it rests. 2014 WL 6065705, at *6 ("The Court
> concludes that rule 16(b)(1)(A)'s drafters intended for the word 'case-in-chief' to
> have a more restrictive meaning—the more traditional 'part of a trial in which a
> party presents evidence to support the claim or defense.' " (quoting *Black's Law
> Dictionary* 224 (9th ed.2009))). The Court, thus, concluded that evidence used in
> a party's case-in-chief "refers to evidence that a party presents between the time
> that the party calls its first witness and the time the party rests," **and not to
> evidence that a party introduces while cross-examining the other party's
> witness**. 2014 WL 6065705, at *10.

*United States v. Chapman*, No. CR 14-1065 JB, 2015 WL 10401776, at *23 (D.N.M. Aug. 28,

2015) (emphasis added). Further, for use on cross-examination, evidence used for impeachment

is admissible in a broader context than express or direct impeachment.  "[I]n determining

whether 'statements' may be used for impeachment purposes, it is not necessary that the

statement be a flat contradiction of the testimony at trial, and that the omission from the reports

of facts related at the trial, or a contrast in emphasis upon those facts, may be material to the defendant's ability to properly conduct cross-examination testing the credibility of the witness." *United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976). Thus, the Court is outside both Rule 16 and the Sixth Amendment to prohibit impeachment evidence that is relevant and admissible under Rule 402, Rule 607 and Rule 611(b). *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (Sixth Amendment guarantees, among other rights, the ability to introduce impeachment statements into evidence, "to impeach, i.e., discredit, the witness"). Further, Mr. Koerber is entitled by Rule 612 to have any written statement of a government witness produced, he is entitled to cross-examine a government witness about a prior written statement, and he is entitled "to introduce in evidence any portion that relates to the witness's testimony." Rule 612(b). *See also Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."). It is simply indisputable that Mr. Koerber has the right to introduce "extrinsic evidence" to impeach or to show bias and by denying this right, the Court has strayed from Sixth Amendment guarantees as well as the Rules of Evidence. *United States v. Abel*, 469 U.S. 45, 51 (1984).

Finally, as part of the discovery produced to the government by Mr. Koerber on August 22, August 23, August 26 and August 28th, a collection of emails that Mr. Koerber intends to use during his case-in-chief was produced to the government. Because the government complained it could not readily access the emails as formatted, Mr. Koerber agreed to re-produce the same materials in searchable PDF in advance of each government witness, for whom emails had been produced, identified at least a day in advance. As a courtesy, Mr. Koerber has also, e.g. with

government witnesses Garth Allred, also produced impeachment emails – that are not intended to be used by Mr. Koerber in his case-in-chief, and are not therefore subject to advance disclosure. However, the government as now requested the same emails for each government witness as of full production of witness statements in the defenses' possession is required.  But Rule 16 specifically excludes such statements from Mr. Koerber's required disclosures. Rule 16(b)(2) provides: "Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of … (B) a statement made to the defendant, or the defendant's attorney or agent by: (i) the defendant; (ii) a government or defense witness; or (iii) a prospective government or defense witness."

## II.     Defense Exhibits

By August 23, 2017 Mr. Koerber had provided the government with notice and descriptions of most trial exhibits he intends to introduce in his case-in-chief.  Also on August 23, 2017, Mr. Koerber filed a motion (Doc. 212) for the Court to accept his Defense Exhibit List and to allow him to use materials and designate such materials as defense exhibits for the purpose of cross-examining government witnesses. On August 25, 2017 the Court, in partial response to Mr. Koerber's motion found that any prejudice to the government would be ameliorated by 1) the length of time still left in the government's case and the time before Mr. Koerber begins his case-in-chief, 2) the fact that a significant portion of the exhibits derive from material that the government received from Mr. Koerber back in 2007 and other material in the government's possession over the last eight years, and 3) the fact that the government could not articulate any particular prejudice to the late notice of Mr. Koerber's defense exhibits.[27] As

---

[27] The Court has repeatedly stated that a party that cannot meet deadlines has a mechanism, per the rules, to ask for extra time before the expiration of the rule or court ordered deadline.  It is worth pointing out here, that Mr. Koerber has repeatedly and consistently expressed concerns

described above, the Court then ordered that Mr. Koerber would be allowed until the end of the

