Marcus R. Mumford (#12737)
Amanda B. Mendenhall (#15677)
**MUMFORD PC**
405 S. Main Street, Suite 850
Salt Lake City, Utah 84111
Telephone: (801) 428-2000
*Attorneys for Defendant*
mrm@mumfordpc.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>CLAUD R. KOERBER,<br><br>        *Defendant.* | **MOTION IN LIMINE TO EXCLUDE CERTAIN GOVERNMENT WITNESS TESTIMONY**<br><br>*Oral Argument Requested*<br><br>Case No. 2:17-CR-37 RS<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Paul M. Warner |

The Tenth Circuit recognizes the legitimacy of mid-trial motions in limine when it appears that witness testimony would be inadmissible. *See United States v. Jones*, 768 F.3d 1096, 1103 (10th Cir. 2014) (affirming the exclusion of witnesses whose expected testimony "would be: 1) in direct contravention" of pretrial in limine rulings "concerning the relevancy and materiality of such evidence, and 2) prejudicial and confusing to the jury"). Federal Rules of Evidence 401 and 402 make irrelevant evidence un-admissible. Rule 403 prohibits the admission of relevant evidence that is more prejudicial than probative of a relevant fact. Rule 602 requires a witness to testify based upon personal knowledge, and Rule 802 prohibits hearsay.

In ruling on the party's pre-trial motions in limine the Court emphasized that the only evidence that would be admissible at trial was evidence that related directly to the elements of the alleged offenses. However, the government has given notice that it intends to call Kiirsten Jeppson, Don Hansen and Ryan Gardner – and based upon the government's recent proffer of

exhibits associated with these witnesses, it is clear that none of them have personal knowledge of relevant facts in this case. Further, the testimony of Ms. Jeppson and Mr. Hansen would be confusing to the jury, and more prejudicial than probative of any relevant facts.

**Government Witness: Kiirsten Jeppson.** The government has recently informed Mr. Koerber of Ms. Jeppsons personal bias in this case, against him. But, importantly, this bias derives from a personal relationship and the interactions, more than a decade ago, between Ms. Jeppson (who was employed for approximately five months as Mr. Koerber's secretary), Mr. Koerber and Ms. Jeppson's husband – and is not related to or relevant to any material fact in this case. Ms. Jeppson did not invest, did not become a student, did not interact with investors, and has no personal knowledge about any financial transactions. The closest it gets is that Ms. Jeppson occasionally purchased meals for Mr. Koerber using a company debit card. However, Forrest Allen has already testified, the Quickbooks of all cash transactions is in the record, and the government has introduced no exhibits showing any support for any knowledge Ms. Jeppson could have as to the details regarding the source, authorization or means of transfer or using such funds. On the other hand, based upon the government's interview notes it appears Ms. Jeppson can offer vague conclusory statements – based upon her opinion and supposition. For example, Ms. Jeppson's testimony appears to be that: 1) Mr. Koerber had lots of meetings, and sometimes did not prioritize them as Ms. Jeppson thinks he should have; 2) that individuals would try to place money with Koerber but he would not take the funds; 3) that Forrest Allen had priority access to Mr. Koerber; 4) that Mr. Koerber had certain political and religious views, including regarding marriage; 5) that Jeppson was allowed to drive Koerber's cars; 6) that Koerber tried to help Jeppson get out of an abusive marriage; 7) that Koerber talked about a lot of things; and 8)

that Koerber could "sell snow to an Eskimo."[1] Because Jeppson was not an investor and because Jeppson was not present with communications with investors, and has told the government that she was not involved in any financial dealings of the company, all of these are irrelevant or so slightly relevant that there is no probative value for the material facts at issue in this case. Further, given Ms. Jeppson's admitted bias against Koerber and for the government, and given the personal nature of the history and conflict between Mr. Koerber, Ms. Jeppson and her husband, it is highly likely that irrelevant (and inflammatory) statements will be elicited, and topics addressed in her examination that will confuse or bias the jury on issues unrelated to the trial. (*Mr. Koerber further requests a sidebar, in advance of this witness' testimony – should she be allowed to testify despite this objection, to discuss this concern in more detail*). This is sufficient grounds to exclude the witness. *See United States v. Jones*, 768 F.3d 1096, 1103 (10th Cir. 2014). "Rule 403 requires the trial court to balance the probative value of proffered evidence against the likelihood of unnecessary prejudice to the defendant. "In performing the [Rule] 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs.,* 202 F.3d 1262, 1274 (10th Cir.2000) (internal quote omitted). Moreover, "[e]vidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly or apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Leonard,* 439 F.3d 648, 652 (10th Cir.2006)." *United States v. Nevels*, 490 F.3d 800, 805 (10th Cir. 2007).

**Government Witness: Don Hansen.** This witness has no personal knowledge or interaction with Mr. Koerber. Apparently this individual has some knowledge of the private

---

[1] This last statement is based on communication between Mr. Walz and Ms. Mendenhall regarding the substance of the anticipated testimony.

adoption agency used by Mr. Koerber for the adoption of three of his children. The government's two exhibits – each over 100 pages – includes collections of documents, un-paginated, most unsigned, and in the handwriting of various people. The documents that contain financial information related to Mr. Koerber were not completed by Mr. Hansen, or in his presence. They are not in the handwriting of Mr. Koerber, nor is the person who prepared the documents on the government's witness list. Finally, Mr. Hansen has no personal knowledge of the source of the information or the finances used to pay for the adoptions. Thus, his testimony is prohibited under Rule 602 (lack of personal knowledge) and 802 (hearsay) and they are irrelevant and potentially confusing to the jury. Whatever mildly relevant relationship Mr. Hansen's testimony and these exhibits may have, that probative value is outweighed by confusion and bias – by introducing personal information, information about Mr. Koerber's children (which could only be relevant for establishing the allegation that Mr. Koerber used money from Founders Capital to pay for the adoptions – but Mr. Hansen cannot testify to that issue). Mr. Koerber will stipulate that he adopted three children. Other than this fact, other testimony on this topic is inadmissible under *Leonard* and *Nevels*, *supra*.

**Government Witness: Ryan Gardner**. Mr. Gardner was a contact of Les McGuire's, was introduced to Mr. Koerber in late 2004, and took some real estate related training before the "equity mill" concept was developed. Even then, Mr. Gardner did not invest in Founders Capital, Franklin Squires, or any other entity – and has no personal knowledge of the alleged "scheme" described. In a mildly relevant involvement, Mr. Gardner did purchase a home from Franklin Squires and seller financed that home back to Franklin Squires and later New Castle. However, while this might be mildly relevant context – it is repetitive and confusing. Several witnesses have already testified, including Mr. Isom and Mr. Magelby, about Mr. Koerber's Preferred

Buyer program. Further, according to the government's own interview notes, Mr. Gardner's business dealings did not involving any money placed into or paid out of Founders Capital – and had nothing to do with the investments at issue in the indictment or any charge related thereto. It appears that the government only seeks his testimony attributing to Mr. Koerber the term "straw buyer." But there is no allegation in this case of Mr. Koerber using a "straw buyer," and the government has never alleged that Mr. Gardner did not receive the home that he purchased. Accordingly, his testimony should be excluded as cumulative, irrelevant, confusing and prejudicial and therefore inadmissible under *Leonard* and *Nevels*, *supra*.

DATED this 4th day of September 2017.

/s/ Marcus R. Mumford
*Attorney for Claud R. "Rick" Koerber*