Marcus R. Mumford (#12737)
Amanda B. Mendenhall (#15677)
**MUMFORD PC**
405 S. Main Street, Suite 850
Salt Lake City, Utah 84111
Telephone: (801) 428-2000
*Attorneys for Defendant*
mrm@mumfordpc.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CLAUD R. KOERBER, <br><br> *Defendant.* | **MOTION TO EXCLUDE THE GOVERNMENT'S SUMMARY WITNESSES AND EXHIBITS** <br><br> *Oral Argument Requested* <br><br> Case No. 2:17-CR-37-RS <br><br> District Judge Robert J. Shelby <br> Magistrate Judge Paul M. Warner |

Mr. Koerber brings this motion to exclude the summaries and/or charts that the government seeks to introduce under Fed. R. Evid. 1006.

The government intends to call FBI Agent Angela Mennitt and IRS Agent Steve Roberts as summary witnesses, and to introduce through them Gov't Exs. 142 and 143. The government's initial exhibit list, circulated to Mr. Koerber on August 18, 2017,[1] did not include these exhibits but indicated that Ex. 142 was "a draft, to be finalized," and that Ex. 143 was an "IRS Summary Exhibits (to be determined based upon evidence presented at trial)." It appears that the government only produced Ex. 143 (the tax summary) to Mr. Koerber's team on Friday, September 8, 2017, but there is confusion on this point because the government's email mislabeled the exhibit as "Exhibit 142" and described it as the "latest draft" of the document. With respect to Exhibit 142 (the financial summary), Mr. Koerber understands that the

---

[1] See Doc. 217-2.

1

government provided an early draft to Ms. Skordas in mid- to late-July, but circulated a revised version of the document, a PowerPoint presentation, on September 8, 2017 – and the revised version significantly expands Exhibit 142 from 24 slides to 36 slides.

Rule 1006 provides a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot conveniently be examined in court." A summary or chart that "presents an unfair picture can be a potent weapon for harm," such that "permitting the jury to consider it is error." *United States v. Conlin*, 551 F.2d 534, 539 (2d Cir. 1977) (citations omitted). In criminal cases, "a trial court is charged with grave responsibilities to make certain that an accused is not unjustly convicted in a 'trial by charts'" and "ascertain with certainty that [any charts or summaries] are based upon and fairly represent competent evidence already before the jury." *Gordon v. United States*, 438 F.2d 858, 876 (5th Cir. 1971) (citation omitted).

First, the Tenth Circuit recognizes that "[s]ummaries must be accurate and nonprejudicial." *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1335 (10th Cir. 1996). Courts should "look at two factors when determining whether to admit summary testimony and accompanying charts: (1) the testimony's or chart's potential to 'aid [ ] the jury in ascertaining the truth,'; and (2) "the possible prejudice that may result to the defendant in allowing such evidence." *United States v. Brooks*, 736 F.3d 921, 931 (10th Cir. 2013) (citation omitted). The district court should evaluate summary exhibits and the testimony that corresponds with the summaries before admitting them.

A summary or chart admitted under Rule 1006 should **<u>identify the evidence that it is summarizing</u>** – in "painstaking detail," if necessary, by "cross-referencing [the items listed on the summary] to each specific exhibit number." *United States v. Thompson*, 518 F.3d 832, 859

(10th Cir. 2008).

Summaries and charts introduced under Rule 1006 in a criminal case should **avoid "rhetorical aspects" and "accusatory terminology."** *United States v. Irvin*, 682 F.3d 1254, 1263 (10th Cir. 2012). Courts have criticized summary exhibit that "list[] the government's allegations using suggestive terminology (*e.g.,* referring to commission payments as 'kickbacks')" or organize the government's charges "into a simple and comprehensible chart beneath condemnatory section headings (*e.g.,* 'Summary of Fraud for JEFF MILLER et al.' and 'False Statements to Lenders')." *Gomez v. Great Lakes Steel Div.*, 803 F.2d 250, 257-58 (6th Cir. 1986) (vacating jury verdict and remanding for new trial based on the trial court's admission of a summary chart that was "more akin to argument than evidence").

