Kathryn N. Nester (Utah Bar No. 13967)
Robert Hunt (Utah Bar No. 5722)
Daphne Oberg (Utah Bar No. 11161)
Office of the Federal Public Defender
46 W. Broadway, Ste. 110
Salt Lake City, Utah 8106
Telephone: (801) 524-4010
*Attorneys for Claud R. Koerber*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAUD R. KOERBER,<br><br>*Defendant.* | **MOTION TO DISMISS BASED UPON FIFTH AMENDMENT DOUBLE JEOPARDY GROUNDS**<br><br>*Oral Argument Requested*<br><br>Case No. 2:17-CR-37<br><br>District Judge Frederic Block |

A federal grand jury returned the original indictment against Mr. Koerber in May 2009. After almost a decade of extensive litigation, four related indictments, more than a half dozen federal judges, and multiple appeals (including the government's 16month appeal of an August 2014 district court order dismissing this case with prejudice to "prevent the erosion of citizens' faith in the even-handed administration of the law"[1] and to protect Mr. Koerber from a prosecution that, among other faults, had "undermine[d]" Mr. Koerber's "possibility of receiving a fair trial"[2]) Mr. Koerber's case was finally tried before a jury from August 22, 2017 through October 16, 2017. After this eight-week trial, Chief Judge David Nuffer

---

[1] Case No. 2:09-CR-302 (*Koerber I*), Doc. 472 at p. 14.
[2] *Id.*, at pp. 15.

(who was sitting in for the trial judge) declared a mistrial based upon "the manifest necessity presented by the jury being unable to reach a verdict." 10/16/2017 Hr. Tr. at 11. Sixteen days later, the United States filed a notice with the Court that it intended to pursue and complete a second trial, in its ongoing effort to prosecute Mr. Koerber, based upon conduct alleged to have occurred from eleven to fourteen years ago.

Mr. Koerber brings this motion to dismiss the pending indictment and the case against him as barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution, which prohibits a second trial under the facts and circumstances described below.

## ARGUMENT

The Court has already heard and considered Mr. Koerber's statute of limitations claims, which directly implicate Congressionally-imposed limits on the ability of the government to prosecute when fairness is so directly called into question by an exceptional lapse of time. However, in addition to that legal framework, the Fifth Amendment's prohibition against subjecting a defendant to multiple trials for the same alleged offenses represents a separate and independent "constitutional policy of finality for the defendant's benefit in federal criminal proceedings."

> A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial. And society's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to

> a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws.

*United States v. Jorn*, 400 U.S. 470, 479 (1971). It has been a long standing Constitutional principle that the government "with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187188 (1957).

Once a trial has started, and a citizen has been placed in legal jeopardy, "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event" the court considers declaring a mistrial. *United States v. Dinitz*, 424 U.S. 600, 609 (1976). "The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one...Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in the absence of some important countervailing interest of proper judicial administration." *Illinois v. Somerville*, 410 U.S. 458, 471 (1973). Within this constitutional framework, it is universally recognized across the federal appellate courts that, "trial judges may declare a mistrial without barring reprosecution only in extraordinary circumstances." *United States v. Rivera*, 384 F.3d 49, 55 (3d Cir.

2004) *quoting United States ex rel. Russo v. Superior Court of N.J.*, 483 F.2d 7, 13 (3d Cir.1973). Unless the declaration of a mistrial is a "manifest necessity," the defendant has been deprived of his right to pursue the trial to a conclusion before the original tribunal and perhaps an acquittal. Under such circumstances, retrial is precluded." *Jorn*, 400 U.S. at 484; *Drayton v. Hayes*, 589 F.2d 117, 121 (2d Cir. 1979).Thus, as an initial governing principle, when a double jeopardy claim is raised, the courts are bound to "resolve any doubt in favor of the liberty of the citizen." *Downum v. United States*, 372 U.S. 734, 738 (1963).

## Applicable Legal Standard

In line with the above principles, there are several different categories of circumstances where the court's consideration of the need to declare a mistrial might arise in a criminal prosecution. As pointed out above, in Mr. Koerber's case, Judge Nuffer pointed to "manifest necessity" due to a purportedly hung jury. The Supreme Court has referred to such circumstances as the classic example for when double jeopardy *does not bar* reprosecution. *See e.g. Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). Further, under normal circumstances, "[t]he trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court." *Arizona v. Washington*, 434 U.S. 497, 510 (1978). Nevertheless, when a mistrial is declared based upon the *sua sponte* decision of the court, manifest necessity is the legal standard, and that determination

