JOHN W. HUBER, United States Attorney (#7226)
TYLER MURRAY, Assistant United States Attorney (#10308)
AARON CLARK, Assistant United States Attorney (#15404)
RUTH HACKFORD-PEER, Assistant United States Attorney (#15049)
Attorneys for the United States of America
111 South Main Street, Ste 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682 • Facsimile (801) 325-3387

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION
_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.  2:17-CR-00037 |
| Plaintiff, | : | |
| v. | : | OPPOSITION TO DEFENDANT'S MOTION TO DISMISS BASED UPON FIFTH AMENDMENT DOUBLE JEOPARDY GROUNDS |
| CLAUD R. KOERBER aka RICK KOERBER, | : | |
| Defendant. | : | Judge Frederic Block |

_____

The United States of America, by and through the undersigned Assistant United States Attorney, files this Opposition to Defendant's Motion to Dismiss Based Upon Fifth Amendment Double Jeopardy Grounds.  Mr. Koerber's case was tried before a jury from August 22, 2017, through October 6, 2017–when the case was submitted to the jury for deliberations.  The jury deliberated until October 16, 2017, when, a mistrial was declared due to "the manifest necessity presented by the jury being unable to reach a verdict."  10/16/17 Hearing Tr. at 11.

- 1 -

## II.     ARGUMENT

"When a mistrial is declared without the defendant's consent, the Double Jeopardy Clause of the Fifth Amendment bars the retrial of the defendant unless there was 'manifest necessity' for the mistrial." *United States v. Simpson*, 94 F.3d 1373, 1376 (citing *Arizona v. Washington*, 434 U.S. 497, 505 (1978)).  A finding of manifest necessity is left to "the sound discretion of the trial judge." *Id.* (citing *United States v. Crotwell*, 896 F.2d 437, 440 (10th Cir. 1990)).

"The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court." *Arizona v. Washington*, 434 U.S. 497, 510 (1978). Courts "accord the 'highest degree of respect' to a trial judge's finding of manifest necessity based on a hung jury." *Id.* at 1377.  Additionally, it is only when the grant of a mistrial by the trial judge amounts to an irrational or irresponsible act, does he abuse his discretion in finding that there is a manifest necessity for the mistrial. *Gilliam v. Foster*, 75 F. 3d 881, 894 (4th Cir. 1996).  Finally, it is unacceptable to bar re-prosecution based on an "innocent error" by the trial judge in declaring a mistrial. *Arizona*, 434 U.S. at 510 (citing *United States v. Goland*, 897 F.2d 405, 410 (9th Cir. 1990)).

I. **Adequate Justification for a Finding of Manifest Necessity is Apparent From the Record. Therefore, Double Jeopardy Does Not Bar Reprosecution Here**

"[T]he classic example of manifest necessity is the discharge of a genuinely deadlocked jury." *United States v. Castellanos*, 478 F.2d 749, 751 (2d Cir. 1973).  Moreover "[a] trial judge is not required to make an explicit finding of manifest necessity so long as adequate justification is apparent from the record." *Id.*

Although the Tenth Circuit has not explicitly adopted the following factors, other Circuit Courts have outlined a number of factors, which are useful in determining whether a judge has properly exercised his discretion to declare a deadlocked jury.  These factors include:

> (1) A timely objection by the defendant; (2) the jury's collective opinion that it cannot agree on a verdict; (3) the length of the jury deliberations; (4) the length of the trial; (5) the complexity of the issues presented to the jury; (6) any proper communication which the judge has with the jury; (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict; (8) whether the court provided counsel an opportunity to be heard; (9) whether the court considered alternatives to a mistrial; and (10) whether the court's decision was made after adequate reflection.

*United States v. Wecht*, 541 F.3d 493, 506 (3d Cir. 2008). *See also*; *United States v. Brown*, 426 F.3d 32, 36 637 (1st Cir. 2005) (factors eight through ten); *United States v. Razmilovic*, 507 F.3d 130, 137–39 (2d Cir. 2007) (all ten factors); *Jones v. Hogg*, 732 F.2d 53, 56 (6th Cir. 1984) (factors one through seven); *United States v. Byrski*, 854 F.2d 955, 961 (7th Cir. 1988) (factors one through seven); *Arnold v. McCarthy*, 566 F.2d 1377, 1387 (9th Cir. 1978) (first seven factors). A review of these factors illustrates that there was a manifest necessity to declare a mistrial here.

### 1.  A timely objection by the defendant

The Defendant did not object to the declaration of a mistrial here, despite being given ample opportunity to do so.  10/16/17 Hearing Tr. at 9–13.  Therefore, this factors leans in favor of a finding of manifest necessity to declare a mistrial.

