JOHN W. HUBER, United States Attorney (#7226)
AARON B. CLARK, Assistant United States Attorney (#15404)
RUTH J. HACKFORD-PEER, Assistant United States Attorney (#15049)
TYLER MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
111 South Main, Suite 1800
Salt Lake City, Utah  84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.  2:17-CR-00037 |
| Plaintiff, | : | **UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS ATTORNEY-** |
| v. | : | **CLIENT PRIVILEGED LETTER** |
| CLAUD R. KOERBER, | : | Judge Frederic Block |
| Defendant. | : | Magistrate Judge Paul M. Warner |

The United States of America respectfully submits this opposition to Defendant's Motion to Suppress Attorney-Client Privilege Letter.

## I.    SUMMARY

In 2007, Koeber produced thousands of pages of documents in response to an IRS Summons.  Among those documents was a letter dated July 20, 2005.  In 2008, a copy of this letter was also produced by one of Koerber's former employees in response to a subpoena.  In May 2009, a grand jury indicted Koerber.  This letter formed the basis of Count 1.  At the time of indictment, Koerber said nothing about the letter being privileged.  Months passed.  Not until October 2009, after the United States identified some other potentially privileged materials in Mr. Koerber's production, did Koerber claim that this letter was privileged and that he had inadvertently produced

it.  Ultimately, after much litigation, a court agreed.  The United States returned the letter and obtained a superseding indictment that omitted any reference to it.  Since then, the United States has not used the letter, and it played no role at the prior trial.

Despite the fact that Koerber himself is responsible for providing the letter to the United States, he has contended, through motions in both the prior and current litigation, that his constitutional rights were violated, that this letter taints the litigation, and that the United States must prove in a *Kastigar*-like hearing that none of its evidence came from this letter.  Each time Koerber has made these arguments, judges have rejected them.

Koerber's current motion to suppress, which is premised on the same arguments that he has made multiple times before, should likewise be rejected.  Specifically, Mr. Koerber's motion to suppress should be denied because:

1.  Koerber's request for suppression is moot.  The United States did not use the letter in the prior trial and will not do so in the upcoming trial;

2.  There have been no violations of Koerber's constitutional rights.  As set forth in the prior orders on these issues, the United States engaged in no misconduct with respect to the letter.  Moreover, (i) there was no Fourth Amendment violation because the ethical violations alleged by Koerber do not equate to a constitutional violation; (ii) there was no Fifth Amendment violation because the United States acted properly and did not deliberately intrude on Koerber's attorney-client relationship; and (iii) there was no Sixth Amendment violation because there was no interference with Koerber's right to counsel and he can effectively cross examine witnesses (either with or without the letter); and

3.    There are no grounds for a *Kastigar*-like hearing because *Kastigar* applies only when there has been a prior grant of immunity, and there has been no such grant here. Moreover, the fruit of the poisonous tree doctrine does not apply because there has been no constitutional violation. And even if the fruit of the poisonous tree doctrine applied, Defendant has not met his burden of identifying specific "fruits" of the letter and establishing a nexus between those "fruits" and a constitutional violation. Finally, any supposed fruits would still be admissible under exceptions such as attenuation, inevitable discovery, or independent source.

## II.    RELEVANT FACTS

### *History of the July 20, 2005 letter*

#### *1.    Koerber Produced the July 20, 2005 Letter about which he now Complains.*

The document at issue is a letter dated July 20, 2005. The United States obtained a copy of this letter in two ways: (i) in 2007, Koerber, with the help of his counsel, produced the letter to the United States in response to an IRS summons; and (ii) in 2008, a former employee of Koerber named Rachelle Taylor provided an electronic copy of letter to investigators as part of a larger production in response to a subpoena. *United States v. Koerber,* 2:09-cr-302 ("Koerber I"), Order of Magistrate Judge Alba, ECF No. 95, at 1, 2-4. There was nothing on the face of this document that suggested it was privileged or distinguished it from other business communications. Koerber 1, Order of District Judge Waddoups, ECF No. 165 at 13-14.

