IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLAUD R. KOERBER,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-CR-37<br><br>District Judge Frederic Block<br><br>Chief Magistrate Judge Paul M. Warner |

This order assumes the parties' familiarity with the facts and procedural history. Defendant Claud Koerber brings a motion to dismiss on double jeopardy grounds, and motions to suppress two February 2009 interviews and a 2005 attorney-client privileged letter. Koerber's motions are denied.

**I**

**A. Motion to Dismiss on Double Jeopardy Grounds**

Koerber first argues that his retrial is barred by the double jeopardy clause of the Fifth Amendment. The double jeopardy clause protects a criminal defendant from repeated prosecutions for the same offense. *United States v. Dinitz*, 424 US.

600, 606 (1976). "Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard . . . ." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). "[T]he most common form of 'manifest necessity' [is] a mistral declared by the judge following the jury's declaration that it was unable to reach a verdict." *Id.* "The hung jury remains the prototypical example" of a case meeting the manifest necessity standard. *Id.* "The most critical factor is the jury's own statement that it was unable to reach a verdict." *United States v. Horn*, 583 F.2d 1124, 1127 (10th Cir. 1978).

Here, Judge Nuffer declared a mistrial for manifest necessity because the jury was hung after over a week of deliberation. The jury originally indicated they were deadlocked on October 10, 2017 and were given a modified *Allen* charge on October 11, 2017. The jury then asked on October 16, 2017 whether a partial verdict was acceptable. They were instructed that they could return a partial verdict. The same day, the foreperson sent another note indicating the jury was "hopelessly deadlocked."

Judge Nuffer called a hearing and asked the foreperson whether additional deliberation would be helpful. The foreperson answered no. Judge Nuffer then inquired of the jurors collectively if any disagreed with the foreperson's

assessment. None did. Both before and after calling the jury in for the hearing,

Judge Nuffer asked counsel for both parties if they had any "commentary or

advice" regarding calling a mistrial. Neither did. Only then did Judge Nuffer

declare a mistrial. This is the "prototypical example" of manifest necessity.

### B. Motion to Suppress February 2009 Interview Statements

Koerber next moves to suppress statements made in non-custodial, voluntary

February 2009 interviews with investigators because they were made without

counsel present. This issue has been thoroughly addressed. Initially, Judge

Waddoups determined that the interviews violated Utah ethics laws and therefore

also violated Koerber's constitutional rights.

Judge Shelby reconsidered this holding and determined it was clear error.

First, he determined there was no ethics violation because the interview took place

before criminal proceedings commenced, and the cited no-contact ethics law, Rule

4.2 of the Utah Rules of Professional Conduct, only applied after the relationship

between the parties became adversarial. *See United States v. Ryan*, 903 F.2d 731,

740 (10th Cir. 1990) (holding "adversarial process had not begun" prior to the

initiation of criminal proceedings); *United States v. Mullins*, 613 F.3d 1273, 1289

(10th Cir. 2010) ("[similar Colorado] Rule 4.2 applies, like the Sixth Amendment,

only once adversary criminal proceedings have commenced.").

Second, he determined that even if there was an ethics violation, such a violation did not rise to the level of a constitutional violation or bind the Federal courts. *See United States v. Mullins*, 613 F.3d 1273, 1289 (10th Cir. 2010) ("[I]t's unclear whether or when a violation of an ethics rule should produce an error of *constitutional* proportion."); *United States v. Thomas*, 474 F.2d 110, 112 (10th Cir. 1973) ("This [ethics violation] does not necessarily present a constitutional question, but . . . an ethical and administrative one . . . .").

Third, he determined that the appropriate remedy for such a violation would be sanctions against the attorney, not suppression of evidence. *See United States v. Hill*, 197 F.3d 436, 447 (10th Cir. 1999) (holding "even if the prosecutors' conduct did violate [an ethics rule], that would not result in the exclusion of [the procured evidence]."); *United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999) (holding "a state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible.").

The Court agrees with and adopts Judge Shelby's conclusions. Koerber's motion to suppress the 2009 interview statements is denied.

### C. Motion to Suppress 2005 Letter

Finally, Koerber moves to suppress a 2005 letter, referred to by the parties as the "To Our Lenders" letter, which he claims is protected by the attorney-client

4

privilege, as well as any other evidence derived from the letter. Koerber has

already won this argument with respect to the letter. The second superseding

indictment removed any reference to the letter and dropped the sole charge that

relied on the letter. The government has returned all copies of the letter to

Koerber,[1] did not reference the letter at the previous trial, and indicates it will not

reference the letter at this trial.

    As for the fruits of the letter, Koerber does not indicate what specific

evidence he believes is derivative of the letter. Multiple judges have already

examined the government's case and determined that the letter and its fruits have

been removed completely and that the government did not act improperly in

relying on the letter prior to Koerber's privilege claim. *See* Waddoups Order,

*Koerber I*, Dkt. No. 237 at 2 ("it cannot be tenably asserted that the privileged

letter has anything to do with Defendant's current indictment."); Shelby Order,

*Koerber II*, Dkt. No. 140 at 23 ("nothing about this conduct established the United

States engaged in misconduct related to the letter"); Warner Order, *Koerber II*, Dkt.

No. 143 at 9 ("Mr. Koerber received his desired remedy. The government did not

---

[1] The government inadvertently retained several copies of the letter but promptly returned them to Koerber as soon as they were discovered.

obtain the instant indictment using the 2005 Letter, nor does the government intend

to rely on the 2005 Letter to seek a conviction."). Therefore, the Court sees no

basis to grant Koerber's request. Koerber is welcome to challenge the admissibility

of specific pieces of evidence at trial, as warranted.

**II**

None of Koerber's remaining arguments have merit. Koerber's motions are

denied.

IT IS SO ORDERED.

DATED this 30th day of July, 2018.

BY THE COURT:


_____/s/_____
FREDERIC BLOCK
United States District Judge