```
UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
--------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

     -against-                          MEMORANDUM AND ORDER
                                        Case No. 2:17-cr-00037-FB
CLAUD R. KOERBER a/k/a RICK
KOERBER,

                Defendant.
--------------------------------------------------x
```

**BLOCK, Senior District Judge:**

Koerber moves to suppress accounting and other bookkeeping files of Koerber's companies, which the government acquired from Koerber's former employee, Forrest Allen. The Court denies the motion based on the inevitable discovery doctrine.

The following facts are taken from Koerber's brief and the record. On April 4, 2007, the Internal Revenue Service ("IRS") issued summonses to Koerber and his companies seeking, among other things, those companies' business records, including "any and all business bookkeeping records," "any and all business financial records," and "any and all financial statements, bookkeeper's and/or accountant's work papers used in the preparation of state and/or federal tax returns." IRS Summons, *Koerber I*, Docket No. 463, Ex. 1.

Koerber alleges he resisted these summons on the basis that they were "overbroad and therefore legally ineffective." Def.'s Br. at 6. Koerber does not point to any evidence that he made this argument beyond his present say-so, nor does he provide a legal argument explaining why he believes the summons were overbroad. Nor is there any evidence that he formally resisted the summons, for example, by moving to quash the subpoena.[1] Regardless, the IRS was able to subpoena the files from a former employee of Koerber, Forrest Allen, who took digital copies of the disputed files with him when he left Koerber's employment.

More than ten years later, and after the files were introduced without objection at his first trial, Koerber now argues that the search and seizure of these files violated the Fourth Amendment because Allen did not have permission to take the files. Therefore, Koerber argues that the government could not rely on Allen's production of the files because Koerber retained a reasonable expectation of privacy in the files that Allen did not have authority to waive. He seeks suppression of those files under the exclusionary rule.

The exclusionary rule does not apply if the evidence inevitably would have been discovered through other means. *See Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014). The government bears

---

[1] There is some allegation that he was in negotiations with the government about the scope of the production, but these informal negotiations did not amount to formal resistance to the subpoena.

the burden of proving by a preponderance of the evidence that the exception applies. *Christy*, 739 F.3d at 540. The Court holds the disputed files here would have been inevitably discovered pursuant to the original summonses.

In *United States v. Souza*, 223 F.3d 1197 (10th Cir. 2000), the Tenth Circuit held that the exception applies in situations where the police had probable cause and took some steps to obtain a search warrant. 223 F.3d at 1203. It laid out four factors to consider: "(1) the extent to which the warrant process has been completed at the time those seeking the warrant learned of the search; (2) the strength of the showing of probable cause at the time the search occurred; (3) whether a warrant ultimately was obtained, albeit after the illegal entry; and (4) evidence that law enforcement agents 'jumped the gun' because they lacked confidence in their showing of probable cause and wanted to force the issue by creating a fait accompli." *Id.* at 1204 (quoting *United States v. Cabassa*, 62 F.3d 470, 473–74 (2d Cir. 1995) (internal citations omitted)).

Here, the government was relying on an IRS summons, rather than applying for a search warrant. An IRS summons functions much like a subpoena, and other courts, including some in this circuit, have applied the inevitable discovery doctrine in the context of subpoenas. S*ee, e.g.*, *United States v. Yazzie*, 998 F. Supp. 2d 1044, 1116–17 (D.N.M. 2014); *see also United States v. Eng*, 997 F.2d 987, 992–93 (2d

Cir. 1993) (holding that because a bank *would* have responded to a subpoena, an illegal search was cured).

An IRS summons requires significantly less evidence than a search warrant. *See Becker v. Kroll*, 494 F.3d 904, 916 (10th Cir. 2007) ("an investigatory or administrative subpoena is not subject to the same probable cause requirements as a search warrant"). The fact that the summons "was issued administratively with potential criminal ramifications does not change the analysis." *Id.* at 917. The government need only show that the investigation was conducted for a legitimate purpose, that the summons was relevant to that purpose, that the IRS did not already have the information, and that it followed the appropriate administrative steps as required by the Internal Revenue Code. *Jewell v. United States*, 749 F.3d 1295, 1297–98 (10th Cir. 2014) (citing *United States v. Powell*, 379 U.S. 48, 57–58 (1964)).

Here, in light of the allegations against Koerber, there was no question but that the investigation was conducted for a legitimate purpose and that the summonses were relevant to that purpose. Koerber does not allege that the IRS already had the information or that it did not follow the appropriate administrative steps. Accordingly, the *Souza* factors support a finding of inevitable discovery: The summons to Koerber's companies were already issued, they were valid, and there is no evidence that the IRS was trying to end-run Koerber's Fourth Amendment rights.

Nor is there any question that the summons covered the disputed files. Koerber admits as much: "Mr. Koerber and his attorneys had previously received subpoenas from the IRS requesting all business records and files, *which would have included the files at issue here . . . .*" Def.'s Br. at 5 (emphasis added). Therefore, even based on the facts alleged by Koerber, the government has met its burden to show inevitable discovery based on these summonses and their applicability to the disputed files.

Nor did Koerber's alleged argument that the summonses were overbroad have any chance of succeeding. The government's burden in enforcing an IRS summons has been described as "slight . . . because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *United States v. Balanced Fin. Mgmt.*, 769 F.2d 1440, 1443 (10th Cir. 1985). To overcome the presumption that a summons is proper, the defendant has a "heavy" burden and "must allege specific facts and evidence to support his allegations." *Sugarloaf Funding LLC v. United States Dept. of Treasury*, 584 F.3d 340, 343 (1st Cir. 2009). To defeat an overbreadth challenge, the summons need only describe the requested records with enough specificity, *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129, 131 (3d Cir. 1967), and be relevant to the investigation, *United States v. Southwestern Bank & Trust Co.*, 693 F.2d 994, 995–96 (10th Cir. 1982).

Koerber has not alleged a single fact to support his overbreadth argument. The summons clearly identified the bookkeeping records, and those records were directly relevant to the investigation into Koerber's alleged tax evasion. Therefore, Koerber's overbreadth argument would have had no chance of success.[2]

Because the government would have inevitably obtained the disputed records by compelling their production based on the IRS summonses, the exclusionary rule does not apply. Koerber's motion is denied.[3]

**SO ORDERED**.

/s/ Frederic Block
_____
FREDERIC BLOCK
Senior United States District Judge

Salt Lake City, Utah
September 7, 2018

---

[2] Indeed, at trial, Allen confirmed that the contested records were prepared knowing they were relevant for the entities' tax obligations.

[3] Koerber makes two other arguments, which also have no merit. First, he asserts that he had an agreement with the government not to turn over the digital files. This assertion is strongly resisted by the government, unsupported by anything but Koerber's say-so, and contradicted by the government's continued efforts to acquire these files after the supposed agreement was entered. Second, he argues that by the time the government succeeded in enforcing the summons, the files acquired from Koerber and his companies would have been different than the files possessed by Allen. This only shows that the government was entitled to more files than they acquired from Allen, not that those acquired files were exempt from the summons.