# Exhibit 23

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

CENTRAL DIVISION

UNITED STATES OF AMERICA,    )
        Plaintiffs,    )
vs.    )    Case No. 2:17-CR-37RJS
CLAUD R. KOERBER,    )
        Defendant.    )
_____)

BEFORE THE HONORABLE ROBERT J. SHELBY

---------------------------------------

August 31, 2017

Jury Trial

1  Q.    Is it fair to say -- is it fair to say that that would
2  be something that the outside C.P.A. firm -- would be more
3  in their purview then?
4          MR. MURRAY:  Objection.  Again, that calls for
5  speculation and is a hypothetical.
6          THE COURT:  Overruled.
7          THE WITNESS:  I would expect an outside firm to
8  review that and decide if my threshold was accurate or not.
9  BY MR. MUMFORD
10 Q.    You would provide them all of the information regarding
11 what your practice is, right?
12 A.    Correct.
13 Q.    And you would do that how?  How would that get
14 communicated to them?
15 A.    With the companies that I have worked for, quite often
16 an entire copy of the company's books would be furnished to
17 the C.P.A., and then they could review all of the assets at
18 will.  I should say all of the transactions at will.
19 Q.    As you sit here today, after all this time and after
20 all that has been said here, do you recall anything about
21 the conduct of Mr. Koerber and how he operated these
22 businesses as being dishonest or deceptive?
23 A.    I do not recall anything that I would say was
24 dishonest.  Deception to me can be defined in a lot of
25 different ways.

1   Q.   Okay.  Why are you hedging?
2   A.   I am hedging because, for example, and this is done by
3   many people in many circumstances, you tend to posture or
4   put yourself in a position to make yourself look perhaps
5   better than you really are or to draw a picture that
6   somebody may not otherwise see.
7   Q.   Is this going back to the 2007 time period where you
8   were concerned that -- when you left the company when you
9   were concerned that it would -- you were not sure whether
10  they would have money to cover the expenses that were
11  upcoming?
12  A.   It would have been back to that time, perhaps a little
13  bit before.
14  Q.   Okay.  Besides the posturing -- by the posturing what
15  is it that you are referring to there?
16  A.   Vehicles, lifestyle, the perception that people might
17  have.
18  Q.   Other than that, anything about what Mr. Koerber said
19  about his financial lifestyle that you would consider to be
20  deceptive?
21  A.   I can't point to any one thing.
22  Q.   Okay.  How often did you observe Mr. Koerber's
23  interactions with other employees?
24  A.   Daily.
25  Q.   With the public?