Kathryn N. Nester (Utah Bar No. 13967)
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467

Robert Hunt (Utah Bar No. 5722)
Daphne Oberg (Utah Bar No. 11161)
Jessica Stengel (Utah Bar No. 8915)
Office of the Federal Public Defender
46 W. Broadway, Ste. 110
Salt Lake City, Utah 8106
Telephone: (801) 524-4010

*Attorneys for Claud R. Koerber*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CLAUD R. KOERBER, <br><br> *Defendant.* | **REQUEST FOR AN EVIDENTIARY HEARING PRIOR TO SENTENCING** <br><br> Case No. 2:17-CR-37 <br><br> District Judge Frederic Block |

This Honorable Court is scheduled to preside over Mr. Claud R. Koerber's sentencing hearing on May 13, 2019. For reasons outlined below, Mr. Koerber respectfully requests the Court: 1) hold an evidentiary hearing on May 13, 2019 to resolve material, factual disputes relating to loss calculation and amount, number of victims and 18 U.S.C. § 3553(a) factors; 2) allow both parties a reasonable amount of time following the evidentiary hearing to submit their final sentencing memos; and 3) reset the final sentencing date for a hearing on a later date following the briefing.

**Factual Disputes Materially Affecting Guideline Range**

The Amended Presentence Investigation Report ("PSR") finds the recommended Guideline sentencing range to be a prison sentence of 235 to 293 months (19 to 24 years).  PSR at p. 23, ¶ 97.  The PSR's Guideline sentencing range is almost entirely the result of the 22-point enhancement for the calculated loss amount of $45,258,892.09.  PSR at p. 7, ¶19.  Without this enhancement, and before considering any of Mr. Koerber's other objections, the offense level would stand at 16, with a sentencing range of 21 and 27 months.  The loss calculation in the PSR is responsible for increasing the Guidelines' recommended sentencing range by 1000%.  When other corrections are made to the PSR, the Guidelines' recommended sentence would be even lower.

Similarly, the government's theory of counting victims and its method of calculating loss means that the resulting advisory guidelines range overstates the seriousness of the offenses, exaggerates the number of victims, fails to consider relevant § 3553(a) and other collateral consequence factors, and neglects other objections raised by Mr. Koerber. (*See* Doc. 556-1).

Therefore, because there are serious and material factual disputes at issue, pursuant to Federal Rules of Criminal Procedure, Rule 32(i)(2) and (3)(b), and a particularized need in this circumstance for the "thorough adversarial testing" required by federal sentencing procedure, *Rita v. United States*, 551 U.S. 338 (2007), Mr. Koerber requests an evidentiary hearing (also sometimes called a *Fatico hearing* by courts in the Second Circuit (referring to *United States v. Fatico*, 579

2

F.2d 707 (2nd Cir.1978), *on remand*, 458 F.Supp. 388 (E.D.N.Y.), *aff'd*, 603 F.2d 1053 (2nd Cir.1979)).

The requested evidentiary hearing will allow the defense to offer evidence directly challenging:

1) the facts and the methods a) employed in the PSR for calculating the number of victims, and b) employed in the PSR for calculating the loss amount for purposes of sentencing and restitution;

2) factual statements in the PSR describing the nature of the offense of conviction and Mr. Koerber's business activity since he was indicted in 2009; and,

3) the applicability and relevance of certain §3553(a) factors, collateral consequences, and other relevant sentencing factors outlined in Mr. Koerber's prior objections to the PSR.

1.  **The number of victims**

The government alleges that the total number of victims is 600. PSR at p. 8. The PSR relies upon a victim count of 38. PSR at p. 12 (¶41). Both the method used to define a victim and the actual victim count are factual matters in dispute. For example, the victim count includes people who testified at trial that they suffered no pecuniary loss (e.g. Clark, Hansen, Magelby, Moore, Colovich, etc.). Also included in the victim count are people for whom the books and records relied upon by the government show no pecuniary loss (e.g. Carrol, Freestone, Hooper, Huff, Bowen, Kipp, Anderson, Bennett, Raether, Eyre, Densley, Valario, etc.) and individuals who invested through entities that Mr. Koerber repaid in full or in excess of the amount invested (i.e., Pisciotta, Bennett, Hyde, Shields, etc.). The PSR also includes specific reference to victims who invested in other companies,

whose controlling principals did not testify as witnesses at trial, and whose books and records were neither introduced in evidence at trial, nor provided prior to trial or sentencing.[1]

