Kathryn N. Nester (#13967 - UT)
Federal Defenders of San Diego, Inc.
225 Broadway, Ste. 900
San Diego, CA 92101
Telephone: (619) 234-8467

Robert Hunt (#5722)
Daphne Oberg (#11161)
Jessica Stengel (#8915)
Office of the Federal Public Defender
46 W. Broadway, Ste. 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010

*Attorneys for Claud R. Koerber*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>v.<br><br>CLAUD R. KOERBER<br><br>    Defendant. | **Defendant's Motion for Reconsideration of Detention Order**<br><br>Case No. 2:17-CR-37<br><br>District Judge Frederic Block<br><br>Magistrate Judge Paul Warner |

At the conclusion of an evidentiary hearing on Friday, May 31, 2019, the Court revoked Mr. Koerber's prior release order and, for the first time in the 10-year history of this prosecution, entered an order of detention remanding Mr. Koerber to the custody of the U.S. Marshal.

After revoking Mr. Koerber's release, the Court invited defense counsel to file for review of Mr. Koerber's detention "no sooner than a minimum of three or four weeks" and suggested some additional conditions of release that the Court would require if it decided to authorize Mr. Koerber's

release. (Rev. Hrg. Tr. at pp. 164-168)

This motion gratefully accepts the Court's invitation and Mr. Koerber brings this motion, respectfully requesting the Court to reconsider the prior order of detention and enter an order immediately releasing him from custody.  The immediacy of the release is important for several reasons, including the urgent need for Mr. Koerber and his attorneys to work together in preparation for the upcoming evidentiary scheduled for July 25th and 26th, and the upcoming sentencing hearing in September. Mr. Koerber's current health condition also presents a serious situation that is quickly worsening.

Based upon the facts and relevant law presented below (including facts that were not available to the defense or the Court at the May 31, 2019 hearing), Mr. Koerber asks this Court to reconsider its prior probable cause finding made pursuant to 18 U.S.C. § 3148(b)(1), and conclude that Mr. Koerber committed no release violation. Alternatively, pursuant to § 3148(b)(2), Mr. Koerber asks the Court to find, after considering the factors outlined in § 3142(g), that release should be granted on the conditions proposed herein.

I. *There are conditions this Court can impose to ensure that Mr. Koerber does not pose a danger to the community.*

To provide the Court with the assurances it has requested, Mr. Koerber proposes that he be released on the prior terms of release, with the addition of 5 new conditions:

1. During his release, Mr. Koerber shall not have any management or executive level responsibilities in any business. Within 5 days of being released from custody, Mr. Koerber shall resign all of his managerial and/or executive level positions, including in Corvus Administration and Management, LLC.  Mr. Koerber shall present proof of this resignation in compliance with this condition to the U.S. Pretrial Services Office.

2. During his release, Mr. Koerber shall not be a signer on any business bank or business credit union account. Within 5 days of being released from custody, Mr. Koerber shall remove his

name from any such accounts, and shall present proof of compliance with this condition, to the U.S. Pretrial Services Office.

3.  While on release, in financial transactions and in his employment, Mr. Koerber shall use his legal name, Claud R. Koerber, at all times and without exception.

4.  While on release, Mr. Koerber shall maintain active employment and keep the U.S. Pretrial Services Office updated as to any changes in his employment.  To the extent that Mr. Koerber continues to be employed by attorneys, Mr. Koerber shall not file any documents with any court on the matters for which he is employed, and Mr. Koerber shall not provide verifications of dates, or provide any certifications or authentications of documents that will be filed with any court in any case for which he is employed. If there is a need for an exception to this restriction, Mr. Koerber may request an exception 72 hour in advance, by writing an email to the Pretrial Services Office. The email shall contain a description from his employer justifying the requested exception, and a certification of good faith from his employer that the exception is reasonably required to accomplish a valid legal objective.  The U.S. Pretrial Services Office may, but is not required to grant the exception, and any exception shall be in writing.  This condition does not affect Mr. Koerber's ability to represent himself in any matter.

5.  While on release, Mr. Koerber shall provide a copy of the conditions of his release to any employing attorney, and before commencing any work for any attorney or any law firm, Mr. Koerber shall have the employing attorney sign an acknowledgment that he or she has received and reviewed the conditions of release, and that he or she expressly agrees to cooperate and ensure these conditions are followed.  Further, from this point forward while Mr. Koerber is on release, each employing attorney shall also sign an acknowledgment, before Mr. Koerber commences any work for that attorney, that he or she will independently

3

and immediately report and detail to the Pretrial Services Office in writing any claim or

complaint made by any person, if and when made, regarding Mr. Koerber's personal

conduct.

These proposed terms are intended to comply with the Court's request for assurances, as

discussed at the end of the May 31, 2019 hearing.  Mr. Koerber suggests these conditions so that the

Court will feel confident that Mr. Koerber's immediate release will pose no risk of future violations.

Mr. Koerber recognizes additional conditions of supervision may be required and he will gladly

comply with any and all conditions this Court deems necessary.

II.      *Both the law and the facts support the conclusion that Mr. Koerber did not violate any conditions of supervision.*

As additional support for this motion, Mr. Koerber presents legal and factual arguments

below. Having had additional time to gather facts and evidence that were not reasonably available at

the May 31, 2019, hearing ("the May hearing"), and having had additional time to review the relevant

and applicable law, there are substantial grounds for the Court to reconsider its prior order

including:

A)  The facts presented at the May hearing, *in combination with the new facts described below*, show

affirmatively that the available evidence does not sufficiently support a probable cause

finding for any of the four criminal statutes cited in the petition;

ALTERNATIVELY,

B)  As this Court noted at the May 31 hearing, the interplay among the various sections of

the Bail Reform Act applicable here are confusing at best. Mr. Koerber suggests the

Court reconsider the burdens on the parties and the presumptions applied in light of the

requirement of 18 USC §3148(b)(2)(A) that the Court consider and weigh the factors

under 18 USC §3142(g).  Mr. Koerber submits that the clear and convincing standard

required by 18 USC §3143(a) was previously met when the District Judge first ordered

4

release and the allegation of a later violation did not set that finding aside.

C) The government did not follow the statutory requirement for initiating the May 31 hearing, as outlined in 18 U.S.C § 3148, thereby violating the due process rights of Mr. Koerber.

In light of the new additional facts, and after applying the governing legal standards, Mr. Koerber's immediate release is appropriate and justified.

*A. Newly discovered facts.*

*i. Establishing Corvus.*

Mr. Koerber was initially indicted on May 26, 2009. *See United States v. Koerber*, No. 2:09-CR-302-JNP (D. Utah May 26, 2009), ECF No. 1. Beginning in 2011, Mr. Koerber obtained full-time work as a W-2 employee paralegal and law office administrator at a Utah law firm named Corvus Law Group, PLLC.[1] During the time he was employed by the law firm, Mr. Koerber and a few family members separately formed a new partnership venture named Corvus Administration and Management ("Corvus"), with the plan that Mr. Koerber's family members would be owners and Mr. Koerber would be the manager. The idea was that Corvus would engage in various business activities, including providing services to Corvus Law Group, PLLC and other attorneys and law firms. Rev. Hrg. Tr. at 61.

In March 2012, using his legal name Claud R. Koerber, Mr. Koerber registered Corvus with the Internal Revenue Service as Corvus Administration and Management, LLC and Corvus was given a federal employee identification number. Corvus continues to use this federal id number. *See* Rev. Hrg. Tr. at 73:16-18 and Defense Exhibit 3.

On March 5, 2012, Mr. Koerber filed Articles of Organization with the Utah Department of

---

[1] This law firm, Corvus Law Group, PLLC, was formed and operated separately and independent from Mr. Koerber by unrelated third parties. Mr. Koerber was hired as an employee in 2011.

Commerce for the purpose of registering the business as a Utah limited liability company. As a result, Utah provided Corvus a state business entity number. *See* Government's Submission to Support Pretrial Release Violation, ECF No. 584, Ex. 5 (Corvus Articles of Organization).

On June 28, 2012, Mr. Koerber (d/b/a Corvus) opened a business savings and business checking account at Mountain America Credit Union, which is when Corvus began acquiring clients and receiving payment.  Mr. Koerber used his legal name Claud R. Koerber and his role as Manager to open the Mountain America Credit Union account. *See* Rev. Hrg. Def. Ex. 6 (Mountain America Credit Union Records).  Mr. Koerber was the only signer on the account. He subsequently executed all Mountain America Credit Union documents in his legal name, Claud R. Koerber, and accurately provided the credit union with the IRS identification number Corvus had obtained in March 2012. Rev. Hrg. Tr. at 62:8-25, 63:1-3 and Rev. Hrg. Def. Ex. 6.

Beginning in 2012 and continuing through May 31, 2019, Corvus transacted business by hiring Mr. Koerber out as a contract paralegal to attorneys and law firms across the United States, but most significantly in Utah, Oregon, Nevada, and California. Rev. Hrg. Tr. at 65, 98-99, 123-124 and Ex. 3.

The registration of Corvus' Articles of Organization with the Utah Department of Commerce expired on June 27, 2013. Ex. 4, p. 6.  Despite the expiration of the registration of its Articles of Organization, Corvus continued to operate without interruption.[2] *See* Rev. Hrg. Tr. at 83:7-14.

