JOHN W. HUBER, United States Attorney (#7226)
AARON B. CLARK, Assistant United States Attorney (#15404)
RUTH J. HACKFORD-PEER, Assistant United States Attorney (#15049)
TYLER MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
111 South Main, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | : | Case No.  2:17-CR-00037 |
|---|---|---|
| Plaintiff, | : | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER** |
| v. | : | |
| CLAUD R. KOERBER, | : | |
| | | Judge Frederic Block |
| Defendant. | : | Magistrate Judge Paul M. Warner |

The United States respectfully submits this Memorandum in Opposition to Defendant's Motion for Reconsideration of Detention Order.  Judge Warner held a bifurcated evidentiary hearing on May 31, 2019, to determine whether Defendant Claud "Rick" Koerber ("Koerber") committed a supervised release violation, and then upon finding of a violation, to determine whether Koerber should be detained or not.  After review of the evidence, Judge Warner held that there was probable cause to find that Koerber committed a supervised release violation and then determined that Koerber was a danger to the community and detained him.

Last September, Koerber was convicted of fifteen counts of wire fraud, money laundering, and securities fraud, for orchestrating what was one of the largest Ponzi schemes Utah has ever

seen. Koerber enticed investors with false promises and gained their trust with his charismatic personality and purported Mormon ideology. To date, Koerber refuses to admit responsibility for the fraudulent nature of his scheme, for his misrepresentations, or that his investors lost more than 45 million dollars. According to the United States' and US Probation's calculations, Koerber's crimes carry a sentencing guideline range of 235–293 months of incarceration. Given the standard of review post-conviction, the egregiousness of Koerber's crimes, his history of dishonesty, and his most recent attempt to deceive an Oregon court, Koerber remains a danger to the community and should continue to be detained until sentencing.

The United States believes Koerber's motion is procedurally improper, but because the Court may choose to re-open its own findings and conclusions, the United States will then address each of Koerber's argument in turn.

**1. Koerber's Motion Is Procedurally Improper**

To begin, Koerber's motion is procedurally improper and is a waste of judicial resources. At the end of the evidentiary hearing, Judge Warner invited defense counsel to file a review of detention to further consider whether there were conditions that manage Koerber's danger to the community and would allow Koerber to be released.[1]

Instead of filing a motion for review of detention as Judge Warner invited him to do, Koerber filed a 41-page motion attempting to re-open the question of whether a supervised release violation even occurred, proffering "new facts" available to Koerber at the time of the hearing, and arguing that Judge Warner's probable cause determination is flawed. Koerber had a full and fair

---

[1] *U.S. v Koerber*, May 31, 2019 Evidentiary Hearing Transcript (hereinafter Hearing Transcript), at p. 167.

opportunity to litigate this supervised release violation on May 31, 2019. These issues have been decided and reconsidering them now is a waste of limited judicial resources.

This is just the latest instance of Koerber's inability to accept responsibility for his conduct. If Koerber believes that Judge Warner's Order was factually or legally incorrect, the proper mechanism is to appeal the Order to the district court judge under Federal Rule of Criminal Procedure 59. Judge Block should then "consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous."[2] Judge Warner should construe Koerber's motion as nothing more than a review of detention and consider only the question of whether Koerber remains a danger to the community. He is.

**2. Koerber's Motion Fails on the Merits**

The evidentiary hearing established that Koerber, under the name C.R. "Rick" Franklin and using the business entity called Corvus, acted as a litigation consultant and law clerk for attorney J. Morgan Philpot ("Philpot") and assisted in the litigation of *Fryberger v. Edwards*.[3] Judgment of over $4 million was entered against Philpot's client in the *Fryberger* matter.[4] Philpot and Koerber had thirty days to file a notice of appeal, and under Oregon Rules, the filing could be done by commercial delivery service, such as UPS or DHL.[5]

Koerber created a "dispatch receipt" purporting to show that Philpot dispatched the appeal notice to Corvus—acting as a "commercial delivery service"—on March 2, 2019.[6] Koerber's e-

