JOHN W. HUBER, United States Attorney (#7226)
AARON B. CLARK, Assistant United States Attorney (#15404)
RUTH J. HACKFORD-PEER, Assistant United States Attorney (#15049)
TYLER MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
111 South Main, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.  2:17-CR-00037 |
| Plaintiff, | : | **UNITED STATES' OPPOSITION TO DEFENDANT'S AMENDED MOTION TO REVOKE DETENTION ORDER, STAY ORDER, AND RELEASE DEFENDANT** |
| v. | : | |
| CLAUD R. KOERBER, | : | |
| | | Judge Frederic Block |
| Defendant. | : | Magistrate Judge Paul M. Warner |

In his latest filing—an 84 page missive—Koerber seeks to revoke Magistrate Judge Warner's detention order, stay said order, and be immediately released from incarceration. This filing is little more than a rehash of his previous filings seeking similar relief.  *See*, Defendant's Motion for Reconsideration of Detention Order, Docket No. 612.  In doing so, Koerber alleges that prosecutors held "a reckless disregard for the truth," that the "core allegations relied upon by the government and by Magistrate Judge Warner – are meritless and that "Mr. Koerber did not violate his release conditions."  Docket no. 629, at iii.  Largely ignored in the recent filing is the fact that Koerber was convicted of fifteen counts of wire fraud, money laundering, and securities fraud because he orchestrated one of the largest Ponzi schemes Utah has ever known.  Koerber

previously had the most permissive release conditions available—all Koerber had to do to remain out on release was to conform his conduct to the criminal law—and yet he was unable to do even that.

The key to this detention decision sits dispositively on the appropriate standard of review. Because Koerber had been convicted of federal crimes and was awaiting sentencing, the United States needed only to prove a supervised release violation by "probable cause" (18 U.S.C. § 3148) and upon such finding, the burden shifted to Koerber to prove by "clear and convincing evidence" that he was not a danger if released. (18 U.S.C. § 3143).[1]

The Court needed only to find "probable cause" that Koerber committed a supervised release violation—a violation of federal, state, or local law—and upon that finding, a presumption of detention arises and the defendant must show by "clear and convincing" evidence that he is not a danger to society in order for him to be released. Judge Warner applied the correct statutes and standards of review at the May 31, 2019 hearing, determined that there was probable cause to

---

[1] Koerber argues the applicable statute is 18 U.S.C. § 3142 and therefore argues that the United States must prove by clear and convincing evidence that Koerber is a danger to a person or the community. Koerber argues that the "clear and convincing" standard under § 3143 applies only to the window right after conviction and claims that after agreeing to Koerber's release last September, the United States lost the ability to benefit under the § 3143 standard. This argument does not have merit as § 3143 deals with detention the entire period "after conviction but before sentencing." *U.S. v. Johnson*, 399 F.3d 1299 (11th Cir. 2005). *United States v. Rubashkin* explains,

> [T]he presumption in 18 U.S.C. § 3143(a), which governs a defendant's release or detention after trial and before sentencing, favors detention. . . As a result, a convicted person awaiting sentence is no longer entitled to a presumption of innocence or presumptively entitled to his freedom. A defendant carries the burden to show by clear and convincing evidence that he or she is not likely to flee if released upon suitable conditions.

2009 WL 4061646, at *1 (N.D. Iowa, Nov. 20, 2009) (unpublished) (citations omitted). See also *U.S. v. Harris*, 2019 WL 178641 at *1 (D. Hawaii, Jan. 11, 2019) (applying clear and convincing standard) (slip copy).

believe Koerber had violated supervision, and then detained Koerber. Koerber argues that the May 31, 2019, detention runs afoul of comments Judge Block made at a May 7, 2018, hearing, but that is incorrect.[2]

Judge Warner conducted a bifurcated evidentiary hearing. He first heard evidence of the supervised release violation under 18 U.S.C. § 3148, and only upon finding that there was a violation did he move to 18 U.S.C. § 3143 to determine whether Koerber could be released. Judge Warner's findings are sound and should not be upended. This Court has everything it needs in the record to review *de novo* the finding by Judge Warner that there was "probable cause" to find that Koerber violated supervised release and further, that Koerber was unable to prove by "clear and convincing" evidence that he would not be a financial danger to the community.

