JOHN W. HUBER, United States Attorney (#7226)
AARON B. CLARK, Assistant United States Attorney (#15404)
RUTH J. HACKFORD-PEER, Assistant United States Attorney (#15049)
TYLER MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
111 South Main, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.  2:17-CR-00037 |
| Plaintiff, | : | **POSITION OF THE UNITED STATES WITH RESPECT TO  SENTENCING FACTORS** |
| v. | : | Judge Frederic Block |
| CLAUD R. KOERBER, | : | Magistrate Judge Paul M. Warner |
| Defendant. | : | |

Pursuant to DUCrim 32-1(b), the United States of America respectfully submits its Position with Respect to Sentencing Factors.  Through correspondence and conversations, the United States has conferred in good faith with opposing counsel and the probation officers in an attempt to resolve any disputed matters.

### A. Base Offense Level

The jury convicted Mr. Koerber of, among other things, Wire Fraud, in violation of 18 U.S.C. § 1343, which has a base offense level of 7.  Accordingly, the base offense level of 7, as listed in the PSR is correct.

### B. Loss Amount

The loss amount in this case is $45,258,892.09.  The evidentiary support for this loss

amount is set forth in the detailed briefing and exhibits the United States has submitted on this issue. *See*. ECF Nos. 611 and 623. Accordingly, the PSR correctly increased the offense level by 22 points for a loss over $20,000,000. U.S.S.G. § 2B1.1(b)(1)(L).

### C. Number of Victims

Pursuant to agreement of the parties, Mr. Koerber has withdrawn his objection to the PSR that there more than 10 victims. For its part, the United States agreed that for purposes of calculating the sentencing guidelines, there were between 10-49 victims, meaning that the offense level should be increased by an additional two points, and this is correctly noted in the PSR. U.S.S.G. § 2B1.1(b)(2)(A). The particular victims identified to support this enhancement are listed on the United States' loss calculation spreadsheet (ECF No. 611, Exhibit 2) and on Trial Exhibit 21 (attached as Exhibit 3 to ECF NO. 611).

### D. Sophisticated Means

USSG § 2B1.1(b)(9) provides for a two-level enhancement to the base offense level if the offense involved sophisticated means. "Sophisticated means" is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n. 9(B). "The Guidelines do not require every step of the defendant's scheme to be particularly sophisticated; rather, as made clear by the Guidelines' commentary, the enhancement applies when the execution or concealment of a scheme, viewed as a whole, is especially complex or especially intricate." *United States v. Weiss*, 630 F.3d 1263, 1279 (10th Cir.2010) (quotations omitted).

Defendant utilized sophisticated means to execute his fraud and to attempt to shield himself from liability. For example, Defendant structured his scheme in an attempt to avoid having to comply with securities laws. He did this because in early 2000, Defendant raised

money from investors in Wyoming but had failed to comply with Wyoming's securities laws, including the registration requirements. He entered into a consent decree with the Wyoming Secretary of State as a result.[1] When he began raising money for Founders Capital, he attempted to avoid the registration requirements by ostensibly limiting the number of investors in Founders Capital. He did this by establishing a network of Limited Liability Companies, typically run by his close associates, which would act as "feeder funds" into Founders Capital. In this way, he could raise and spend millions of dollars, but attempt to avoid any registration requirements and place a layer between himself and the investors.[2] Trial testimony showed that Koerber provided guidance to his followers, like Michael Isom, Matson Magleby, Peter Hansen, Paul Bouchard, Sonny Jensen, Gabriel Joseph, and others on how to set up the funds, provided copies of promissory notes and other documents for the feeder funds to use, provided office space for many of them to use, and suggested the interest rates that they pay their downline investors.[3]

    The owners of the feeder funds were motivated to raise as much money as possible so they could profit from the spread between the 5% monthly payment they received from their investment in Founders Capital and the amount (typically 3% per month) they were paying their investors. In this way, Koerber was able to raise nearly $100 million from investors and spend it how he saw fit, but then attempt to claim he had no relationship with the investors. Defendant's knowledge of the securities laws, his attempt to circumvent them, and his extensive use of other individuals and entities in an effort to shield himself shows Defendant used sophisticated means to commit his crime. Accordingly, the PSR's addition of a two-level enhancement for sophisticated means is correct.

