KATHRYN N. NESTER, Federal Public Defender (#13967-UT)
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Ste. 900
San Diego, CA 92101-5030
Telephone: (619) 234-8467
Fax: (619) 687-2666

DAPHNE A. OBERG, Assistant Federal Defender (#11161)
ROBERT K. HUNT, Assistant Federal Defender (#5722)
JESSICA STENGEL (#8915)
OFFICE OF THE FEDERAL PUBLIC DEFENDER
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Fax: (801) 524-4060

*Attorneys for Claud R. Koerber*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CLAUD R. KOERBER, <br><br> Defendant. | **OBJECTION TO THE GOVERNMENT'S ANTI-RELIGIOUS BIAS** <br><br> 2:17-cr-00037-FB-PMW <br><br> District Court Judge Frederic Block <br> Magistrate Judge Paul M. Warner |

The government's animus towards Mr. Koerber extends far beyond the legal claims and criminal charges at issue in this case. Mr. Koerber has previously pointed out how the government

has deliberately targeted his political speech[1] and religious associations[2] as a significant and material basis for this prosecution since its beginning.

Most recently, the government's expression of its improper animus towards Mr. Koerber visibly boiled over long standing constitutional safeguards, when in its sentencing memorandum prosecutors dedicated a significant portion of the government's sentencing summary, as well as six pages of its ten-page "fact" section, to highlighting, criticizing, and mocking Mr. Koerber's abstract religious beliefs and protected religious expressions. *See* Doc. 559, pp. 1-6.

This constitutionally offensive choice by prosecutors, now that the government has obtained a conviction, to argue that Mr. Koerber's punishment should be heavily based on the government's religious criticisms evinces a fundamentally unfair and vindictive animus. "A prosecuting authority may not punish a defendant" for such improper reasons as "an inference that the prosecution has done so may lead to a presumption of vindictiveness." *United States v. Reeves*, 450 F. App'x 740, 742 (10th Cir. 2011). "The court may not permit vindictiveness to be hidden behind procedural cosmetics." *United States v. P.H.E.*, 965 F.2d 848, 858-59 (10th Cir. 1992).

The indictment in this case and all trial witnesses (in both trials) omit any complaint regarding Mr. Koerber's religious beliefs or protected religious expressions. In fact, government witnesses Clavell Anderson (Mr. Koerber's Executive Vice President and investor), Pete Hansen (Mr. Koerber's partner and investor and videographer of all of Mr. Koerber's presentations), and defense witness Jason Vaughan (Mr. Koerber's partner, investor, and leader of educational programs) all testified otherwise. The absolute dearth of any reference to Mr. Koerber's religious beliefs or

---

[1] At trial, Mr. Koerber played an audio recording from a member of the joint state/federal task force investigating Mr. Koerber back in 2007. In the recording Utah Division of Securities Director Wayne Klein is heard explaining that although Mr. Koerber had not yet been found to have broken any rule or law he was going to be prosecuted because he had "gone on the radio and criticized" the government and "painted" the government into a corner because "legislators" were threatening to "restrict" or reduce Mr. Klein's power as a result of Mr. Koerber's radio criticisms.

[2] *See United States v. Koerber*, No. 2:09-cr-302, 2012 WL 3964829 at *8 (D. Utah Sept. 11, 2012).

expressions in the indictment and by trial witnesses raises the question – why have prosecutors dedicated almost half of their sentencing arguments to this subject. Now that the government has obtained a conviction, prosecutors seem emboldened and willing to openly reveal the anti-religious animus against Mr. Koerber that has significantly and impermissibly motivated the government's case for the last ten years.

## STATEMENT OF RELEVANT FACTS

Mr. Koerber's complaints about impermissible religious animus in this case are documented as far back as 2012.[3] Mr. Koerber also objected during the 2018 trial, to the government's use of a video clip with Mr. Koerber declaring his religious beliefs (cited in the government's sentencing memorandum, Doc. 559 at p. 5.) In playing this video clip at trial, prosecutors falsely assured the Court that Mr. Koerber's religious expressions could not be separated out from the clip. After the clip was played for the jury it was quite apparent that Mr. Koerber's religious expression could have easily been left out. Nevertheless, these prior complaints were based on less obvious evidence of vindictiveness than what is now before the Court in the form of indisputable overt statements contained in the government's sentencing memorandum. Several examples from the sentencing memorandum will demonstrate the point.

