JOHN W. HUBER, United States Attorney (#7226)
AARON B. CLARK, Assistant United States Attorney (#15404)
RUTH J. HACKFORD-PEER, Assistant United States Attorney (#15049)
TYLER MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
111 South Main, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | : | Case No. 2:17-CR-00037 |
|---|---|---|
| Plaintiff, | : | **UNITED STATES' OPPOSITION TO DEFENDANT'S RENEWED EMERGENCY MOTION FOR COMPASSIONATE RELEASE AND REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)(i) (INDICATIVE RULING UNDER F.R.CRIM.P. 37)** |
| v. | : | |
| CLAUD R. KOERBER, | : | |
| Defendant. | : | |
|  |  | Judge Frederic Block |
|  |  | Magistrate Judge Paul M. Warner |

The United States respectfully submits this opposition to Koerber's renewed request for an indicative ruling on his emergency motion for compassionate release and reduction of sentence under 18 U.S.C. § 35829(c).

**FACTS**

Koerber renewed his motion for compassionate release and reduction in sentence based on a considerable increase in the number of inmates who tested positive for COVID-19 at Terminal Island, the BOP facility where he is incarcerated.

This increase in cases sounds alarming, but Koerber fails to provide the Court with the context for understanding this increase and what it means for inmates housed at Terminal Island.

As explained in the April 28, 2020, Terminal Island Press Release (attached as Exhibit 1), Terminal Island houses inmates who may require specialized or long-term medical or mental health needs.  To enhance mitigation efforts for COVID-19 among this group, the Los Angeles County Health Department began testing for all inmates starting on April 23, 2020.  *Id.*  The idea behind this proactive strategy to test all inmates is to identify asymptomatic or pre-symptomatic individuals who test positive and isolate them, thus preventing the spread of the disease.  *Id.*  Officials also hope to shorten the overall quarantine period during the span of the pandemic. *Id.*

The press release makes clear the increase in the number of cases was expected:  "[t]esting 100% of the inmate population will significantly increase the number of COVID-19 positive cases reflected on the Bureau of Prisons' public website."  *Id.*  But the release emphasizes that "not all inmates who test positive are experiencing acute or chronic illness."  *Id.*  Terminal Island houses just over 1,000 inmates, and over 1,000 inmates have been tested.  More than half of them tested positive for COVID-19, but "only 10% of those tested are exhibiting outward objective symptoms, such as coughing and fever."  *Id.*

Thus, while COVID-19 is serious, the large number of positive results at Terminal Island is a function of the universal testing of all inmates and the facility's diligent efforts to protect its population from the disease.  This is hardly the sort of apocalyptic explosion of cases that Koerber tried to paint for the Court as part of his continuing efforts to be released from prison.

**Koerber's Health Status**

**PROCEDURAL POSTURE**

Koerber's renewed motion still only seeks an indicative ruling under Rule 37. As explained in the United States' prior briefing, because of the pending appeal, this Court does not have jurisdiction to actually order Koerber's release. Instead, pursuant to Rule 37, this Court's jurisdiction only allows it to give an indicative ruling on whether it would grant the renewed motion to place him in home confinement, which would then allow the Tenth Circuit, if it chooses under Fed. R. App. 12.1, to remand to the district court to enter its order.

**ARGUMENT**

**I.   This Court Has No Authority to Direct the BOP to Place Koerber in Home Confinement**.

In his renewed motion, Koerber requests that the Court order he be placed in home confinement, or alternatively, that he be placed in home confinement with the possibility of sending him back to prison once the Court is convinced he can be safely incarcerated. Koerber cites no authority that would authorize the Court to take this extraordinary action.[1]

Koerber's request for home confinement should be denied because courts have no authority to direct the BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to BOP's discretion.

The authority to designate the place of an inmate's incarceration rests with the Bureau of Prisons, not the sentencing court. *See* 18 U.S.C. § 3621(b); *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (district court lacked jurisdiction to consider inmate's request to serve his

---

[1]   In both of his emergency motions for release, Koerber appears to conflate home confinement, which, as set forth herein, is exclusively an issue for the BOP, with compassionate release, which is something that can be considered by a court, but only under the criteria set forth in 18 U.S.C. § 3582.