and asked for additional time, on the record, regarding the time he would need to be prepared for trial, including his express description of the challenges he faced in preparing trial exhibits for his defense – and particularly given the Court's approach to his legal representation and denial of Mr. Mumford's continued CJA appointment after eight years litigating as the sole defense attorney for Mr. Koerber in this matter from mid-2009 to 2017. Mr. Koerber addressed this issue with Judge Furse on February 16, with Judge Benson on March 14, with Magistrate Judge Warner on April 11 and April 14, and with the Court via written certification from CJA Counsel Rebecca Skordas on July 5 (Doc. 117); and via written certification from Pro Bono Counsel Marcus Mumford on August 4 (Doc. 166) and the August 4 filing followed by a candid and thorough ex parte, sealed declaration from Mr. Koerber on August 10 (Doc. 183) showing that he had been working diligently from February through April as a pro se party, and from April 14 onward with appointed counsel – including the fact that he had provided Ms. Skordas with access to all of his known defense material via electronic Google Drive, and yet because of the time limitations imposed on Ms. Skordas and the other work she was engaged in, as of August she still had not made time to work with Mr. Koerber to identify even one defense trial exhibit, through no fault or strategy or failing of Mr. Koerber. In denying Mr. Koerber's request for a continuance, the Court omitted any consideration of Mr. Koerber's description of the problem he was having preparing exhibits, meeting the deadline for preparing exhibits, or any legal basis for denying a discrete and detailed request for more time to prepare defense trial exhibits. *See* Doc. 196 at 15. The Court examined five other grounds for the requested continuance, including Mr. Koerber's complaint about untimely government discovery (*which contrary to the Court's recitation in its order denying a continuance, described in detail the number of pages provided, the number of documents provided and the age of the documents at issue and the docket number for the government's certificate of compliance describing the documents at issue*), but omitted to address Mr. Koerber's detailed 163 word and 174 word paragraphs describing the reason he needed more time, part of his 13 page detailed declaration, which described the problems that did in fact arise at trial regarding the Rayhar Legacy and other Isom recordings, and the delayed government discovery discussed above regarding Rule 16 obligations. *See* Koerber Decl. at p. 5. Mr. Koerber also described the extra time needed for witness interviews – which also presented, in detail, the reason more time was needed which relates directly to the ability of a defendant to prepare and identify trial exhibits in his defense. Mr. Koerber further described the fact that staff employed with assurances of CJA compensation from Ms. Skordas for document and discovery review had not been paid – which further delayed discovery review and exhibit preparation and cast doubt on the Court's prior repeated assurances while adhering to the expedited trial schedule that it would provide the resources needed to ensure defense preparation was not hindered by unreasonable or unfair financial limits. Finally, Mr. Koerber provided a detailed description of the amount of time and effort being put in daily on his defense preparation. The Court omitted any reference to all of these considerations when it continued to deny the time Mr. Koerber requested for trial preparation. This omission is a compounding of the Court's repeated error in continuing to attribute the time Mr. Koerber has been aware of the allegations – and the discovery materials previously produced – to all legal counsel, and Mr. Koerber himself, as a reason for denying a continuance. *See United States v. DeWilliams*, 85 F. App'x 154, 158 (10th Cir. 2004) (Unpublished) (The court's conclusion that "knowledge of discovery given to prior counsel, implied that additional preparation time" was not necessary, "was in error.").

day on Saturday, September 26, 2017 to provide any additional notice of exhibits and related materials that had not yet been disclosed.  Mr. Koerber did this, and provided a small number of additional exhibits and materials that he intended to use in his case-in-chief, and went further and provided notice and designations of documents (mostly archived email messages) that Mr. Koerber knew he would likely use as impeachment material during cross-examination.  Mr. Koerber communicated with the government on Saturday and Sunday about this production, and on Monday morning delivered to the government physical discs with the same information.  The Court has since criticized Mr. Koerber for not timely complying with the Saturday deadline, because the physical discs were not produced until Monday morning. Omitted, however, from the Court's explanation of untimeliness is the fact that the material was provided via Google Drive, which Google Drive had been the method of providing documents to the government up until Friday August 25, without any prior objection or notice from the government. Also omitted was any distinction between what had already been provided as of August 22 and August 23 without objection from the government. Instead the Court focused on the collection of archived emails derived from old hard-drives containing data from back in 2004 through 2008. Mr. Koerber provided all of these emails in a standard Microsoft Outlook format (which is the native format of the data) and promised to provide PDF versions of particular messages to the government as soon as he had the same in his possession – and has done so, through to this date. Nevertheless, the Court has periodically accepted and excluded the use of emails from this production (*see* e.g. 229 "The court does not allow Defendant to used [sic] proposed exhibits 579-589") citing its finding of untimely production. The fact that Mr. Koerber was prevented from using some of the emails at issue for cross-examination of Mr. Isom, and the ones that were allowed were not admitted into evidence – based upon untimeliness – is fundamentally unfair

and contravenes Rule 16, the Federal Rules of Evidence, and Mr. Koerber's Sixth Amendment rights as already outlined and based upon the legal authority already specified above.  Further, the fact that Mr. Koerber has been consequently prohibited from preparing cross-examination of government witnesses, on a day to day basis, with any certainty as to how the Court is going to rule on this matter has further made the trial proceedings unfair and prejudicial for the same reasons argued above.

**A.  The Court Should Definitively Rule on Mr. Koerber's Ability to Use Existing Designated Exhibits, and to Designate New Exhibits on Cross-Examination.**

As the uncertainty and inconsistency of the Court's rulings on the above issues became more of a prejudicial issue at trial, on Tuesday, August 29, 2017 during the middle of the trial day, Mr. Koerber drafted and his legal counsel reviewed and filed a supplemental memorandum on Rule 16 and related issues, to assist the Court in its rulings (*see* Doc. 220).  Mr. Koerber re-raises the law and argument outlined therein as grounds for declaring a mistrial. Seperately, Mr. Koerber argues in the alternative that the Court should definitively rule on the issue and to correct its prior rulings before any additional prejudice accrues.  Respectfully, the Court has inconsistently applied rules, and used the wrong legal standard for dealing with the exhibits at issue.  Mr. Koerber summarizes the law and argument he is requesting the Court's review and ruling on here:

1) Reciprocal Discovery and Sanctions (if any).

2) Defense Exhibits for Cross-Examination, and Introduction Into Evidence.

3) Defense Exhibits for Mr. Koerber's Case-in-Chief, and Sanctions (if any).

Regarding this first issue, Mr. Koerber has thoroughly outlined the reciprocal discovery issue above, and for the reasons argued there, Mr. Koerber believes he has in good faith

complied with any reciprocal discovery obligations, and no sanctions are needed or appropriate.