Summaries and charts under Rule 1006 **should not be "more akin to argument than evidence."** *Gomez*, 803 F.2d at 257-58 (vacating jury verdict and remanding for new trial where trial court admitted a summary chart that was "more akin to argument than evidence"). "[C]are must be taken to omit argumentative matter in their preparation lest the jury believe that such matter is itself evidence of the assertion it makes." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159–60 (11th Cir. 2004) (concluding that district court abused its discretion in admitting a Rule 1006 summary that was "based on inadmissible hearsay and contained conclusory allegations concerning Vanguard's alleged misappropriation and intent").

It is important that summaries introduced under Rule 1006 **avoid making assumptions**, "presum[ing] or predict[ing] information." *United States v. Hevener*, 382 F. Supp. 2d 719, 729-30 (E.D. Pa. 2005). Where a summary or chart makes an "assumption," there must be "supporting evidence [that] has been presented previously to the jury" to establish those assumptions. *United States v. Hart*, 295 F.3d 451, 455 (5th Cir. 2002).

3

Finally, a party cannot use Rule 1006 **to backdoor otherwise undisclosed or improper expert testimony.** *Hart*, 295 F.3d at 455. In *Hart,* the defendant was charged with knowingly making false statements on farm loan applications. *Id.* at 455. An important part of the loan application process involved Farm and Home Plans (FHPs), which were computer-generated projections reflecting the borrower's plan of operation. *Id.* at 453. At trial, the prosecution offered the testimony of an government employee who had prepared *revised* FHPs to illustrate "what the result would have been if all the debts testified to by the government's witnesses had been included on the [defendant's] actual FHPs." *Id.* at 455. The Fifth Circuit found such testimony to be expert testimony, as opposed to summary witness testimony, reasoning that "the proper preparation of the FHP is anything but a simple and straightforward exercise." *Id.* at 456. Based on that fact and the fact that the government's proposed summary witness had relied solely on "the contents of the paper files which she construed in a light most favorable to the prosecution and thus least favorable to the Harts," the court concluded that admitting the government's summary was reversible error. *Id.*

Here, the government's proposed summaries fail to satisfy the criteria above.

➢ Government Exhibit 143 – the Tax Summary Exhibit

First, Exhibit 143 was not timely disclosed – a defendant should have "sufficient opportunity to challenge the veracity of the charts and testimony through cross examination and objection," and the Tenth Circuit has advised courts to make sure that a defendant and his counsel have time to review the summary "charts in-depth." *Ray*, 370 F.3d at 1047–48.

Second, Exhibit 143 does not identify the evidence it summarizes. This prevents the

4

defense and court from ensuring that the summary is "accurate and nonprejudicial." *Daniel*, 97 F.3d at 1335.

Third, Exhibit 143 presents expert testimony under the guise of a "summary" witness, using improperly argumentative and "accusatory terminology." *Irvin*, 682 F.3d at 1263; . The summary purports to calculate Mr. Koerber's "total reportable income" for 2005 and 2006, which was "unreported," using an IRS imputed tax return form that is "unagreed," suggesting that Mr. Koerber had the opportunity to work matters out with the civil division, and asserting a "corrected taxable income" figure, a "Tax deficiency," and a "balance due."

Exhibit 143 similarly suffers from a evidentiary foundational issue. The government's own witness, CPA Clark Wilkinson, has testified unquestionably that the Quickbooks files relied upon substantially by the proffered summary witnesses and in the proffered summary exhibits – is unreliable, incomplete and inaccurate.  Additionally, the ability of these summary witnesses to aid the jury is compromised because the summaries are of already established incomplete and unreliable data.  The summary evidence is also prejudicial because it reaches conclusions that are not in the records being summarized, and by the facts established in the government's case – incomplete and unreliable.  Along these same lines, because the government has not noticed Mr. Roberts as an expert – having expressly stated he is not offered as an expert – Exhibit 143 cannot include "any interpretive, or inferential statements drawn from the content of the underlying documents." *United States v. Miller*, No. 06-40068-JAR, 2010 WL 235034, at *3 (D. Kan. Jan. 15, 2010).  But, it does. The charts in Exhibit 143 are not simply summaries of voluminous documents. They characterize the nature of transactions, they offer financial conclusions that require interpretation of data – for example, re-categorizing Mr. Koerber's income and characterizing different categories of "business activity" in demonstrative form, to become

5

essentially argument for the government's version of the facts. Exhibit 143 is making impermissible assumptions about the evidence it purports to summarize. *Daniel*, 97 F.3d at 1335. ("Summaries must be accurate and nonprejudicial.").