requires the careful and deliberate exercise of the trial court judge's careful discretion. *See United States v. Chica*, 14 F.3d 1527, 1531 (11th Cir. 1994) ("Whether manifest necessity exists is a fact-intensive inquiry and is not susceptible to a mechanical formulation.") (Internal citation omitted.); *Somerville*, 410 U.S. at 462 (Recognizing the need to consider "varying and often unique situations arising during the course of a criminal trial[.]") Under this standard, it has long been upheld that "district courts are permitted to declare a mistrial and discharge a jury only where, "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). *See also United States v. Therve*, 764 F.3d 1293, 1298 (11th Cir. 2014). Thus, while it is oft repeated that "a failure of the jury to agree on a verdict" has been "long considered the classic basis for a proper mistrial," removing any double jeopardy bar to retrial, *United States v. Simpson*, 94 F.3d 1373, 1377 (10th Cir. 1996), a purportedly hung jury cannot serve as legal pretext for circumventing the Fifth Amendment's double jeopardy bar. Operationalizing these legal principles, a judge is required to exercise his or her discretion in the following ways prior to declaring a mistrial:

    1) **Good faith**, *see e.g. United States v. Dinitz*, 424 U.S. 600, 611 (1976) (The double-jeopardy clause "bars retrials where bad faith conduct by a judge…threatens harassment of an accused…so as to afford the prosecution a more favorable opportunity to convict the defendant."); *see also Hayes*, 589 F.2d 117, 121–22 ("bad faith conduct is not an inevitable part of the trial process; rather, it signals

a breakdown in the integrity of judicial proceedings, and no defendant may be required to suffer a second trial because of that event."); *Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011);

2) **Genuinely consider possible alternatives** before declaring a mistrial, *see Jorn*, 400 U.S. at 485 ("a trial judge should not grant a mistrial *sua sponte* ... until he has canvassed procedural alternatives"); *Therve*, 764 F.3d at 1298; *Rivera*, 384 F.3d at 56 ("Where a District Court sua sponte declares a mistrial in haste, without carefully considering alternatives available to it, it cannot be said to be acting under a manifest necessity. Any subsequent represectuion under those circumstances is barred by the Double Jeopardy Clause.") (Internal cites omitted.);

3) **Make a reasonable and supportable determination** that a mistrial was required by manifest necessity, *see Washington*, 434 U.S. at 509–10 & fn. 28 ("Even when the trial court generally would be accorded deference, the court nonetheless must exercise "sound discretion" in declaring a mistrial); id., ("[i]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for ... deference by an appellate court disappears."); *Perez*, 9 Wheat., at 580 (the "doctrine of manifest necessity" requires "a scrupulous exercise of judicial discretion" which "leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings");

4) **Avoid "overreaching"** *Hayes*, 589 F.2d at 122, and **acting precipitously**, merely because "it appears the jury might not convict." *Green*, 355 U.S. at 188.

## ANALYSIS

As applied to the facts and circumstances surrounding the declaration of mistrial in Mr. Koerber's case, the following factors support a finding that the mistrial implicated Mr. Koerber's Fifth Amendment right to be free from Double Jeopardy:

**I.    Good Faith.**

Chief Judge Nuffer was not the trial judge in this matter and did not preside over any of the pretrial or trial proceedings in 2017. No notice or opportunity for argument or discussion was given prior to Judge Nuffer's appearance in the matter. District Judge Robert Shelby presided over the trial, gave jury deliberation status updates, and participated with the parties in reviewing and responding to jury questions up until just before October 16, 2017. Further, although it appears from the transcript that Judge Nuffer and Judge Shelby had conferred regarding the fact that Judge Shelby had left the State of Utah[3], no advance notice or contemporary notice was given to the defense that Judge Shelby was planning to leave town or that any event had taken place requiring him to leave and be unavailable for proceedings. The first notice Mr. Koerber received that Judge Nuffer was presiding

---

[3] *See* 10/16/2017 Hr. Tr. at p. 10 Lines 6-12 ("Members of the jury, I need to introduce myself to you. My name is David Nuffer.  Judge Shelby had to leave unavoidably on travel outside of the state, and he asked me to assist him with matters that would arise in his absence. And so though I did not sign the notes you received earlier today, I was the one who worked with Judge Shelby to develop those for you.")

over the case and had already been interacting with the jury, came in the early afternoon on October 16, 2018,[4] when the jury sent a question about whether or not it could return a partial verdict. *Id*. at 5-7.   At the time that Chief Judge Nuffer appeared in Mr. Koerber's case and began interacting with the jury, a pre-existing situation may very well have affected the Court's ability to exercise discretionary authority in this case.  Should this Court be inclined to consider this motion and this fact becomes determinative, Mr. Koerber seeks leave to provide support for the facts and circumstances surrounding the pre-existing situation regarding Jude Nuffer's ability to exercise discretionary authority, under seal and *ex parte* for the Court's consideration.