### 2.  The jury's collective opinion that it cannot agree on a verdict

"The most critical factor [in determining manifest necessity] is the jury's own statement that it was unable to reach a verdict." *United States v. Horn*, 583 F.2d 1124, 1127 (10th Cir. 1978) (quoting *United States v. See*, 505 F.2d 845, 851 (9th Cir. 1974)).  To understand the jury's

position, it is sufficient to question the foreman individually and the jury as a group. *See id.* On Tuesday October 10, 2017, jurors sent the court a note stating they were deadlocked. On the morning of Wednesday, October 11, 2017, Judge Shelby provided the jurors with an additional instruction, a modified Allen charge, within which he acknowledged the jury was having difficulty reaching a unanimous agreement and instructed them to deliberate further. Exhibit 1, at p. 3. The jurors then continued deliberations for an additional four days before asking the court on October 16, 2017, again via a note, whether a partial verdict was acceptable. Exhibit 2. The Court, with input from counsel, then provided jurors with an additional instruction, letting them know they could return a partial verdict. *Id*. The same day, the foreperson then sent yet another note indicating the jury was hopelessly deadlocked. Exhibit 3.

Judge Nuffer, who was handling the case while Judge Shelby was absent[1], called a hearing where he asked the jury foreperson whether "further deliberations would enable a verdict on any of the counts." 10/16/17 Hearing Tr. at 11. He responded "no." *Id.* Judge Nuffer then inquired of the jurors as a whole whether anyone disagreed with the foreperson's assessment; none did. *Id.* Only then did Judge Nuffer declare a mistrial. Because the jury collectively agreed that it could not agree on a verdict, this factor supports a finding of manifest necessity to declare a mistrial.

---

[1] Defense counsel argues that Judge Nuffer should not have been allowed to fill in during Judge Shelby's absence, but this substitution is of no moment. *See United States v. Diaz*, 189 F.3d 1239, 1244 ("Mr. Diaz contends that because Fed. R. Crim. Pro. 25 addresses judicial reassignment only in cases of death, sickness, or other disability, these are the only permissible reasons to authorize a transfer from the judge initially assigned to a case. This argument also fails because it ignores the broad grant of power to courts under 28 U.S.C. § 137 to devise a system for dividing court business among judges. The provision of Rule 25 for reassignment in instances of judicial incapacity in no way circumscribes the scope of that broad administrative authority."). *See also United States v. Guebara*, 202 F.3d 283 (10th Cir. 2000) (noting that 28 U.S.C. § 137 "vests the district court with broad powers to divide court business among judges.")

### 3. The length of jury deliberations

Jurors received the case for deliberations on October 6, 2017, at approximately 7:00 pm and a mistrial was declared *ten days later* on October 16, 2017, at approximately 3:30 pm. Jurors deliberated for seven of those ten days, and continued to deliberate for four days after first determining it was deadlocked. The length of jury deliberations therefore supports a finding of manifest necessity to declare a mistrial.

### 4. The length of the trial

The trial started on Monday, August 22, 2017, and was submitted to the jury on October 6, 2017. The trial lasted almost seven weeks before deliberations began. While this factor does not in itself support a finding of manifest necessity, it does show that even though the trial was long and complex, jurors deliberated for ten days before determining that they were hopelessly deadlocked.

### 5. The complexity of the issues presented to the jury

The trial included charges of securities fraud, wire fraud, money laundering, and tax evasion, admittedly complex, but the charges included only one defendant, and all the charges arose out of one scheme. Further, the United States rested its case in chief on September 18, 2017, after less than four weeks of trial. Again, while this factor does not in itself support a finding of manifest necessity, it does show that even though the trial was long and complex, jurors deliberated for ten days before determining that they were hopelessly deadlocked.

### 6. Any proper communication which the judge has with the jury

The jury sent a number of notes to the judge, first a note stating they were deadlocked on Tuesday October 10, 2017. On Wednesday October 11, the Court provided a supplemental

instruction—a modified Allen instruction—encouraging them to continue deliberating. Then a note later in the day on Wednesday October 11, asked for printed copies of particular exhibits, which the Court provided. On Saturday October 14, the jury sent another note, asking a legal question and asking for printed copies of additional exhibits, which the Court provided. On Monday October 16, the jury asked whether they could return a partial verdict, and the Court provided a supplemental instruction that they could. At approximately 3:15 pm, the Court instructed the parties of the final note, expressing hopeless deadlock. It declared a mistrial shortly thereafter. The jurors wrote 5 notes to the judge; the judge, in conjunction with counsel, communicated properly with the jurors, sending them supplemental instructions, and encouraging them to continue deliberating. In considering the proper communication which the judge has with the jury, this factor supports the finding of manifest necessity to declare a mistrial.