In May 2009, the grand jury returned an indictment against Koerber. The July 20, 2005 letter formed the basis of Count 1 of the indictment. Koerber I, ECF No. 1. Despite seeing the letter prominently identified in Count 1, Koerber did not object or claim that letter was privileged.[1]

---

[1] Given that the letter formed the basis of Count 1 of the initial indictment, Koerber's assertion that

Months passed.  Then, in October 2009, counsel for the United States was reviewing documents in the case and noticed what appeared to be potentially privileged documents included in materials Koerber had produced.  Counsel for the United States notified counsel for Koerber. Koerber I, ECF No. 95 at 2.  In response, Koerber's counsel identified documents he believed were privileged, including the July 20, 2005, letter.  In November 2009, the grand jury returned a superseding indictment that still included the July 20, 2005, letter as the basis for Count 1, and the United States made clear in correspondence with Koerber's counsel that it disagreed with the assertion of privilege over the July 20, 2005, letter.  Koerber I, ECF No. 95 at 2; Koerber 1, ECF No. 465, at 8.  Under Tenth Circuit law, these circumstances required Koerber to seek immediate court action to assert his alleged privilege.  Koerber 1, ECF No. 465, at 8; *United States v. Ary*, 518 F.3d 775, 784-85 (10th Cir. 2008) (once a party is informed that government did not agree with privilege assertion, it must seek expeditious judicial enforcement because "[w]hen a party delays in asserting protection . . . the adverse party is free to continue to use the material, thereby negating its confidential character.")

Mr. Koerber nevertheless waited over two months, until February 2010, to file a motion. Koerber I, ECF No. 95 at 2.  Litigation over the privilege assertions—including with respect to the July 20, 2005, letter—followed.

To deal with privilege issues, the United States appointed a filter team.  Koerber I, ECF No. 48.  After multiple hearings, a magistrate judge found that any privilege associated with the July 20, 2005 letter produced by Rachelle Taylor had been waived.  Koerber I, ECF No. 95. at 10-

---

"the government waited to disclose its possession of the inadvertently-produced paper version [of the letter] until October 2009," (ECF No. 395 at. 11), is without merit.

13. But he also found that other documents were privileged and had been inadvertently produced, and ordered they be returned to Defendant. *Id.* at 6–8.

During the course of the privilege litigation, Mr. Koerber complained—as he does now—that the United States had failed to act in good faith with respect to the privileged documents. Koerber I, ECF No. 45. In response, the magistrate judge noted that it was the prosecution that brought the privilege issue to light; that but for the prosecution's notification regarding the potentially privileged documents, it was unclear when the issue would have been brought forward, and that "the United States acted in good faith throughout its dealings on these privilege matters." Koerber I, ECF No. 95, at 4-5.

On Defendant's appeal to the district judge, the parties again engaged in multiple evidentiary hearings and voluminous briefing. Koerber I, ECF No. 165, at 4. In June 2011, the district judge affirmed that certain documents were privileged and had been inadvertently produced. *Id.* at 14. He further overruled the magistrate judge's conclusion that privilege over the July 20, 2005, letter had been waived. *Id.* at 14-20. The district judge also noted that Koerber "has not presented any evidence that the government was purposely" trying to "interfere with his privilege in its interactions with his attorneys and related persons." *Id.* at 1, n.1.

The United States complied with the district court's order and deleted and/or destroyed the copies of the letter identified (by Bates number) in the order. Koerber I, ECF No. 177. The United States also sought a second superseding indictment, in part to remove any reference to the July 20, 2005 letter. The grand jury returned the second superseding indictment on September 29, 2011. Koerber I, ECF No. 191.