Evidence at the hearing will show that the total number of victims as defined by the Guidelines (*see* USSG §2B1.1, Comment Note 3(A)(i), 3(A)(iii), 3(A)(iv), 3(D)(i), 3(E)(ii)), is substantially lower than alleged in the PSR. Evidence on this point will include: 1) the books and records showing actual loss; 2) testimony regarding foreseeability of loss experienced by those who invested in third party companies (where Mr. Koerber was not the decision maker regarding how money received from Founders Capital was paid back); 3) testimony regarding non-fraud-related causes of loss suffered by Mr. Koerber's investors;[2] and 4) testimony about the erroneous inclusion of victims who never relied upon Mr. Koerber's representations, or whose money was never transferred from their third party relationship to Founders Capital, and/or whose investment decision or loss was not related to Mr. Koerber or his companies.

---

[1] Testimony and exhibits at an evidentiary hearing on this point will come from Russell C. Skousen, David Hardman, Wade Sleater, Jason Vaughn, the former president of Founders Capital, David Kirby, Dale Clarke, David Ridge, Wayne Andreason, Jerel Clark, Kenny Snarr, and Franklin Squires bookkeeper Forrest Allen.

[2] In addition to Mr. Hardman's testimony on this point, the defense will present testimony that the proximate cause of investor losses was outside market events in the real estate and finance markets between 2007 and 2009. *See, e.g., United States v. Ebbers*, 458 F.3d 110, 128 (2d Cir. 2006) ("Losses from causes other than the fraud must be excluded from the loss calculation.").

**2.     The loss amount**

The government and the PSR allege that 38 first line investors lost $45,258,892.09.  PSR at p. 8 (¶24).[3]  Mr. Koerber will show that relying on the victims listed in the PSR, the contemporaneous records that existed at the time show the loss would be no more than half the amount alleged.  Based on evidence presented at the hearing, the total loss amount, adjusted to reflect the loss by Guideline-defined victims, will be substantially and significantly lower than alleged in the PSR. [4]  Finally, evidence will show that the fair market value of collateral pledged (as described in Comment Note 3(E)), exceeds the total loss amount.

**3.     Section 3553(a) factors**

Among the factual statements in the PSR objected to by Mr. Koerber are statements regarding his business activity since 2009.  Mr. Koerber will testify to rebut the allegations contained in ¶¶ 80-82 of the PSR.  Mr. Skousen and Mr. Philpot will also testify regarding the factual dispute involving ¶¶ 80-82.  Finally, Mr. Koerber will testify regarding relevant § 3553(a) factors, and collateral consequences that were omitted from the PSR.

---

[3] It appears the government and the PSR miscount, for while they both state 38 victims, there are 37 listed in the spreadsheet provided to Mr. Koerber.

[4] Testimony and exhibits on this point will come from Russell C. Skousen, CPA (who compiled financial data circulated to each of these identified "victims" at the time, and prepared and distributed contemporaneous reports of these amounts to each investor in late 2007); David Hardman, CPA, who has examined the government's loss calculation method and the books and records of the company from 2007.

## Conclusion

This request for an evidentiary hearing is supported by the policy statement and related commentary to United States Sentencing Guidelines at §6A1.3 cmt ("[A]n evidentiary hearing may sometimes be the only reliable way to resolve disputed issues."). Mr. Koerber respectfully requests that following the evidentiary hearing, the Court establish a briefing schedule allowing sufficient time for the evidence produced during this hearing to be included in Mr. Koerber's sentencing pleading. Such a schedule will allow the parties and the Court to resolve the material, factual disputes, which will have a significant impact on the ultimate sentencing memos and issues.

Dated this 25th day of April 2019.

Respectfully submitted,

*/s/ Kathryn N. Nester*
Attorney for Claud R. Koerber