Between 2012 and 2019, Mr. Koerber and Corvus developed a reputation for providing high quality, reliable, and professional legal services to experienced lawyers.  *See* Ex. 2 attached hereto

---

[2] Attorney Russell C. Skousen, who was the former Executive Director of the Utah Department of Commerce testified that this circumstance happens "often" [Rev. Hrg. Tr. at 78], and that when companies keep operating with expired registration "[a]s a practical sense, it doesn't affect your ability to continue to do business, but you're exposed to personal liability.  You don't have that protection of the corporate shield." [*Id.* at p. 79].

(which respond to this Court's request at the Revocation Hearing to know of names of particular lawyers who have retained Mr. Koerber's services). In addition to Mr. Koerber's paralegal services, Corvus provided document delivery and service of process services to attorneys and law firms. Corvus contracted with individuals in addition to Mr. Koerber to accomplish this task, including owner John Belcher. *See* Rev. Hrg. Tr. at 90:11-13 and Rev. Hrg. Def. Ex. 8 (Declaration of Maureen Peltier).

Since approximately 2013, two of Corvus' main clients have been JM Philpot Law (Utah attorney J. Morgan Philpot) and Skousen Law (Utah attorney Russell C. Skousen). *See* Rev. Hrg. Tr. at 71:3-8.  When working with these firms, Mr. Koerber frequently uses his surname at birth, "Franklin," and has also gone by the names Claud R. Franklin or Rick Franklin. Rev. Hrg. Tr. at 28-30 and Rev. Hrg. Def. Ex. 1 (birth certificate).  When using the last name of Franklin in prominent social media and internet biographical sites, (Gov. Ex. 6 at Rev. Hrg.) Mr. Koerber regularly and freely disclosed that he is also known as Koerber. Rev. Hrg. Tr. at 97:11-19.

                    *ii.  Utah Department of Commerce*

In Utah, registration of Articles of Organization ("Articles") for limited liability companies is regulated by the Utah Department of Commerce ("UDOC"), Division of Corporations and Commercial Code. Rev. Hrg. Tr. at 79-82.  Businesses are required to renew the registrations each year, or the registration expires. *Id.*.  After a business' registration has lapsed for more than two years, if the business wants to have the benefits of registration restored, it is not allowed to simply "renew" its registration, but it must instead register its Articles anew, as if starting over with the UDOC. *Id. See also* Ex. 1 (Declaration of Jewel Franklin).

The UDOC maintains an online website to allow businesses to register Articles using an online form provided by and administered by the UDOC. ECF No. 584 at p. 3; Rev. Hrg. Gov. Exhibits 4,5; and Ex. 1. The online registration program is called the "One Stop Online Business

Registration" page. ECF No. 584 at p. 3.  When a business uses the online form to register its Articles, the form requires answers to several questions about the business entity. Rev. Hrg. Tr. Gov. Ex. 5 and Ex. 1.  One question that the form requires the registering company to complete is the following: *"What is the date you will start or did start doing business?" Id.* Although the question includes the use of the past tense word "did" as part of the question, the form does not allow users to enter any date of their choice. Instead, the form provides limited, predefined drop-down choices of days, months and years. The form does not allow the input of any date prior to January 1, 2018. *See* Ex. 1. If a user attempts to enter a date from 2012, or attempts to skip the question, the form provides a red text error message. *Id.*

It is neither a crime to allow a business license to lapse in Utah nor to conduct business after a license has been suspended or lapsed.  Rev. Hrg. Tr. at 77-80.  The government has not rebutted the fact that Corvus Administration has been operating regularly since its registration lapsed in 2013 and the bank statements voluntarily submitted to the US Probation Office by Mr. Koerber conclusively show the same. See PSR.

### iii. Re-Registration of Corvus

From February 28, 2019 to March 8, 2019, Mr. Koerber was working with his defense attorneys in the instant matter to respond to the presentence investigation report.

On February 28, 2019, Mr. Koerber delivered financial disclosures to the United States Probation Office ("USPO") in advance of the first draft of the PSR. *See* Transcript at 38:24-25, 39:1-17. In Mr. Koerber's disclosures, he provided a complete description of his role and involvement with Corvus, including that 1) Corvus was currently operating, 2) that it had been operating since approximately 2013, and 3) that he had been working as a paralegal for Corvus from

2013 to the present and was earning approximately $4,500 per month.[3] See PSR.  In these disclosures, Mr. Koerber not only provided twelve months of recent Corvus bank statements and the Utah entity number for the expired Articles with the UDOC, he also disclosed that the prior 2012 filing of Corvus Articles with the UDOC had expired. See PSR.

On March 4, 2019, the probation officer completed the first draft of the PSR and circulated it to the relevant parties. *See* Transcript at 36:14-37:20. The draft PSR raised the fact that Corvus's registration was expired as a negative factor to be held against Mr. Koerber. See PSR.

On March 5, 2019, the day after receiving the probation officer's draft of the PSR, Mr. Koerber received a copy of an email from the prosecution team to the USPO in response to the USPO's request to search for and provide additional information about Corvus in order to facilitate further investigation by USPO.  Ex. 5 attached.

In response to these developments, Mr. Koerber and his wife travelled to the Spanish Fork home of Corvus' owner, John Belcher, on March 5, 2019.  During the meeting, they discussed the issue of the lapsed registration. Rev. Hrg. Tr. at 66:2-10. Mr. Koerber requested that Corvus be registered anew immediately. Id. That same day, March 5, Mr. Koerber, his wife and Mr. Belcher attempted to re-register Corvus, but ran into a problem related to the question on the online registration form that would not allow them to "put the date that we actually formed the company."

---

[3] On November 13, 2018, Mr. Koerber had a preliminary phone interview with USPO (and attorney Robert Steele from the Federal Defenders office) following his trial. During the call Mr. Koerber explained the history of his employment with Corvus Law Group, the formation of Corvus Administration and Management, LLC, and the expired status with the Utah Department of Commerce.   The probation officer documented in her March 4 draft PSR that Mr. Koerber had fully disclosed this information.  Rev. Hrg.Tr. at p. 37 ("The defendant reported being self-employed as a contract paralegal since 2013 under the business name of Corvus Administration and Management, LLC…[and that] [h]e has not renewed his business registration with the Utah Department of Commerce since 2013[.]") *See also* Rev. Hrg. Tr. 39 (showing that Mr. Koerber disclosed, on February 28, 2019 that he "is the manager of Corvus Administration and Management, LLC…[and] [a]s the manager…[c]ontrols a checking and savings account…[but] does not own any stock or membership.")

Rev. Hrg. Tr. at 68:4-15.  When they tried to put in the original 2012 date of formation of Corvus, the form provided a "big red error and says you filled this out wrong, and try again." *Id.* They subsequently contacted UDOC and "asked them how to proceed." *Id.*

Utah DOC instructed that in re-registering Corvus, the correct answer to the question was to "put today's date" in the form, and assured that "it happens all the time" that "it's fairly normal" and confirmed that it was appropriate because "the old company [registration], we've got that in our system, and that's how it's always done." *Id.*

Mr. Koerber followed the instructions given by UDOC and on March 6, 2019, successfully re-registered Corvus' Articles of Organization with UDOC.  *See* Gov. Submission in Support of Violation, Ex. 3 - Articles of Organization 2019.  Mr. Koerber is the person who signed and submitted the online registration form. Id.

In the process of registering, although UDOC required the use of the current date in answer to the question "What is the date you will start or did start doing business?" Mr. Koerber also took deliberate action on the same form, in another field, and openly disclosed that Corvus was not a new business but that it had previously registered in 2012. Rev. Hrg. Tr. Gov. Ex. 3.

Following the May hearing before this Court, Mr. Koerber's defense team investigated further into how the online form affects applicants' abilities to input information about their business entity.  During the investigation, Ms. Jewel Franklin, Mr. Koerber's wife, logged in to the UDOC website went through the process for a registration of a business entity.  She learned that as part of the online registration process, UDOC offers online chat assistance, where a UDOC employee answers questions, provides instructions, and explains requirements for completing the registration.  *See* Ex. 1. When a person contacts UDOC online while they are attempting to renew a business's registration that has been expired for more than two years, UDOC advises that rather than a "renewal" the person be required to re-file the Articles as if the business is starting over as of

the date of the new registration. *See* Ex. 1.

As shown in Exhibit 1, when Ms. Franklin told UDOC that the online form does not allow an accurate answer to the question, "What is the date you will start or did start doing business?" if the date predated the date of registration, UDOC told her that *this is not the meaning of the question*. Utah DOC instructed Ms. Franklin that the question pertains only to the newly re-registered entity, and directed her to use the current date (meaning the date of the re-registration) to answer this question. *Id.* Utah DOC also instructed Ms. Franklin that the user is prohibited from answering this question or any other question on the form as if answering for the expired entity, and must instead answer all questions related to the newly re-registered entity, which is presumed to begin on the date of re-registration. *Id.* ("[T]oday is the first day you can start…If you answer any of those questions online referencing your old business, it will not work. Start new.")