---

[2] Fed. R. Crim. Procedure 59 (Matters Before a Magistrate Judge).
[3] *U.S. v Koerber*, May 31, 2019 Evidentiary Hearing Transcript (hereinafter Hearing Transcript), at p. 16–21.
[4] Evidentiary Filing, *U.S. v. Koerber*, (hereinafter Pre-Hearing Filing) Docket No. 584, Exhibit 1 at p. 6 of 15.
[5] Hearing Transcript at p. 105–106.
[6] *Id.* at p. 108.

mail address is listed at the top under "client" and Koerber's initials are written at the bottom to show the dispatch was "processed" by Corvus. The delivery was to be made by "Courier/3-day." The delivery was not made (or received by the courier) until March 8, 2019, after the appeal deadline had run.[7] Corvus is a known Koerber entity under which Koerber provided legal services. It was never registered as a commercial delivery service, and in fact, was not registered with the Utah Division of Corporations on March 2, 2019.[8] When Koerber re-registered Corvus on March 6, 2019, he did so using the fake name of "Derrick O'Roebuck" as registered agent and listed the business purpose as "Business administration and management services."[9]

Using the ruse that Corvus was a commercial delivery service, Koerber caused Philpot to certify with the Oregon Court of Appeal that the notice of appeal was filed "by commercial delivery service, pursuant to ORS 19.260(1)(B), with proof of dispatch is (sic) attached to this notice of appeal."[10] Koerber involved himself in this scheme to deceive an Oregon court by creating the perception that the notice of appeal was transmitted to a commercial delivery service in an arm's length transaction, when in reality, Koerber was a paralegal on the case, not a commercial delivery service, and the filing was deceptive and likely untimely. Under these facts, and given Koerber's history of missing or almost missing deadlines[11], it is also reasonable to infer that Koerber backdated the notice of dispatch to March 2, 2019, in an attempt to meet the appeal filing deadline.

At the evidentiary hearing, the parties agreed that the probable cause standard of 18 U.S.C.

---

[7] *Id.* at p. 121.
[8] *Id.* at p. 20, 125.
[9] *Id.* at p. 20; Pre-Hearing Filing, Ex. 2 at p. 4.
[10] Pre-Hearing Filing, Ex. 1, at p. 3.
[11] Hearing Transcript, at p. 91.

4

§ 3148(b)(1)(A) was the current governing law.  The United States proved there was probable cause to believe that a probation violation occurred, and the Court went on to determine that Mr. Koerber was a danger to the community and could not be released.[12]

Koerber now files a forty-one page motion blaming the United States and the Court for his incarceration, arguing, among other things, that the United States did not follow the statutory requirement for initiating the hearing under 18 U.S.C. § 3148 and that the Court applied the wrong standard of review.  Koerber further argues that "new facts" show that Koerber did not commit a violation, that the United States did not prove-up the elements of a federal, state, or local crime, and that just five new conditions would ensure Koerber does not pose a danger to the community. He is in error.

### A. Revocation Proceedings Were Properly Initiated and The Court Applied the Correct Standard of Review to the Violation

Koerber argues that under 18 U.S.C. § 3148(b), a government attorney must initiate revocation proceedings and because Koerber's release violation was filed by the United States Probation Office ("USPO"), Koerber argues the May 2019 hearing was an unauthorized act. Contrary to Koerber's argument, Section 3148(b) provides two different ways in which a violation can make its way to the district court.  "The attorney for the Government may initiate a proceeding for revocation . . . by filing a motion with the district court."  In addition, "[a] judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release."  There is nothing unauthorized about the USPO office bringing a violation to the judicial officer to issue a warrant, as was done in this case.  *United States v. Roland*, No. 1:05MJ111, 2005 WL 2318866, at

---

[12]   *Id.* at p 138.