## RELEVANT FACTS

Koerber, under the name C.R. "Rick" Franklin, and under the business name Corvus Administration and Management, acted as a litigation consultant and law clerk for J. Morgan

---

[2] Nothing said at the May 7, 2018 hearing limits the Court's authority to detain Koerber. At the May 7, 2018, hearing, Judge Block, denied dismissing the indictment on a statute of limitations ground. This limitations argument has been rejected twice—by both Judge Shelby and Judge Block—and the new indictment was timely under either provision of the statute. 18 U.S.C. § 3288 provides:
  "Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information, or, in the event of an appeal, within 60 days of the date the dismissal of the indictment or information becomes final."
  These are independent grace periods and the United States can utilize either applicable provision. The superseding indictment was filed both within 6 months of Judge Parrish's August 25, 2016 dismissal and within 60 days of the time the dismissal became final. The Tenth Circuit resolved Koerber's petition for reconsideration *en banc*, which occurred on December 16, 2016. The United States returned an indictment on January 18, 2017. Under either provision, the charges in the indictment are not time barred. Moreover, whether or not Judge Block intended to detain Koerber pending appeal has no bearing on the instant supervised release violation, nor the Court's authority to detain him now.

Philpot ("Philpot") and assisted in the litigation of *Fryberger v. Edwards* 18 CV 3874. Judgment of over $4 million was entered against Mr. Philpot's client in the civil matter. Mr. Philpot and Koerber had 30 days to file a notice of appeal, and under Oregon Rules, the filing could be done by commercial delivery service such as UPS or DHL. A "mailbox rule" applied to deliveries by commercial delivery service. Morgan Philpot testified that the appeal was due March 4th because the 30th day of the deadline fell on Saturday March 2nd, so the deadline would be bumped to the next business day.[3]

Corvus was never registered as a commercial delivery service, and in fact, was not registered with the Utah Division of Corporations on March 2, 2019.[4] When Koerber re-registered Corvus on March 6, 2019, he did so using the name of "Derrick O'Roebuck" as registered agent and listed the business purpose as Business administration and management services.[5]

To give the impression that Mr. Philpot had given the notice of appeal to an actual commercial delivery service, rather than just his law clerk, Koerber created a "dispatch receipt" purporting to show that Philpot dispatched the appeal notice to Corvus Administration and Management–acting as a "commercial delivery service"–on March 2, 2019.[6] The delivery was to be made by "Courier/3-day." The courier, Maureen Peltier, did not receive the documents to be delivered until March 8, 2019, days after the appeal deadline had run, and a full 6 days after the dispatch receipt was purportedly created.[7]

---

[3] *U.S. v Koerber*, May 31, 2019 Evidentiary Hearing Transcript (hereinafter Hearing Transcript), at p. 106–107
[4] *Id.* at p. 20, 125.
[5] *Id.* at p. 20.
[6] *Id.* at p. 108.
[7] *Id.* at p. 121.

4

**ARGUMENT**

I. **Koerber Committed The Crime of Tampering With Records When He Issued a "Dispatch" Receipt dated March 2, 2019, Concealed That the Receipt Was A Related-Party Transaction, and Held Corvus Out to be a Commercial Delivery Service**

There is a reasonable basis—that is, probable cause—for believing that Koerber committed a crime when he issued a "dispatch" receipt to Philpot for appeal documents, dated the receipt March 2, 2019, and then worked with Maureen Peltier who received and delivered the appeal documents in Oregon on March 8, 2019, days after the appeal deadline in the Oregon matter. Using the ruse that Corvus was a commercial delivery service, Koerber caused Philpot to certify with the Oregon Court of Appeals that the notice of appeal was filed "by commercial delivery service, pursuant to ORS 19.260(1)(B), with proof of dispatch is (sic) attached to this notice of appeal."[8]

Because Oregon statute allows a document to be considered timely filed when it is dispatched to a "commercial delivery service," Koerber drafted a dispatch notice and dated it March 2, 2019. A close look at the dispatch notice shows that Koerber's e-mail address is listed at the top under "client" and Koerber's initials are written at the bottom to show the dispatch was "processed" by Corvus. This dispatch notice made the transaction between Philpot and Koerber's company Corvus appear to be an arm's length transaction, and attempted to make it appear that Corvus was a commercial delivery service, when in reality, Koerber was the legal assistant who worked on the appeal and the person who was tasked to ensure timely delivery of the appeal documents.

Moreover, Philpot paid approximately $500 for Koerber (Corvus) to have Ms. Peltier deliver the documents, which an *actual* commercial delivery service could do for approximately

---

[8] Pre-Hearing Filing, Ex. 1, at p. 3.

$50. It was also established at the hearing that Ms. Peltier did not receive the document until March 8, 2019—several days after the filing deadline. However, when Judge Warner questioned Philpot about whether Corvus was a commercial delivery service, Philpot informed the Court that such inquiry was "irrelevant" before finally conceding that Corvus was not generally in the business of being a commercial delivery service.[9] These facts support the reasonable inference that Koerber backdated the dispatch receipt to March 2, 2019.