---

[1] Def. Trial Ex. 516, p. 91-96.
[2] Govt. Trial Ex. 21 (provides a list of the first line investors/feeder funds).
[3] *See* ECF No. 611, pp. 15-17 and accompanying footnotes and exhibits for the specific evidentiary support for this enhancement.

### E. Money Laundering

The jury convicted Mr. Koerber of two counts of violating 18 U.S.C. § 1957. Accordingly, the PRS correctly increases the offense level an additional one point for this money laundering violation. U.S.S.G. § 2S1.1(b)(2)(A).

### F. Leader, Organizer, or Otherwise Extensive

U.S.S.G. § 3B1.1(a) provides for a four-level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . .". Criminal activity can be "otherwise extensive" based on the width, breadth, scope, complexity, and duration of the scheme:

> [T]he sentencing court is free to consider the use of unwitting outsiders in determining if a criminal enterprise is "extensive" within the contemplation of section 3B1.1....The extensiveness of a criminal activity is not necessarily a function of the precise number of persons, criminally culpable or otherwise, engaged in the activity. Rather, an inquiring court must examine the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity, and duration of the scheme.

*United States v. Yarnell*, 129 F.3d 1127, 1139 (10th Cir. 1997) (quoting *United States v. Dietz*, 950 F.2d 50, 53 (1st Cir. 1991)).

In addition, however, for this enhancement to apply, there must be at least one other "participant," meaning the court must find that Koerber led "at least one person who was criminally responsible" for the commission of the offense. *United States v. Gallant*, 537 F.3d, 1202, 1241 (10th Cir. 2008). *See also*, *United States v. Baur*, 995 F.2d 182, 183-84 (10th Cir. 1993). "This is not a particularly onerous showing. 'The Guideline requires only a conclusion that the [the defendant] supervised at least one such participant; it does not require the court to identify specific examples.'" *United States v. Gallant*, 537 F.3d at 1241 (citations omitted).

4

Given these requirements, it does not appear that this enhancement should technically apply, because while Koerber led a number of unwitting participants, induced them to raise money on his behalf, and engaged in extensive criminal conduct over a significant period of time, it does not appear that those who he led had sufficient knowledge to be "criminally responsible" for the crimes Mr. Koerber committed.

## CONCLUSION

Accordingly, the United States asserts that the following is the appropriate Guideline calculation:

| | |
|---|---|
| Base Offense Level, including convictions for 18 U.S.C., § 1343 (U.S.S.G §§ 2S1.1(a)(1) and 2B1.1(a)(1)) | **7** |
| Loss Amount of $45,258,892.095 (U.S.S.G. § 2B1.1(b)(1)(L)) | **+22** |
| Offense involved 10 or more victims (U.S.S.G. § 2B1.1(b)(2)(A)) | **+2** |
| Sophisticated Means (U.S.S.G. § 2B1.1(b)(9)(C)) | **+2** |
| Money Laundering Enhancement (U.S.S.G. § 2S1.1(b)(2)(A)) | **+1** |
| Total Offense Level | **34** |
| Criminal History | **Category I** |
| Guideline Range | **151-188 months** |

Please note, however, that notwithstanding the guidelines calculation, the United States seeks a custodial sentence of 240 months — 52 months above the high end of the applicable guidelines range — because the devastating extent of the harm caused by Koerber and the calculating and egregious nature of conduct is not adequately captured by the sentencing

5

guidelines.

    Dated this 3rd of October, 2019

                                                 JOHN W. HUBER

                                                 */s/ Tyler L. Murray*
                                                 Tyler L. Murray
                                                 Aaron Clark
                                                 Ruth Hackford-Peer
                                                 Assistant United States Attorneys