- Prosecutors criticized Mr. Koerber because he "appeared to be a faithful Mormon" while conducting business, and also "used vocabulary and concepts" that would be understandable by "a Mormon audience." Doc. 559 at p. 2.

- Prosecutors also criticized Mr. Koerber because his business presentations reflected his "Mormon ideology" *Id.* Prosecutors also complain that Mr. Koerber spoke and wrote with "concepts and vocabulary familiar to Mormons." *Id* at p. 4.

---

[3] *See* footnote 2 above.

- Prosecutors attack the fact that Mr. Koerber expressed his views and philosophy through thirteen personal statements based upon the fact that "Mormon's also have a core set of beliefs called the Thirteen Articles of Faith." *Id* at p. 4.

- Prosecutors openly attack Mr. Koerber's "Mormon Connection" and the fact that he published essays from "former Mormon leaders, Brigham Young and Ezra Taft Benson, among others." *Id* at p. 5.

- Prosecutors directly attack Mr. Koerber for using religious language and for publicly declaring "I know God lives", *id*.; for speaking in a "tone familiar" to a religious audience, *id*.; at p. 5; for publicly declaring his belief that he and others could be "inspired by God", *id*.; and for infusing his "writings with a religious tone". *Id* at pp. 5-6.

ARGUMENT

The Fifth Amendment to the Constitution guarantees due process throughout a criminal proceeding. This guarantee includes the specific assurance that government bias or vindictiveness will "play no part in a prosecutorial or sentencing decision[.]" *United States v. King*, 126 F.3d 394, 397 (2nd Cir. 1997). "A sentence based to any degree on activity or beliefs protected by the first amendment is constitutionally invalid." *United States v. Lemon*, 723 F.2d 922, 938 (D.C. Cir. 1983)

"Although prosecutorial discretion is broad, it is not unfettered" and vindictiveness is evident when prosecutors act "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States*, 470 U.S. 598, 608 (1985).

It also makes no difference whether vindictiveness is revealed before or after a conviction. *See United States v. Goodwin*, 457 U.S. 368, 385 (1982) ("I find no support in our prior cases for any distinction between pre-trial and post-trial vindictiveness. As I have said before: 'Prosecutorial vindictiveness in any context is still prosecutorial vindictiveness. The Due Process Clause should protect an accused against it, however it asserts itself.'") (J. Blackmun, concurring).

In the present circumstances the government's attack on Mr. Koerber's abstract religious beliefs and protected religious expressions does not relate to any allegation in the indictment. No count of conviction has any element that was proven by the facts cited by the government. No witness at trial complained of Mr. Koerber's religious expressions. Mr. Koerber does not occupy a position of trust in any organization that factored into this case, in any manner. No sentencing factors include a relevant consideration of Mr. Koerber's religious beliefs or the content of his religious expressions. Thus, based upon the prosecution's new openness about its own anti-religious bias, the Court and the public can see a basic unconstitutional reality – that the government wants Mr. Koerber punished more severely because of his religious beliefs and expressions.

Consider two defendants: Defendant A is charged and convicted of the exact same conduct as Mr. Koerber, however, defendant A has not made public statements declaring his religious beliefs and has not written down or published his religious ideas or similar essays by his religious leaders. On the other hand, we have Mr. Koerber. When comparing these two circumstances it is clear the government's position is that Mr. Koerber should be sentenced more severely because of his religious beliefs and expressions. Or to put the matter in another light, both citizens in this example have been convicted of the exact same crime, for the exact same conduct. But the government wants to see the citizen (Mr. Koerber) who dared to publicly make known his religious beliefs, ideas, and affections (e.g. declaring "I believe in God" or using religious tone or vocabulary) punished more harshly.

Even assuming, which is quite illogical, that the government's anti-religious animus did not spring into existence until it's sentencing preparations, it is still sufficient to trigger constitutional safeguards.[4] "The Supreme Court has held that the First Amendment prevents [the prosecution] from employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have

---

[4] Actual vindictiveness or even an appearance of vindictiveness will invalidate the charge and any subsequent conviction because of the taint from such vindictiveness. *See e.g. Johnson* 171 F.3d at 140. See also P.H.E. Inc., 965 F.2d at 853, 855 (Vindictiveness cannot be tolerated because of the risk that is has accompanied a "pretextual prosecution" and prosecution is therefore barred.)

no bearing on the issue being tried." *United States v. Runyan*, 707 F.3d 475, p. 494 (4th Cir. 2013), quoting *Dawson v. Delaware*, 503 U.S. 159, 168 (1992).