4

federal sentence in state penitentiary because "[s]ection 3621(b) directs the BOP 'to designate the place of a prisoner's imprisonment'—language that gives the executive branch primary authority over any petition challenging a prisoner's place of confinement"); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993). (A court has no authority to designate a prisoner's place of incarceration). "The Bureau of Prisons is given this responsibility because the executive branch and not the judicial branch is responsible for administering sentences." *Id.* (internal citations omitted). And the BOP's decisions in this regard are not subject to review by the courts: "[n]otwithstanding any other provision of law, a designation of a place of incarceration under [18 U.S.C. § 3621] is not reviewable by any court." 18 U.S.C. § 3621(b). Consistent with this authority, Congress made clear that BOP has the authority to decide whether, under certain circumstances, an inmate's place of incarceration can be on home confinement. 18 U.S.C. § 3624(c)(1)-(2); *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469-70, n. 3 (10th Cir. 1992). Because Koerber's latest request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request. [2]

---

[2] Traditionally, this authority allowed the Director of the Bureau of Prisons to designate a prisoner to home confinement for the last 10 percent or 6 months of his term of imprisonment, whichever was shorter, in order to give the prisoner a reasonable opportunity to adjust to and prepare for his reentry into the community. This authority was expanded to address the COVID-19 national health emergency. As part of the CARES Act, Congress authorized the Attorney General to suspend the 10%/6 month time limitation in 3624(c)(2), so the Bureau of Prisons could expand its use of home confinement during the health emergency as a tool to combat the spread of COVID-19. (Pub.L. 116-136, s12003(b)(2) referred to as the CARES Act.) On April 3, 2020, the Attorney General made the findings necessary to authorize the BOP to implement the expanded authority.

Moreover, there is no constitutional or statutory authority that allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). Following the imposition of sentence, the Court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010) (per curiam). Section 3582(c) contemplates only a reduction in sentence. *See* § 3582(c). But Koerber's request to serve all or a portion of his term in home confinement, as opposed to prison, works no reduction to his sentence. Home confinement merely permits the inmate to serve out his term of imprisonment at home. Koerber's request for such relief therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because § 3582(c) deprives the Court of jurisdiction to grant home confinement and because Defendant offers no other statutory authority to support his request for such relief, this Court has no authority to act on his request.[3]

**BOP Will Determine Koerber's Eligibility for Home Confinement**

The Court can be assured, however, that BOP is diligently working to make a reasoned determination of all its inmates' eligibility for home confinement. As set forth in the

---

[3] If a court grants a sentence reduction, it may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement, consistent with USSG § 5F1.2. *See* § 3583(e)(2).

accompanying declaration of John T. LeMaster (attached as Exhibit 3), BOP is actively working to exercise its statutory authority to authorize home confinement in appropriate cases. Decl. ¶ 3. BOP conducts an individualized assessment to see if an inmate like Koerber is an appropriate candidate. This assessment includes a medical evaluation. The BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risk of COVID-19 at the location in which the inmate seeks home confinement. Decl. ¶ 6,

The BOP has increased home confinement by over 69% since March 2020, and is continuing to aggressively screen inmates for home confinement. Since the March 26, 2020 Memorandum instructing the BOP to prioritize home confinement as an appropriate response to the COVID-19 pandemic, the BOP has placed an additional 1972 inmates on home confinement. See [www.bop.gov](www.bop.gov). Dec. ¶ 16.

Inmates like Koerber do not need to apply to be considered for home confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. While all inmates are being reviewed for suitability for home confinement, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager. Decl. ¶ 17,

In addition, and in order to prioritize its limited resources, BOP has generally prioritized for home confinement those inmates who have served a certain portion of their sentences, or who have only a relatively short amount of time remaining in those sentences. While these priority factors are subject to deviation in BOP's discretion in certain circumstances and are subject to revision as the situation progresses, BOP is at this time prioritizing for consideration those inmates

who either (1) have served 50% or more of their sentences, or (2) have 18 months or less remaining in their sentences and have served 25% or more of their sentences. Decl. ¶ 19.

The BOP is devoting all available resources to executing the Attorney General's directives, with such resources tailored and prioritized according to the needs of individual institutions across the country. The BOP is assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program. The BOP is then processing those inmates for transfer as expeditiously as possible. Decl. ¶ 14.

Given the complex factors at play, including individualized assessments of each inmate's history, conduct in prison, medical needs, and the necessity of considering the needs of the prison system as a whole as such decisions are made, it is clear why Congress gave BOP the authority to determine whether home confinement is appropriate. Koerber's own case demonstrates that the BOP is in the best position to make this determination. BOP can decide whether Koerber, who has served less than 12 months of a 170 month sentence,

In short, Koerber's eligibility for home confinement will be determined by the BOP, and he cannot circumvent this process, or attempt to "cut in line," by filing repeated emergency motions with the Court.