<u>Regarding this second issue,</u> Mr. Koerber has outlined above the applicable rules and legal authority making clear that Mr. Koerber has no legal obligation to give notice of cross-examination material that he does not intend to use in his case-in-chief, and that he may by rule and by Sixth Amendment right, present previously undisclosed material and introduce into evidence, impeachment, bias and contextual documents as it relates to the government's direct examination of witnesses.  The government has not provided any contrary authority, and the Court has referenced none in its discussions, showing that Mr. Koerber has any affirmative obligation to disclose such materials in advance, nor does there appear any legal basis for generally excluding or denying the introduction of these materials as exhibits – into the evidence record for the jury.  Therefore, based upon the legal authority and argument already cited above, Should the Court deny Mr. Koerber's motion for a mistrial, *Mr. Koerber moves, as part of his alternatively requested remedy, that the prior exhibits designated and used to refresh Mr. Isom, Mr. Hamilton, and Mr. Allred's recollections (that did in fact refresh recollections) and the exhibits designated and used for impeachment, be admitted to the record.*   Thus, only the third issue has truly been at issue in the evidentiary based rulings and discussions to date.

> **B.  The Court Should Allow the Introduction of Mr. Koerber's Designated Exhibits and Any Appropriate Newly Designated Exhibits As The Trial If the Trial Progresses.**

As an additional alternative remedy to mistrial, the Court should correct the uncertainty and inconsistency of its rulings to date, on the admissibility of Defense Exhibits.  Because reciprocal discovery and materials used for cross-examination are not related to Mr. Koerber's case-in-chief, the government and the Court have blurred the legal issue.  Mr. Koerber's late designation of Defense Exhibits – is only legally relevant to his presentation of evidence.

Further, while Mr. Koerber has admitted his late designation – and in fact repeatedly moved for more time to make such designation pre-trial and after trial – the Court has already explained, and the government has essentially admitted – that there is no significant prejudice to the government given the circumstances of Mr. Koerber's prior notice to the government of his inability to meet the deadline, and his actual notice on August 22, August 23, August 26 and this notice being accompanied supplemented with his subsequent production of materials via physical disc on August 28, 2017.

On the issue of Defense Exhibits, the Court has repeatedly stated that "there are court ordered deadlines for the exchange of information in place" and that if Mr. Koerber wanted to "seek relief from court ordered deadlines" he "should file a motion to do so." *Id*. Until then, "the rules will be enforced equally with both sides" and the admissibility of evidence "will be taken up on a case by case basis." *Id*.  The Court subsequently instructed: "Defendant may file a motion for relief if he wishes." *Id*. Mr. Koerber did file a motion for relief, but the Court has not definitively ruled. Further, Mr. Koerber has provided the government and the Court with the Tenth Circuit and other relevant authority on this issue with no opposition from the government.

It is true that the Court has "broad discretion to sanction a party who violates discovery orders." *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir.2002). It is also true that Mr. Koerber's designation of Defense Exhibits took place after the deadline outlined in the Court's trial order.  However, Mr. Koerber notified the Court and the government in advance of his inability to meet the deadline, and he moved for a continuance (before and after the deadline) explaining as part of his request, the specific delays he was up against in producing Defense

Exhibits – and how the government's own conduct had contributed to the delays.[28] In addition to those circumstances, Mr. Koerber has relied upon the law announced by the Tenth Circuit and the United States Supreme Court where it is abundantly clear, that despite a missed deadline for Defense Trial Exhibits, when current *pro bono* counsel appeared, timely notice of a Defense Witness List was made, and again Mr. Koerber informed both sides that he was still working diligently on the preparation of Defense Trial Exhibits – but needed more time to produce the required notice and materials.  Since that time, Mr. Koerber has documented the cause of the delays and extra time being expended – due to the urgent work of reviewing government exhibits (which until the final week or so leading up to trial still did not include complete disclosure of where and how to find exhibits) including Mr. Koerber's statements the government intended and did use at trial so far. Further, with the Court's leave, Mr. Koerber did file for relief.

In Mr. Koerber's prior motion for relief, he explained how it appeared the Court had been approaching the issue from a civil standard, or from the "excusable neglect" standard for requesting more time under Rule 45(b)(1)(B) of the Federal Rules of Criminal Procedure. While Mr. Koerber believes his prior notice and explanations and good faith (in trying to prepared Defense Exhibit Lists by the deadline, his notice and productions on August 22, 23, 26th and 28th, and his prior counsel's certification to the Court as to the impossibility of being ready for trial on the Court's schedule) meet the excusable neglect standard – it is the wrong standard. In fact, the Tenth Circuit has recently reaffirmed that excluding evidence in a criminal case – under the "excusable neglect standard" when a discovery related deadline is exceeded – is an abuse of discretion. *See United States v. Yepa*, 572 F. App'x 577, 583 (10th Cir. 2014) ("When exclusion

---

[28] Mr. Koerber has also previously presented authority showing that the court was without jurisdiction during the pendency of his appeal of the court's order denying his request for injunctive relief.

of evidence is at issue, *Wicker* stands as a limited exception to the broader reach of Rule 45.")
"Applying the wrong legal standard is an abuse of discretion." *United States v. Hasan,* 609 F.3d
1121, 1127 (10th Cir.2010) ("An abuse of discretion occurs when the district court bases its
ruling on an erroneous conclusion of law or where the trial court fails to consider the applicable
legal standard.") (citations and quotation marks omitted).