In Exhibit 143, the government proffers that Mr. Koerber could have had certain deductions, had certain presumed undeclared income, and based upon unspecified tax preparation theories reaches conclusions about tax liability. But, again, its witnesses are not offered as experts and were expressly disclaimed as such. In *James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207 (10th Cir.2011) the Tenth Circuit held that any testimony provided by a witness, regardless of the witness' designation, is expert testimony if the testimony is "based on technical or specialized knowledge." *Id.* at 1214. In *James River,* the Court found that the proffered testimony was expert testimony because: 1) the opinions and the judgments required professional experience beyond the scope of lay opinion; (2) the witness had previous professional experience and was therefore better situated to explain complex analysis when compared to others without professional experience; (3) the testimony relied on the extensive analysis and conclusions of voluminous compiled records.

Finally, Exhibit 143 is inadmissible because its evidentiary foundations are illegitimate. *See United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999)("The district court made an error of law by not requiring the government to lay the requisite foundation or forgo the use of the summaries, and thus abused its discretion in admitting the summaries."). Here the evidentiary foundation is challenged by two legal elements. First, the "summary" testimony and "summary" exhibits are in fact conclusions and opinions – and require a qualified expert. Second, they rely upon evidence that has already been discredited as far as its accuracy and reliability by the government's own witnesses. CPA Clark Wilkson testified that the Quickbooks data should not

be relied upon, was incomplete and was substantially inaccurate and book-keeper Forrest Allen admitted that the Quickbooks data did not include all of the date from the property records and other books and records of the company. While the jury is presented with evidence at this point – where it can make its own conclusions as to any inferences or conclusions to draw from what has been admitted, summary witness testimony and exhibits would impermissibly bolster already discredited exhibits and data presented by the government. *See e.g. United States v. Conlin*, 551 F.2d 534, 538–39 (2d Cir. 1977) ("[W]hen summaries are used . . . the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury. . . . This, unfortunately, was not done, either upon the offer of the exhibit, or upon thereafter learning that portions were not supported by the record. In fact, the court left it up to the jury to determine what parts of the exhibit were supported and what were not.").

      The Court should not allow Mr. Roberts to testify as an expert, i.e., offering his opinions or conclusions based upon inferences or specialized knowledge. The Court should not allow summary exhibits that interpret and argue, rather than summarize. And, in any event, if any of this evidence is allowed, the jury should be instructed in advance – so that the government is not allowed to bolster or inappropriately and unfairly construe unreliable financial data.

Finally, the tax charges in this case are not complex. The government's theory is simply that Mr. Koerber did not file taxes, that he had taxable income, and that he had business entities pay personal expenses. (See Doc. 198 at 2)  However, there has not been a single witness testify that Mr. Koerber did not properly record – in the books of the company – all the personal expenses listed. The government is presenting with Exhibit 143 evidence that vary and expand the charges set forth in the indictment. At the same time, the government has failed to provide even a hint of evidence that Mr. Koerber's use of business entities to pay personal expenses was in any way

7

related to tax reporting, let alone with the intent to avoid disclosing income – for tax purposes. It has already presented financial summary data regarding these alleged acts and the alleged financial total amount. At this point there is simply no basis for summary testimony or exhibits.

> ➢ Government Exhibit 142 – the Financial Summary Exhibit

First, at least 12 of the 36 slides in Exhibit 142 were not timely disclosed. The government has deprived Mr. Koerber of "sufficient opportunity to review the summary charts in-depth and "challenge the veracity of the charts and testimony through cross examination and objection." *Ray*, 370 F.3d at 1047–48.

While Exhibit 142 identifies the evidence it summarizes, it appears to reflect significant errors in this respect. The PowerPoint presentation is "more akin to argument than evidence." *Gomez*, 803 F.2d at 257-58. It is inflammatory and improper in how it purports to organize the evidence by the charges in the indictment. *Gomez*, 803 F.2d at 257-58.