## II.     Possible Alternatives to Mistrial.

As the 11th Circuit has explained, the justification for deferring to the trial court's declaration of a mistrial in typical jury deadlock circumstances, is that "the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate." *United States v. Therve*, 764 F.3d 1293, 1299 (11th Cir. 2014). Here, however, Judge Nuffer was not in a position to know "all the factors" because was not involved with the trial proceedings up to that point, and he was not involved in prior interactions with the jury.  The trial had been underway for eight weeks.  It is true that the jury had deliberated for a few days and then received a modified Allen instruction on October 11th.  However,

---

[4] See 10/16/2017 Hrg. Tr. at 3

after the modified Allen charge was given , the jury deliberated only 3 and ½ days (with a long weekend interspersed)[5], and had just hours earlier asked for an instruction on a partial verdict. Approximately 1 hour after the instruction on the partial verdict was sent back (during a lunch break) Chief Judge Nuffer notified the parties of a potential jury deadlock and convened everyone in the courtroom.

At 3:42 p.m. on October 16th, Judge Nuffer explained there had been a new note about a possible deadlock. The Court did not undertake any consideration of alternatives to a mistrial, and at approximately 3:43 p.m., Judge Nuffer stated "I would expect it to be after the interchanges we've had, it would appear to me that it would be manifestly necessary to declare a mistrial in the case." *Id*. at 8. The Court's decision to declare a mistrial without exploring other options violates the directive in *Jorn*, 400 U.S. at 485, which makes clear "a trial judge should not grant a mistrial *sua sponte* ... until he has canvassed procedural alternatives"); *Therve*, 764 F.3d at 1298; *Rivera*, 384 F.3d at 56 ("Where a District Court sua sponte declares a mistrial in haste, without carefully considering alternatives available to it, it cannot be said to be acting under a manifest necessity. Any subsequent represectuion under those circumstances is barred by the Double Jeopardy Clause.") (Internal cites omitted.)

III. **Manifest Necessity.**

When the jury came into the courtroom Judge Nuffer asked the foreperson of the jury if further deliberation would be helpful. When the foreperson

---

[5] 10/16/2017 Hrg. Tr. at 11-12

answered negatively, Judge Nuffer asked generally if anyone disagreed. When no jurors disagreed, the Judge asked counsel for both parties if they had any comment before he entered his order. . Receiving no comments from counsel, a mistrial was declared. The absence of any further inquiry appears insufficient to constitute a determination of manifest necessity. *See Washington*, 434 U.S. at 509–10 & fn. 28 ("Even when the trial court generally would be accorded deference, the court nonetheless must exercise "sound discretion" in declaring a mistrial ); id., ("[i]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for ... deference by an appellate court disappears."); *Perez*, 9 Wheat., at 580 (the "doctrine of manifest necessity" requires "a scrupulous exercise of judicial discretion" which "leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings").

While not directly on point, the 3rd Circuit case of *Love v. Morton*, 112 F.3d 131, 134 (3d Cir. 1997) did discuss considerations that arise when the presiding trial judge must leave prior to a verdict. In *Morton*, the trial judge had to leave immediately (due to a death in the family) and, without making any findings, declared a mistrial. The Third Circuit found that double jeopardy barred retrial because the judge "must consider and exhaust all other possibilities" including, for example, continuing proceedings until he could return. In Mr. Koerber's case, the record looks like a simple hung jury. However, this was a very complex case, that lasted for eight weeks and during which the jury was sending messages about being deadlocked after just a few days of deliberations, causing Judge Shelby to give

a modified *Allen* instruction. The jury did not deliberate much longer before Judge Shelby asked Judge Nuffer to substitute in his absence.. There is simply an insufficient record to determine whether manifest necessity actually existed at the time the mistrial was declared.

### IV.     Appearance The Jury Might Not Convict.

The short time that elapsed between the jury's note asking whether they could reach a partial verdict and their same day declaration of deadlock may have caused a precipitous rush to mistrial. "In order to invoke the "double jeopardy bar," a defendant need not demonstrate that the declaration of a mistrial prejudiced him in any way other than infringement on the "valued right" to have the empaneled tribunal decide his cause." *Somerville*, 410 U.S. at 471. Choosing not to wait for Judge Shelby's return, choosing not to explore alternatives, choosing not to examine the result of the partial verdict instruction, all within hours, after an eight-week trial and previously successful interactions between the judge and the jury – demonstrate that the declaration of mistrial meets the legal standard to prohibit retrial on Double Jeopardy grounds. *See United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004)

## REMEDY

Based on the argument and authorities above, Mr. Koerber seeks an order of dismissal barring retrial on the grounds that the declaration of his mistrial violated the Fifth Amendment's prohibition against Double Jeopardy.

Respectfully submitted on this the 4th day of June, 2018.

> */s/ Kathryn N. Nester*
> *Attorney for Claud R. Koerber*