## 7. The effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict

Although the trial and the deliberations were lengthy, jurors expressed no concerns regarding exhaustion or coercion, and Judge Nuffer did not specifically inquire into this. Therefore, this factor does not weigh in favor or against manifest necessity in declaring a mistrial.

## 8. Whether the court provided counsel an opportunity to be heard

After each note, the Court offered the parties an opportunity to be heard in how the Court should respond. Judge Shelby did this through telephonic conference and email. On October 16, 2017, after receiving the final note from the jury, Judge Nuffer convened with counsel and did the same. While convening with the counsel, Judge Nuffer announced his intention of inquiring of the jury whether they thought further deliberations would assist them, asked counsel for their input.

> The Court: It appears to me, but I intend to recite the same history for the jury and inquire of them specifically whether they think that further deliberations would assist them. And if the answer to that is no, which I would expect it to be after the interchanges we've had, it would appear to me that it would be manifestly necessary to declare a mistrial in the case. Do you have any commentary or advice for me on that point, Mr. Walz?
>
> Mr. Walz: No, Your Honor.
>
> The Court: Mr. Mumford?
>
> Mr. Mumford: No, Your Honor.

10/17/2017 Hearing Tr. at p. 9. After reciting the same history with the jurors, hearing from the foreman that additional deliberations would be futile, and inquiring whether any other jurors disagreed, Judge Nuffer announced his intention to declare a mistrial due to manifest necessity presented by the jury being unable to reach a verdict.

> The Court: Any Comment before I make that order, Mr. Walz?
>
> Mr. Walz: Not from the United States, Hour Honor.
>
> The Court: Mr. Mumford?
>
> Mr. Mumford: No Your Honor. We thank the jury for their service.

10/17/2017 Hearing Tr. at p. 11. Counsel for both sides had an opportunity to be heard. Therefore this factor supports a finding of manifest necessity to declare a mistrial.

### 9. Whether the court considered alternatives to a mistrial

There are a number of actions that a trial court could take short of declaring a mistrial. One court has identified these options as including "instructing the jury to continue its deliberation, inquiring of the jury whether it was deadlocked with respect to all defendants on all counts, giving the jury an Allen charge, and instructing the jury about the possibility of reaching a partial verdict."

*United States v. Razmilovic*, 507 F.3d 130, 139 (2d Cir. 2007). Here, the Court did all of the applicable alternatives prior to declaring a mistrial. The Court instructed the jury to continue deliberating on October 11, 2017, after they first expressed deadlock. The Court sent a supplemental instruction—an Allen charge—also on October 11, 2017. The Court instructed the Jury that they could return a partial verdict on October 16, 2017, making it clear they could decide only some counts and terminating their deliberations. These alternatives were undertaken prior to declaring a mistrial. Because a number of alternatives were implemented prior to declaring a mistrial—including encouraging the jury to continue deliberating, sending in supplemental instructions including an Allen charge, and instructing the jury that they could return a partial verdict—this factor weighs in favor of a finding of manifest necessity to declare a mistrial.

### 10. Whether the Court's decision was made after adequate reflection

Judge Nuffer adequately reflected on the decision to declare a mistrial. This reflection is apparent in the October 16, 2017, hearing itself. As previously indicated, Judge Nuffer, consulted with counsel for the United States and counsel for Defendant after receiving a second note indicating that the jury was deadlocked. Judge Nuffer expressed the intention of declaring a mistrial should the jury foreperson express the belief that additional deliberations would be fruitless. Judge Nuffer then asked Counsel for "commentary or advice on that point" and received none. 10/16/17 Hearing Tr. at 9. He further ensured that the jury was hopelessly deadlocked and declared a mistrial. Because the Court's decision to declare a mistrial was made after adequate reflection, this factors also indicates there was manifest necessity to declare a mistrial.

Seven of these factors lean in favor of a finding of manifest necessity and three factors are a wash. None of the factors suggest the Court abused his discretion in determining there was

manifest necessity to declare a mistrial. Because there was manifest necessity for the declaration of a mistrial following a deadlocked jury in the first trial, the Double Jeopardy clause of the Fifth Amendment does not bar reprosecution of Mr. Koerber. As such, Defendant's motion should be denied.

    DATED this 28th day of June, 2018.

                                       JOHN W. HUBER
                                       United States Attorney

                                       /s/ Ruth Hackford-Peer
                                       RUTH HACKFORD-PEER
                                       Assistant United States Attorney