//

//

5

### 2. *Judge Waddoups Rejected Mr. Koerber's Motion to Dismiss, or for a Kastigar Hearing, in the Prior Case*

On November 19, 2011, Mr. Koerber moved to quash the September 2011 indictment, to disqualify the prosecutors and agents, and to compel discovery. He also asked, in the alternative, for a *Kastigar* hearing. Koerber I, ECF 202, 19, 23-24. His argument then, as now, was that the United States had made substantial use of the July 20, 2005, letter in obtaining the superseding indictment and that the proceedings were now so "tainted" with the letter that a *Kastigar* hearing was necessary to determine whether the United States was using evidence derived from the letter. *Id.*

The court rejected these arguments. In a three-page order denying Koerber's motion, the court explained that he had examined the grand jury transcripts and determined it could not "find the faintest reference to the privileged letter, or its contents, in the latest grand jury transcript." Koerber I, ECF 237 at 2. The court further stated that "it cannot be tenably asserted that the privileged letter has anything to do with Defendant's current indictment." *Id.*[2]

### 3. *Judge Shelby Likewise Rejected Mr. Koerber's Motion to Dismiss, or for a Kastigar Hearing, based on the July 20, 2005 Letter.*

On January 18, 2017, after the prior case was dismissed without prejudice for violation of the Speedy Trial Act, a new grand jury indicted Mr. Koerber. *United States v. Koerber¸* 2:17-cr-37 ("Koerber II"), ECF No. 1. The charges in this matter are similar to those in the September 2011 superseding indictment (which omitted any reference to the letter) that were dismissed in the prior litigation. On May 17, 2017, Mr. Koerber recycled his 2011 arguments and again moved to

---

[2] Despite this ruling, Mr. Koerber again sought to re-litigate these issues in Koerber I by filing a motion to dismiss for Grand Jury Abuse and for Intrusion into the Attorney-Client Relationship. Koerber I, ECF No. 465. This motion was never decided because the judge dismissed the case on speedy trial grounds.

dismiss the indictment (this time on Fifth Amendment Due Process grounds), to disqualify the prosecutors, or, in the alternative, for a *Kastigar* hearing, in part because of the July 20, 2005, letter.  Koerber II, ECF No. 75.

Judge Shelby denied this motion, concluding that "Koerber has not shown how the United States' previous reliance on that letter (before it was deemed privileged) constituted a Fifth or Sixth Amendment violation."  Koerber II, ECF No. 140 at 22.  With respect to the issue of whether the letter was a "roadmap" and somehow "taints" this case, Judge Shelby was clear that there was no basis for the relief Mr. Koerber sought:

> Rather, Koerber's argument seems to be that the residual taint from the letter continues to infect the case because it became a roadmap to the subsequent investigation and prosecution.
>
> Even assuming Koerber is prejudiced by the United States' past exposure to the "To Our Lenders" letter, it does not appear to the court that the United States engaged in any misconduct related to the letter. Koerber produced the letter to the United States, and over two years later, the United States contacted Koerber over a different document he produced that the United States believed may have been privileged, at which point Koerber claimed privilege over a range of documents, including the "To Our Lenders" letter. After some litigation—during which the Magistrate concluded the United States acted "in good faith"—Judge Waddoups determined the letter was privileged, and the United States returned or destroyed copies of the privileged letter (save for three missed copies that were later discovered by the United States and destroyed in May 2017). The United States returned a new indictment that, as discussed, Judge Waddoups concluded in no way relied on the privileged letter.
>
> *Nothing about this conduct establishes the United States engaged in misconduct related to the letter*.

Koerber II, ECF No. 140 at 23 (emphasis added)

//

//

//

**4.** ***Judge Warner Rejected Mr. Koerber's Motion to Show Cause and to Disqualify the Prosecutors Based on the July 20, 2005, Letter.***

On June 5, 2017, Mr. Koerber again made many of the same arguments about the July 20, 2005, letter in support of his motion to hold the United States in contempt and to disqualify prosecutors and agents involved in the case.  This motion was prompted, at least in part, by the fact that, despite the best efforts of the United States, three copies of the July 20, 2005, letter inadvertently remained in the discovery production.  Koerber II, ECF No. 87.  Koerber again complained that the United States had engaged in misconduct and that the whole proceeding had been infected by the supposed "taint" of the letter.  *Id.* at 8-16; 24-28.  Magistrate Judge Warner denied this motion.  In reaching this conclusion, he noted that the United States was not seeking to use the letter against Mr. Koerber: "the purpose of the Privilege Order was to prevent the government from using the 2005 letter to seek a conviction.  Mr. Koerber has not been denied this remedy."  Koerber II, ECF 143 at 5.  Judge Warner further rejected Koerber's re-hashed arguments about misconduct:

> The court finds nothing improper about the government's litigation strategy with respect to the 2005 Letter. Mr. Koerber inadvertently disclosed what he believed was privileged documentation to the government. The government disagreed and challenged Mr. Koerber's privilege designation. Judge Waddoups ruled in favor of Mr. Koerber and Mr. Koerber received his desired remedy. The government did not obtain the instant indictment using the 2005 Letter, nor does the government intend to rely on the 2005 Letter to seek a conviction. Therefore, the Privilege Order does not provide a basis for disqualifying the government's counsel.

*Id.* at 9.

Despite the fact that multiple judges have repeatedly rejected them, Koerber now repeats the same arguments in his motion to suppress the July 20, 2005, letter.  Repetition has not improved

these arguments, nor made them any more compelling.  As set forth below, they have no merit and should, again, be rejected.

### III.    ARGUMENT

**1.    Koerber's Request for Suppression of the July 20, 2005 Letter is Moot**

Koerber's request for an order suppressing the letter is moot because the letter has not been part of this case since 2011, when it was first deemed privileged.  Despite Koerber's complaints that the letter "taints" the case, he does not cite to a single, specific instance since 2011 when the letter has been used in any way.[3]  The second superseding indictment and related grand jury proceedings in the prior case did not make "the faintest reference to the privileged letter, or its contents."  Koerber I, ECF 237 at 2.  Similarly, the indictment in this case makes no mention of the letter.  And at the earlier trial, it was not mentioned in opening statements; it was not an exhibit; no questions were asked about it; and it was not mentioned in closing statements.  The same will be true of the retrial starting September 4, 2018.  As Judge Warner previously stated:  "the purpose of the Privilege Order was to prevent the government from using the 2005 letter to seek a conviction.  Mr. Koerber has not been denied this remedy."  Koerber II, ECF 143 at 5.  As a result, there is no need for another order that suppresses the letter.

**2.  There Were No Constitutional Violations**

Koerber asserts that there were violations of his Fourth, Fifth, and Sixth Amendment rights involving the letter that require suppression.  ECF No. 395 at 9-20.  Almost identical issues were

---

[3] Koerber alleges that the United States used the letter after 2011 and that it had copies of the letters in its files until July 16, 2017. (ECF No. 395 at 7, 17, 18).  Koerber cites to no facts in support of these assertions, and the United States is unaware of what he is referring to.  The United States' compliance with the Order with respect to this letter is detailed in its Supplement to Notice of Compliance with Court Order, ECF No. 83.

extensively briefed a year ago in the context of Koerber's motions to dismiss the indictment, obtain a *Kastigar* hearing, hold the United States in contempt, and disqualify prosecutors and agents.  The United States incorporates by reference that briefing into its response here.[4]  Both Judge Shelby and Judge Warner rejected Koerber's arguments and denied these motions.  Koerber II, ECF No. 140 at 22; ECF No. 143.

Koerber's latest iteration of these arguments should likewise be rejected for the following reasons:

*a.  There Was No Fourth Amendment Violation*

Koerber contends the United States violated his Fourth Amendment rights by violating a state ethics rule and Federal Rule of Civil Procedure 26(b)(5)(B).  ECF No. 395 at 17-18.[5]  This argument fails because violations of state ethics rules are not the equivalent of a constitutional violation, and violations of these rules cannot give rise to an exclusionary sanction.