Ms. Franklin was able to screenshot copies of the online chat with UDOC to provide to the Court and the screenshot is part of Exhibit 1 attached hereto. The relevant portion of that exchange was as follows:

| | |
|---|---|
| **Franklin**: | "I am trying to re-register the business now but the form asks me to select the date I started doing business, and it doesn't let me choose the date it started […] What do I do for that question?" |
| **Dept. Commerce**: | "[I]t is brand new...today is the first day you can start. […] If you answer any of those questions online referencing your old business, it will not work. Start new. Blank." |
| **Question**: | "Even though I have continued using that business for the past several years? That wouldn't matter? Just register it new?" |
| **Answer**: | "Yes." |

This newly discovered evidence confirms the testimony of Mr. Belcher at the revocation hearing and rebuts the government's argument that the inclusion of the wrong date in the registration was some

sort of subterfuge related to the Oregon court matter.

*iv. Fryberger v. Edwards Matter*

During the May hearing, this Court heard testimony about the Oregon case and the service of process that led to the allegations in the petition. Since the hearing, an additional pleading has been filed in the Oregon civil matter with a full recitation of the facts this Court heard and some additional clarifying details that this Court did not hear. The key dates are as follows:

In January 2019, the Oregon Circuit Court granted a default judgment against the Edwards, and in February 2019, the final default judgment and order were entered. The Edwards subsequently authorized an appeal, and Mr. Philpot contracted with Corvus to prepare and deliver the appeal documents. Mr. Philpot deposited funds with Corvus on February 28, 2019 for the anticipated work, and later dispatched Corvus to deliver the appeal documents on March 2, 2019, and paid for 3-day delivery. On or about March 7, 2019, Mr. Philpot requested proof from Corvus that service of the Notice of Appeal in Oregon had been accomplished as promised. At this point, Mr. Koerber learned that the contractor he had originally relied upon to serve the documents had not completed the job. In coordination with Mr. Philpot, Corvus then contracted with Maurine Peltier to accomplish the delivery as per the March 2 dispatch. Ms. Peltier accomplished actual service as required by her employment with Corvus, on March 8, 2019. *See* Ex. 4 and Rev. Hrg. Def. Ex. 8 (Peltier Dec.) While Mr. Philpot had deposited money with Corvus on February 28, and had paid Corvus on March 2 for the dispatch, because of the delay with the first Corvus contractor additional payment was made by Mr. Philpot to Corvus' contract laborer Ms. Peltier and that second payment was simply credited against the balance already paid and being held by Corvus for JM Philpot law. Corvus was delayed in their delivery, but through their contract laborer Ms. Maurine Peltier, accomplished actual delivery on March 8, 2019.

12

The pleading filed in Oregon by Mr. Philpot subsequent to the May hearing also clearly explains the law in Oregon relating to the service of process, answering several questions this Court had during the May hearing. For the Court's easy reference, the subsequent pleading is attached as Exhibit 4 and Mr. Koerber incorporates the facts and arguments contained therein. As evidenced in the documents, the service of process did not violate any Oregon law and, in fact, fully complied with the Oregon service of process rules.

## I.    ALLEGATIONS CONTAINED IN THE PETITION

On May 22, 2019, a federal probation officer filed a petition with this Court alleging a violation of Mr. Koerber's release conditions. An amended petition was filed on May 28, 2019. The amended petition consists of one single allegation:

> On or about March 2, 2019 to March 8, 2019, the defendant committed an offense in violation of federal, state or local or tribal law while on release, to wit: tampered with records, wrote false statements, falsified business records, and contempt. Evidence in support of this allegation includes Oregon Court of Appeals records. The defendant violated the following statutes: Tampering with Records (U.C.A. § 76-6-504), Written false statement (Utah Code Ann. § 78-8-504), Falsifying business records (O.R.S. § 165.080), and Contempt (O.R.S. § 33.015).

During the Revocation Hearing, the probation officer admitted she conducted no investigation and relied wholly on complaint documents emailed to her from the plaintiff's attorneys in the *Fryberger v. Edwards* case, and emails from the UDOC. Rev. Hrg. Tr. at 38-51.

The government filed a Submission to Support Pretrial Release Violation, ECF No. 584, and argued that Mr. Koerber "involved himself in [a] scheme to deceive an Oregon court by creating the perception that the notice of appeal [in *Fryberger v. Edwards*] was transmitted to a commercial delivery service in an arm's length transaction, when in reality the filing was deceptive and untimely." ECF No. 584 at 2. The government further argued the violation of the federal, state or local law was committed on March 6 when "Koerber registered Corvus online…[and] identified [in the registration process] March 6, 2019, "as the date "[Corvus] will start or did start doing business."

[Id., at 3.].   Finally, the government argued, "Koerber prepared a receipt for an Oregon court showing Corvus accepted money for commercial delivery on March 2, 2019, but declared to the Utah Department of Commerce that Corvus would start doing business on March 6, 2019. Both cannot be true." *Id.*

At oral argument, prosecutors relied on Utah statutes and slightly modified the argument stating, "[t]he documents that he filed when they reregistered Corvus said that he would not start doing business until March 6, 2019." Rev. Hrg. Tr. at 137.

## II.   ARGUMENTS AND AUTHORITIES

### A.  <u>**No probable cause exists to believe Mr. Koerber committed a crime while on release.**</u>

As the Court stated during the May hearing, the revocation hearing was properly bifurcated. Pursuant to 18 USC §3148(b)(1), the first issue before the Court was whether there was probable cause to believe Mr. Koerber committed a Federal, State or local crime sufficient to violate his terms of release. Here, there were four crimes specified in the petition, and the Court was required to find probable cause to believe that Mr. Koerber committed one or more of these crimes.

#### 1.   *The Probable Cause Legal Standard*

It has long been established that probable cause means "a reasonable ground for belief of guilt." *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881).  While the probable cause standard is not a high bar, the United States Supreme Court also long ago clarified that "good faith is not enough to constitute probable cause" because that "faith must be grounded in facts within the knowledge" of the officer making the determination, so as to "make his faith reasonable." *Director General v. Kastenbaum*, 263 U.S. 25, 28 (1923). These limitations are built into the oft-repeated explanation of the probable cause requirement that "the facts and circumstances" considered must "warrant a man of prudence and caution in believing that the offense has been committed." *Stacy v. Emery*, 97 U.S. 642, 645 (1878).  These notions of reasonableness, grounded in facts, and in consideration with

*prudence* and *caution* all suggest that a court considering whether the probable cause standard has been met, must imbue the standard with significant meaning. The Supreme Court has recognized that "common rumor or report, suspicion, or even strong reason to suspect [is] not adequate." *Henry v. U.S.*, 361 U.S. 98, 101 (1959).

   2.   *The Evidence Does Not Support a Probable Cause Finding for the Alleged Crime of Tampering With Records (U.C.A. §76-6-504)*

The first crime alleged in the petition as a violation of Mr. Koerber's release conditions is Tampering (U.C.A. § 76-6-504.)  This is one of two Utah crimes alleged.  The allegation provided by the United States makes clear that the supposed predicate act for this offense has to do with Mr. Koerber's role in creating the March 2 receipt from Corvus. In the government's submission in support of finding a violation, prosecutors made the argument: "Koerber prepared a receipt…showing Corvus accepted money…on March 2, 2019, but declared to the Utah Department of Commerce that Corvus would start doing business on March 6, 2019. Both cannot be true.  Either Koerber violated Utah Code § 76-6-504…when he created the Corvus [d]ispatch [r]eciept of March 2, 2019, or he violated U.C.A. § 78-8-504…when he completed the One Stop Business Registration and indicated Corvus would begin doing business on March 6, 2019." *See* ECF 584 at p. 4.  The government again summarized the argument at the conclusion of the May hearing as follows:  "Mr. Koerber lied either when he filled out the business registration for Corvus on March 6th, 2019, or when he filled out –when he initialed the notice of appeal on March 2nd, 2019. Both of these things cannot be true, and either way, one of those lies has violated Utah statutes."

While this argument sounds appealing, it is not grounded in fact. First, as fully explained above in the facts section, Mr. Koerber was given no alternative by UDOC but to list the date of the new registration as the date to begin business. Even so, he specified on his application that Corvus had been registered before and provided the already existing EIN number, which is linked to the

original filing of the Articles with UDOC. Second, the evidence shows Mr. Koerber never "initialed the Notice of Appeal" as stated by the government, but only initialed the receipt that was given to Mr. Philpot when he authorized the March 2 dispatch. There are similar inaccurate statements included in the government's submission. For example, prosecutors wrongly stated that, "Koerber prepared a receipt for an Oregon court [.]" *See* ECF 584 at p. 4, (when it is clear that Mr. Koerber simply prepared a receipt for Mr. Philpot), and "Koerber submitted a dispatch receipt to an Oregon Court of Appeals." *Id.*, at p. 3, (Mr. Koerber submitted the dispatch receipt to Mr. Philpot). In all of these instances, the government is misstating the facts to suggest that Mr. Koerber did something more than create, provide, and initial the March 2 receipt to Mr. Philpot while glossing over the fact that it was Mr. Philpot who provided the receipt to the Oregon Court along with the Notice of Appeal.