*6 (E.D. Va. Aug. 31, 2005) ("This Court, however, does not read Section 3148(b) restrictively and maintains that the plain language of Section 3148 authorizes the Court, sua sponte, to initiate a proceeding for the sanctions of revocation of release and an order of detention under Section 3148(b)).[13]

Koerber next argues that the "clear and convincing" standard under § 3143 applies only to the window right after conviction and claims that after agreeing to Koerber's release last September the United States lost the ability to benefit under the § 3143 standard. This argument does not have merit as § 3143 deals with detention the entire period "after conviction but before sentencing." *U.S. v. Johnson*, 399 F.3d 1299 (11th Cir. 2005). *United States v. Rubashkin* explains,

> [T]he presumption in 18 U.S.C. § 3143(a), which governs a defendant's release or detention after trial and before sentencing, favors detention. . . As a result, a convicted person awaiting sentence is no longer entitled to a presumption of innocence or presumptively entitled to his freedom. A defendant carries the burden to show by clear and convincing evidence that he or she is not likely to flee if released upon suitable conditions.

2009 WL 4061646, at *1 (N.D. Iowa, Nov. 20, 2009) (unpublished) (citations omitted). See also *U.S. v. Harris*, 2019 WL 178641 at *1 (D. Hawaii, Jan. 11, 2019) (applying clear and convincing standard) (slip copy).

The Court needed only to find "probable cause" that Koerber committed a

---

[13] The *Roland* Court reasoned that Congress' decision that one official "may" do something does not mean that "only" that official may perform the act, and thus *Roland* held that the court may initiate revocation proceedings on a petition filed by pretrial services. *Id.* But see *U.S. v. Herrera*, 29 F. Supp. 2d 756, 759 (N.D. Texas 1998) (holding only attorney for the Government may initiate a proceeding for revocation of an order of release but finding the government remains free to initiate a new petition on the same grounds as did the pretrial services officer).

supervised release violation, a violation of federal, state, or local law, and upon that finding, a presumption of detention arises and the defendant must show by "clear and convincing" evidence that he is not a danger to society in order for him to be released. Judge Warner applied the correct statutes and standards of review at the May 31, 2019 hearing, determined that there was probable cause to believe Koerber had violated supervision, and then detained Koerber.[14]

### B. "New Facts" Do Not Justify Reversing the Court's Determination that Koerber Committed a Probation Violation.

In his 41-page motion, Koerber proffers "new facts" to undermine the Court's decision that Koerber committed a supervised release violation. The "new facts" include that Mr. Philpot asked for confirmation of delivery of the appeal documents on March 7, 2019, and that is apparently when Koerber realized that Corvus had not yet served appeal documents. Koerber now claims that

---

[14] Nothing said at the May 7, 2018 hearing limits the Court's authority to detain Koerber. At the May 7, 2018 hearing, Judge Block, denied Koerber's motion to dismiss the indictment on a statute of limitations ground. This limitations argument has been rejected twice—by both Judge Shelby and Judge Block—and the new indictment was timely under either provision of 18 U.S.C. § 3288, which provides:

"Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final."

These are independent grace periods and the United States can utilize either applicable provision. The indictment in this matter was filed both within 6 months of Judge Parrish's August 25, 2016, dismissal and within 60 days of the time the dismissal became final after Koerber's appeal of Judge Parrish's ruling. The Tenth Circuit resolved Koerber's petition for reconsideration *en banc*, which occurred on December 16, 2016. The United States returned an indictment on January 18, 2017. Under either provision, the charges in the indictment are not time barred. Moreover, whether or not Judge Block intended to detain Koerber pending appeal has no bearing on the instant supervised release violation, nor the Court's authority to detain him now.

Corvus hired a mysterious first contractor to serve those documents on March 2, 2019, but it had never been completed. In addition, Koerber argues that while Mr. Philpot paid additional money for the Peltier delivery, the second payment was credited against the balance already paid and being held by Corvus.

Mr. Philpot himself testified at the hearing on May 31, 2019, and yet he did not mention either of these "new facts" at that time. One would think that as Mr. Philpot was being questioned —both by the United States and Judge Warner—about the absurdity of the delay between the dispatch receipt on March 2, 2019, and the delivery of documents on March 8, 2019—and the outrageous cost of using Corvus rather than an actual commercial delivery service—that Mr. Philpot would have bothered to mention these facts. He did not, which is at least very curious under the circumstances.