Koerber's attempts at an explanation further exposes his deception. For example, Ms. Peltier claims in her signed declaration that "[t]he documents I received were part of a Corvus Administration and Management, LLC 3-day delivery, contracted by attorney Morgan Philpot of Philpot Law, PLLC, on March 2, 2019." Ms. Peltier leaves the impression she received the documents on March 2, 2019, but in fact, Mr. Philpot's testimony at the May 31, 2019 hearing established that Ms. Peltier received the documents on March 8, 2019 – 6 days after Corvus "contracted" to deliver them.

Philpot's relevant testimony was as follows:

Mr. Clark  "What day did Ms. Peltier receive this hand delivered notice of appeal?"

Mr. Philpot  "I believe it was March 8th."[10]

She further declares that she "marked my initials MP, on the receipt page, which was the last page of the package of documents, to confirm that [she] had received and completed the delivery." According to Koerber, Philpot attached the dispatch receipt to the notice, which he caused to be filed with the Court.

---

[9] *Id.* at p. 124–125.
[10] *Id.* at p. 121.

6

As evidenced in the signed declaration of Kristi L. Tubbin, the dispatch receipt in the record came directly from the Peterkin law firm after a man (not a woman) delivered the notice of appeal to the legal assistant at the firm.[11] The Dispatch Notice that was delivered to the Peterkin law firm was already initialed prior to delivery, so it could not have been that Ms. Peltier placed her initials on the receipt to confirm that she had completed the delivery, as she states in her declaration.

To be clear, Judge Warner found the circumstances around the dispatch notice very odd. "It's peculiar in the timing and the methodology, to say the least. I find that explanation strained. We're paying over $200 for Mr. Koerber to e-mail documents to Oregon that Mr. Philpot could have just as easily e-mailed to Ms. Peltier, who, coincidentally, has the same initials as Mr. Philpot. Just coincidentally."[12]

Koerber now spends 84 pages attempting to blame everyone but himself for his conduct. He attempts to create an illusion that he did not attempt to deceive the Oregon Court of Appeals. But, as Judge Warner found at the evidentiary hearing, "I find the facts as laid out in the paperwork today merited more weight than the testimony that was presented."[13] "I listened carefully to the testimony and, with all due respect, the testimony was, at best, inconsistent at times. And I won't comment further on that credibility other than to say that I found the documents, as described by the government, to be sufficient to meet the burden."[14] Nothing in Koerber's newest filing changes the probable cause determination that Judge Warner made at the evidentiary hearing.

Koerber never did "dispatch" the appeal documents to Oregon until he apparently e-mailed them to Maureen Peltier on March 8, 2019, to be delivered. Koerber offered no evidence that the

---

[11] Pre Hearing Filing, Exhibit 1, ¶ 6.
[12] Hearing Transcript at p. 139.
[13] *Id.* at p. 164.
[14] *Id.* at p. 138.

appeals documents were already drafted on March 2, 2019, and the reasonable inference is that they were not.

Koerber involved himself in this scheme to deceive an Oregon court by drafting a dispatch receipt that he knew was going to be transmitted to the Oregon Court of Appeal wherein he made it appear that Corvus was a commercial delivery service when it was not.  Koerber also made it appear that he and Philpot were engaged in an arm's length transaction when Koerber was both the "client" and the "commercial delivery service."  Finally, Koerber dated the dispatch receipt March 2, 2019.

In reality, Koerber equals Corvus, and Corvus was not a commercial delivery service. Koerber was both the "client" in the receipt and Corvus, the purported commercial delivery service.  Additionally, Koerber had a history of pushing or missing deadlines.[15]  Thus, as stated previously, it is reasonable to infer that Koerber also backdated the notice of dispatch to March 2, 2019, in an attempt to meet the appeal filing deadline in addition to drafting a receipt that fundamentally misrepresented the business that Corvus engages in, and creates the false impression that this is an arm's length transaction between an attorney and a commercial delivery service.  Everything about this dispatch receipt appears to be fraudulent.  It appears as though it was meant to be deceptive.

### A. There is Probable Cause to Find—And Judge Warner Properly Found—that Koerber Committed At Least One Federal, State, or Local Crime.