> I. **Prosecutors have Unconstitutionally Attacked Mr. Koerber's Protected Right of Religious Association.**

Leaving aside the fact that the United States Attorney's Office for the District of Utah has chosen to use the increasingly pejorative label for Mr. Koerber's faith,[5] the United States government has a long history of significant anti-Mormon bias. *See e.g. Davis v. Beason*, 133 U.S. 333 (1890), abrogated by *Romer v. Evans*, 517 U.S. 620 (1996) (discussing anti-Mormon test oaths); *Brown v. Buhman*, 947 F. Supp. 2d 1170, 1182 (D. Utah 2013), vacated, 822 F.3d 1151 (10th Cir. 2016) (discussing the history of federal anti-Mormonism).

The very first criticism in the government's sentencing memorandum is that Mr. Koerber "appeared to be a faithful Mormon." Doc. 559 at p. 2. Significantly the government not only emphasizes Mr. Koerber's particular religious association but argues by implication that Mr. Koerber is not in-fact a *faithful* Mormon. This approach in sentencing (or at any other stage of a criminal prosecution), is constitutionally prohibited. "[N]either [a defendant's] Christian belief's nor the implication that he somehow betrayed those beliefs" is "legally relevant in any way." *Runyan*, 707 F.3d at 494. "Where protected conduct has no bearing on either the crime committed or on any of the relevant sentencing factors, consideration of that conduct infringes a defendants First Amendment rights." *United States v. Alvarez-Nunez*, 828 F.3d 52, 56 (1st Cir. 2016).

Separately, the government entitled an entire section of its sentencing memorandum, "The Mormon Connection." Doc. 559 at p. 4. Here, prosecutors are not just complaining that Mr. Koerber is associated with a religious group, the attack is that ***his particular choice*** of a "Mormon

---
[5] *See* https://www.cnn.com/2018/08/17/us/mormon-church-name-trnd/index.html; *see also* https://newsroom.churchofjesuschrist.org/article/name-of-the-church

Connection" should justify increased punishment. The problem here is a well-known principle justifying heightened scrutiny in First Amendment jurisprudence, where the government has launched an attack on religious speech or religious association that is not content neutral. *See Ashcroft v. American Civil Liberties Union*, 535 vs. 564, 573 (2002); *Ashcroft v. American Civil Liberties Union*, 542 vs. 656, 660 (2004). In fact, it's not just Mr. Koerber's particular church association but also his publication of essays "from former Mormon leaders" and his "writings" that were "designed to appeal to a Mormon audience" that is attacked by the government. In other more familiar examples of this same kind of vindictiveness, this Court would certainly not tolerate a prosecutorial memorandum arguing – with the same kind of bias and deeply offensive bigotry - that the defendant should be more severely punished because of his race[6] or based on discriminatory religious stereotypes.[7] These kinds of expressions are not only examples of long rejected bigotry and unfairness, but they also evoke the same level of disgust and intolerance that this Court should have for anti-Mormon bigotry. Here, prosecutors openly state that Mr. Koerber is among the worst criminals because of his "Mormon Connection" and because he "infused seminars and writings with a religious tone" and publicly claimed to believe in God. A "fraudster Mormon" is the unspoken concept that prosecutors apparently want this Court to endorse as part of a new modern law enforcement lexicon. This Court should clearly reject the government's ploy for the same reasons federal courts have long rejected this kind of bias. *See Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) ("For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser.")

---

[6] *See* Marc, Mauer (1999). Race to incarcerate. New York: The New Press. ISBN 978-1-59558-022-1. *See also* https://en.wikipedia.org/wiki/Criminal_stereotype_of_African_Americans; https://www.nytimes.com/1912/10/01/archives/lynching-as-third-degree-wisconsin-sheriff-extorts-confession-from.html

[7] *See* Boroson, Warren (24 December 2010). "The money libel: Confronting a dangerous stereotype". Jewish Standard. Retrieved 18 June 2011.