## II.     Koerber Does Not Qualify for a Reduction In His Term of His Imprisonment Under 18 U.S.C. § 3582.

The statutory authority that would allow this court to revisit the term of Koerber's sentence is found in 18 U.S.C. § 3582(c). As set forth below, and in the United States' prior briefing (incorporated herein), Koerber does not qualify for a sentence reduction under this statute.

### a. The Court Still Has No Authority to Consider Koerber's Request Because 30 Days Have Not Passed Since Koerber Made His Request to the Warden

This Court still lacks authority to consider Koerber's motion for a sentence reduction. As explained in the United States' prior filing on this issue, § 3582(c) requires that a request for a sentence reduction be presented first to the warden for his or her consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, may a defendant move for a sentence reduction in court. Section 3582(c) specifically provides that the request must be made to the "warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

As a threshold matter, after consultation with BOP, it appears that Koerber never appropriately submitted a request to the warden at the facility where he was housed. Koerber himself was required to submit the request. Instead, his lawyer sent a letter to the warden, and simply asked the warden to accept the lawyer's letter, notwithstanding the requirement that Koerber submit the request himself. (*See* ECF No. 685 Emergency Motion to Modify/Reduce Sentence, Exhibit J). As a result, Koerber has never properly submitted his request under section 3582, meaning there is no authority for the Court to consider his motion now.

Even if Koerber's request had been properly submitted to the warden, he would have done so on April 3, 2020, at the earliest. (*See* ECF No. 685 Emergency Motion to Modify/Reduce Sentence, Exhibit J). He filed his first motion for relief on April 9, 2020, and he renewed the motion on April 29, 2020. Both motions were filed before the statutorily required 30 day period expired. Because 30 days have not passed, section 3582(c)(1)(A) "presents a glaring roadblock foreclosing compassionate release at this point." *United States v. Raia*, 2020 WL 1647922, at *2

(3d Cir. Apr. 2, 2020), *as revised* (Apr. 8, 2020).  An extraordinarily large number of courts who have recently addressed this issue agree.[4]

Koerber tries to gloss over the fact that 30 days have not passed by arguing that he made his first request on March 27, 2020.  What Koerber fails to acknowledge to this Court is that these earlier requests were not, by Koerber's own admission, made to the warden as required by the statute.  In his April 3, 2020, letter to the warden, Koerber's lawyer acknowledged that although they had try to resolve this issue informally with Koerber's counselor and unit manager starting on March 27, 2020, the April 3, 2020 letter "serves as Mr. Koerber's initial request pursuant to 28 CFR § 542.14."  (ECF No. 685, Ex. J, p.1).

The 30 days period is not some technical hurdle that the United States is using to thwart relief for defendants like Mr. Koerber.  Instead, as explained in *United States v. McCann,* 2020 WL 1901089, at *2 (E.D. Ky. Apr. 17, 2020), this requirement recognizes that BOP is in the best position to initially determine such issues:

> The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important. . . . The requirement recognizes that the BOP is better positioned than the courts to first assess issues such as a defendant's health, the adequacy of the measures taken by a particular place of incarceration to address any health risks, the risk presented to the public by a defendant's release, and the adequacy of a defendant's release plan."

---

[4] *See, e.g.*, *United States v. Epstein*, No. 14-287 (FLW), 2020 WL 1808616 (D.N.J. Apr. 9, 2020); *United States v. Carter*, No. 1:18-cr-00086-JMS-DML, 2020 WL 1808288 (S.D. Ind. Apr. 9, 2020); *United States v. Hofmeister*, No. 5:16-13-KKC, 2020 WL 1811365 (E.D. Ky. Apr. 9, 2020); *United States v. Alam*, No. 15-20351, 2020 WL 1703881 (E.D. Mich. Apr. 8, 2020); *United States v. Fevold*, No. 19-CR-150, 2020 WL 1703846 (E.D. Wis. Apr. 8, 2020); *United States v. Valenta*, No. 15-161, 2020 WL 1689786 (W.D. Pa. Apr. 7, 2020); *United States v. Sundblad*, No. 6:16-CR-00047-JMC, 2020 WL 1686237 (D.S.C. Apr. 7, 2020); United States v. Rivers, No. 2017-0023, 2020 WL 1676798 (D.V.I. Apr. 6, 2020); *United States v. Clark*, 17-85-SDD-RLB, 2020 WL 1557397 (M.D. La. Apr. 1, 2020); *United States v. Zywotko*, No. 2:19 Cr. 113, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020); *United States v. Gileno*, No. 19 CR 161, 2020 WL 1307108 (D. Conn. Mar. 19, 2020).