In sum, the Tenth Circuit requires, when a discovery related deadline has been violated –
such as the late production of trial exhibits – the law requires the Court to consider granting a
continuance to avoid prejudice to the other party – before it considers excluding trial evidence.
Since the Court has previously denied a continuance here – omitting any reference to Mr.
Koerber's detailed explanation of the time needed for discovery review, witness preparation and
designation and production of Defense Trial Exhibits, exclusion of Mr. Koerber's exhibits should
have been off the table as a sanction, from the beginning.  "The primary difference between the
*Wicker* factors and Rule 45's excusable neglect standard is *Wicker*'s overarching preference for a
continuance as opposed to the exclusion of evidence." *Yepa*, 572 F. App'x at 585.

The law requires the Court to acknowledge the fundamental principle that exclusion of
exhibits – in a criminal case – should be the remedy of last resort in circumstances like the
present.  "Despite this broad grant of power, the district court's exercise of discretion should be
guided by several factors; and if a sanction is imposed, it should be the least severe sanction that
will accomplish ... prompt and full compliance with the court's discovery orders." *United States
v. Wicker*, 848 F.2d 1059, 1060–61 (10th Cir. 1988) (Internal marks and citation omitted). There
has been no bad faith or dilatory motive by Mr. Koerber, and as rehearsed above, he provided
notice and materials as soon as he and his attorneys identified them, he has not intentionally
withheld any notice designation or any exhibits in his possession that he intends to use in his

case-in-chief. Further, on the dates detailed above, he provided the required notice and materials before the government suffered any significant prejudice, and without any fundamental unfairness. As the Tenth Circuit and other courts have repeatedly observed, before ordering exclusion the Court has to consider warnings – which did not occur hear despite defense notice to both the government and the Court.  The Court also has to consider attorney reprimands, and even attorney fines – but none of this was presented to Ms. Skordas who was appointed counsel when the exhibit deadline passed.[29]  Finally, because Mr. Koerber's liberty is at issue, exclusion of evidence should only be ordered as a last resort.  In *Yepa* the Tenth Circuit explained:

> Defense counsel and the district judge were understandably angry and frustrated by the "avalanche" of new evidence unceremoniously, perhaps improperly, released by the government on the eve of trial. But anger and frustration cannot be the watch words. Bad faith (not negligence) is one, but it needs to be clearly determined. If there is no bad faith, a clear explanation of why the preferred remedy of a continuance is inappropriate is certainly necessary. *Golyansky*, 291 F.3d at 1249 ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."). However, even if bad faith is evident, an explanation of why a continuance is an inadequate remedy is still needed. *See Gonzales*, 164 F.3d at 1292 (agreeing with the district court that the government acted in "flagrant bad faith" but concluding the court abused its discretion in deciding any prejudice to defendant could not be cured with a continuance).

*Yepa*, 572 F. App'x at 586–87.  Here, there was no "avalanche" of new information.  All of the material produced on Defendant's exhibit list on August 22, 23, 26, and 28th was well within the general knowledge and ability of the government to obtain from its own witnesses or through

---

[29] The Court also omitted any consideration in its denial of Mr. Koerber's only request (and subsequently renewed request) for a trial continuance, of an obvious potential conflict raised by Mr. Koerber's declaration. When a criminal defendant approaches the court with a factual recitation that implicates appointed counsel's failure to comply with a deadline – in this case the Defense Exhibit deadline, despite a defendant's best efforts – further inquiry is required.  *See e.g. United States v. Blackledge*, 751 F.3d 188, 195 (4th Cir. 2014) ("While dicta, the Supreme Court found in *Maples* that "a significant conflict of interest arose for the firm once the crucial deadline passed" because "the firm's interest in avoiding damage to its own reputation was at odds with [the client's] strongest argument" for excusing the procedural default…This conflict exists irrespective of whether the attorney is ultimately found to have erred.")

subpoena power.  All of the material produced was disclosed as soon as Mr. Koerber had the

ability and time to make the designations by is legal counsel.  And all of the notice and material

was produced approximately a month before the government or the Court expected Mr. Koerber

to begin is case-in-chief, which is the most relevant consideration.  Finally, none of the notice or

material produced fundamentally alters anything in how the government knew in advance that

Mr. Koerber would likely defend at trial.  The government knew – as early as February 2009 that

Mr. Koerber might raise an advice of counsel defense to some or all of the charges.  The

government knew – as early as February 2009 that Mr. Koerber might argue that he did believe

he had any tax liability or any legal obligation to file tax returns before ensuring his income

disclosures were accurate. The government knew – as early as 2009 that Mr. Koerber might

argue that his Quickbooks files did not represent the whole financial picture of his companies.