Exhibit 142 similarly suffers from an evidentiary foundational issue. It is based on Quickbooks data, but the government's own witness, CPA Clark Wilkinson, has testified unquestionably that the Quickbooks files that the financial summary witness relied upon substantially is unreliable, incomplete and inaccurate. Additionally, the ability of these summary witnesses to aid the jury is compromised because the summaries are of already established incomplete and unreliable data. The summary evidence is also prejudicial because it reaches conclusions that are not in the records being summarized, and by the facts established in the government's case – incomplete and unreliable. Along these same lines, because the government has not noticed Ms. Merritt as an expert – having expressly stated she is not offered as an expert – Exhibit 142 cannot include "any interpretive, or inferential statements drawn from

the content of the underlying documents." *Miller*, 010 WL 235034, at *3. But, it does. The charts in Exhibit 142 are not simply summaries of voluminous documents. They characterize the nature of transactions, they offer financial conclusions that require interpretation of data – for example, re-categorizing Mr. Koerber's income and characterizing different categories of "business activity" in demonstrative form, to become essentially argument for the government's version of the facts. Exhibit 142 is making impermissible assumptions about the evidence it purports to summarize. *Hart*, 295 F.3d at 455; *Hevener*, 382 F. Supp. 2d at 729-30.

In Exhibit 142 presents data inconsistently. At times, it combines its presentation. At other times, it separates the presentation of data. Exhibit 142 is inadmissible because its evidentiary foundations are illegitimate. *See Samaniego*, 187 F.3d at 1224. Here the evidentiary foundation is challenged by two legal elements. First, the "summary" testimony and "summary" exhibits are in fact conclusions and opinions – and require a qualified expert. Second, they rely upon evidence that has already been discredited as far as its accuracy and reliability by the government's own witnesses. CPA Clark Wilkson testified that the Quickbooks data should not be relied upon, was incomplete and was substantially inaccurate and book-keeper Forrest Allen admitted that the Quickbooks data did not include all of the date from the property records and other books and records of the company. The jury has received sufficient evidence at this point to make its own conclusions as to any inferences or conclusions to draw from what has been admitted, and the summary testimony and exhibits that the government now seeks will impermissibly bolster already discredited exhibits and data presented by the government. *See Conlin*, 551 F.2d at 538–39. Regarding the fraud charges – the government has also already presented, through fact witnesses, the financial data which it claims shows Mr. Koerber operated a fraudulent scheme – whether securities or wire fraud. There is no need – and only potential

unfairness – to have non-fact, non-expert witnesses repeat and re-construe this data.

Thus, based upon the authority cited above, the government should not be allowed to introduce the testimony of its summary witnesses or exhibits.

Finally, should the court allow the government to introduce evidence of a summary or chart under Rule 1006, it should give a limiting instruction, preferably before the testimony is given. See e.g. *United States v. Mann,* 884 F.2d 532, 538–39 (10th Cir. 1989); *United States v. Ray*, 370 F.3d 1039, 1046 (10th Cir. 2004), *cert. granted, judgment vacated,* 543 U.S. 1109, 125 S. Ct. 995, 160 L. Ed. 2d 1035 (2005), and *opinion reinstated in part,* 147 F. App'x 32 (10th Cir. 2005) ("[W]e have allowed the government to admit summary testimony so long as the district court gives appropriate limiting instructions."); *United States v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008) (same). As an example, the trial court in *Thompson* instructed the jury:

> Charts or summaries have been prepared by the government and shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, and other documents which are in evidence in the case. Such charts or summaries are not evidence in this trial or proof of any fact. If you find that these charts or summaries to [sic] not correctly reflect facts or figures shown by the evidence in the case, the jury should disregard the charts or summaries.
>
> In other words, such charts or summaries are used only as a matter of convenience for you and to the extent that you find they are not, in truth, accurate summaries of facts or figures shown by the evidence in the case, you can disregard them entirely.

*Thompson*, 518 F.3d at 859; *see also United States v. Mann*, 884 F.2d 532, 539 (10th Cir. 1989).

DATED this 12th day of September 2017.

/s/ Marcus R. Mumford
*Attorney for Claud R. "Rick" Koerber*