The Supreme Court has refused to create exclusionary rules for anything less than a constitutional violation.  *See, e.g.*, *Michigan v. Tucker*, 417 U.S. 433, 445–46 & n. 19 (1974) (refusing to extend the fruits doctrine to a violation of Miranda's prophylactic rules, as they are not dictated by the Constitution itself).  Although the Tenth Circuit has not specifically decided whether violation of an ethics rule can rise to the level of a constitutional violation, noting only

---

[4] *See* ECF No. 82, United States' Response to Motion to Dismiss Indictment, Alternatively for *Kastigar*-Like hearing to Disqualification of Government Counsel; ECF No. 93 United States' Response to Motion for Order to Show Cause and Disqualify Prosecutors;  ECF No. 140; Order denying Motion to Dismiss Indictment, Alternatively for *Kastigar*-Like hearing to Disqualification of Government Counsel (and denying other motions); ECF No. 143 Memorandum Decision and Order Denying Motion to Show Cause and to Disqualify Federal Prosecutors.

[5] The United States obtained copies of the letter through the use of an IRS Summons and a subpoena.  The use of such mechanisms does not violate the Fourth Amendment so long as they are reasonable in scope, relevant in purpose, and cover a reasonable time period *See Becker v. Kroll*¸ 494 F.3d 904, 916-17 (10th Cir. 2007); *United States v. Reno*¸522 F.2d 572, 576 (10th Cir. 1975).  Koerber has not contended that the summons or subpoena were themselves unreasonable.

that "it's unclear whether or when a violation of an ethics rule should produce an error of constitutional proportion." *United States v. Mullins*, 613 F.3d 1273, 1289 (10th Cir. 2010), other courts have found that violations of state ethics rules are not typically grounds to exclude evidence. *United States v. Hill*, 197 F.3d 436, 447 (10th Cir. 1999) ("[E]ven if the prosecutors' conduct did violate [an ethical rule], that would not result in the exclusion of Halladay's testimony."); *United States v. Lowery*, 116 F.3d 1119, 1125 (11th Cir. 1999).  ("Making state prescribed professional conduct rules applicable to federal attorneys is one thing.  Letting those rules govern the admission of evidence in federal court is another.")  Indeed, state ethics rules do not bestow rights on individuals. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1186 (10th Cir. 2010) (state ethics "[r]ules do not bestow any rights upon Appellant that he can invoke to this appellate court or to the district court in attempting to quash a subpoena.").

Similarly, purported violations of the Federal Rules of Civil Procedure are irrelevant, because the civil rules do not apply in criminal proceedings. *United States v. McCalister*, 60 F.3d 1086, 1087-88 (10th Cir. 2010) (Federal Rules of Civil Procedure do not apply in criminal proceedings).

Koerber's Fourth Amendment claim also fails because it is based on the unfounded premise that the United States violated ethics rules with respect to the letter.  It did not.  Defendant himself is responsible for "inadvertently" disclosing his own attorney-client information.  He knew that the United States contested his privilege assertion of as to the letter, and had the responsibility to seek prompt court intervention or otherwise the United States was free to use it.  *United States v. Ary*, 518 F.3d at 784-85.  The parties litigated the issue, and though Koerber prevailed in the privilege dispute, courts that have reviewed these facts found that the United States "acted in good faith," (Koerber I, ECF No. 95, at 4-5), and did not "engage[] in any misconduct." (Koerber II,

ECF No. 140 at 23).   Further, there was " nothing improper about the government's litigation strategy with respect to the 2005 Letter."   Koerber II, ECF 143 at 9.   Accordingly, Mr. Koerber cannot claim a Fourth Amendment violation with respect to the letter.

     *b.   There Was No Fifth Amendment Violation*

     Koerber also claims a Fifth Amendment violation, arguing that the government's conduct, both before the letter was deemed privileged and after, justify suppression and a *Kastigar*-like hearing.   ECF No. 395 at 9-16.