During the May hearing, the government failed to address the legal elements of § 76-6-504, nor did the government seek to apply the facts alleged at the hearing to the elements of this particular offense. From the government's submission (ECF 584) the argument is in its essence, *if Mr. Koerber placed a false date – of March 2, 2019 – on the dispatch receipt, this would be a violation of the tampering statute.* However, the government failed to show what constitutes "a writing" or "a record" under the statue and whether a commercial business receipt would even fall into this category and be applicable under the statute. The plain language of the tampering statute criminalizes two different kinds of conduct. One deals with written documents "for which the law provides public recording", U.C.A. Section 76-6-504(1), and the other deals with "any record, public or private[.]" *Id.* This distinction is important here. The receipt from March 2 is not a document for which the law provides public recording. As such, the receipt does not fall into this first category. *State v. Noren*, 621 P.2d 1224, 1226 (Utah 1980).

The receipt may qualify as a private record in the second category. However, the law requires

different mental states of culpability depending on which category is at issue. The second category requires the heightened legal standards of "intent to deceive or injure any person or to conceal any wrongdoing[.]" U.C.A. Section 76-6-504. Utah law recognizes that under this standard a defendant may have acted knowingly but without the requisite intent. *State v. Jensen*, 105 P.3d 951,956 n.7 (Utah 2004). On May 31, the evidence shows Mr. Koerber created the March 2 receipt knowingly, but there is no evidence that the date on the receipt or the issuing of the receipt itself was done with the intent to deceive or injure any person. The evidence actually established the opposite, when the only person who was involved in the transaction besides Corvus, Attorney J. Morgan Philpot, testified that the receipt was accurate and truthful. Finally, there is no evidence that the receipt was falsified, let alone that it was falsified with the intent of concealing some wrongdoing. No allegations of wrongdoing was made, nor any evidence provided, that the receipt could conceal. For these reasons, a finding of probable cause for Tampering is both factually and legally unsupportable.

Most significantly, no evidence was presented at the May hearing that the March 2, 2019 date on the receipt was false. The attorney who contracted for the service testified unequivocally that the receipt is true and correct. Rev. Hrg. Tr. at 107-108. The attorney had also previously certified to the Oregon Court of Appeals that the receipt was an accurate document evidencing the date of dispatch as of March 2, 2019. Exhibit 4.

There was indirect conjecture, where the government argued the timing of the receipt was suspicious, but even prosecutors never took a hard position on this particular fact. The Court stated that it found the receipt questionable, but acknowledged it was conjecture and speculation based upon the theory that maybe, because it was made close to a filing deadline, and maybe, because it was close to the date of the Corvus registration, there might have been a problem with the date. However, no specific problem is outlined, presented or testified to – by any witness. There is added conjecture that maybe Mr. Koerber and Mr. Philpot were worried about whether Corvus qualified as

a commercial delivery service under Oregon law, and how much money Mr. Philpot paid, instead of using FedEx or some other service.  There is nothing that allows a probable cause finding that Mr. Koerber falsified the receipt with an intent to deceive or injure any other person or to conceal wrongdoing as required as a statutory element of proof for this offense.

The new evidence regarding the dates used on the business registration form will be addressed in more detail below, but it is worth noting that this evidence also shows Mr. Koerber could have selected the date of March 2 on the registration form, if he was worried about how things appeared and was trying to deceive someone. Instead, the only evidence presented at the hearing shows that Mr. Belcher, Mr. Koerber and Ms. Franklin were following the express direction provided by UDOC when they entered the date of March 6 on the registration form. This evidence is now also supported by the declaration of Ms. Franklin who as provided a transcript of a recent conversation with the Department of Commerce showing that the March 6 answer used by Mr. Koerber is exactly what the Department of Commerce required as a matter of their policy. Thus, there is no basis to use Mr. Koerber's selection of the March 6 date as part of the above-described conjecture.

Further, in explaining its view of this particular allegation the only thing the Court stated on this particular point is: "I think [the March 2 receipt] may or may not have been back dated", *id.* at p. 163.  As also discussed below, the Court went on to premise its probable cause finding on the idea that some sort of "deception" may have taken place, on the Oregon court because of the lack of an "arm's length" transaction.  The Court did say it was looking at all the circumstances, but to find probable cause there has to be reliable evidence that shows the crime of tampering – which here means related to the receipt itself. As the Supreme Court instructed, speculation and good faith belief is not enough – the probable cause finding must "be grounded in facts within the knowledge" of the court so as to "make his faith reasonable." *Kastenbaum*, 263 U.S. 25. Even looking at all the

evidence, "the facts and circumstances" considered must "warrant a man of prudence and caution in believing that the offense has been committed." *Stacey v. Emery*, 97 U.S. 642, 645 (1878). At most, the court has "suspicion or even strong reason to suspect" and this is "not adequate." *Moreno*, 203 P.3d 1000, 1012 (Utah 2009)(internal quotation omitted); *Graham*, 302 P.3d 824, 827, 829 (Ut. Ct. App. 2013)("[T]he level of evidence that the prosecution must show is less than that required to prove guilt" but what is "required is reasonably believable evidence – as opposed to speculation – sufficient to sustain each element of the crime(s) in question...Speculation is defined as the act or practice of theorizing about matters over which there is no certain knowledge.")

3. *The Evidence Does Not Support a Probable Cause Finding for the Alleged Crime of Written False Statement (U.C.A. §76-8-504)*

The government argues that the factual predicate for the crime of Written False Statement is Mr. Koerber's submission to UDOC. Several problems arise with the government's argument on this point; each should prevent the Court from finding probable cause on this statute.

First, one element of this offense requires that the statement be submitted under penalty of perjury. As the defense pointed out at the hearing, the evidence submitted by the government shows that Mr. Koerber signed as a Manager – not as a Member – and that the penalty of perjury statements only applied to members. Rev. Hrg. T. at 48-49. This absence of a penalty of perjury makes the statute inapplicable.

Second, contrary to the government's statement, Mr. Koerber never made a statement on the "documents that he filed when they re-registered Corvus" promising "that he would not start doing business until March 6, 2019." Rev. Hrg. Tr. at 137. This is the government misstating the answer that was actually provided. As outlined above, the question asked, "What is the date that you will start or did start doing business?" Mr. Koerber answered March 6, 2019. There was no representation that Corvus had not done business before. To the contrary, Mr. Koerber specifically

stated on the form that Corvus had done business before.

Third, no evidence was presented that Mr. Koerber's answers to the business registration questions were meant to deceive, especially in light of the fact that Mr. Koerber had repeatedly and openly volunteered to USPO that Corvus was doing business (including providing current bank records), despite the fact that the registration of its Articles had long since expired. Further, there is no evidence that Mr. Koerber could have injured any person by making any of the answers that were part of his registration, especially in light of the fact that the business registration does not itself convey any right to do business. Prosecutors merely argued by conjecture that Mr. Koerber "falsif[ied]" that electronic submission "with intent to deceive or injure" some unknown person. ECF 584 at p. 5. The Court made no finding on this point. The Court did express curiosity about whether Oregon had a registration requirement. Following up on the Court's request, there is no such requirement in Oregon.

Fourth, and most significantly, there is a larger problem here, which should affect the Court's prudence and caution in weighing all of the government's argument. As pointed out above, the government argued, "[t]he documents that he [Mr. Koerber] filed when they re-registered Corvus said that he would not start doing business until March 6, 2019." Rev. Hrg. Tr. at 137. The government knows this argument is false and misleading for several reasons. Specifically, at the time these allegations surfaced, and continuing through the hearing on May 31, all of the available evidence in the possession of the government showed beyond reasonable question that Mr. Koerber's answers were consistent with the UDOC policy, and the requirements of the online form and made with a good faith belief that they met the requirements of UDOC. Since the beginning of the prosecution in 2009, the UDOC has been identified by the United States Attorneys Office as a formal member of the prosecution team. Members of UDOC staff have been cross-deputized to assist in this prosecution in the past, and the current Executive Director of UDOC and her staff

have repeatedly participated with the United States Attorneys Office in this prosecution.  These authorities from UDOC certainly knew or had reason to know that their registration website did not allow remote dates to be entered in the blank covering the date of doing business. Significantly, the current Executive Director of UDOC was in the courtroom on May 31, and interacted with prosecutors as she has since this case began.  Yet, at no time was the Court or the defense ever provided information from prosecutors that Mr. Koerber's conduct, and Mr. Belcher's testimony, square directly with UDOC policy and direction.  This alone should also cause the Court to reconsider the weight it gave to the evidence on May 31, and the conclusions it reached based upon "doubts" it had concerning the timing of the March 2 receipt and the March 6 re-registration.

Prosecutors had a duty to conduct an investigation, reasonable under the circumstances, to ensure there was a legal and factual basis to argue probable cause existed – but the available evidence shows that they failed in this duty.  In fact, federal rules prohibit them from making these allegations without first making an "inquiry reasonable under the circumstances" to form a reasonable belief that the "claims...and other legal contentions" were "warranted by existing law" and that "the factual contentions" presented had "evidentiary support" and "denials of factual contentions are warranted on the evidence." Rule 11, Federal Rules of Criminal Procedure.

Based upon the new evidence verifying the UDOC's policy and instructions to corporate applicants, the government's argument is meritless on its face.  It is meritless not only because UDOC itself has given the "date of doing business question" a meaning different than construed here by federal prosecutors, but also because, **if it were correct, every Utah limited liability company that has been expired for more than 2 years but continues in operation, would commit a criminal offense when it re-registered** by following the UDOC instructions and policy. It is unreasonable and legally untenable that by complying with directions from the very government agency asking the question (and placing the limits on how the online form restricts the dates

possible to use) that Mr. Koerber or anyone else could be said to have done this with an intent to deceive.