These purported facts are of no moment, however, and they are not even "new". The defense witness, Mr. Philpot, would have obviously been aware of these facts at the time of the hearing and yet conspicuously avoided mentioning them until now. What was established at the hearing was that Koerber did legal work for Mr. Philpot, that Mr. Philpot had an appeal deadline in early March 2019, and that Mr. Koerber worked on that appeal. Because Oregon statute allows a document to be considered timely filed when it is dispatched to a "commercial delivery service," Koerber drafted a dispatch notice and dated it March 2, 2019. This dispatch notice made the transaction between Philpot and Koerber's company Corvus appear to be an arm's length transaction, and made it appear that Corvus was a commercial delivery service, when in reality, Philpot's own paralegal, Koerber, contracted as the commercial delivery service. Moreover, it was established that Philpot paid approximately $500 for Koerber (Corvus) to have Ms. Peltier deliver

8

the documents, when an *actual* commercial delivery service could perform the same service for approximately $45-$50. It was also established at the hearing that Ms. Peltier did not receive the document until March 8th, 2019—several days after the filing deadline. However, when Judge Warner questioned Philpot about whether Corvus was a commercial delivery service, Philpot attempted to inform the Court that such inquiry was "irrelevant" before finally conceding that Corvus was not generally in the business of being a commercial delivery service.[15]

Koerber's attempts at an explanation further expose his deception. For example, Ms. Peltier claims in her signed declaration that "[t]he documents I received were part of a Corvus Administration and Management, LLC 3-day delivery, contracted by attorney Morgan Philpot of Philpot Law, PLLC, on March 2, 2019." Ms. Peltier leaves the impression she received the documents on March 2, 2019, but in fact, Mr. Philpot's testimony at the May 31, 2019 hearing established that Ms. Peltier received the documents on March 8, 2019 – 6 days after Corvus "contracted" to deliver them.

Mr. Philpot's relevant testimony was as follows:

Mr. Clark "What day did Ms. Peltier receive this hand delivered notice of appeal?"

Mr. Philpot "I believe it was March 8th."[16]

She further declares that she "marked [her] initials MP, on the receipt page, which was the last page of the package of documents, to confirm that [she] had received and completed the delivery." According to Koerber, Philpot attached the dispatch receipt to the notice, which he caused to be filed with the Court.

---

15     *Id.* at p. 124–125.
16     *Id.* at p. 121.

9

As evidenced in the signed declaration of Kristi L. Tubbin, the dispatch receipt in the record came directly from the Peterkin law firm after a man delivered the notice of appeal to the legal assistant at the firm.[17] The Dispatch Notice that was delivered to the Peterkin law firm was already initialed prior to delivery, so it could not have been that Ms. Peltier placed her initials on the receipt to confirm that she had completed the delivery, as she states in her declaration.

To be clear, Judge Warner found the circumstances around the dispatch notice very odd. "It's peculiar in the timing and the methodology, to say the least. I find that explanation strained. We're paying over $200 for Mr. Koerber to e-mail documents to Oregon that Mr. Philpot could have just as easily e-mailed to Ms. Peltier, who, coincidentally, has the same initials as Mr. Philpot. Just coincidentally."[18]

Koerber now attempts to proffer these "new facts" to create an illusion that he did not attempt to deceive the Oregon Court of Appeal. But, as Judge Warner found at the evidentiary hearing, "I find the facts as laid out in the paperwork today merited more weight than the testimony that was presented."[19] "I listened carefully to the testimony and, with all due respect, the testimony was, at best, inconsistent at times. And I won't comment further on that credibility other than to say that I found the documents, as described by the government, to be sufficient to meet the burden."[20] Nothing about Koerber's purported new facts does anything to enhance the consistency or credibility of Koerber's witnesses and they do nothing to change the probable cause determination that Judge Warner made at the evidentiary hearing.

---

[17] Pre Hearing Filing, Exhibit 1, ¶ 6.
[18] Hearing Transcript at p. 139.
[19] *Id.* at p. 164.
[20] *Id.* at p. 138.