There is probable cause to believe Koerber committed the Utah crime of tampering with records.  Utah Code Ann. § 76-6-504 provides that "Any person who, having no privilege to do so, knowingly falsifies, destroys, removes, or conceals any writing . . . with intent to deceive or

---

[15]     Hearing Transcript, at p. 91.

injure any person or to conceal any wrongdoing is guilty of tampering with records." Koerber violated Utah Code Ann. § 76-6-504 when he crafted a dispatch receipt, because there is probable cause to believe that Koerber backdated it. Moreover, even if not backdated,[16] Koerber made the dispatch receipt appear as if an arm's length transaction occurred between an attorney and a commercial delivery service when in reality, Koerber was on both sides of the transaction and Corvus was not a commercial delivery service.

Koerber argues that he did not violate the Utah tampering statute § 76-6-504 because the United States failed to show what constitutes a "writing" or "record" and because the United States failed to prove Koerber acted with "intent to deceive or injure any person or to conceal any wrongdoing." Utah's Uniform Commercial Code defines writing as including "printing, typewriting, or any other intentional reduction to tangible form."[17] Of course, the dispatch notice is a "writing". Moreover, Koerber drafted the dispatch notice with an intent to deceive an Oregon Court. It is reasonable to infer that Koerber drafted the dispatch notice because he knew proof of dispatch was required under Oregon rules, and he intended to make Corvus appear to be a commercial delivery service in order to properly effect the filing, likely because he had already missed the filing deadline.[18] This is just another example of Koerber elevating perception over reality and just another example of Koerber's pattern of deception in this case—and inability to

---

[16] Koerber argues that Judge Warner did not find probable cause that Koerber backdated the March 2 receipt. In fact, Judge Warner stated "And I think that that document may or may not have been backdated. It doesn't really matter because, as I say, that's not before me per se, *other than I've already found probable cause*." Hearing Transcript, at 163 (emphasis added). While the finding that Koerber "may or may not" have backdated the receipt is not the standard by which the United States usually prevails, here, the burden on the United States is "probable cause," which Judge Warner found was met.

[17] Utah Code. Ann. § 70A-1a-201.

[18] The evidentiary hearing established that Koerber had a pattern of working up to and until the deadline and may have missed a filing deadline in the past. *Id.* at p. 91–92,

take responsibility for his wrongdoing. Judge Warner properly found that there is probable cause to believe Koerber's deceptive conduct as identified in the May 31 hearing violated Utah's tampering with records statute.[19]

### B. Koerber Is a Danger to the Community and Should Remain Detained.

Koerber argues that his release will not pose a danger to the community and offers five special conditions to ensure the community is protected from Koerber. Given Koerber's past and current fraudulent conduct, there is no combination of release conditions that can protect the public from the danger Koerber poses, and he should, therefore, remain detained pending sentencing and appeal.

Dishonest behavior is a hallmark of Koerber's history and character.[20] For example, starting around February 2000, Koerber dishonestly raised investor money in Wyoming for a company called National Business Solutions, LLC ("NBS"). The Wyoming Securities Division found, among other things, that he failed to inform investors how he would spend their money and that the financial information he gave to investors "either contained untrue statements of material fact or omitted to state a material fact," in violation of Wyoming's securities laws. After getting in trouble with the Wyoming division of securities, he moved to Utah where he started the Ponzi scheme that he was convicted of in September 2018. The United States has previously identified Koerber as having made untrue statements to a Utah Court as part of his current wife's previous divorce. The United States has also previously argued that Koerber has used pseudonyms to

---

[19] The United States believes that this conduct likely also violated Utah's Written False Statement statute (U.C.A. § 76-8-504), Oregon's Falsifying Business Records Statute (ORS § 165.080), and Oregon's Contempt statute (ORS § 33.015).

[20] The United States sentencing memorandum provides much more detail and citation support to these instances of dishonesty but for the Court's assistance here, provides brief summaries as support that Koerber remains a danger to the community if released.

insulate himself from these criminal charges (now convictions), and has used variations of his name previously in order to deceive a court. These have all been documented in prior briefing but this issue is similarly resolved because of the high (and unusual) burden Koerber has to prove that he is not a danger to the community. Koerber failed to prove by "clear and convincing evidence" that he is not a danger to the community under 18 U.S.C. § 3143, and thus, cannot be released.

## CONCLUSION

Rick Koerber ran an enormous Ponzi scheme and lied to his investors about how he would spend their money. His actions resulted in a loss of $45,258,892.09. Now, before being sentenced for the underlying crime, Koerber continues his pattern of deception and attempted to deceive an Oregon court in a matter with a 4 million dollar judgment at stake. Koerber is a danger to the community and should be detained until he is sentenced for securities fraud, wire fraud, and money laundering.

DATED this 1st day of October, 2019.

JOHN W. HUBER
United States Attorney

/s/ *Ruth Hackford-Peer*
TYLER MURRAY
AARON CLARK
RUTH HACKFORD-PEER