Prosecutors, like those in the past[8] who have relied on this same flawed biased and vindictive approach, attacking a defendant's abstract beliefs and protected expressions, will likely respond and protest that it is Mr. Koerber who preyed upon members of The Church of Jesus Christ of Latter-day Saints, and that prosecutors are only trying to protect that religious community. But, the problem of bigotry and vindictiveness is that those who engage in it, are often the last to see it. Consider, the law has outlined the boundaries of Mr. Koerber's conduct – without any reference to religious considerations. He was convicted of fraud and money laundering. Nothing in the trial connected Mr. Koerber's religious expressions and religious beliefs to any of the elements of securities fraud or wire fraud. Not a single government witness complained of Mr. Koerber's religious beliefs or expressions.[9] Now, in consideration of sentencing, the government has introduced Mr. Koerber's "Mormon Connection", beliefs and expressions and relied upon these extensively to ask for harsher punishment. The implication is that prosecutors – without reliance on the elements of any crime - can rightfully single out appropriate religious behavior and appropriate religious expression - from the inappropriate. Further, the implication is that government prosecutors can protect members of The Church of Jesus Christ of Latter-day Saints by chastising, shaming and mocking members like Mr. Koerber in addition to what the law commands. After conviction, the government's position is essentially, Mr. Koerber is not only a fraudster – he is a Mormon fraudster – and this fact, according to the government, makes Mr. Koerber someone who should be punished more severely.

Again, prosecutors may still resist and not see the problem. But, consider one final example. Assume that another defendant – Defendant B, specifically targeted members of The Church of Jesus

---

[8] *See Dawson v. Delaware*, 503 U.S. 159 (1992); *United States v. Alvarez-Nunez*, 828 F.3d 52, 58 (1st Cir. 2016)

[9] It is true that prosecutors cite Patrick Poyfair's FBI 302, but Mr. Poyfair was not a trial witness, was not a Founders Capital investor, and his statements are not signed or subject to any testing. Mr. Koerber denies the allegations supposedly made by Mr. Poyfair's statements and the testimony provided by Clavell Anderson, Peter Hansen and Jason Vaughn rejecting the government's premise - are all sworn statements, based upon firsthand knowledge, and directly dispute and discount Poyfair and the government's argument deriving from Poyfair.

Christ of Latter-day Saints for a financial fraud scheme. But, unlike Mr. Koerber, Defendant B is an atheist. He makes no religious expressions and makes no public declarations of his belief or disbelief in God. But, he does exactly what Mr. Koerber was convicted of – he set-up an identical Founders Capital, identical seminars, identical courses and an identical equity mill. Defendant B makes the same promises of high monthly interest, the same promissory notes backed by the same real estate equity, and makes the same statements and creates the same aura of success that prosecutors described at trial against Mr. Koerber. In this circumstance, Defendant B would be approaching sentencing with the exact same sentencing factors, the exact same offense level, and the exact same crime having been convicted by the jury. However, in the sentencing memorandum the government could not *protect* members of The Church of Jesus Christ of Latter-day Saints by pointing out Defendant B's religious beliefs (because he has none); could not point out Defendant B's religious expressions (because he made none) and could not mock Defendant B for claiming to have been inspired by God, because he makes no such claim. But prosecutors could instead argue that Defendant B's actions were deliberate, were calculated, and even that Defendant B targeted members of a specific religious community.[10] This illustrates the point. This is what prosecutors are limited to doing in Mr. Koerber's case. "The government is neutral, and, while protecting all, it prefers none, and it disparages none." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 215 (1963).

But instead, transgressing First Amendment boundaries, prosecutors are not protecting members of The Church of Jesus Christ of Latter-day Saints by calling out and attacking Mr. Koerber's religious associations and expressions. They are sounding an impermissible warning that

---

[10] It is worth noting that prosecutors point out less than 10 of the supposed 37 victims, and less than 10 of the supposedly 600 or more effected by Mr. Koerber's activity that are members of The Church of Jesus Christ of Latter-day Saints. The point here is not to ask prosecutors to do an examination of the religious identity and association of each person effected by Mr. Koerber's actions, but to illustrate the impermissible futility of raising religious association to try and enhance the penalty faced by a criminal defendant when the law is silent on this factor.