Because 30 days have not passed since Koerber's April 3, 2020, initial request to the warden, the Court lacks authority to consider Koerber's motion, and should deny it. *See United States v. Raia*, -- F.3d --, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) ("But although he asked BOP to move for compassionate release on his behalf, he did not give it thirty days to respond. So we will deny Raia's motion.").

### b. *Koerber Still Has Failed to Show "Extraordinary and Compelling Reasons" To Be Released*

Koerber's request for a compassionate release should also be denied because he still has not demonstrated "extraordinary and compelling reasons" warranting release. Under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement, which is binding pursuant to 28 U.S.C. § 994(t), defines "extraordinary and compelling reasons" to include certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A). The relevant categories include (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A).

Koerber cannot establish that such circumstances exist. His motion was premised on the fear that he might contract COVID-19. But his fear about contracting COVID-19 is not a "terminal illness" or "medical condition" that warrants compassionate release under the plain language of USSG 1B1.13, and, by extension § 3582 itself.

### c. *Koerber Is Not Entitled to Release Under the Catch-All Provision*

Moreover, Koerber is not entitled to release under the so-called "catch-all provision" of 1B1.13 n. 1(d). Under that provision's plain language, it is only the "Director of the Bureau of Prisons" who determines whether there exists an extraordinary and compelling reason, "other than or in combination with" the other factors listed 1B1.13 to reduce Koerber's sentence. To the extent Koerber seeks relief under this provision, he should direct his request to the Director of the Bureau of Prisons, not the Court.

### d. *Koerber Still Poses A Danger To The Community And The 3553 Factors Weigh Against His Release*

Additionally, nothing has changed since Koerber's first motion about Koerber's danger to the community. As the United States explained in detail in response to Koerber's earlier emergency motion for relief (ECF No. 690), and in connection with his sentencing (ECF No. 559), victimizing others through dishonesty is a consistent theme in Koerber's life. He lies to get what he wants in the moment, and when he is called on to account for his dishonest behavior, he attacks, blames others, and minimizes. He has repeatedly attempted to deceive those with whom he conducts business, including the courts. If released, there is reason to think he will continue this behavior. Moreover, Section 3553(a) requires the Court to consider whether the sentence "reflect[s] the seriousness of the offense, [] promote[s] respect for the law, [and] provide[s] just punishment for the offense." Koerber has served less than 12 months of a 170-month sentence, and he has refused to take any responsibility for his actions. A reduction in his sentence now would only embolden him, as he would largely escape accountability for his crimes. Justice requires that Koerber continue to serve his sentence. He is certainly not entitled to a sentence reduction or compassionate release. *See, e.g., United States v. Korn*, Nos. 15-CR-81S and 11-CR-384S, 2020 WL 1808213 at *8 (W.D.N.Y. Apr. 9, 2020) 2020 WL 1808213 at *8 (reduction in

sentence over COVID concerns "would not reflect the seriousness of Korn's offenses, promote respect for the law, provide just punishment, or afford adequate deterrence" where "[defendant's] conduct involved a pattern of theft, deception, and dishonesty resulting in multi-million-dollar losses," and where the defendant "has demonstrated very little remorse or recognition that his conduct was criminal, repeatedly denying any malicious or criminal intent during his sentencing allocution."); *United States v. Lisi,* No. 15 Cr. 457, 2020 WL 881994, at *5 (S.D.N.Y. Feb. 24, 2020) (3553(a) factors did not authorize compassionate release of defendant where (i) defendant's "conduct was particularly egregious and offensive" in that he "defraud[ed] his victims of large sums of money;" (ii) defendant "has only just begun to serve the sentence imposed by th[e] Court;" and (iii) defendant "continues to accept no responsibility for his crimes."); *and United States v. Israel,* No. 05 CR 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) (defendant who ran Ponzi scheme was not entitled to reduction in sentence, in part because "it would make a mockery of the sentencing statute if this financial fraudster, who ruined the lives and finances of hundreds of people while living the high life of an ostensibly successful hedge fund manager, were to be have his sentence reduced").

## CONCLUSION

The Court has no authority to order that Koerber be placed in home confinement. The BOP, however, will make a reasoned determination as to whether it will choose to assign Koerber to home confinement. Moreover, Koerber is not eligible for a reduction in sentence (compassionate release) under 18 U.S.C. § 3582 because there is no extraordinary and compelling reason to grant this relief, Koerber is a danger to the community, and a reduction in his sentence would be contrary to the 3553(a) factors. Koerber's renewed motion should be denied.

DATED this 4th day of May, 2020.

                                        JOHN W. HUBER
                                        United States Attorney


                                        /s/ *Tyler Murray*_____
                                        TYLER MURRAY
                                        AARON CLARK
                                        RUTH HACKFORD-PEER