The government knew – as early as 2007 that Mr. Koerber had employed CPAs and tax

preparers, for his personal finances and for the Founders Capital balance sheet – in fact, the

prominent CPA is on the government's witness list (Clark Wilkinson).  There is simply nothing

in the disclosed exhibits – whether their designation or the material itself that is a surprise to the

government, that was reasonably unavailable to the government in advance of trial, or that the

government could not have easily foreseen and prepared for based upon what Mr. Koerber

discussed with the government in February 2009.[30]  The situation here has not been unlike the

situation in *Williamson v. United States*, 84 F. Supp. 2d 1217, 1221–22 (D.N.M. 1999), *aff'd,* 215

F.3d 1338 (10th Cir. 2000) where a significant number of "the documents Defendant produced as

---

[30] The legal principle here is important. If a defendant is forced to deal, for example, with late Brady disclosures, due to recent discovery, even mid-trial, so long as there is still time to make use of the disclosure, the same must be true for the government in this instance.  *See e.g. United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996) ("Disclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material.")

trial exhibits had been provided... in advance of trial" and therefore the government "cannot claim surprise or lack of opportunity to respond." *Id.*

On the other hand, this Court has already acknowledged that Judge Waddoups, by virtue of having conducted extensive evidentiary hearings, was in a better place to make factual findings and that this Court was not inclined to revisit such findings. This is significant, because the real prejudice analysis – related directly to the delays and challenges described by Mr. Koerber in preparing his defense in both Koerber I and Koerber II, and specifically in preparing his Defense Trial Exhibits, relates directly to Judge Waddoups' findings pertaining to the government's pattern of having prejudiced Mr. Koerber by repeatedly failing to disclose relevant discovery.  As the Court has said – there are rules, and they matter.  One of the reasons they matter in Koerber II – is that Koerber I findings give the Court a reasonable basis to infer that Mr. Koerber's difficulties and delays are not fairly attributed to his efforts alone. Mr. Koerber's entire defense has had to expend scarce time and resources that it should not have had to expend – since 2009, and up to the present day.  The Court has seen how the discovery production to Mr. Koerber in March 2017 was an impossible haystack of unorganized data.  That creates delay, through no fault of Mr. Koerber.  The Court has seen how the government refused to provide Bates # designations of Mr. Koerber's prior statements.  Whether it had an obligation to do so – the authority for that has been cited above – it certainly creates delay, through no fault of Mr. Koerber's.  The Court has seen how Ms. Skordas, who the Court repeatedly emphasized it trusted, and it respected, specifically regarding how to prepare effectively for trial on the schedule set before she appeared – certified to the Court that despite her best efforts she was not prepared, that despite her best efforts she had not prepared any trial exhibits, and despite her best efforts – until late July and early August, she still had not been able to locate all of the material

previewed as government exhibits, let alone review Mr. Koerber's potential case-in-chief.

Finally, the Court has seen how the government continued – up through the beginning and first

few days of trial, refining its evidence, particularly regarding clips of Mr. Koerber's own

statements – which statements had been in the government's possession for a decade.  Leaving

aside whether this was appropriate or acceptable – there is a reasonable inference to be drawn.  If

the government, knowing its case, knowing its witnesses, knowing its obligations – was still

struggling to identify Mr. Koerber's statements that it wanted to use at trial, from material clearly

in its possession – up to the last minute and beyond, it is reasonable to see that Mr. Koerber too

was fairly struggling to identify evidence he intends to offer in his case-in-chief, in response.

This is all in marked contrast to the legal threshold required for excluding evidence for missed

discovery deadlines.  *See e.g. Roy v. Am. Prof'l Mktg., Inc.*, 117 F.R.D. 687, 692–93 (W.D. Okla.

1987)  (recognizing a "complete and total failure of counsel (and defendant Brown) in complying

with the pretrial scheduling order and preparing this case for trial" and dilatory conduct that

"worked an extreme hardship on the Court in that numerous hearings and long hours were

necessary so that this case could proceed to trial" and a "lack of cooperation, sloppy trial

preparation, and failure to devote sufficient attention to the pretrial phase of this case is

inexcusable" – but deciding on non-exclusionary sanctions pursuant to Tenth Circuit standards).

On top of these arguments, it must be noted that the above-standard is not only an

"exception" and more liberal application of equity so as so as to avoid exclusion of evidence

absent a showing of bad faith – *Wicker* and *Yepa* dealt with government violations of discovery

deadlines – **not with the defense**.  And, the reason this is relevant is that the Supreme Court has

made clear that the standard must be even more relaxed for criminal defendants because the issue

raises Sixth Amendment protections.  In *Taylor v. Illinois*, 484 U.S. 400, 408–09 (1988) the

Supreme Court explained that absent a pattern of bad faith and tactical delay by the offending party "a less drastic sanction is always available" in preference to exclusion of evidence in a criminal case, including if it requires "granting a continuance or a mistrial to provide time for further investigation; moreover, further violations can be deterred by disciplinary sanctions against the defendant or defense counsel." *Id*. at 413.

Like *Williamson*, the government's position here is "simply that the exhibits were not provided when they should have been," *Williamson*, 84 F. Supp. 2d at 1221–22, and any claim of prejudice and unfairness is ameliorated by the fact that the government has approximately a month after receiving notice and the materials before most of the exhibits would be introduced. As the Tenth Circuit observed in *Williamson*, in these kinds of situations – even in a civil context where the interests are not as grave as the present threat to Mr. Koerber's liberty – there is still "no need for total exclusion of Defendant's exhibits... [it] is not justified and too harsh a solution." *Id*. Further, in *Williamson* there was a pattern of missed discovery deadlines – here there is no such pattern by Defendant.