     As set forth above, despite Koerber's claims of impropriety, the United States' conduct with respect to the letter has been reviewed on multiple occasions by multiple judges, who concluded there was nothing improper about its conduct.   Koerber I, ECF No. 95, at 4-5; Koerber II, ECF No. 140 at 23; Koerber II, ECF 143 at 9.   And Koerber's claim that the letter somehow continues to "taint" the proceedings ignores the fact that, in the prior case, the court reviewed the grand jury transcript and indictment returned after the letter was deemed privileged and concluded "it cannot be tenably asserted that the privileged letter has anything to do with Defendant's current indictment."   Koerber I ECF No. 237 at 2.   The same is true of the indictment here.   Koerber II ECF No. 143 at 9 ("The government did not obtain the instant indictment using the 2005 Letter, nor does the government intend to rely on the 2005 Letter to seek a conviction.")   And although Koerber asserts that the letter still plays a part in the case, he cites to no specific exhibit, testimony, or argument in which the United States used the letter since it was deemed privileged.[6]   For these

---

[6] Koerber asserts the United States has acted improperly because references to the July 20, 2005 letter, still exist in press releases, in interview reports, and in a grand jury transcript.   But those references all happened before the letter was deemed privileged, and largely before Koerber even contended that it was privileged.   And there is no order requiring that any such references be removed.   Moreover, none of the press releases or references to the letter were included in the prior trial, and they will not be used in the upcoming trial.   Koerber thus cannot show any prejudice resulting from these tangential references to the letter.

reasons, Judge Shelby refused to dismiss the indictment on Fifth Amendment grounds, or to grant a *Kastigar*-like hearing.  Koerber II, ECF No. 140 at 26.

Moreover, Defendant's reliance on *United States v. Lin Lyn Trading*, 149 F.3d 1112 (10th Cir. 1998) is misplaced.  In *Lin Lyn*, the district court found that there was a "deliberate" intrusion into the attorney-client privilege when the defendant told the customs agent that his yellow pad contained attorney-client notes, but the agent seized the pad anyway.  *Id.* at 1113-1115.  Here, in contrast, there was no deliberate intrusion.  The issue relating to the privileged documents resulted from Koerber's production of privileged materials.  Koerber saw the letter clearly used in the initial indictment, but said nothing until the United States brought the issue of other potentially privileged documents to Koerber's counsel's attention.  After extensive briefing and multiple evidentiary hearings, the matter was resolved in Mr. Koerber's favor.  The United States returned the privileged material and has proceeded without it.  These facts certainly do not demonstrate a violation of the Fifth Amendment.

### c.   There Was No Sixth Amendment Violation

Koerber also relies on *Shillinger v. Haworth¸* 70 F.3d 1132 (10th Cir. 1995) to argue that there was a violation of his Sixth Amendment right to counsel.  ECF No. 395 at 18-19.  But *Shillinger* involved a deliberate intrusion by deputy sheriff who was present during an in-custody trial session with the defendant's attorney.  *Id.* at 1138-39.  Here, in contrast, there was no such deliberate intrusion.

Without citation to any authority, Koerber also argues that the use of the letter during interviews and grand jury testimony—all of which occurred before Koerber asserted that the letter was privileged[7]—resulted in a violation of his Sixth Amendment right to confront witnesses.  ECF

---

[7] It appears that the only two witnesses who testified at the previous trial who were shown the

No. 395 at 20-21.  Specifically, he claims that he was "prevented" from using the letter to cross examine witnesses about what Koerber told them he would do with investor money.   ECF No. 395 at 20.

Koerber has this backwards.  The United States is not asserting the privilege—Koerber is. Nothing "prevented" Mr. Koerber from cross examining witnesses using the letter.  The privilege belongs to him, and he can choose to waive it and use the letter in cross examination.  *Tasby v. United States*, 504 F.3d 332, 336 (8th Cir. 1974) ("It has long been the law that a client may waive protection of the privilege, either expressly or impliedly"). [8]

Moreover, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  At the prior trial, Koerber's counsel had an opportunity to effectively cross examine witnesses about Koerber's representations as to his use of investment funds.  Only two witnesses who testified at the trial had been shown the letter.  The first was Michael Isom, who told investigators he did not recall receiving the letter. Koerber's counsel nevertheless extensively cross-examined Mr. Isom about what Koerber said the investment funds would be used for.  August 28, 2017 Trial Tr. at 798-799, 802-803, 811-813,

---

letter were Michael Isom, who was asked about the letter in an interview on May 20, 2009 (he told investigators he did not recall receiving the letter) and Paul Bouchard, who provided testimony to the Grand Jury on August 19, 2009.  Rachelle Taylor produced the letter in 2008, and Clyne Long was asked about the letter in June 2009, but did not remember it.  (Neither Ms. Taylor nor Mr. Long testified in the previous trial, and neither are expected to testify in the upcoming trial.)  Mr. Koerber did not attempt to assert any privilege over the letter until late October 2009.