The Court made no specific findings on this point, except to trust the conjecture by prosecutors that something seemed questionable about the timing of the re-registration of Corvus, and the proximity of that re-registration to the date of the March 2 receipt.  However, now that the Court has additional details before it, showing the reasonableness of the timing the Court may reconsider the prior finding of probable cause.

The Court stated at the May hearing:  "It would seem to me, in my modest judgment, that if I had been convicted of serious crimes of fraud, as Mr. Koerber, and then been allowed by the judge, in this case Judge Block, to be released pending sentencing, that I would be, as they say, on my very best behavior. I would do all in my power to ensure that I did not run afoul of the law in any way, simply because I would suspect that I would be on, to use a phrase, relatively thin ice."  Rev. Hrg. Tr. 160.  Mr. Koerber agrees. In light of the evidence now present, it should be clear that Mr. Koerber was acting diligently, as the Court says he should, to make sure he was in compliance with the UDOC after the PSR gave him notice that failure to re-register Corvus was a concern.

At most the court has "suspicion or even strong reason to suspect" and this is "not adequate." *Moreno*, 203 P.3d 1000, 1012 (Utah 2009)(internal quotation omitted); *Graham*, 302 P.3d 824, 827, 829 (Ut. Ct. App. 2013) ("[T]he level of evidence that the prosecution must show is less than that required to prove guilt" but what is "required is reasonably believable evidence – as opposed to speculation – sufficient to sustain each element of the crime(s) in question...Speculation is defined as the act or practice of theorizing about matters over which there is no certain knowledge.")

    4.    *The Evidence Does Not Support a Probable Cause Finding for the Alleged Crime of Falsifying Business Records.  (O.R.S. § 165.080)*

The government failed to address the alleged crime of falsifying business records at the May

31 hearing and only casually included it by reference in its written submission.  No discussion of the elements or the government's theory of this crime was provided. The only statement that directly addresses this alleged crime at all was that: "Mr. Koerber's conduct also appears to violate Oregon Revised Statute § 165.080 (Falsifying Business Records) and O.R.S. 33.015 (Contempt)."  ECF 584 at p. 5. There are several problems with any probable cause finding for this purported crime.

First, the business records statute at issue (O.R.S. § 165.080) simply does not apply to Mr. Koerber's circumstance because the business records possibly at issue, the receipt provided by Mr. Philpot and the registration forms provided to UDOC, were activities done in Utah, by Mr. Koerber while he was in Utah, and delivered to recipients in Utah.  There is simply no basis for Oregon jurisdiction.  *See State ex rel Circus Circus Reno, Inc., v. Pope*, 317 Or. 151, 154-56, 854 P.2d 461 (1993). *See also Kotera v. Daioh Intern, U.S.A. Corp.,* 179 Or. App 253, 40 P.3d 506 (2002).

Second, the documents at issue here (either the receipt or the business registration with the UDOC) are not the kinds of records covered by the Oregon statute.  *See e.g. Tayler v. Hender*, 116 Or. App. 142, 840 P.2d 1331 (1992). The related Oregon statute defines business records as "any writing […] kept or maintained by an enterprise[.]" O.R.S. Section 165.075(2). The March 2 receipt is not a record kept or maintained by an enterprise, instead it was simply a receipt delivered during a commercial transaction. Similarly, the online registration form is not kept or maintained by Corvus. Even if Oregon had jurisdiction, neither document falls within the statute. *See Tayler*, 116 Or. App. 142. Further, the statute itself states that the offense is defined by a person "falsifying business records" with the intent to defraud another.  *See* O.R.S. § 165.080(1).  The Oregon standard for alleging fraud requires multiple specific allegations, none are met here.  Further, the criminal act is defined as making or causing something false or misleading "in the business records of an enterprise[.]" O.R.S. § 165.080(1)(a), (b), (c), (d); which are not applicable here. *See Taylor*, 116 Or. App. 142.  As such, both factually and legally a finding of probable cause for this alleged crime is

unsupportable.

Third, there is no allegation that anyone suffered actual harm by Mr. Koerber's receipt or business registration documents, this alone forecloses the applicability of the statute. *See Logan v. Tiegs*, 2004 WL 2851949, No. CV 03-435-BR, CV 03-470-BR.

Fourth, for the factual reasons stated above, there is no evidence that the receipt on March 2, 2019 is false and Mr. Koerber followed UDOC policy and instructions to the best of his ability under the limitations of the form. Only conjecture and speculation would lean in the opposite direction.

At most the court has "suspicion or even strong reason to suspect" and this is "not adequate." *Moreno*, 203 P.3d 1000, 1012 (Utah 2009)(internal quotation omitted); *Graham*, 302 P.3d 824, 827, 829 (Ut. Ct. App. 2013) ("[T]he level of evidence that the prosecution must show is less than that required to prove guilt" but what is "required is reasonably believable evidence – as opposed to speculation – sufficient to sustain each element of the crime(s) in question...Speculation is defined as the act or practice of theorizing about matters over which there is no certain knowledge.")

5.    *The Evidence Does Not Support a Probable Cause Finding for the Alleged Crime of Contempt.  (O.R.S. § 33.015)*

The government also failed to address the crime of contempt at the May hearing.  They provided no discussion of the elements in their written submission.  The only statements related to this purported crime have to do with allegations that the March 2, 2019 receipt was false, and that the transaction between Corvus and Philpot, where Philpot contracted for commercial delivery service was not an arms-length transaction.  There are several problems with this argument, each prohibits a probable cause finding.

First, the contempt statute defines the jurisdiction of the criminal offense of contempt as

24

limited to those activities that take place "in the presence of the court[.]"  O.R.S. § 33.015(2).  Mr.

Koerber was never in the presence of the Oregon circuit court or the Oregon Court of Appeals.

Although the government argues that Mr. Koerber provided the March 2 receipt to the Oregon

Court of Appeals, the only evidence in the record shows that he actually provided it to Mr. Philpot.

Mr. Philpot then made a certification in his notice of appeal and himself attached the receipt to the

notice, which he caused to be filed with the Court.  Thus, as an initial matter, Mr. Koerber cannot

legally fall within the jurisdictional parameters of the statute.

     Second, there was no representation made by anyone to the Oregon Court of Appeals

regarding the registration status of Corvus, there was no representation made about the length or

history of Corvus's operations, and Mr. Koerber himself was not the one who delivered the

documents for Corvus.  The only evidence provided shows that Mr. Koerber accepted Mr. Philpot's

payment, and gave him a March 2, 2019 receipt for the dispatch – which promised a 3-day delivery

to the three parties whose addresses appear on the receipt.  Mr. Philpot testified that the receipt was

accurate.  No evidence other than speculation and suspicion raised by the Peterkin attorneys and

then by prosecutors cause any question about the dispatch date.

     The Court stated, "That's why I found that there's probable cause to believe there was

deception, that there was an attempt – not an attempt per se to violate the law, but, in essence, an

attempt to deceive, which was, in fact, a potential violation. I don't know." Rev. Hrg. Tr. at 161. The

Court went on to explain what it judged was the "attempt" to deceive the Oregon Court.  "I think

that the document may or may not have been backdated.  It doesn't really matter because, as I say,

that's not before me per se, other than I've already found the probable cause.  The problem that Mr.

Koerber has is that he has a presumption of detention with a burden of proof by clear and

convincing evidence."  Id., at p. 163.  The Court also referenced the argument raised by the

government that the March 2 receipt falsely makes the dispatch and service look like an arms length

transaction when it was not, and that the "opposing law firm was not aware that [Mr. Koerber] was a convicted felon, that he'd been convicted of serious fraud...they would not have shared certain discovery with him had they known his status." Id. at 162.

While the Court's concern is understandable, there is no requirement of an arms-length transaction, and the receipt itself merely documents that Mr. Koerber had authority to dispatch on behalf of Corvus. Mr. Philpot is not an owner of Corvus. Mr. Koerber is not an owner of JM Philpot Law. The "arms-length" argument is not relevant to the crimes alleged. Worse, the allegations from the Peterkin law firm are false. Mr. Koerber only had contact with the law firm prior to his conviction, and one of the attorneys was clearly aware of Mr. Koerber's prior work in Oregon in *USA v. Bundy*, and his role with Mr. Philpot. Further, Peterkin never produced any discovery in the Edwards case. Thus again, the issues raised here only support, at the most, "suspicion or even strong reason to suspect" and this is "not adequate." *Moreno*, 203 P.3d 1000, 1012 (Utah 2009)(internal quotation omitted); *Graham*, 302 P.3d 824, 827, 829 (Utah. Ct. App. 2013) ("[T]he level of evidence that the prosecution must show is less than that required to prove guilt" but what is "required is reasonably believable evidence – as opposed to speculation – sufficient to sustain each element of the crime(s) in question...Speculation is defined as the act or practice of theorizing about matters over which there is no certain knowledge.")