### C. There is Probable Cause to Find—And Judge Warner Properly Found—that Koerber Committed At Least One Federal, State, or Local Crime.

There is probable cause to believe Koerber committed the Utah crime of tampering with records.  Utah Code Ann. § 76-6-504 provides that "Any person who, having no privilege to do so, knowingly falsifies, destroys, removes, or conceals any writing . . . with intent to deceive or injure any person or to conceal any wrongdoing is guilty of tampering with records."  Koerber violated Utah Code Ann. § 76-6-504 when he crafted a dispatch receipt, because there is probable cause to believe that Koerber backdated it.  Moreover, even if not backdated[21], Koerber made the dispatch receipt to deceive the Oregon Court (and his opponents in the litigation) because he made it appear as if an arm's length transaction occurred between an attorney and a commercial delivery service when in reality, Koerber was on both sides of the transaction and Corvus was not a commercial delivery service.

Koerber argues that he did not violate the Utah tampering statute § 76-6-504 because the United States failed to show what constitutes a "writing" or "record" and  because the United States failed to prove Koerber acted with "intent to deceive or injure any person or to conceal any wrongdoing."  Utah's Uniform Commercial Code defines writing as including "printing, typewriting, or any other intentional reduction to tangible form."[22]  Of course, the dispatch notice

---

[21] Koerber argues that Judge Warner did not find probable cause that Koerber backdated the March 2 receipt.  In fact, Judge Warner stated "And I think that that document may or may not have been backdated.  It doesn't really matter because, as I say, that's not before me per se, *other than I've already found probable cause*."  Hearing Transcript, at 163 (emphasis added).  While the finding that Koerber "may or may not" have backdated the receipt is not the standard by which the United States usually prevails, here, the burden on the United States is "probable cause," which Judge Warner found was met.

[22] Utah Code. Ann. § 70A-1a-201.

11

is a "writing". Moreover, Koerber drafted the dispatch notice with an intent to deceive an Oregon Court (and his litigation opponents). It is reasonable to infer that Koerber drafted the dispatch notice because he knew proof of dispatch was required under Oregon rules, and he intended to make Corvus appear to be a commercial delivery service in order to properly effect the filing, likely because he had already missed the filing deadline.[23] This is just another example of Koerber elevating perception over reality and just another example of Koerber's pattern of deception in this case—and inability to take responsibility for his wrongdoing. Judge Warner properly found that there is probable cause to believe Koerber's deceptive conduct as identified in the May 31 hearing violated Utah's tampering with records statute.[24]

### D. Koerber Is a Danger to the Community and Should Remain Detained.

Koerber argues that his release will not pose a danger to the community and offers five special conditions to ensure the community is protected from Koerber. Given Koerber's past and current fraudulent conduct, there is no combination of release conditions that can protect the public from the danger Koerber poses and he should, therefore, remain detained pending sentencing.

Dishonest behavior is a hallmark of Koerber's history and character. In addition to the massive fraud for which the jury convicted him, he has consistently been involved in efforts to deceive others, including courts. For example, starting around February 2000, Koerber dishonestly raised investor money in Wyoming for a company called National Business Solutions, LLC ("NBS"). The Wyoming Securities Division found, among other things, that he failed to inform

---

[23] The evidentiary hearing established that Koerber had a pattern of working up to and until the deadline and may have missed a filing deadline in the past. *Id.* at p. 91–92,
[24] The United States believes that this conduct likely also violated Utah's Written False Statement statute (U.C.A. § 76-8-504), Oregon's Falsifying Business Records Statute (ORS § 165.080), and Oregon's Contempt statute (ORS § 33.015).

investors how he would spend their money and that the financial information he gave to investors "either contained untrue statements of material fact or omitted to state a material fact," in violation of Wyoming's securities laws.[25] After getting in trouble with the Wyoming division of securities, he moved to Utah where he started the Ponzi scheme that he was convicted of in September 2018.