you citizens who might be convicted of a crime[11] – when prosecutors can also identify your religious associations and expressions - you will be prosecuted more harshly and more severely than identically situated non-religious citizens, or citizens who give in and abandon such religious expressions out of fear of government vindictiveness. This approach by prosecutors has been long ago discredited. For example, the Eight Circuit has explained "[c]onsideration of political beliefs, as distinguished from criminal activity, would clearly be impermissible in determining defendants' sentences, because it would impair the rights of the defendants under the First Amendment, protecting public expression of their political beliefs, by words and symbols." *United States v. Bangert*, 645 F.2d 1297, 1308 (8th Cir. 1981) Mr. Koerber's religious beliefs and expressions of belief are no less protected than his political beliefs. *See* P.H.E., Inc., 965 F.2d at 849; *King*, 126 F.3d at 397. "[The First] Amendment requires the state to be a neutral in its relations with groups of religious believers and non-believers; it does not require the state to be their adversary. State power is no more to be used so as to handicap religions, than it is to favor them." *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 18 (1947).

In other words, it's not in reality that Mr. Koerber targeted a "Mormon audience" that somehow gives prosecutors the moral high ground in raising these issues, its that prosecutors want to see a citizen who "appeared to be a faithful Mormon" punished more severely which gives prosecutors the moral low ground of unconstitutional bias and vindictiveness. The approach by the government here is plainly the greater risk to citizens – including members of The Church of Jesus Christ of Latter-day Saints – when prosecutors undertake to define who is in reality a faithful or non-

---

[11] The risk of vindictiveness also applies to citizens who may be charged with a crime because of their religious expressions. For example, there is direct evidence in this case that prosecutors unlawfully schemed to prosecute Mr. Koerber even before they had concluded that any crime had taken place. Further, in the midst of this prosecution, AUSA Young openly declared to students at Brigham Young University in May 2013 that he was particularly motivated to prosecute Mr. Koerber because of Mr. Koerber's religion and religious expressions. *See* Case No. 2:09-CR-302, Doc. 451.

faithful member of a religious organization, or which citizens should be prosecuted and punished more severely because of their religious identity and expressions. *See Lemon*, 723 F.2d 922, 937 (D.C. Cir. 1983) ("a court may not punish an individual by imposing a heavier sentence for the exercise of first amendment rights.")

Mr. Koerber's religious association is a protected right and there is no element of any criminal offense at issue here that makes Mr. Koerber's religious association relevant to criminality or wrongdoing generally. The government's approach, directing animus and hostility to Mr. Koerber's religious association is the very kind of religious bias and vindictiveness that is constitutionally impermissible. *See Lemon*, 723 F.2d at 938. *See also P.H.E., Inc.*, 965 F.2d at 848, 853. (When the government is "motivated by a desire to discourage expression protected by the First Amendment" it is impermissible "irrespective of whether the challenged action could possibly be found to be unlawful.")[12]

---

[12] In light of the government's recent sentencing statements, the evidence of actual vindictiveness spans as far back as the filing of the superseding indictment. First, as soon as Mr. Koerber exercised his legal rights (hiring private counsel, ceasing plea negotiations, and invoking privilege over the "To Our Lenders" letter) the government obtained a superseding indictment adding 19 counts – including new securities fraud, wire fraud, tax evasion and money laundering counts that were not included in the original indictment. Significantly, all of the new charges were based on information already in the government's possession at the time of the first indictment, and the scheme and artifice section of allegations from the original indictment and the November 2009 indictment are virtually identical.

Further, even though prosecutors did not admit the basis for this animus against Mr. Koerber, whether religiously motivated or in combination with his exercise of legal rights; this is precisely the kind of action by prosecutors that the law recognizes as presumptively vindictive. For example, in *United States v. Garza-Juarez*, 992 F.2d 896, 907 (9th Cir. 1993), the Ninth Circuit explains that when "a superseding indictment" is filed with "additional charges" that "are based on the same conduct that was the subject of the first indictment, when the same sovereign was involved and, most importantly, when the decision to file increased charges directly follow[ed] the assertion of a procedural right" there is a "presumption of vindictiveness." *Id*. *See also United States v. DeMarco*, 550 F.2d 1224, 1226 (9th Cir. 1977) (concluding that when the "facts upon which the second indictment was founded had been known to the Government long before the first indictment was returned" there is a presumption of vindictiveness.)