Mr. Koerber's "right to put before a jury evidence that might influence the determination of guilt" is structural and fundamental. *Pennsylvania v. Ritchie,* 480 U.S. 39, 56 (1987). "Few rights are more fundamental" than that of an accused to present witnesses and evidence, even in the face of delay, missed deadlines, less than perfect diligence, etc. *See e.g., Chambers v. Mississippi,* 410 U.S. 284, 302 (1973). Indeed, "this right is an essential attribute of the adversary system itself." *Taylor*, 484 U.S. at 408. Exclusion of Mr. Koerber's exhibits could only be justified if the related "discovery violation[]" is "explicable only on the assumption that the violations were designed to conceal a plan to present fabricated testimony" or some other impermissible and improper motive. *Id*. Thus, for both cross-examination purposes, and for

presentation in Mr. Koerber's case-in-chief, the Constitution, *Fensterer,* 474 U.S. at 18–19, and Tenth Circuit precedent cited above, all demonstrate that exclusion of Mr. Koerber's exhibits - to the extent that it has taken place, and to the extent that it continues - is fundamentally unfair and an abuse of the court's discretion in this criminal prosecution.

### III.     The Government's Direct Examinations

Over defense objections, and sustained by the Court, the government has impermissibly introduced fundamental unfairness and bias into the trial in the following three instances.  <u>First</u>, the government has impermissibly lead witness in direct examination with questions that amount to prosecutorial testimony on the theory of the government's case.  Specifically, by repeatedly asking witnesses leading questions as to whether they "invested in the equity mill" or whether they "invested in Founders Capital through [company or person x] the government has unfairly tainted the jury on a key element of proof.  <u>Second</u>, by eliciting, over repeated defense objections, third party hearsay from Mr. Bill Hoopes, the owner of Vonco Holdings, LLC, the prosecution and the Court have run afoul of the Federal Rules of Evidence, and directly deprived Mr. Koerber of his constitutional right to confront the witnesses against him. <u>Third</u>, prosecutors have impermissibly tainted the jury by eliciting false testimony from one of its key witnesses, Michael Isom. Individually, and based upon the overall bias created by these impermissible tactics in direct examination, a mistrial is warranted.  Finally, in context with the Court's unwillingness (as discussed thoroughly above) to allow Mr. Koerber to use government witness's prior statements in emails for purposes of impeachment and refreshing of recollections, and the Court's unwillingness to admit such emails into evidence when they have been used – on timeliness grounds – combines with the impermissible direct examination techniques to create an incurable taint of bias.  As part of this taint, the Court's open rebuke of defense counsel stating in

front of the jury, about specific evidence, "this is not how it's done" has impermissibly risked

biasing the jury against the defense, and against the evidence used to impeach government

witness credibility on the very issue of the witness's relationship and interactions with Mr.

Koerber and his companies. *See Arizona v. Washington*, 434 U.S. 497, 516 (1978) ("Neither

party has a right to have his case decided by a jury which may be tainted by bias").

A.   **The Government Has Been Allowed to Repeatedly Ask Impermissibly
     Leading Questions of Its Witnesses on a Central Point of Proof, and Has
     Been Allowed to Introduce Impermissible Hearsay.**

In the indictment, the securities fraud and mail fraud charges are based upon allegations

that Mr. Koerber devised and operated a "scheme" or "artifice" to defraud, when "Founders

Capital received investment monies, sometimes termed as loans, rom victims of the scheme and

artifice to defraud[.]" Doc. 1 at 1. The indictment also alleges, as a core feature of the alleged

"scheme and artifice" that Mr. Koerber "created and presented a series of seminars designed to

encourage individuals to make money through a real estate program…named the 'Equity Mill'"

and that "a part of the scheme and artifice to defraud" is that Mr. Koerber "accepted money from

individuals and companies through Founder Capital" with "the representation that Founders

Capital would use the money to make "hard money" or bridge loans…for the purpose of

acquiring real property for use in the 'Equity Mill'[.]" *Id*. at 2.  The indictment also relies upon

allegations regarding "taking substantial amounts of the money invested with Founders Capital

and using it for purposes other than real estate." *Id*. at 3.  The important point here is that

throughout the indictment the allegations center around money "placed with Founders Capital"

and representations related to investments in the "Equity Mill" through Hill Erickson, LLC and

New Castle Holdings, LLC.  The Court can search the indictment, there is **not one reference** to

investments in Vonco Holdings, LLC, nor is there **any** general reference to investments in other

entities that are subsequently loaned or passed along by third parties to Founders Capital.  The only mechanism of the alleged fraud counts – is "investment monies received" by Founders Capital – and that it was Mr. Koerber who was receiving it.  William / "Bill" Hoopes **is not mentioned**, nor is **any** general allegation made regarding receiving money through third parties or other agents.  Thus, a central point of proof beyond a reasonable doubt, is the government's requirement to provide evidence that "Defendant Koerber accepted money from individuals and companies through Founders Capital" and that he did so by himself taking the money from investors for the alleged "purpose of acquiring real property" through the "Equity Mill" meaning Hill Erickson, LLC and New Castle Holdings, LLC. *Id*. at 2.

Yet, the government has been allowed, over defense objections, to ask leading questions of Dale Clark (who admitted he gave the check to Les McGuire and that Mr. Koerber was not directly involved), and of Frank Breitenstein (who never did place money directly with Founders Capital, but instead placed money with Bill Hoopes and Vonco Holdings, LLC and never did discuss the issue with Mr. Koerber), and of Garth Allred (who also admits that he never placed money directly with Founders Capital, but instead placed money with Bill Hoopes and Vonco Holdings, LLC and never discussed the issue with Mr. Koerber prior to investing with Vonco Holdings, LLC).  The government has specifically offered leading questions like "did you invest with Founders Capital through Vonco" or "did you invest in the equity mill through Vonco."  This has created a host of bias issues.  First, it is testimony by the government, to advance its theory that money placed with Vonco Holdings, LLC was a proxy for placing money with Founders.[31]  Thus, it cannot prove the point by testifying of it repeatedly through the asking of

---

[31] The government was also permitted, over defense objections, to lead Mr. Bartetzko to state that his investments with MIWE Holdings, LLC and Rayhar Legacy, LLC were investments in "the equity mill" and intended to be "investments in Founders Capital through MIWE" when

questions of witness who answer the leading questions.