[8] A different question might arise if someone other than Koerber was asserting the attorney-client privilege as a bar to cross examination.  *See, e.g., Murdoch v. Castro,* 699 F.3d 983, 995 (9th Cir. 2010)(defendant sought habeas relief from murder conviction, claiming his confrontation right was violated because a prosecution witness asserted the attorney client privilege over a potentially impeaching letter to his attorney.  The Ninth Circuit denied the habeas request because "[t]he relationship between the Confrontation Clause and the attorney-client privilege has not been clearly established by the Supreme Court.")

14

818-820, 824-827, 839-841, 852-870, 878-883; August 29, 2017 Trial Tr., at 970-971, 994-996 (Attached as Exhibit A).

The second was Paul Bouchard.  He was questioned extensively about where the investment money was going, and defense counsel used his prior grand jury testimony on this very topic in this cross examination.  September 12, 2017 Trial Tr. at 2565-2572 (Attached as Exhibit B).

Defendant's argument seems to be, however, that Bouchard's testimony about what Koerber said he would do with the money came from the letter, and they therefore cannot cross examine without the letter.  ECF 395 at 20.  But the letter, which Bouchard saw in 2009, was not the source of Bourchard's knowledge about where Koerber said the money was going.  On September 21, 2007, long before Mr. Bouchard saw the letter, he wrote an email to an investor stating "[y]ou have known all along where your money went and that Rick was using it to do real estate deals."  Gov't Trial Ex. 14 (attached as Exhibit C).  Given that Mr. Koerber contends the July 20, 2005 letter was not disclosed, the letter could not have been the source of Mr. Bouchard's understanding in 2007 that Koerber was going to use the money for real estate.  In any event, nothing the United States did prevented Koerber's attorney from cross-examining Paul Bouchard.

In short, Koerber's counsel engaged in extensive cross examination of Mr. Isom and Mr. Bouchard on Koerber's representations to them about the use of funds.  His counsel can do the same in the upcoming trial.  Koerber's choice not to use the letter in their cross examination does not create a Sixth Amendment violation.

### 3.  Koerber is Not Entitled to a *Kastigar*-type Hearing

####   a.  *Kastigar does not Apply*

Koerber is not entitled to a *Kastigar*-type hearing because *Kastigar* applies only in

instances where there is prosecution of a witness who has previously been given use immunity and the court must determine whether the compelled testimony was used in violation of the defendant's right against self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 460 (1972). Here, the letter was not provided under a grant of immunity or as part of compelled testimony, so *Kastigar* is inapplicable.

b. *The Fruit of the Poisonous Tree Doctrine does not Apply*

Defendant nevertheless contends that all "fruits" of the letter should be suppressed. But traditionally, the exclusionary rule and the fruit of the poisonous tree doctrine only apply in circumstances where law enforcement officials exploit a constitutional violation. *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). *See also Nickel v. Hannigan*, 97 F.3d 403, 409 (10th Cir. 1996) (declining to apply the fruit of the poisonous tree doctrine where the statements of the defendant's attorney should have been suppressed on the basis of attorney-client privilege because there was no indication that common law or precedent required the exclusion of all evidence derived from the breach of any attorney-client privilege); *United States v. Marashi*, 913 F.2d 724, 731 n. 11 (9th Cir.1990) (stating in dictum "that no court has ever applied [the 'fruits of the poisonous tree'] theory to any evidentiary privilege and that we have indicated we would not be the first to do so"). Here, there was no constitutional violation, and so the fruit of the poisonous tree doctrine does not apply.