   *6. The absence of probable cause precludes a finding of a violation under 18 U.S.C. § 3148.*

Distasteful or undesirable conduct is not sufficient to constitute a violation under § 3148. There has to be probable cause that Mr. Koerber committed a specific crime. However, due to the government's failure to present evidence on the elements of the alleged crimes, this Court was unable to state which of the four alleged crimes it found probable cause to support. The Court found attempted deception untethered to a particular crime. Due to the government's failure to present the evidence needed, the Court was forced to rely upon speculation and suspicion. Given

the new evidence showing that Mr. Koerber's activities related to UDOC were not inappropriate or inaccurate, the Court is free to reconsider that prior finding. The question of probable cause rests fully in this Court's hands and the need for prudence and caution are at its highest ebb. Even though probable cause is a lower bar than other evidentiary standards, it must still mean at least "the facts and circumstances" considered must "warrant a man of prudence and caution in believing that the offense has been committed." *Stacy v. Emery*, 97 U.S. 642, 645.  The prudence and caution required is applied to ensure that the probable cause determination is based upon "reasonably trustworthy information[.]" *Carroll v. U.S.*, 267 U.S. 132, ___ (1925)   Here, the USPO relied entirely on statements made by individuals who were not subjected to cross-examination, making it impossible to insure the information was "reasonably trustworthy."  Similarly, the government had the Executive Director of UDOC at their disposal and made no attempt to clarify whether the testimony offered by Mr. Koerber's witnesses about the registration was true.   Thus, the Court should have prudence and caution in mind when it reconsiders the facts showing that Mr. Koerber was being careful and making sure he followed UDOC instructions and when it considers the timing of events that are quite reasonable in light of all the facts.

**B.  The "clear and convincing" standard required by § 3143 was applied and met before the District Judge, leaving only the application of Section 3148 and the 3142 factors to be decided following a violation.**

Should this Court continue to find probable cause to believe that Mr. Koerber committed a crime while on release, the second half of the bifurcated hearing is then in play.  Specifically, the Court must determine whether detention is appropriate or whether there are a combination of conditions of release that will assure the defendant will not pose a danger to the community.  The trickier question is which standards should be applied in that analysis.

As stated by the Court at the May hearing, the law is clear that after a conviction but pending sentencing 18 U.S.C. § 3143 and Rule 46(c) apply to the initial determination of whether or not a

defendant should be detained. At this initial juncture following conviction, there is a presumption

that a convicted defendant "shall be detained." *See* § 3143(a); Rule 46(c).  This was true on

September 20, 2018 when Mr. Koerber was convicted and when the District Judge then had to

decide if Mr. Koerber would be detained or if there was "clear and convincing evidence" that he

was not a flight risk or a danger.  The District Judge made that determination on September 20,

without objection from the government, and ordered Mr. Koerber released on condition that he not

violate any Federal, State or local laws.  At that point, Mr. Koerber was on release under 18 USC §

3142, as provided for in § 3143 once the District Judge issued the release order.  *See* § 3143(a)(1) ("If

the judicial officer makes such a finding, such judicial officer shall order the release of the person in

accordance with section 3142(b) or (c).")

Although all the parties agreed with the Court on May 31 that a "clear and convincing"

standard was appropriate to determine release pending sentencing, upon closer reflection of the

interplay among the different sections of the Bail Reform Act, it appears that the standard under §

3143 only applies at the initial determination of whether a defendant rebuts the presumption of

detention pending sentencing.  Once that determination is made, the defendant is released pursuant

to conditions determined by the factors defined in § 3142. If there is a subsequent violation of the

conditions of release, the plain language of the statutes suggest that the resulting determination of

whether release should be revoked is then conducted pursuant to § 3148 and §3142.  Therefore, the

governing statute for the entire proceeding on May 31 should have been § 3148, which outlines the

procedure and considerations required for considering revocation following an alleged violation of a

term of release.  *See United States v. Cook*, 880 F.2d 1158, 1160 (10th Cir. 1989); *United States v.*

*Gonzalez*, No. CR12-0128JB (D. New Mexico. Jan. 17, 2013) (unpublished); *United States v. Flynn*, 2018

WL 576823 (D Massachusetts Jan. 26, 2018).

Because a violation after release pending sentencing is handled as a pretrial violation under

§§ 3142, 3148, then it stands to reason that the same procedures to find a pretrial violation should also be applied under Rule 32.1 of the Federal Rules of Criminal Procedure. Therefore, the Court could not rest on its probable cause finding. Once a Defendant has been placed in custody (as was the case for Mr. Koerber) at the revocation hearing the Court must find more than probable cause, it must "determine" whether or not the accused has "in fact, violated the conditions" before the Court can evaluate if release should be revoked. *See* F.R.Cr.P. 32.1, Note to Subdivision (b). The revocation hearing, "is less a summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause...[and] disclosure of all the evidence against the [accused] is required[.]." *Id.* On May 31, the Court expressly ruled that it was making no determination beyond probable cause – which was understandable in light of the confusion about whether § 3143 still applies once release has already been ordered pending sentencing.

Therefore, if the Court did find a violation actually occurred, the next step required by the Court was to consider "the factors set forth in section 3142(g) of this title" which the Court did not do, at least on the record. § 3148(b)(2)(A). The purpose of considering § 3142(g) factors is to find out if release can be accomplished on personal recognizance or on conditions. In this context, according to the plain language of § 3148, detention and incarceration of Mr. Koerber could only be ordered if the Court found – after considering § 3142(g) factors, that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community[.]" *Id.* Unlike § 3143, **no presumption applies in favor of detention.** *See Gotti*, 794 F.2d at 777. The only presumption that could apply, would be if the crimes alleged to have taken place while Mr. Koerber was on release were felonies rather than misdemeanors. *See Gonzalez, supra; U.S. v. McNeal,* 960 F.Supp. 245, 246 (D. Kansas. Feb. 13, 1997); *U.S. v. Maack*, 25 F.Supp.2d 586 (E.D. Pennsylvania. Oct. 22, 1998). If the allegations against Mr. Koerber had been felonies, there would have been a presumption that "no condition or combination

of conditions" could satisfy the Court on the issues of flight risk or dangerousness. But, here

clearly, the crimes alleged were misdemeanors and no presumption should have applied and Mr.

Koerber therefore did not have the burden of proving by clear and convincing evidence that he was

not a danger to the community pursuant to 18 U.S.C. § 3143(a). In fact, under § 3148, unlike § 3143,

it is the government who had the burden of proving that no condition or combination of

conditions could reasonably assure the safety of the community. *See Gotti*, 794 F.2d at 777 ("This [§

3148(b)] scheme indicates that where there is probable cause to believe the released defendant has

committed a crime, he may hereafter be detained upon a finding, by only a preponderance of the

evidence, that no conditions of relief will guard against flight or dangerousness or that the person is

unlikely to abide by any release condition.")

Now that the Court is undertaking reconsideration, the Court may apply the 3142(g) factors

required to consider 1) the nature and circumstances of the offense charged; 2) the weight of the

evidence; 3) the history and characteristics of the person, and 4) the nature and seriousness of the

danger to any person or the community that would be posed by the persons release. *Id.* The facts in

Mr. Koerber's case show clearly that he is not a flight risk and the Court found as much at the May

31 hearing. As such. Mr. Koerber's history and characteristics along with the dangerousness factors

are the most relevant under these circumstances.

Regarding Mr. Koerber's history, the fact that there has been no prior violation of Mr.

Koerber's conditions in a decade, weighs heavily in favor of release. Additionally, the kinds of

allegations made against Mr. Koerber at the May hearing are not allegations of financial fraud but

instead allegations without any complaining witness from legal proceedings. Here, courts are

uniquely situated to deal with claims like these, and the proposed conditions included above very

directly would ensure that no significant risk of harm to any person could come from such alleged

behavior. The bail reform act does not require guarantees, only reasonable assurances. *See U.S. v.*

*Tortora*, 922 F.2d 880, 884 (1ˢᵗ Cir. 1990) ("Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed...requiring that release conditions guarantee the community's safety would fly in the teeth of Congress's clear intent[]"): *Gonzalez, supra* (overruling a requirement of a guarantee).

The Fifth and Eighth amendments also afford special protections to Mr. Koerber in this circumstance supporting his immediate release. There is a special circumstance at play here, and it is protected by Mr. Koerber's Fifth Amendment Due Process rights as well as his Eighth Amendment rights. Mr. Koerber's conviction is not a final resolution of already acknowledged problems with the government's prosecution. ***Unlike the normal case***, even before trial, the conviction of Mr. Koerber came with serious legal and constitutional reservations, as first explained by District Judge Waddoups who stated as of August 2014 prosecutors had already "undermine[d] Defendant's possibility of receiving a fair trial", 2:09-cr-302, Doc. 472 at p. 15, and by District Judge Block who found that this was an "unusual case" and that "I'm not going to put him in jail" pending what he viewed as a legitimate appeal on, *inter alia*, statute of limitations grounds. 2:17-cr-37, May 7, 2018 Hrg. As Justice Jackson famously instructed, under these kinds of circumstances "there is a very practical aspect of this application which must not be overlooked or underestimated- that is the disastrous effect on the reputation of American justice if [the court] should now send… men to jail and [a reviewing] Court later decide that their conviction is invalid. All experience with litigation teaches that existence of a substantial question about a conviction implies a more than negligible risk of reversal. Indeed this experience lies back of our rule permitting and practice of allowing bail where such questions exist, to avoid the hazard of unjustifiably imprisoning persons with consequent reproach to our system of justice." *Williamson v. United States*, 184 F.2d 280, 284 (2d Cir. 1950). For these reasons, the kinds of dangerousness alleged against Mr. Koerber is simply far afield from what is constitutionally permissible.