In 2015, Koerber attempted to convince a divorce court that his wife had made a required payment, when in truth, she had made no such payment. In support of his testimony, Mr. Koerber offered extrinsic evidence of payment—misleading screenshots from Mountain America Credit Union—that appeared to show a financial transaction reflecting the payment at issue, when in fact no payment had been made. The Court found "Mr. Koerber's testimony regarding payment was not credible" and held Mr. Koerber's wife in contempt of court for willfully failing to make the payment she owed.[26]

In 2016, Koerber again was involved in an attempt to deceive a court. This time, it involved his work as a paralegal on a criminal trial in Oregon. In this instance, Koerber attended trial proceedings as "Rick Koerber" but appeared on the witness list as "Claud R. Koerber" and he stayed in the courtroom in violation of the exclusionary rule. The court ruled that Koerber could not testify, and this deception was part of an Order to Show Cause proceeding against the lawyer for whom Koerber was working.[27]

In other circumstances, Koerber has similarly used different names in an attempt to deceive

---

[25] Wyoming Stipulated Order, Def. Trial Ex. 516, pp. 91-95 (attached as Ex. 1).
[26] Fish v. Fish, Civil No. 034903679, Contempt Trial Order and Findings of Fact & Conclusions of Law, (Feb. 24, 2015) at pp. 10-11 (attached as Ex. 2).
[27] *United States v. Bundy*, 3:16-cr-00051, ECF No. 2069 at p. 2 (attached as 3). Ultimately, this lawyer agreed that his pro hac vice admission be withdrawn and that he would never again apply for pro hac vice admission in the District of Oregon. *In re Marcus Mumford*, Case No. 3:17-mc-00348, ECF No. 35.

others about his past and distance himself from his Ponzi scheme. For example, he currently performs work as a paralegal using the name "Rick Franklin." [28] [29] He re-registered Corvus using the alias Derrick O. Roebuck as registered agent.[30]

Koerber's personal life is also riddled with instances of dishonesty. In a 2011, he was involved with a dispute with a landlord and in order to avoid eviction, he lied about sending an email, backdated utility checks, and submitted a false invoice to the landlord for contractor work on the home.[31] In a dispute with another landlord, Koerber failed to timely pay his rent, and when he was asked to leave, he caused an estimated $21,000 in damage to the home, leaving dog urine and feces in the basement and holes in the walls. He failed to return shower heads, keys, and the garage door openers.[32]

Koerber attempts to minimize or explain away these instances of dishonesty, largely by blaming others or making excuses. Regardless, Koerber is the common denominator in all these instances of deceit. Koerber has lived a life of deception both personally and professionally. And he should remain detained pending sentencing in this underlying matter, as no combination of conditions can ensure the safety of the community if he is released. If sentenced within the guideline range, Koerber faces 235-293 months of imprisonment. Given this current conduct, his pattern of past deception, and the severity of the punishment that lies ahead, Koerber should stay detained.

---

[28] SkousenLaw PLLC Website Screenshot (Attached as Ex. 4).
[29] 3/4/2019 Investigative Report regarding Koerber LLC's (attached as Ex. 5)
[30] Hearing Transcript at p. 21; Pre-Hearing Filing, Ex. 2 at p. 4.
[31] Sean Egan Interview Report (attached as Ex. 6).
[32] Tahna Elwood Interview Report (attached as Ex. 7).

## CONCLUSION

Rick Koerber ran an enormous Ponzi scheme and lied to his investors about how he would spend their money. His actions resulted in a loss of $45,258,892.09. Now, before being sentenced for the underlying crime, Koerber continues his pattern of deception and attempted to deceive an Oregon court in a matter with a 4 million dollar judgment at stake. Koerber is a danger to the community and should be detained until he is sentenced for securities fraud, wire fraud, and money laundering. Finally, the United States asks the Court to schedule a sentencing hearing as soon as possible.

DATED this 5th of August, 2019.

JOHN W. HUBER
United States Attorney


/s/ *Ruth Hackford-Peer*
TYLER MURRAY
AARON CLARK
RUTH HACKFORD-PEER