Putting these events into sequence, it is now clear that prosecutors have had some impermissible animus since "before the original indictment" *Koerber*, 2014 WL 4060618, at *6, and internally "schemed to prejudice" Mr. Koerber unfairly from the earliest stages of this case. *Koerber*, No. 2:09-CR-302, 2012 WL 3964829, at *9

## II. Prosecutors have Unconstitutionally Attacked Mr. Koerber's Abstract Religious Beliefs and Expressions.

In addition to criticizing Mr. Koerber's religious association, prosecutors attack Mr. Koerber's public expressions of his religious faith and his abstract religious beliefs. The fact that Mr. Koerber has a "Mormon ideology", Doc. 559 at p. 2, or that he spoke and wrote with "concepts and vocabulary familiar to Mormons", *id.,* at p. 4, **is legally irrelevant**. *See Wisconsin v. Mitchell*, 508 U.S. 476, 485-86 (1993) ("[A] defendant's abstract beliefs … may not be taken into consideration by a sentencing judge.")

Prosecutors also argue that Mr. Koerber should be sentenced with the consideration that during the course of running his business he occasionally made statements like, "I know God lives" and that he spoke in a "tone familiar" to a religious audience. Doc. 559 p. 5. One of the constitutional grounds for prohibiting prosecutorial vindictiveness is that "fear of such vindictiveness may unconstitutionally deter a defendant's exercise of his rights[.]" *United States v. Johnson*, 171 F.3d 139, 140 (2nd Cir. 1999). Here, Mr. Koerber has not been convicted of fraud because enticing someone to do business with you by making religious declarations, is somehow illegal. It isn't. Neither was Mr. Koerber convicted because the statement "I know God lives" has been proven false or misleading. The simple fact of the matter is that, none of these beliefs and none of these expressions by Mr. Koerber related to the charges outlined in the indictment. None of these criticized

---

Not only was the district court right to cite *Ballivian*, 819 F.2d at 267 explaining the government's "pattern of widespread and continuous misconduct" it is now apparent, in light of the government's recent admissions and proclaimed animus, that the government's conduct triggers the well-established provisions of constitutional law prohibiting vindictiveness. Here, prosecutors clearly had an interest in discouraging Mr. Koerber (and future defendants) from exercising rights that clearly required an increase in effort and expenditure of resource by the government, particularly in the light of the fact that prosecutors wanted to see Mr. Koerber punished because of his "Mormon Connection" and religious expressions. *See DeMarco*, 550 F.2d 1224, 1227.

beliefs or behaviors are the lawful basis of a criminal conviction.

As such, the government's use of these attacks only serves to punish Mr. Koerber and to threaten him and other citizens. The message is clear, while the government may tolerate such expressions for a time, if you are ever accused and convicted of a crime these beliefs and kinds of statements will be used to enhance your punishment. Specifically, Mr. Koerber's beliefs and statements are being used by the government in an attempt to enhance his punishment over other citizens who have not dared to exercise these protected rights. Such a position is not only impermissible under constitutional law, it is also reminiscent of the recent statement penned by Justice Alito warning:

> I assume that those who cling to old beliefs will be able to whisper their thoughts in the recesses of their homes, but if they repeat those views in public, they will risk being labeled as bigots and treated as such by governments[.]

*Obergefell v. Hodges*, 135 S. Ct. 2584, 2642–43 (2015) (J. Alito, dissenting).

Prosecutors also attack Mr. Koerber for publicly declaring his belief that he and others could be "inspired by God" and for infusing his "writings with a religious tone". *Id* at pp. 5-6. These expressions are clearly protected, and the government's criticism is plainly aimed at "the improper purpose of interfering with the defendant's constitutionally protected speech." *P.H.E. Inc*., 965 F.2d at 849. The government "may not use the agents and instrumentality of law enforcement to curb speech protected by the First Amendment." *Id*., at 856. *See also Dawson*, 503 U.S. at 159.

## CONCLUSION

The government's sentencing memorandum not only reveals impermissible anti-religious bias by prosecutors, it also unconstitutionally requests that this Court punish Mr. Koerber more severely because he has openly stated his religious beliefs and his religious associations. Mr. Koerber objects and requests that this Court find the government's conduct here to be unconstitutional and inexcusable. As such, in addition to any other remedies available to Mr. Koerber, the government's

sentencing memorandum and related arguments should be disregarded as tainted by vindictiveness or the strong appearance of vindictiveness.

Dated this 8th day of October 2019.

<u>/s/Kathryn N. Nester</u><br>
Attorney for Claud R. Koerber