There is no way to return to the issue on cross-examination because the witness already knows what the government wanted from the answer, and is already apprised of how to consistently restate the issue. Second, both Frank Breitenstein and Garth Allred were permitted, over the defense objection, to introduce hearsay statements from Mr. Hoopes, regarding the alleged purpose of the loans he received. Namely, the witnesses were allowed to testify that they were told by Mr. Hoopes that the purpose of the investment was to send the money to Founders and for use in the Equity Mill. The Court has overruled defense objections on grounds that the statements are not meant for the truth of the matter – but that is obviously not the case. It is irrelevant "what" Mr. Hoopes said, as far as establishing the statement by itself. Mr. Hoopes is not an indicted or unindicted co-conspirator, as there are no conspiracy charges here. The purpose of the testimony of these witnesses is to establish the "truth" of the purpose for the money being invested.[32] But, only Bill Hoopes can fairly testify, without violating both hearsay and relevance rules, to the truth of that issue – on direct examination.

By, allowing the leading questions – the jury has been tainted. This is undisputable because one member of the jury has already submitted a question asking what relationship Vonco Holdings, LLC has with Founders Capital, LLC. But, Mr. Koerber can't answer that question directly unless he testifies, and none of the witnesses testified to any first hand

---

both Mr. Bartetzko and Mr. Isom were forced to admit that not all the money loaned to MIWE or Rayhar went to Founders Capital, and both admitted the actual offering document involved made no promises or representations consistent with this purpose. Thus, the government was enabled, through leading questions, to elicit testimony as to the purpose and location of money being placed with one entity – to attempt to satisfy its burden of showing the purpose and location of money being placed with a separate entity.

[32] This is a classic impermissible admission of hearsay. *See, e.g., United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) (drawing the legal distinctions between statements admitted for the truth, and statements admitted for other purposes.)

knowledge of this issue – only what they were told, hearsay, by Mr. Hoopes. Thus, the government has been impermissibly allowed to argue and create the impression for the jury that money invested with Vonco Holdings, LLC is equivalent to money "placed with Founders Capital" without any direct testimony, and without Mr. Koerber being able to confront Mr. Hoopes on this point. The response might be that the statements were admitted for a non-hearsay purpose – namely to show the effect the statement had on the witness. That is the basis the Court used on at least one occasion to overrule the defense objection. However, like the similar situation presented in *United States v. Cass*, 127 F.3d 1218, 1219 (10th Cir. 1997), there was no direct relevance to the "effect" the statement had on these witnesses, Mr. Koerber's guilt or innocence – on this element of the charges, hinges on the "truth" of the purpose of Vonco Holdings, LLC taking the money and its legitimacy in doing so. *Id*. at 1223 (The statements "go to precisely the issue the government was required to prove"). The admission, over Mr. Koerber's objection, now leads the jury to reach conclusions but upon the purported truth of the "purpose" of the money being loaned – which is the matter being asserted. Such impermissible admissions of hearsay are cause for a mistrial because they "result[] in a trial…not essentially fair." *United States v. Brown*, 767 F.2d 1078, 1084 (4th Cir. 1985) ("[T]he effect of the evidence could only have been a substantial bolstering of the government's case by inadmissible hearsay.").

A response could also be that to remedy the situation Mr. Koerber could choose to call Mr. Hoopes in his case-in-chief. But, that is unfair. Mr. Koerber is not required to put on a defense, the government is required to fairly present competent and admissible evidence, proving beyond a reasonable doubt, that this is the case. The prosecution has unfairly attempted to circumvent this requirement by leading witnesses to testify affirmatively to its stated theory –

and then to do so based upon hearsay from Mr. Hoopes.  Even on the issue of Mr. Clark, he placed his money in Founders Capital (unlike Breitenstein and Allred) but he was lead in direct examination to state that it was an "investment" in the "equity mill" when that was not his own un-prompted characterization of the issue.  In fact, that government has not introduced with any of these witnesses any exhibits showing that the advertisements for Mr. Koerber's seminars to "show" people how to earn "2% to 5% a month" are even connected with Founders Capital. That is a presumption the government has established through leading questions. While Mr. Koerber will rebut this unfair presumption in his case-in-chief the bias and taint is unfair. Either Mr. Koerber reveals now his defense strategy so the Court can further see the absurdity of this presumption, or Mr. Koeber suffers the taint created by impermissible leading of government witnesses and the allowance of impermissible hearsay, without any right of confrontation. The Court should not have allowed leading questions, the Court should not have allowed the indirect articulation of Vonco Holdings, LLC being a proxy for Founders Capital based upon Bill Hoopes hearsay, and the Court should not have deprived Mr. Koerber of his constitutional right to confront Mr. Hoopes on these out of court statements that have been plainly admitted to the jury to establish the "truth" as to the purpose of the loans to Vonco Holdings, LLC.  On this last point, the Supreme Court has repeatedly counseled trial court judges that the "Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination. *Delaware v. Fensterer,* 474 U.S. 15, 18–19 (1985) (*per curiam*). Mr. Koerber has not been allowed either right regarding Vonco Holdings, LLC and Mr. Hoopes – whose purported statements as to the purpose of his taking money is now centrally lodged in the jury members' minds. This conduct by government prosecutors in direct examination, is sufficient grounds for a mistrial.  *Arizona v.*

*Washington*, 434 U.S. at 512 ("Without determining the truth or falsity of the charge, and without examining the jurors to ascertain what influence the story had upon them, the trial judge declared a mistrial because he considered it "'impossible that in the future consideration of this case by the jury there can be that true independence and freedom of action on the part of each juror which is necessary to a fair trial of the accused.'")