c. *Defendant has Failed to Establish a Nexus Between any Supposed "Fruits" and a Constitutional Violation*

Even if suppression of fruits were appropriate here, Defendant has failed to meet his burden of first establishing a "factual nexus between the constitutional violation and the challenged evidence." *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007); *see also Alderman v. United States*, 394 U.S. 165, 183 (1969) (citing *Nardone v. United States*, 308 U.S. 338, 341

16

(1939)); *United States v. Nava–Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000); *United States v. DeLuca*, 269 F.3d 1128, 1144 (10th Cir. 2001); *United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980); *United States v. Kornegay*, 410 F.3d 89, 93–94 (1st Cir. 2005).  A defendant must first present evidence that the evidence sought to be suppressed "would not have come to light but for the government's unconstitutional conduct."  *Nava-Ramierz* 210 F.3d at 1131.  Only after a defendant meets this burden must the government prove that the evidence is not fruit of the poisonous tree or that an exception applies.  *Id.*

Here, Koerber points to no specific piece of evidence that he says constitutes the "fruit" of the letter.  He just makes the general assertion that the letter was a "roadmap."  As a factual matter, that is clearly erroneous, given the amount of investigation that had been performed prior to obtaining the letter.[9]  Moreover, such an assertion is too vague.  *Cf. United States v. Slough*, 641 F.3d 544, 554 (D.C. Cir. 2011) (district court's assertion that defendant's statement "must have been useful" and "guided" the government's investigation was too vague to support dismissal.").  Because Koerber has failed to identify or challenge any specific evidence, he is not entitled to a "fruits" hearing.[10]

    d.  *Exceptions Such as Attenuation, Inevitable Discovery, or Independent Source Would Apply to any "Fruits"*

Finally, even if Koerber were to identify a constitutional violation and a nexus between the

---

[9] At best, the "roadmap" finding made by an earlier trial judge (Koerber I, ECF No. 471 at. 16) could have referred only to the initial and superseding indictments in *Koerber I*.  As mentioned above, that same judge had reviewed the grand jury transcripts for the superseding indictment obtained after the letter had been deemed privileged, and found no reference to it whatsoever, stating "it cannot be tenably asserted that the privileged letter has anything to do with Defendant's current indictment."  Koerber I, ECF No.

[10] The burden on Koerber to identify what the "fruits" are is especially important here, because f the AUSA's currently on the trial team were not part of this case at the time the privilege issues were litigated and  have no recollection of ever seeing this letter.  Since they do not know what the letter said, it would be impossible for them to identify what its "fruits" might be.

constitutional violation and specific piece of evidence as a "fruit" of that violation, exceptions such as attenuation, inevitable discovery, or independent source would likely apply. *United States v. Carson*, 793 F.2d 1141, 1148 (10th Cir. 1986) ("The rule of Wong Sun is quite clear: evidence should not be excluded as a "fruit of the poisonous tree" simply because it comes to light as a result of prior illegal police activity; rather evidence, the knowledge of which is obtained as a result of prior police illegality, is admissible so long as (1) it has not been subsequently obtained through exploitation of that illegality, or (2) it has been subsequently obtained by means sufficiently distinguishable from the prior illegality to purge the evidence of the taint.") (internal citations omitted).

Here, the investigation was extensive. Agents reviewed thousands of documents and numerous witnesses. Whatever information was in the letter was likely found in multiple places or can be discussed by a number of witnesses. It would have inevitably been discovered through an independent source.

## VI.  CONCLUSION

Koerber's motion to suppress the July 20, 2005, letter is simply a repeat of arguments that have been made and rejected. He has already obtained the relief he sought with respect to the letter: the United States will not use it to seek a conviction. He is entitled to no more. His motion to suppress should be denied.

DATED this 28th day of June, 2018.

JOHN W. HUBER
United States Attorney


*/s/ Tyler Murray*
TYLER MURRAY
AARON CLARK
RUTH HACKFORD-PEER
Assistant United States Attorneys