1.  *18 U.S.C. § 3142(g) Factors:*
    *Facts Regarding the Nature and Circumstances of the Offense Charged*

Mr. Koerber was charged and convicted of engaging in a deceptive scheme, wherein he

mislead investors by omissions and/or misrepresentations about the success of his businesses, and

about how he was using investment money.  Mr. Koerber continues to assert his innocence and

plans to appeal the conviction.  Post-conviction, there is presently a dispute regarding the amount of

loss related to sentencing.  An evidentiary hearing is currently set where the government will attempt

to prove that losses exceeded $45 million, while Mr. Koerber will argue that losses were substantially

lower.

Mr. Koerber ceased engaging in the indicted conduct prior to indictment in May 2009, and

until May 31, 2019 was on release with minimal conditions, and no financial restrictions.

2.  *18 U.S.C. § 3142(g) Factors:*
    *Facts Regarding the Weight of the Evidence*

Mr. Koerber was convicted by a jury.  However, the District Judge has already found that Mr.

Koerber has non-frivolous grounds for appeal related to the applicable statute of limitations, and

Mr. Koerber's right to a speedy trial.  In both instances, the reliability and admissibility of evidence

used to convict Mr. Koerber will be at issue.

3.  *18 U.S.C. § 3142(g) Factors:*
    *Facts Regarding the History and Characteristics of the Person*

<u>Education and Work History:</u> Mr. Koerber graduated from high school in 1991.  Following

high-school, Mr. Koerber obtained an associate degree from Casper College and later attended both

the University of Denver and Western Governor's University. Mr. Koerber worked as a systems

analyst for Xerox Corporation after college from 1994-1996, and from approximately 1996 through

2011 was an entrepreneur.

<u>Family & Community Life:</u> Mr. Koerber is married. He has a strong and active relationship

with his wife and his eight children and four grandchildren.  He is also currently the primary

32

provider for two of his children who are still minors, and also the primary caretaker for his terminally ill mother who also lives across the street from him and his family, in a small rural Utah community.  Mr. Koerber has also built strong relationships and is an asset in his local community, and in his local church congregation where he regularly serves as a volunteer. He is also a trusted friend and confidant. At sentencing, Mr. Koerber will present letters from his church community and his friends to support these strong community ties.

Financial Responsibility: Despite the financial failure of his prior businesses that are the subject of this case, during the 10 year history that this case has been pending, Mr. Koerber has not been a financial burden on any government agency or third party for his temporal support or the support of his family.  Instead he has consistently been gainfully employed and the sole income provider for his household.  During the last 7 years, Mr. Koerber has worked diligently to build a new career providing support services for attorneys. The attached declarations from a broad selection of experienced attorneys and clients show that Mr. Koerber has worked diligently, has built a good reputation, and in his work, he has performed as a valuable asset to those he serves and to the legal community.  See Exhibits 2 and 3 attached.

Health History:  As described in detail in the sealed PSR, and the defense objections to the PSR, Mr. Koerber suffers from very serious health conditions.[4] Since Mr. Koerber's incarceration on

---

[4] Between 1999 and 2002 Mr. Koerber was diagnosed with and treated for esophageal cancer. Between 2002 and 2010 Mr. Koerber was diagnosed with and treated for severe esophageal complications, a severely damaged lower esophageal sphincter (LES), and severe gastroesophageal reflux disease (GERD). This condition prohibits Mr. Koerber from remaining in either a supine or prone position without serious risk of asphyxiation, choking, and is particularly susceptible to aspiration pneumonia and nocturnal choking. Between 2011 and 2014 Mr. Koerber was diagnosed and repeatedly treated for a complex autoimmune condition (indicating likely polyarteritis nodosa, which is a necrotizing inflammation of blood vessels throughout the body.) With treatment five-year survival is 80%. The condition has symptoms that are often exacerbated by stress; and since 2011 Mr. Koerber has been hospitalized repeatedly for some of the most severe polyarteritis nodosa symptoms including gastrointestinal bleeding, anemia, sepsis, myocardial infarction, complicated kidney function and atrial fibrillation. As such the disease is considered severe. When stressed, he can become anemic and is more susceptible to infections.

May 31, his health situation has deteriorated.  Mr. Koerber is not able to manage his severe GERD with appropriate bed accessories, but has had to rely on makeshift use of available jail materials, which has resulted in severe pain and a pattern of Mr. Koerber only getting 3-4 hours of sleep. He has been to the jail medical unit to try and obtain medication for his medical condition, but while he is being provided some medication, the necessary medication for managing his condition is not available and his GERD symptoms are getting progressively worse. Most recently, on July 12, 2019 Mr. Koerber awoke after aspirating stomach acid for approximately 30 minutes in his sleep, and since that time has had significant asthma, breathing and lung pain and issues.  While incarcerated Mr. Koerber has also developed a sliding hernia in his upper abdomen as a result of being required to get up and down from the high steel bunks in the jail, and as a result of these conditions is suffering from decreasing health and well-being, having also lost approximately 35 pounds in 6 weeks. The jail authorities have advised Mr. Koerber they will not allow surgical repair until the hernia reaches an emergency condition.

History of No Flight Risk, History of No Danger to the Community: Mr. Koerber has never been considered a flight risk or danger to the community.  He was initially arraigned in the current prosecution, back on June 19, 2009. Since that time, he has consistently appeared at each hearing and has timely responded to all requests that he be present, including his self-surrender to the U.S. Marshal prior to the revocation hearing on May 31, 2019.  Over the last 10 years, Mr. Koerber has been considered for release, and any potential flight risk and dangerousness has been evaluated under the Bail Reform Act (18. U.S.C. § 3141 *et seq.*) on several prior occasions.  During the last 10 years, Mr. Koerber was never once violated while on release by his supervising probation officer. Rev. Hrg. Tr. at 51:21. Since indictment, Mr. Koerber has never attempted to abscond. Rev. Hrg. Tr. at 57:24. He has never been accused of using drugs or alcohol inappropriately and has not previously been alleged or found to pose a danger to anyone in the community. Rev. Hrg. Tr. at 58:2-

3, 5-6. The PSR lists Mr. Koerber as a Level 1 Criminal History Category with zero points. There is

no allegation that he has been involved in any financial activity involving investors, or in any

investment transactions of any kind since 2009.

A summary of prior factual considerations regarding flight risk and potential dangerousness

includes seven specific prior considerations:  On June 19, 2009, after consideration of the statutory

flight risk and dangerousness factors, Mr. Koerber was originally released by Magistrate Judge Alba

under § 3142(c), with no objection from the government, and minimal conditions (no financial

restrictions).  On December 12, 2009, following a superseding indictment, Mr. Koerber was again

arraigned and released on December 12, 2009, by then-Magistrate Judge Nuffer under § 3142(c),

without objection from the government, and with the same minimal conditions.  In September of

2011, following a second superseding indictment, Mr. Koerber was again arraigned and released

pursuant to § 3142(c) by Magistrate Judge Alba. When Mr. Koerber's case was initially dismissed

with prejudice in August 2014, District Judge Clark Waddoups ordered Mr. Koerber's release

conditions under the Bail Reform Act terminated, and pending the government's appeal between

September 2014 and re-indictment in January 2018, Mr. Koerber was free without conditions or

supervision – all without objection from the government.  On January 17, 2017, Mr. Koerber was

re-indicted, and in February 2017 he was arraigned before Magistrate Judge Furse.  After considering

the circumstances and required factors, and Mr. Koerber's history of prior compliance with release

conditions and no prior violations between June 2009 and February 2017, and with no objection

from the government, Magistrate Judge Furse ordered Mr. Koerber released on personal

recognizance pursuant to §3142(b), and again with minimal conditions that he surrender any

passport, and that he not violate any local, state or federal law.

In early 2018, District Judge Block held a hearing on Mr. Koerber's renewed motion to

dismiss based on the statute of limitations. District Judge Block considered the history of the case

35

and the position of the defendant and made certain findings, including finding that Mr. Koerber's statute of limitations argument presented a non-frivolous issue, and that should conviction occur he would allow Mr. Koerber to stay on release pending appeal. In explaining his view of the factors governing release pending appeal District Judge Block found the statute of limitations argument, along with other arguments Mr. Koerber had previously raised, to be sufficiently meritorious to satisfy § 3143(b)(1)(B) factors. District Judge Block specifically stated he could not conceive of a reason to require Mr. Koerber detained pending appeal (satisfying § 3143(b)(1)(A) requiring clear and convincing evidence that Mr. Koerber was not a flight risk or a danger to any person or the community).  He further explained that he was issuing an order that would give Mr. Koerber certainty that he would not be detained following sentencing and pending appeal. The Government did not object. Following conviction by jury trial on September 20, 2018, Judge Block again considered Mr. Koerber's release, and consistent with § 3143(a)(1) released him under § 3142(b) with similar minimal conditions as those that had been previously imposed by Magistrate Judge Furse in 2017. Thus, during the entire 10 year history of this prosecution, on seven different occasions three different Magistrate Judges, and two different District Court Judges, each independently evaluated the Bail Reform Act concerns for flight risk and potential dangerousness as applied to Mr. Koerber, and Mr. Koerber was released in each instance, with minimal conditions. The only new information presented at the May 31, 2019 hearing, that was not previously in the possession of the government in any of the prior instances of Mr. Koerber's release, and the only conduct that took place since District Judge Block's order of release under 18 U.S.C. § 3143(a)(1) on September 20, 2018, was the allegation that Mr. Koerber violated either Utah or Oregon law, when he provided a March 2, 2019 receipt of dispatch to attorney J. Morgan Philpot, related to a Notice of Appeal filed in Oregon.