### B. The Government Impermissibly Elicited False Testimony from Its Key Witness, Michael Isom.

During Mr. Isom's testimony, the government introduced selections from two recordings containing statements of Mr. Koerber. The first was in late 2007 at the Rayhar Legacy investor update meeting, and the second was from a private meeting in February 2008. After playing these selections, the government elicited responses from Mr. Isom as to what these statements meant to him at the time. At specific issue here, after the government played multiple statements prosecutors elicited testimony from Mr. Isom that at the time he believed Mr. Koerber had promised only to use loans from MIWE for acquiring real estate. The government also elicited testimony from Mr. Isom that Mr. Koerber's pie chart conversation meant to him, at the time, that Mr. Koerber was involved in fraud. But, the government had the recordings of Mr. Isom and his December 2008 meetings with Mr. and Mrs. Kindred that the defense played to impeach Mr. Isom's testimony. In fact, the government had these recordings as early as 2008, and interviewed Mr. Isom about them and about his relationship with Mr. Kindred, and also interviewed Mr. Kindred about the same.[33] In the first clip from the December 2008 recording played for the jury, Mr. Isom clearly states his belief at the time. He is asked directly by Mrs. Kindred "Didn't he [Mr. Koerber] tell us that it, that this money would only be in real estate, so if it went into movies…?" In immediate response Mr. Isom states unequivocally "No, he told us

---

[33] *See* FBI-000751; FBI-003122; FBI302-068-0002; UTDOC-47-01541

and we wrote in our documents that it would be used for real estate and bridge loans for small business, small business bridge loans, so…"  While defense counsel cross-examined Mr. Isom on this point, and he tried to explain it away, the evidence is unmistakable.[34]  In December 2008 Mr. Isom had stated that Mr. Koerber had NOT told investors "that this money would only be used in real estate" and he further explained that this is consistent with what Isom "wrote in our documents."  The government had the Kindred recording, and had the Isom documents.[35] But, it nevertheless elicited the false testimony from Mr. Isom without any reference to either the recording or the documents and without any correction. This is impermissible prosecutor conduct, and an affront to Due Process.  *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) ("use of false evidence" or allowing false evidence "to go uncorrected when it appears" is a Due Process violation). While Mr. Koerber was able to cross-examine Mr. Isom with the audio – the Court did not allow it to be introduced into evidence.  Further, the Supreme Court has famously observed, "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972).

### C.  The Court's Treatment of Mr. Koerber's Exhibits Offered for Refreshing Government Witness's Recollection and for Impeachment Purposes has Contributed to the Unfair Tainting of Trial Proceedings.

Finally, in context with the Court's unwillingness (as discussed thoroughly above) to allow Mr. Koerber to use government witness's prior statements in emails for purposes of

---

[34] Another instance of eliciting false testimony occurred when the government elicited statements from Isom indicating that it was Mr. Koerber, rather than Les McGuire who Isom had approached for information on investing with Founders.  During the government's first interview with Isom, and in several meetings thereafter, Mr. Isom clearly identified Mr. McGuire, not Mr. Koerber as the source of information, and the method of placing funds in Founders Capital.  See e.g. FBI-000750;

[35] *See* FBI-000751; FBI-003122; FBI302-068-0002; UTDOC-47-01541.

impeachment and refreshing of recollections, and the Court's unwillingness to admit such emails into evidence when they have been used – on timeliness grounds – combines with the impermissible direct examination techniques to create an incurable taint of bias.  As part of this taint, the Court's open rebuke of defense counsel stating in front of the jury, about the specific exhibits addressed above, stating "this is not how it's done" has contributed to the risk of jury bias. *United States v. Harris*, 501 F.2d 1, 10 (9th Cir. 1974) ("But a trial court must be ever mindful of the sensitive role it plays in a jury trial and avoid even the appearance of advocacy or partiality.")  While this rebuke by itself is clearly not enough to cause a mistrial, in the context of the above recited events, it is a contributing factor – related directly to the jury's impression of defense credibility and the credibility of the evidence used to impeach government witnesses regarding their alleged relationship and interactions with Mr. Koerber and his companies. *See Arizona v. Washington*, 434 U.S. 497, 516 (1978) ("Neither party has a right to have his case decided by a jury which may be tainted by bias").

CONCLUSION

For the above stated reasons, the Court should grant a mistrial. Alternatively, the Court should grant the relief requested in each section above, including a definitive ruling on the admissibility of Mr. Koerber's defense exhibits, and the Court's allowance of impeachment materials to be introduced into evidence.

DATED this 4th day of September 2017.

/s/ Marcus R. Mumford
MUMFORD PC
405 S. Main Street, Suite 875
Salt Lake City, UT 84111
Telephone: (801) 428-2000
*Attorney for Claud R. "Rick" Koerber*