4.   *18 U.S.C. § 3142(g) Factors:*
        *Facts Regarding Nature and Seriousness of the Danger to...the Community if Released*

The assessment of the attorneys and clients Mr. Koerber has worked for over the last seven

years, as well as his family, friends and community is unquestionably that he is an asset to his

community. Exhibits 2 and 3 attached.  Given the publicity of his case and the realities of being

under indictment for almost a decade, and then convicted, and to have developed this reputation is

significant.  Further, although there are pending allegations by prosecutors related to this release

motion, that Mr. Koerber is a "risk" and a "danger" which the Court previously supported, a few

facts are important.  First, there is no direct complaint against Mr. Koerber besides from the

attorneys at the Peterkin law offices. In their filings with the Oregon Court of Appeals there is no

allegation that Mr. Koerber took money or engaged in financial fraud of any kind.

   At the May hearing, the government also raised facts connected to two allegations of

conduct that have no connection to the petition in this case and which were known to the

government when they declined to object to his release pending sentencing.  To the extent that this

Court is inclined to consider those matters, Mr. Koerber submits the following explanations to the

Court:

   THE BUNDY MATTER

    Prosecutors argued, without providing any evidence to the court, that in 2016 Mr. Koerber

   "was involved in a trial in Oregon" (*United States v. Bundy)* where an Order to Show Cause

   was filed against the lawyer Mr. Koerber was assisting related to a supposed attempt to

   mislead the Court by using Mr. Koerber's name as "Claud R. Koerber" for his paralegal

   status, but using "Rick Koerber" when his name was added to a potential witness list.  Rev.

   Hrg. Tr. at 157-58.  The source of the government's allegations regarding the Oregon Order

   to Show Cause in *United States v. Bundy* appears to be docket entries from that 2016

   proceeding.  The docket entries in the Oregon matter also include verification showing that

   the District Judge and her clerk both had a working firsthand knowledge of who Mr.

   Koerber was and knew him as both Claud R. Koerber and Rick Koerber. *See* Docket in *USA*

*v. Bundy,* Case No. 3:16-cr-00051, District of Oregon.  Mr. Koerber was approved by Judge

Brown as a CJA paralegal, and on his application documents Mr. Koerber proactively

disclosed both names Claud R. Koerber and Rick Koerber, and also disclosed his criminal

case by number and citation. Other defense attorneys who participated at trial also have

confirmed that Mr. Koerber was proactive in disclosing his criminal case status, as well as his

identity. Ex. 2 – Declarations of Ludwig and Schindler.  Transcripts from the *U.S. v. Bundy*

proceeding in these same docket entries show that the court, the court clerk, and law

enforcement who authorized contact visits between Mr. Koerber and defense clients, were

all also familiar with Mr. Koerber, his background, and his use of the names "Claud R.

Koerber", "Rick Koerber", and the fact that he was also known by the last name "Franklin"

at various times.  *Id.*

THE UTILITY CHECK MATTER

 The government also argued in the May hearing, without providing any evidence, that in

2011 Mr. Koerber backdated utility checks (Rev. Hrg. Tr. at p. 156) and submitted "a false

invoice for contractor work" when "the contractor did not exist and the work had never

been performed." *Id.* at 157.  The source of the government's allegations regarding Mr.

Koerber's prior landlord appears to be an FBI302, where years after the fact, the landlord's

attorney was interviewed by the FBI. However, in the civil eviction case the pleadings and

motions do not raise any of these allegations.  The Utah court was never asked to make any

findings on these allegations. Further, the supposedly non-existent contractor referenced by

the government ***did exist.*** [Utah Business: 5334662-0142 and 8831548-0142].  The receipts

that were briefly alluded to prosecutors were receipts for deposits made, not work

performed. Most tellingly, the final judgment in the eviction case had nothing to do with

fraud, such allegations were never raised, and the matter was limited to breach of contract

claims and unlawful detainer claims.  The judgment in the Utah eviction case was ultimately reversed and remanded by the Utah Court of Appeals when Mr. Koerber prevailed on a legal matter, and neither his former landlord nor her attorney ever raised these allegations in the proceeding since, or in any other forum.

The government's reliance on significant speculation without supporting facts are outside Constitutional limits.  The government's claim of "financial" dangerousness is also outside these same limits. It is well established in circumstances procedurally similar to Mr. Koerber's that release should be denied "only for the strongest of reasons." *Sellers v. U.S.*, 89 S. Ct. 36 (1968) ("The idea that it would be "dangerous" in general to allow the applicant to be at large must...relate to some kind of danger that so jeopardizes the public that the only way to protect against it would be to keep the applicant in jail.") See also *Chambers v. Mississippi*, 405 U.S. 1205 (1972) (Releasing a defendant despite the allegation that it would "create a tense and explosive situation in the community which might result in bloodshed."). In circumstances like Mr. Koerber's, release should only be denied if the evidence shows "a strong possibility that a person will commit additional crimes if released...[evidence must] support such a conclusion with a high degree of certainty." *U.S. v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). See also *U.S. v. Orta*, 760 F.2d 887 (8th Cir. 1985) ("The structure of the statute mandates every form of release be considered before detention be imposed.")  The Fifth Amendment due process requirement and the Eighth Amendment to the Constitution demand no less.

## C.  There Was No Valid Motion from the United States for Revocation.

Under 18 U.S.C. § 3148(b), it is the "attorney for the Government [that] **may initiate** a proceeding for revocation" by filing a motion with the district court. § 3148(b). *See also U.S. v. Gotti*, 794 F.2d 773, 776 (2d Cir. 1986). No other authority is granted by statute to initiate this proceeding. The statutory grant of authority to the "attorney for the Government" also functions as a limit on

any other method of invoking a proceeding for revocation under § 3148. Here, the proceeding was not initiated by an attorney for the Government but was initiated by a petition filed by the USPO.

The provision authorizing an attorney for the government, rather than any other person, to file a motion requesting revocation and initiate the appropriate proceeding is required for, among other reasons, due process considerations.  According to the statute, the filing of the motion by the "attorney for the government" functions as a criminal "charge" in that once the motion is filed, "a judicial officer may issue a warrant for the arrest of a person" because that person, according to the statutory language is being "charged with violating a condition of release[.]" 18 U.S.C. § 3148(b). Related to due process interest, the requirement of an attorney, rather than a non-attorney, to file the motion serves the interest of justice as it can lead to immediate arrest, and the beginning of proceedings that can result in the loss of liberty based, *e.g.* on "probable cause" findings.  Congress' limitation provides further protection in that attorneys are ethically bound under the Rules of Professional Conduct to withhold from bringing "a proceeding" and from "assert[ing]...an issue" unless "there is a basis in law and fact for doing so that is not frivolous."  Attorneys are also required to conduct "an inquiry reasonable under the circumstances" in advance of making allegations, and as a result of that inquiry, to ensure that the facts and legal positions advocated have merit. Rule 11(b), Federal Rules of Civil Procedure.

In Mr. Koerber's case, the failure to comply with the statute, which requires an attorney for the government to initiate the proceedings, resulted in prosecutors only later filing a "submission" in support of USPO's petition, and the submission merely adds argument to the allegations advanced by the USPO.  The USPO is not under the same obligations as government attorneys, and in this case the officer admitted on cross-exam that she did not investigate the claims that formed the basis for the petition, did not have information relating to the legal basis for the claims, sought no opinions from lawyers on the legal issues, and did not interview the UDOC employee who sent over

the UDOC forms that lay at the bedrock of the claims made against Mr. Koerber.  Rev. Hrg. Tr. at 28-53. USPO did not research the Peterkin law firm's allegations. Instead, the petition was based solely upon email submissions provided to USPO by the Peterkin civil attorneys in Oregon.  There was no follow-up investigation to see if there was a legal basis for the allegations raised. *Id.*

Thus, as a preliminary matter it is unclear whether the May 2019 hearing was an authorized act, having not been initiated under the terms and provisions spelled out by Congress. The appropriate cure for this lapse of due process is reinstating Mr. Koerber's release.

Conclusion

For the reasons stated above, Mr. Koerber moves for his immediate release under the proposed revised conditions so that he may be free to work with his attorneys prior to the upcoming evidentiary hearing to assist in sentencing and to seek medical attention for his ongoing health problems and to otherwise enjoy his liberty pending sentencing and appeal.

Respectfully submitted,


_____/s/ *Kathryn N. Nester*_____
Kathryn N. Nester
Attorney for Claud R. Koerber

41